## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: | Case No.: 24-30168 |
| Stark Energy, Inc., | Chapter 11, Subchapter V |
| Debtor. | |

## MOTION TO LIFT AUTOMATIC STAY

### INTRODUCTION

Gate City Bank ("Bank"), a secured creditor of Debtor Stark Energy, Inc. ("Debtor") moves this Court, pursuant to Rule 4001 and Rule 9014 of the Rules of Bankruptcy Procedure and 11 USC § 362(d), to lift the automatic stay existing by right of 11 USC §362(a) so as to permit the Bank to retain possession of and continue forward with the auction previously scheduled for April 23, 2024 to dispose of in a commercially reasonable manner the following eighteen (18) titled vehicles out of twenty-one (21) total that constitute the Bank's collateral and were repossessed by the Bank as noted below (collectively, the "Recovered Vehicle Collateral"):

| Note # | # | Collateral | VIN# |
|---|---|---|---|
| Note 1 | 1* | 2013 Dragon ESP LTD 200 BBL | 1UNST5343DS128172 |
| Note 2 | 2* | 2007 Kenworth | 1XKDP40X07R197151 |
| Note 3 | 3* | 2013 Dragon 200 BBL Alum. Tank Trlr | 1UNST5341DS128154 |
| | 4* | 2013 Dragon 200 BBL Alum. Tank Trlr | 1UNST5340DS128162 |
| | 5* | 2014 Dragon 200 BBL Alum. Tank Trlr | 1UNST5340ES128552 |
| Note 4 | 6* | 2012 Kenworth | 1XKWP4TX8CJ335970 |
| Note 5 | 7* | 2014 Kenworth W900 | 1XKWD49X1EJ413380 |
| | 8* | 2013 Dragon 220 BBL Tank Trlr | 1UNST5348DS128118 |

| | 9 | ~~2007 Reitnauer Trailer~~ | ~~1RNF48A247R019280~~ |
|---|---|---|---|
| Note 6 | 10* | 2014 Kenworth | 1NKDX4TX3EJ403810 |
| Note 7 | 11* | 2013 Dragon 200 BBL AL Semi-Trailer | 1UNST5340DS128291 |
| | 12 | ~~2014 Dragon 200 BBL AL Semi-Trailer~~ | ~~1UNST5346ES140026~~ |
| Note 8 | 13* | 2016 Sidump'r Dump Trailer | 1D9FS4437GC688018 |
| | 14* | 2016 Sidump'r Dump Trailer | 1D9FS4430GC688099 |
| | 15* | 2013 Dakota MFG Dump Trailer | 1D9SH4339DY554348 |
| | 16* | 2000 Midland MFG Dump Trailer | 2MFB2S3D5YR000651 |
| | 17* | 2000 Midland MFG Dump Trailer | 2MFB2S4D3YR001148 |
| | 18* | 2000 Midland MFG Dump Trailer | 2MFB2S3D3YR000650 |
| | 19* | 2000 Midland MFG Dump Trailer | 2MFB2S3D7YR000652 |
| | 20* | 1999 Midland MFG Dump Trailer | 2MFB2S4D4XR000542 |
| Note 9 | 21 | ~~2012 Dragon 150 BBL AL Trailer~~ | ~~1UNST4223CL109253~~ |

*Denotes Recovered Vehicle Collateral

The granting of the relief from stay is appropriate for the following reasons:

## **BACKGROUND**

### *A. Gate City Loans for 21 Pieces of Equipment*

1.      The Debtor is obligated to the Bank pursuant to the terms of the following

instruments:

> a.      Loan 798942 - Promissory Note dated February 19, 2018 in the original principal sum of $40,000.00 ("Note 1"). Interest accrues on the unpaid balance of Note 1 at the rate of 5.0% per annum. Note 1 required monthly payments of $646.47 commencing on April 1, 2018 and continuing thereafter for 72 months on the 1st day of each month until March 1, 2024 when all outstanding principal plus all accrued unpaid interest was due and owing. A true and correct copy of Note 1 is attached as **Exhibit A-1** and terms of the same incorporated herein by reference.

> b.      Loan 1275221 – Promissory Note dated November 16, 2018 in the original principal sum of $37,439.30 ("Note 2"). Interest accrues on the unpaid balance of Note 2 at the rate of 5.490% per annum. Note 2 required monthly payments of $869.77 commencing on December 1, 2018 and continuing thereafter for 48 months on the 1st day of each month until November 1, 2022 when all outstanding principal plus all accrued unpaid interest was due and owing. A true and correct copy of

Note 2 is attached as **Exhibit A-2** and terms of the same incorporated herein by reference.

c.    Loan 1286855 – Promissory Note dated November 26, 2018 in the original principal sum of $135,000.00 ("Note 3"). Interest accrues on the unpaid balance of Note 3 at the initial rate of 6.500% per annum. Note 3 required monthly payments of $1,812.94 commencing on December 26, 2018 and continuing thereafter for 96 months on the 26th day of each month until November 26, 2026 when all outstanding principal plus all accrued unpaid interest was due and owing. A true and correct copy of Note 3 is attached as **Exhibit A-3** and terms of the same incorporated herein by reference.

d.    Loan 1333145 – Promissory Note dated December 31, 2018 in the original principal sum of $76,639.30 ("Note 4"). Interest accrues on the unpaid balance of Note 4 at the rate of 3.690% per annum. Note 4 required monthly payments of $1,063.75 commencing on February 1, 2019 and continuing thereafter for 48 months on the 1st day of each month until January 1, 2023 when all outstanding principal plus all accrued unpaid interest was due and owing. A true and correct copy of Note 4 is attached as **Exhibit A-4** and terms of the same incorporated herein by reference.

e.    Loan 1961820 – Promissory Note dated December 27, 2019 in the original principal sum of $150,144.65 ("Note 5"). Interest accrues on the unpaid balance of Note 5 at the rate of 5.170% per annum. Note 5 required monthly payments of $2,436.41 commencing on February 1, 2020 and continuing thereafter for 72 months on the 1st day of each month until January 1, 2026 when all outstanding principal plus all accrued unpaid interest was due and owing. A true and correct copy of Note 5 is attached as **Exhibit A-5** and terms of the same incorporated herein by reference.

f.    Loan 1993856 – Promissory Note dated January 16, 2020 in the original principal sum of $74,729.97 ("Note 6"). Interest accrues on the unpaid balance of Note 6 at the rate of 4.690% per annum. Note 6 required monthly payments of $1,404.54 commencing on March 1, 2020 and continuing thereafter for 60 months on the 1st day of each month until February 1, 2026 when all outstanding principal plus all accrued unpaid interest was due and owing. A true and correct copy of Note 6 is attached as **Exhibit A-6** and terms of the same incorporated herein by reference.

g.    Loan 2116648 – Promissory Note dated March 4, 2020 in the original principal sum of $100,000.00 ("Note 7"). Interest accrues on the unpaid balance of Note 7 at the rate of 5.000% per annum. Note 7 required

monthly payments of $1,889.79 commencing on April 1, 2020 and continuing thereafter for 60 months on the 1st day of each month until March 1, 2025 when all outstanding principal plus all accrued unpaid interest was due and owing. A true and correct copy of Note 7 is attached as **Exhibit A-7** and terms of the same incorporated herein by reference.

h.    Loan 2257715 – Promissory Note dated May 14, 2020 in the original principal sum of $152,000.00 ("Note 8"). Interest accrues on the unpaid balance of Note 8 at the rate of 5.000% per annum. Note 8 required monthly payments of $2,880.54 commencing on July 1, 2020 and continuing thereafter for 60 months on the 1st day of each month until June 1, 2025 when all outstanding principal plus all accrued unpaid interest was due and owing. A true and correct copy of Note 8 is attached as **Exhibit A-8** and terms of the same incorporated herein by reference.

i.    Loan 2865202 – Promissory Note dated March 26, 2021 in the original principal sum of $19,379.95 ("Note 9"). Interest accrues on the unpaid balance of Note 9 at the rate of 4.000% per annum. Note 9 required monthly payments of $438.52 commencing on May 4, 2021 and continuing thereafter for 49 months on the 4th day of each month until April 4, 2025 when all outstanding principal plus all accrued unpaid interest was due and owing. A true and correct copy of Note 9 is attached as **Exhibit A-9** and terms of the same incorporated herein by reference.

(Note 1, Note 2, Note 3, Note 4, Note 5, Note 6, Note 7, Note 8, and Note 9 are hereinafter collectively the "Notes").

2.    To secure the debt due on the Notes, the Debtor granted to the Bank security interests in certain titled vehicles pursuant to Commercial Security Agreement(s) corresponding to the same date as the Notes (collectively, the "Security Agreements"). True and correct copies of the Security Agreements are attached as **Exhibits B-1 through B-9** and terms of the same incorporated herein by reference.

3.    The Debtor's titled vehicles subject to the Bank's security interests include the following twenty-one (21) vehicles (hereinafter collectively, the "Titled Vehicle Collateral"):

| Note # | # | Collateral | VIN# |
|--------|-----|-----------|------|
| Note 1 | 1* | 2013 Dragon ESP LTD 200 BBL | 1UNST5343DS128172 |
| Note 2 | 2* | 2007 Kenworth | 1XKDP40X07R197151 |
| Note 3 | 3* | 2013 Dragon 200 BBL Alum. Tank Trlr | 1UNST5341DS128154 |
| | 4* | 2013 Dragon 200 BBL Alum. Tank Trlr | 1UNST5340DS128162 |
| | 5* | 2014 Dragon 200 BBL Alum. Tank Trlr | 1UNST5340ES128552 |
| Note 4 | 6* | 2012 Kenworth | 1XKWP4TX8CJ335970 |
| Note 5 | 7* | 2014 Kenworth W900 | 1XKWD49X1EJ413380 |
| | 8* | 2013 Dragon 220 BBL Tank Trlr | 1UNST5348DS128118 |
| | 9 | 2007 Reitnauer Trailer | 1RNF48A247R019280 |
| Note 6 | 10* | 2014 Kenworth | 1NKDX4TX3EJ403810 |
| Note 7 | 11* | 2013 Dragon 200 BBL AL Semi-Trailer | 1UNST5340DS128291 |
| | 12 | 2014 Dragon 200 BBL AL Semi-Trailer | 1UNST5346ES140026 |
| Note 8 | 13* | 2016 Sidump'r Dump Trailer | 1D9FS4437GC688018 |
| | 14* | 2016 Sidump'r Dump Trailer | 1D9FS4430GC688099 |
| | 15* | 2013 Dakota MFG Dump Trailer | 1D9SH4339DY554348 |
| | 16* | 2000 Midland MFG Dump Trailer | 2MFB2S3D5YR000651 |
| | 17* | 2000 Midland MFG Dump Trailer | 2MFB2S4D3YR001148 |
| | 18* | 2000 Midland MFG Dump Trailer | 2MFB2S3D3YR000650 |
| | 19* | 2000 Midland MFG Dump Trailer | 2MFB2S3D7YR000652 |
| | 20* | 1999 Midland MFG Dump Trailer | 2MFB2S4D4XR000542 |
| Note 9 | 21 | 2012 Dragon 150 BBL AL Trailer | 1UNST4223CL109253 |

*Denotes Recovered Vehicle Collateral

4.      The Bank perfected its security interest in the Titled Vehicle Collateral by having its lien noted on the Certificates of Title and/or holding physical possession of the original Certificate of Title. True and correct copies of the Certificates of Title held by the Bank with respect to the Titled Vehicle Collateral are attached as **Exhibit C** and terms of the same incorporated herein by reference.

5.      The Debtor defaulted on the Notes by failing to pay all sums due and owing under Note 2 and Note 4 by the maturity dates and also by failing to make regular monthly

payments on Notes 1, 3, and 5-9. All of the Notes have cross-default provisions. As a consequence of the defaults, the Bank accelerated the balance due and owing on the Notes and declared the same to be immediately payable.

### B. The Replevin Lawsuit and the Bank's Efforts to Recover the Titled Vehicle Collateral.

6.      In September 2023, the Bank commenced suit against the Debtor and its President, Robert Fettig, in Stark County District Court, Case No. 45-2023-CV-00689 (the "Replevin Lawsuit").

7.      An Order for Prejudgment Seizure was entered on October 11, 2023 (the "Seizure Order") with respect to the Replevin Lawsuit requiring the Debtor and its' President, Robert Fettig, to turn over the Titled Vehicle Collateral to the Bank. A true and correct copy of the Seizure Order is attached as **Exhibit D** and terms of the same incorporated herein by reference.

8.      The Debtor and Robert Fettig failed and refused to turn over the Titled Vehicle Collateral to the Bank despite being served with the Seizure Order. Accordingly, an order to show cause hearing was held in the Replevin Lawsuit on November 14, 2023 at the Stark County Courthouse. During the hearing, Mr. Fettig testified under oath that he "did not know what happened to the Gate City Collateral, that he did not have possession or control of the Gate City Collateral, that he did not know where it was, and that Defendants [Stark Energy, Inc. and Robert Fettig] were not using the Gate City Collateral in Defendants' business operations." Mr. Fettig further testified that "a repossession company may have taken the Gate City Collateral but he was not sure." The Stark County District Court judge did not find Robert Fettig's testimony to be credible and again ordered the Debtor and Robert Fettig to turn the

Titled Vehicle Collateral over to the Bank. A true and correct copy of the Contempt Order for Defendants Failure to Comply with Order for Prejudgment Seizure dated November 17, 2023 (the "Contempt Order") is attached as **Exhibit E** and terms of the same incorporated herein by reference.

9.      A Judgment as to the Debtor and Robert Fettig dated (the "Replevin Judgment") dated December 29, 2023 was entered in the Replevin Lawsuit ordering judgment in favor of the Bank and against the Debtor and Robert Fettig in the sum of $427,608.87. Additionally, the Debtor and Robert Fettig were once again ordered to turn over the Titled Vehicle Collateral to the Bank. A true and correct copy of the Replevin Judgment is attached as **Exhibit F** and terms of the same incorporated herein by reference.

10.     A loan history indicating dates and sums of missed payments, advances made to, or charges of any kind made against the Debtor beginning on the date of the default applicable to this motion and ending on the date the motion is verified is annexed as **Exhibit G-1 through Exhibit G-9** and terms of the same incorporated herein by reference.

11.     On March 15, 2024, the Stark County Sheriff's Department served a search warrant at Yuker Towing & Repair, LLC located at 3046 Hwy 22, Dickinson, ND 58601. Eighteen (18) of the original twenty-one (21) pieces of equipment were recovered (*i.e.*, the "Recovered Vehicle Collateral" identified above) by the Stark County Sheriff's Department.[1] A true and correct copy of the Stark County Sheriff's Office Evidence and Inventory Receipt

---

[1] The Stark County Sheriff's Department Evidence and Inventory Receipt (**Exhibit H**) identifies seventeen (17) vehicles as being recovered on March 15, 2024. One additional vehicle was recovered which had the VIN number removed but the license plate matched a prior record from the NDDOT and was later identified as a 2000 Midland MFG Dump Trailer, VIN# 2MFB2S4D3YR001148 (*i.e.*, #17, Note 8 of the Titled Vehicle Collateral).

dated March 15, 2024 is attached as **Exhibit H** and terms of the same incorporated herein by reference.

12.     The Recovered Vehicle Collateral was taken by US Recovery Services to Pifer's Auction located in Steele, North Dakota. According to Pifer's Auction, one truck appeared to have been tipped/rolled, and 3 out of the 4 trucks lack sufficient motor parts to be operational and have been stripped of major parts and accessories. Many of the trailers are missing tires and therefore are unmovable. True and correct copies of Picture Reports of the Recovered Vehicle Collateral taken on March 19, 2024 are attached as **Exhibit I** and terms of the same incorporated herein by reference.

13.     The Recovered Vehicle Collateral was scheduled for auction on April 23, 2024 but the auction was halted as a result of the Debtor's filing of this Subchapter V case early that same morning. True and correct copies of the Pifer's Auction listings for sixteen (16) of the eighteen (18) Recovered Vehicle Collateral are attached as **Exhibit J** and terms of the same incorporated herein by reference.

14.     Prior to the auction, the Bank had the Recovered Vehicle Collateral re-titled into its name so it could be sold at the Pifer's auction. True and correct copies of the new Certificates of Title for the Recovered Vehicle Collateral are attached as **Exhibit K** and terms of the same incorporated herein by reference.

15.     Due to the severely damaged condition of the Recovered Vehicle Collateral, Pifer's Auction estimated a sum of less than $150,000 would be generated from the sale after deduction of the costs and expenses of sale.

16.     The Debtor's principal, Robert Fettig, is currently the defendant in two criminal cases in Stark County District Court, Case No. 45-2024-CR-157 and Case No. 45-2024-CR-

8

277 (collectively, the "Criminal Cases") for defrauding secured creditors – theft of property pursuant to N.D.C.C. § § 12.1-23-02, 12.1-23-05, and 12.1-23-08. True and correct copies of the dockets for the Criminal Cases and the Criminal Complaints are attached as **Exhibit L** and terms of the same incorporated herein by reference.

## LAW AND ARGUMENT

### A.  For Cause – Section 361(d)(1)

17.    A creditor is entitled to relief from the automatic stay under Section 362(a)(1) "for cause." 11 U.S.C. § 362(d)(1). Except for lack of adequate protection, the Bankruptcy Code does not define "for cause." Instead, case law instructs that relief may be granted "for cause" on a case-by-case basis, including where the debtor has acted in bad faith. *State Bank of Benkleman v. Stute Co., Inc. (In re Stute Co, Inc.)*, No. 96-1789, 1996 WL 719928 (8th Cir. 1996). The movant must make an initial showing of cause, and then the burden shifts to the party opposing the motion to prove that it is entitled to the continued protections of the automatic stay. *See Barber v. Arnott (In re Arnott)*, 512 B.R. 744, 753 (Bankr. S.D.N.Y. 2014).

18.    A debtor's bad faith is considered based on the totality of the circumstances, including:

   a.    The debtor has few or no unsecured creditors;

   b.    There has been a previous bankruptcy petition by the debtor or a related entity;

   c.    The pre-petition conduct of the debtor has been improper;

   d.    The petition effectively allows the debtor to evade court orders;

   e.    There are few debts to non-moving creditors;

   f.    The petition was filed on the eve of foreclosure;

   g.    The foreclosed property is the sole or major asset of the debtor;

      h.      The debtor has no ongoing business or employees;

      i.      There is no possibility of reorganization;

      j.      The debtor's income is not sufficient to operate;

      k.      There was no pressure from non-moving creditors;

      l.      Reorganization essentially involves the resolution of a two party dispute;

      m.      A corporate debtor was formed and received title to its major assets immediately before the petition; and

      n.      The debtor filed solely to create the automatic stay.

*In re KRE, LLC*, No. 11-30227, 2011 WL 3296690, at *4 (Bankr. D.N.D. Aug. 1, 2011) (citation omitted); *cf. also Froman v. Fein (In re Froman)*, 566 B.R. 641, 653 (S.D.N.Y. 2017) (a debtor's bad faith in filing for bankruptcy relief may constitute "cause" for lifting automatic stay, and same test for "bad faith" applies regardless of whether such bad faith is raised as "cause" for modifying stay or as "cause" for converting or dismissing Chapter 13 case).

      19.      In this Subchapter V case, "cause" exists for lifting the automatic stay under Section 362(d)(1) in that the Debtor filed its petition in bad faith. With respect to the factors demonstrating bad faith:

      a.      The prepetition conduct of the Debtor and the Debtor's principal (Robert Fettig) was improper in refusing to turn over the Titled Vehicle Collateral in the face of three (3) separate orders requiring the turnover. *See* **Exhibit D** (Prejudgment Seizure Order); and **Exhibit E** (Contempt Order); and **Exhibit F** (Replevin Judgment).

b.    The prepetition conduct of Debtor's principal (Robert Fettig) was also criminal with respect to at least two secured creditors and possibly more[2] under North Dakota law for defrauding secured creditors – theft of property pursuant to N.D.C.C. § § 12.1-23-02, 12.1-23-05, and 12.1-23-08. *See* **Exhibit L** (Criminal Cases).

c.    Debtor's principal Robert Fettig likely perjured himself under oath by testifying at the contempt hearing on November 14, 2023 that he had no idea where the Titled Vehicle Collateral and he was not using it in the Debtor's business operations. Three (3) pieces of the Titled Vehicle Collateral remain missing, and the Debtor and its principal Robert Fettig have refused to say where the missing three (3) pieces of equipment are currently located.

d.    The filing of the Debtor's bankruptcy petition effectively would allow the Debtor to continue to evade the Stark County District Court's orders requiring the turnover of the Titled Vehicle Collateral.

e.    The filing of the Debtor's bankruptcy petition was filed on April 23, 2024 (the morning of the Pifer's auction sale of the Recovered Titled

---

[2] *See e.g., Regions Bank v. Stark Energy, Inc. and Robert Fettig*, Stark County District Court, Case No. 45-2023-CV-916; Order to Show Cause dated February 27, 2024 requiring the Defendants to appear on April 1, 2024 to show cause "why Defendants should not be held in contempt for failing to comply with this Court's Order for Immediate Possession entered January 11, 2024 (Doc. No. 45) and Order for Default Judgment entered January 26, 2024 (Doc. No. 54) by actively interfering with the Bank's efforts and ability to recover possession of the 2012 CZM EK125 Drilling Rig (serial no. SAV003)[.]"

Collateral) and thus is the textbook definition of filing on the "eve of foreclosure."

f.     Although the Debtor has not filed any schedules, etc. it is believed the Titled Vehicle Collateral are the major assets of the Debtor aside from a building that is located in Stark County, North Dakota.

g.     On information and belief, the Debtor has no ongoing business as the Recovered Vehicle Collateral has been hidden since October 2023 to prevent the Bank from repossessing it. Additionally, on information and belief the Debtor does not have any employees aside from Robert Fettig as shown by the various collection judgments against him from former employees that were not paid their wages by Debtor.[3]

h.     It does not appear that there is any possibility of reorganization or that the Debtor's income will be sufficient to operate in that the Recovered Vehicle Collateral and parts and tires were removed and sold thus making most of the equipment unusable without significant repair expenses.

---

[3] The following judgments entered against Debtor in Stark County District Court appear to be wage claims of former employees:

a.  Garrett Duane McKenzie, Case No. 45-2021-SC-00045 ($10,032.60) entered on 11/19/21;

b.  Daniel J. Paluck, Case No. 45-2023-SC-00028 ($1,050.24) entered on 4/5/23;

c.  Todd Griffiths, 45-2023-CV-0021 ($11,093.48) entered on 5/12/23;

d.  Dylan Boykin, Case No. 45-2023-CV-00648 ($21,998.75) entered on 1/4/24;

e.  Quinton Jenkins, Case No. 45-2023-CV-00648 ($19,884.63) entered on 1/4/24;

f.  Valentin Mascorro, Case No. 2023-CV-00648 ($11,471.31) entered on 1/4/24

i.      This reorganization essentially will involve a two-party dispute between the Bank and the Debtor because Midland States Bank (which is the victim in Stark County District Court, Criminal Case No. 45-2024-CR-157) has already sold its collateral that was recovered by the Stark County Sheriff's Department on March 15, 2024 and thus will only have an unsecured claim at this point.

For all of these reasons set forth above, Debtor's bad faith warrants this Court's lifting of the automatic stay with respect to the Recovered Vehicle Collateral.

20.     Pursuant to 11 U.S.C. 362(d)(1), cause exists to grant the Bank relief from the automatic stay in that the Debtor has failed to provide adequate protection and it is unknown if the three (3) pieces of Titled Vehicle Collateral that remain missing are insured.

**B.  Section 362(d)(2) – No Equity and Not Necessary to an Effective Reorganization.**

21.     A creditor is entitled to relief from the automatic stay under Section 362(d)(2) when: (1) the debtor has no equity in the property; and (2) the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2); *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375 (1988); *Anderson v. Farm Credit Bank of St. Paul (In re Anderson)*, 913 F.2d 530, 532 (8th Cir. 1990). "The test for determining equity under the first part of § 362(d)(2) involves a comparison between the total liens against the property and the property's current value." *Bowman v. Bond (In re Bowman)*, 253 B.R. 233, 238 (B.A.P. 2000) (internal citations omitted). A lack of equity is synonymous with the creditor being undersecured. *United Savings Ass'n of Tex.*, 484 U.S. at 375. The burden of proof rests on the movant to prove that no equity exists. 11 U.S.C. § 362(g)(1); *United Savings Ass'n of Tex.*, 484 U.S. at 375.

13

22.    There is no colorable dispute regarding the amount of liens on the Recovered Vehicle Collateral. Pursuant to the Replevin Judgment, the Bank is owed the sum of $427,608.87 as of December 29, 2024 and all of the Notes comprising the Replevin Judgment (**Exhibits A-1 through A-9**) were cross-collateralized through the Security Agreements (**Exhibits B-1 through B-9**). Interest accrues at the post-judgment statutory rate of 11.5% per annum. When the costs of liquidating the Recovered Vehicle Collateral are considered and the estimate from Pifer's Auction of what the sale would generate considering the severely damaged condition, the Debtor clearly lacks equity in the Recovered Vehicle Collateral.

23.    Once a creditor establishes that a debtor has no equity in property, the burden falls on the debtor to prove that, although no equity exists, the property is necessary to an effective reorganization. 11 U.S.C. § 362(g)(2); *United States Ass'n of Tex.*, 484 U.S. at 375. "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means . . . that there must be a reasonable possibility of a successful reorganization within a reasonable time." *United States Ass'n of Tex.*, 484 U.S. at 376 (internal citations omitted). Specifically, within the Eighth Circuit, a debtor must show that its plan is feasible and likely confirmable. *In re Bowman*, 253 B.R. at 238.

24.    The Eighth Circuit "feasibility test" contemplates whether the provisions of the plan can actually be performed. *Id.* at 239. "The test is whether things which are to be done after confirmation can be done as a practical matter under the facts." *Id.* "Pie-in-the-sky" notions of what the future may bring are insufficient. *In re Foertsch*, 167 B.R. 555, 568 (Bankr.

14

D.N.D.1994). Visionary promises, sincerity, honesty, and willingness do not make a plan feasible. *In re Bowman*, 253 B.R. at 239.

25.    Here, Debtor has not yet put forth a plan; so the Bank cannot respond to whether the plan would be feasible, or whether the Recovered Vehicle Collateral would be truly necessary to the plan. However, the current severely damaged condition of the Recovered Vehicle Collateral indicates that reorganization is not feasible without a large cash infusion.

26.    If the Debtor were able to obtain possession of the Recovered Vehicle Equipment, the Bank has a strong concern that it would continue depreciating in value, especially considering the current damaged condition and that it appears that parts have been sold. The Bank is also concerned that the Debtor and its principal Robert Fettig would again hide the Recovered Vehicle Collateral and/or continue selling it for parts in the event the Debtor was allowed to recover possession and this Subchapter V case were later dismissed. Additionally, the amount due to the Bank is increasing as a consequence of the accrual of post-petition interest (currently 11.5% per annum based on the North Dakota post-judgment interest rate) and the necessity of the Bank's incurring of attorneys' fees and costs in collecting on the debt it is owed. The Debtor has failed to offer adequate protection to the Bank for the erosion of its position.

27.    The Bank requests that pursuant to Bankruptcy Rule 4001(a)(3) any order entered granting the Bank's relief from the stay be effective immediately.

Dated:  May 1, 2024.                          **VOGEL LAW FIRM**

                                              */S/CAREN W. STANLEY*
                                BY:  Caren W. Stanley (#06100)
                                     cstanley@vogellaw.com
                                     218 NP Avenue,
                                     PO Box 1389
                                     Fargo, ND  58107-1389
                                     Telephone:  701.237.6983
                                     ATTORNEYS FOR GATE CITY BANK

## VERIFICATION

I, Kevin Warner, Vice President of Gate City Bank, based on my personal information

and belief, declare under penalty of perjury that the facts set forth in the preceding Motion are

true and correct, according to the best of my knowledge, information and belief.

Dated: _May 1, 2024_                    Signed: _____
                                                Kevin Warner

# <u>EXHIBIT A-1 THROUGH A-9</u>

## (Notes)



**EXHIBIT A-1**

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $40,000.00 | 02-19-2018 | 03-01-2024 | ███8942 | CLTR | | ••• | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Stark Energy, Inc.
PO Box 748
Dickinson, ND 58602

**Lender:** Gate City Bank
Bismarck
304 East Rosser
Bismarck, ND 58502
(701) 355-7620

**Principal Amount: $40,000.00**                  Date of Note: **February 19, 2018**

**PROMISE TO PAY.** Stark Energy, Inc. ("Borrower") promises to pay to Gate City Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Forty Thousand & 00/100 Dollars ($40,000.00), together with interest on the unpaid principal balance from February 19, 2018, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 5.000% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "PREFERRED RATE REDUCTION" section. The interest rate may also change under the terms and conditions of the "INTEREST AFTER DEFAULT" section. Unless waived by Lender, any increase in the interest rate will increase the amounts of Borrower's payments.

**PAYMENT.** Borrower will pay this loan in 72 payments of $646.47 each payment. Borrower's first payment is due April 1, 2018, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on March 1, 2024, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs.

**PREFERRED RATE REDUCTION.** The interest rate on this Note includes a preferred rate reduction. Following is a description of the event that would cause the preferred rate reduction to terminate and how the new rate will be determined upon termination of the preferred rate reduction.

Description of Event That Would Cause the Preferred Rate Reduction to Terminate.
Termination of automatic deduction from a Gate City Bank checking account .
How The New Rate Will Be Determined Upon Termination of the Preferred Rate Reduction.
The interest rate of this loan may increase by an additional 1% (100 basis points) added to the current rate at the time of loan closing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

Gate City Bank
P.O. Box 2847, 500 2nd Avenue North
Fargo, ND 58108

Payments must be received consistent with the following payment instructions: To ensure payments are properly credited to your account all loan payments must be accompanied by the account number or payment coupon provided to you by Gate City Bank. Loan payments must be sent to Gate City Bank, P.O. Box 2847, Fargo, ND 58108-2847 or P.O. Box 6000, Fargo, ND 58108-6000. Loan payments may also be made in person at any Gate City Bank office. Hours of operation for receiving loan payments are 9:00 a.m. to 4:00 p.m. Monday thru Friday, except bank holidays, and during Saturday business hours at any Gate City Bank office that is open. Payments established by automatic withdrawal from a deposit account will be credited the same day as the withdrawal. All other payments received will be credited as of the next loan operations business day or as otherwise permitted by law. . Lender may modify these payment instructions, including changing the address for payments, by providing updated payment instructions to Borrower in writing. If a payment is made consistent with Lender's payment instructions but received after 4:00 PM Central Standard Time on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Gate City Bank, P.O. Box 2847, 500 2nd Avenue North Fargo, ND 58108.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **10.000% of the regularly scheduled payment or $10.00**, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the

Loan No: ███8942

**PROMISSORY NOTE**
**(Continued)**

Page 2

same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**POWER OF ATTORNEY.** Any power of attorney granted by Borrower to Lender creates no obligation to Gate City Bank to apply for registration, pay fees or obtain licensing or titling to the motor vehicle.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Burleigh County, State of North Dakota.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by 2013 Dragon ESP LTD 200 BBL (VIN 1UNST5343DS128172). This Note shall not be secured by any previously granted collateral if doing so would cause this loan or obligation to be subject to the limits on consumer credit extended to service members, their spouse and their dependents, as provided in 10 U.S.C. 987 and its implementing regulations.

**SECURITY INTEREST.** I authorize Lender's security interest to be reflected as a lien on the Certificate of Title for the Property.

**ADDITIONAL OBLIGATION.** If I do not pay any required sales tax; registration, transfer, and/or licensing fees Lender may, but is not obligated to, pay such taxes and/or fees and they will be immediately due from me to Lender and will be added to my indebtedness to Lender.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

BORROWER:

STARK ENERGY, INC.

By: _____     By: _____
Authorized Signer for Stark Energy, Inc.     Authorized Signer for Stark Energy, Inc.

 **Gate City Bank**


EXHIBIT
**A-2**

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $37,439.30 | 11-16-2018 | 11-01-2022 | 5221 | CLCM | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Stark Energy, Inc.
PO Box 748
Dickinson, ND 58602

**Lender:**  Gate City Bank
Bismarck
304 East Rosser
Bismarck, ND 58502
(701) 355-7620

---

**Principal Amount: $37,439.30**                                    **Date of Note: November 16, 2018**

**PROMISE TO PAY.** Stark Energy, Inc. ("Borrower") promises to pay to Gate City Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Thirty-seven Thousand Four Hundred Thirty-nine & 30/100 Dollars ($37,439.30), together with interest on the unpaid principal balance from November 16, 2018, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 5.490% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "PREFERRED RATE REDUCTION" section. The interest rate may also change under the terms and conditions of the "INTEREST AFTER DEFAULT" section. Whenever increases occur in the interest rate, Lender, at Lender's option, may change one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PAYMENT.** Borrower will pay this loan in 48 payments of $869.77 each payment. Borrower's first payment is due December 1, 2018, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on November 1, 2022, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any unpaid collection costs.

**PREFERRED RATE REDUCTION.** The interest rate on this Note includes a preferred rate reduction. Following is a description of the event that would cause the preferred rate reduction to terminate and how the new rate will be determined upon termination of the preferred rate reduction.

Description of Event That Would Cause the Preferred Rate Reduction to Terminate.
Termination of automatic deduction from a Gate City Bank checking account .
How The New Rate Will Be Determined Upon Termination of the Preferred Rate Reduction.
The interest rate of this loan may increase by an additional 1% (100 basis points) added to the current rate at the time of loan closing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

Gate City Bank
P.O. Box 2847, 500 2nd Avenue North
Fargo, ND 58108

Payments must be received consistent with the following payment instructions: To ensure payments are properly credited to your account all loan payments must be accompanied by the account number or payment coupon provided to you by Gate City Bank. Loan payments may be sent to Gate City Bank, P.O. Box 2847, Fargo, ND 58108-2847 or P.O. Box 6000, Fargo, ND 58108-6000. Loan payments may also be made in person at any Gate City Bank office. Hours of operation for receiving loan payments are 9:00 a.m. to 4:00 p.m. Monday thru Friday, except bank holidays, and during Saturday business hours at any Gate City Bank office that is open. Payments established by automatic withdrawal from a deposit account will be credited the same day as the withdrawal. All other payments received will be credited as of the next loan operations business day or as otherwise permitted by law. . Lender may modify these payment instructions, including changing the address for payments, by providing updated payment instructions to Borrower in writing. If a payment is made consistent with Lender's payment instructions but received after 4:00 PM Central Standard Time on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Gate City Bank, Bismarck, 304 East Rosser, Bismarck, ND 58502.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 10.000% of the regularly scheduled payment or $10.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

Loan No: ____5221

## PROMISSORY NOTE
### (Continued)

Page 2

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**POWER OF ATTORNEY.** Any power of attorney granted by Borrower to Lender creates no obligation to Gate City Bank to apply for registration, pay fees or obtain licensing or titling to the motor vehicle.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Burleigh County, State of North Dakota.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by 2007 KENWORTH T600/800/2000/W900 T600 (121" BBC) (VIN 1XKDP40XO7R197151).

**SECURITY INTEREST.** I authorize Lender's security interest to be reflected as a lien on a Certificate of Title for the Property.

**ADDITIONAL OBLIGATIONS.** If I do not pay any required sales tax, registration, transfer, and/or licensing fees Lender may, but is not obligated to, pay such taxes and/or fees and they will be immediately due from me to Lender and will be added to my indebtedness to Lender.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**STARK ENERGY, INC.**

By: _____
    Authorized Signer for Stark Energy, Inc.

By: _____
    Authorized Signer for Stark Energy, Inc.

LaserPro, Ver. 18.2.20.019 Copr. Finastra USA Corporation 1997, 2018. All Rights Reserved.   ND  C:\CFI\LPL\N5.FC  TR-2182\B  PR-35


**Gate City Bank**

EXHIBIT
**A-3**

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $135,000.00 | 11-26-2018 | 11-26-2026 | 6855 | CLTR | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Stark Energy, Inc.
PO Box 748
Dickinson, ND 58602

**Lender:** Gate City Bank
Bismarck
304 East Rosser
Bismarck, ND 58502
(701) 355-7620

---

**Principal Amount: $135,000.00**                              Date of Note: **November 26, 2018**

**PROMISE TO PAY.** Stark Energy, Inc. ("Borrower") promises to pay to Gate City Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Thirty-five Thousand & 00/100 Dollars ($135,000.00), together with interest on the unpaid principal balance from November 26, 2018, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 6.500% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "PREFERRED RATE REDUCTION" section. The interest rate may also change under the terms and conditions of the "INTEREST AFTER DEFAULT" section. Unless waived by Lender, any increase in the interest rate will increase the amounts of Borrower's payments.

**PAYMENT.** Borrower will pay this loan in 96 payments of $1,812.94 each payment. Borrower's first payment is due December 26, 2018, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on November 26, 2026, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any unpaid collection costs.

**PREFERRED RATE REDUCTION.** The interest rate on this Note includes a preferred rate reduction. Following is a description of the event that would cause the preferred rate reduction to terminate and how the new rate will be determined upon termination of the preferred rate reduction.

Description of Event That Would Cause the Preferred Rate Reduction to Terminate.
Termination of automatic deduction from a Gate City Bank checking account .
How The New Rate Will Be Determined Upon Termination of the Preferred Rate Reduction.
The interest rate of this loan may increase by an additional 1% (100 basis points) added to the current rate at the time of loan closing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

Gate City Bank
P.O. Box 2847, 500 2nd Avenue North
Fargo, ND 58108

Payments must be received consistent with the following payment instructions: To ensure payments are properly credited to your account all loan payments must be accompanied by the account number or payment coupon provided to you by Gate City Bank. Loan payments must be sent to Gate City Bank, P.O. Box 2847, Fargo, ND 58108-2847 or P.O. Box 6000, Fargo, ND 58108-6000. Loan payments may also be made in person at any Gate City Bank office. Hours of operation for receiving loan payments are 9:00 a.m. to 4:00 p.m. Monday thru Friday, except bank holidays, and during Saturday business hours at any Gate City Bank office that is open. Payments established by automatic withdrawal from a deposit account will be credited the same day as the withdrawal. All other payments received will be credited as of the next loan operations business day or as otherwise permitted by law. . Lender may modify these payment instructions, including changing the address for payments, by providing updated payment instructions to Borrower in writing. If a payment is made consistent with Lender's payment instructions but received after 4:00 PM Central Standard Time on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Gate City Bank, P.O. Box 2847, 500 2nd Avenue North Fargo, ND 58108.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 10.000% of the regularly scheduled payment or $10.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to

## PROMISSORY NOTE
### (Continued)

Loan No: ████6855

Page 2

Borrower demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**POWER OF ATTORNEY.** Any power of attorney granted by Borrower to Lender creates no obligation to Gate City Bank to apply for registration, pay fees or obtain licensing or titling to the motor vehicle.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Burleigh County, State of North Dakota.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by 2013 Dragon 200BBL Aluminum Tank Trailer (Serial Number 1UNST5341DS128154), 2013 Dragon 200BBL Aluminum Tank Trailer (Serial Number 1UNST5340DS128162), and 2014 Dragon 200BBL Aluminum Tank Trailer (Serial Number 1UNST5340ES128552).

This Note shall not be secured by any previously granted collateral if doing so would cause this loan or obligation to be subject to the limits on consumer credit extended to service members, their spouse and their dependents, as provided in 10 U.S.C. 987 and its implementing regulations.

**SECURITY INTEREST.** I authorize Lender's security interest to be reflected as a lien on the Certificate of Title for the Property.

**ADDITIONAL OBLIGATION.** If I do not pay any required sales tax, registration, transfer, and/or licensing fees Lender may, but is not obligated to, pay such taxes and/or fees and they will be immediately due from me to Lender and will be added to my indebtedness to Lender.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

STARK ENERGY, INC.

By: _____
Authorized Signer for Stark Energy, Inc.

By: _____
Authorized Signer for Stark Energy, Inc.

LaserPro, Ver. 18.3.20.019  Copr. Finastra USA Corporation 1997, 2018.  All Rights Reserved  - ND  C:\CFI\PL\D20.FC  TR-219534  PR-58

⊙ **Gate City Bank**

EXHIBIT
**A-4**

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $76,639.30 | 12-31-2018 | 01-01-2023 | ▮3145 | CLCM | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Stark Energy, Inc.
PO Box 748
Dickinson, ND 58602

**Lender:**  Gate City Bank
Bismarck
304 East Rosser
Bismarck, ND  58502
(701) 355-7020

**Principal Amount: $76,639.30**  **Date of Note:  December 31, 2018**

**PROMISE TO PAY.**  Stark Energy, Inc. ("Borrower") promises to pay to Gate City Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Seventy-six Thousand Six Hundred Thirty-nine & 30/100 Dollars ($76,639.30), together with interest on the unpaid principal balance from December 31, 2018, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 3.690% per annum based on a year of 360 days, until paid in full.  The interest rate may change under the terms and conditions of the "PREFERRED RATE REDUCTION" section.  The interest rate may also change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.  Whenever increases occur in the interest rate, Lender, at Lender's option, may do one or more of the following:  (A)  increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B)  increase Borrower's payments to cover accruing interest, (C)  increase the number of Borrower's payments, and (D)  continue Borrower's payments at the same amount and increase Borrower's final payment.

**PAYMENT.**  Borrower will pay this loan in 48 payments of $1,721.62 each payment.  Borrower's first payment is due February 1, 2019, and all subsequent payments are due on the same day of each month after that.  Borrower's final payment will be due on January 1, 2023, and will be for all principal and all accrued interest not yet paid.  Payments include principal and interest.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any unpaid collection costs.

**PREFERRED RATE REDUCTION.**  The interest rate on this Note includes a preferred rate reduction.  Following is a description of the event that would cause the preferred rate reduction to terminate and how the new rate will be determined upon termination of the preferred rate reduction.

Description of Event That Would Cause the Preferred Rate Reduction to Terminate.
Termination of automatic deduction from a Gate City Bank checking account .
How The New Rate Will Be Determined Upon Termination of the Preferred Rate Reduction.
The interest rate of this loan may increase by an additional 1% (100 basis points) added to the current rate at the time of loan closing.

**INTEREST CALCULATION METHOD.**  Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.**  All payments must be made in U.S. dollars and must be received by Lender at:

Gate City Bank
P.O. Box 2847, 500 2nd Avenue North
Fargo, ND 58108

Payments must be received consistent with the following payment instructions: To ensure payments are properly credited to your account all loan payments must be accompanied by the account number or payment coupon provided to you by Gate City Bank.  Loan payments must be sent to Gate City Bank, P.O. Box 2847, Fargo, ND 58108-2847 or P.O. Box 6000, Fargo, ND 58108-6000.  Loan payments may also be made in person at any Gate City Bank office.  Hours of operation for receiving loan payments are 9:00 a.m. to 4:00 p.m. Monday thru Friday, except bank holidays, and during Saturday business hours at any Gate City Bank office that is open.  Payments established by automatic withdrawal from a deposit account will be credited the same day as the withdrawal.  All other payments received will be credited as of the next loan operations business day or as otherwise permitted by law.  . Lender may modify these payment instructions, including changing the address for payments, by providing updated payment instructions to Borrower in writing.  If a payment is made consistent with Lender's payment instructions but received after 4:00 PM Central Standard Time on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT.**  Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.  Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule.  Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  Gate City Bank, Bismarck, 304 East Rosser, Bismarck, ND  58502.

**LATE CHARGE.**  If a payment is 10 days or more late, Borrower will be charged 10.000% of the regularly scheduled payment or $10.00, whichever is less.

**INTEREST AFTER DEFAULT.**  Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.**  Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.**  Borrower fails to make any payment when due under this Note.

**Other Defaults.**  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.**  The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan.  This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change in Ownership.**  Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.**  A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.**  Lender in good faith believes itself insecure.

| Loan No: ███ 3145 | PROMISSORY NOTE<br>(Continued) | Page 2 |
|---|---|---|

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**POWER OF ATTORNEY.** Any power of attorney granted by Borrower to Lender creates no obligation to Gate City Bank to apply for registration, pay fees or obtain licensing or titling to the motor vehicle.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Burleigh County, State of North Dakota.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by 2012 KENWORTH T660/700/800/W900 W900B (VIN 1XKWP4TX8CJ335970).

**SECURITY INTEREST.** I authorize Lender's security interest to be reflected as a lien on a Certificate of Title for the Property.

**ADDITIONAL OBLIGATIONS.** If I do not pay any required sales tax; registration, transfer, and/or licensing fees Lender may, but is not obligated to, pay such taxes and/or fees and they will be immediately due from me to Lender and will be added to my indebtedness to Lender.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

STARK ENERGY, INC.

By: _____
Authorized Signer for Stark Energy, Inc.

By: _____
Authorized Signer for Stark Energy, Inc.

LaserPro, Ver. 19.4.10.002  Copr. Finastra USA Corporation 1997, 2019.  All Rights Reserved.  - ND  C:\CFI\LPL\D20.FC  TR-720081  PR-29

**⊙ Gate City Bank**

EXHIBIT
**A-5**

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $150,144.65 | 12-27-2019 | 01-01-2026 | ▓▓▓1820 | CLTR | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Stark Energy, Inc.
PO Box 748
Dickinson, ND 58602

**Lender:** Gate City Bank
Bismarck
304 East Rosser
Bismarck, ND 58502
(701) 355-7620

---

**Principal Amount: $150,144.65**                    **Date of Note: December 27, 2019**

**PROMISE TO PAY.** Stark Energy, Inc. ("Borrower") promises to pay to Gate City Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Fifty Thousand One Hundred Forty-four & 65/100 Dollars ($150,144.65), together with interest on the unpaid principal balance from December 27, 2019, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 5.170% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "PREFERRED RATE REDUCTION" section. The interest rate may also change under the terms and conditions of the "INTEREST AFTER DEFAULT" section. Unless waived by Lender, any increase in the interest rate will increase the amounts of Borrower's payments.

**PAYMENT.** Borrower will pay this loan in 72 payments of $2,436.41 each payment. Borrower's first payment is due February 1, 2020, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on January 1, 2026, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any unpaid collection costs.

**PREFERRED RATE REDUCTION.** The interest rate on this Note includes a preferred rate reduction. Following is a description of the event that would cause the preferred rate reduction to terminate and how the new rate will be determined upon termination of the preferred rate reduction.

Description of Event That Would Cause the Preferred Rate Reduction to Terminate.
Termination of automatic deduction from a Gate City Bank checking account .
How The New Rate Will Be Determined Upon Termination of the Preferred Rate Reduction.
The interest rate of this loan may increase by an additional 1% (100 basis points) added to the current rate at the time of loan closing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding (but not including February 29 in leap years). All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

Gate City Bank
P.O. Box 2847, 500 2nd Avenue North
Fargo, ND 58108

Payments must be received consistent with the following payment instructions: To ensure payments are properly credited to your account all loan payments must be accompanied by the account number or payment coupon provided to you by Gate City Bank. Loan payments must be sent to Gate City Bank, P.O. Box 2847, Fargo, ND 58108-2847 or P.O. Box 6000, Fargo, ND 58108-6000. Loan payments may also be made in person at any Gate City Bank office. Hours of operation for receiving loan payments are 9:00 a.m. to 5:00 p.m. Monday thru Friday, except bank holidays, and during Saturday business hours at any Gate City Bank office that is open. Payments established by automatic withdrawal from a deposit account will be credited the same day as the withdrawal. All other payments received will be credited as of the next loan operations business day or as otherwise permitted by law. . Lender may modify these payment instructions, including changing the address for payments, by providing updated payment instructions to Borrower in writing. If a payment is made consistent with Lender's payment instructions but received after 4:00 PM Central Standard Time on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Gate City Bank, P.O. Box 2847, 500 2nd Avenue North Fargo, ND 58108.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 10.000% of the regularly scheduled payment or $10.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the

**PROMISSORY NOTE**
**(Continued)**

Loan No: [redacted]1820                                                                                        Page 2

same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**POWER OF ATTORNEY.** Any power of attorney granted by Borrower to Lender creates no obligation to Gate City Bank to apply for registration, pay fees or obtain licensing or titling to the motor vehicle.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Burleigh County, State of North Dakota.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by 2014 Kenworth W900 (VIN 1XKWD49X1EJ413380), 2013 Dragon 220 BBL Tank Trailer (Serial Number 1UNST5348DS128118), 2007 Reitnauer Trailer (Serial Number 1RNF48A247R019280).

**SECURITY INTEREST.** I authorize Lender's security interest to be reflected as a lien on the Certificate of Title for the Property.

**ADDITIONAL OBLIGATION.** If I do not pay any required sales tax, registration, transfer, and/or licensing fees Lender may, but is not obligated to, pay such taxes and/or fees and they will be immediately due from me to Lender and will be added to my indebtedness to Lender.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

BORROWER:

STARK ENERGY, INC.

By: _____
Robert G Fettig, Owner of Stark Energy, Inc.


**Gate City Bank**

EXHIBIT
**A-6**

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $74,729.97 | 01-16-2020 | 02-01-2025 | ▮▮▮ 8366 | CLCM | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Stark Energy, Inc.
PO Box 748
Dickinson, ND  58602

**Lender:**  Gate City Bank
Bismarck
304 East Rosser
Bismarck, ND  58502
(701) 355-7620

---

**Principal Amount: $74,729.97**                    **Date of Note:  January 16, 2020**

**PROMISE TO PAY.**  Stark Energy, Inc. ("Borrower") promises to pay to Gate City Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Seventy-four Thousand Seven Hundred Twenty-nine & 97/100 Dollars ($74,729.97), together with interest on the unpaid principal balance from January 16, 2020, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.690% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "PREFERRED RATE REDUCTION" section. The interest rate may also change under the terms and conditions of the "INTEREST AFTER DEFAULT" section. Whenever increases occur in the interest rate, Lender, at Lender's option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PAYMENT.**  Borrower will pay this loan in 60 payments of $1,404.54 each payment. Borrower's first payment is due March 1, 2020, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on February 1, 2025, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any unpaid collection costs.

**PREFERRED RATE REDUCTION.**  The interest rate on this Note includes a preferred rate reduction. Following is a description of the event that would cause the preferred rate reduction to terminate and how the new rate will be determined upon termination of the preferred rate reduction.

Description of Event That Would Cause the Preferred Rate Reduction to Terminate.
Termination of automatic deduction from a Gate City Bank checking account .
How The New Rate Will Be Determined Upon Termination of the Preferred Rate Reduction.
The interest rate of this loan may increase by an additional 1% (100 basis points) added to the current rate at the time of loan closing.

**INTEREST CALCULATION METHOD.**  Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding (but not including February 29 in leap years). All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.**  All payments must be made in U.S. dollars and must be received by Lender at:

Gate City Bank
P.O. Box 2847, 500 2nd Avenue North
Fargo, ND  58108

Payments must be received consistent with the following payment instructions: To ensure payments are properly credited to your account all loan payments must be accompanied by the account number or payment coupon provided to you by Gate City Bank. Loan payments must be sent to Gate City Bank, P.O. Box 2847, Fargo, ND 58108-2847 or P.O. Box 6000, Fargo, ND 58108-6000. Loan payments may also be made in person at any Gate City Bank office. Hours of operation for receiving loan payments are 9:00 a.m. to 5:00 p.m. Monday thru Friday, except bank holidays, and during Saturday business hours at any Gate City Bank office that is open.  Payments established by automatic withdrawal from a deposit account will be credited the same day as the withdrawal. All other payments received will be credited as of the next loan operations business day or as otherwise permitted by law. . Lender may modify these payment instructions, including changing the address for payments, by providing updated payment instructions to Borrower in writing. If a payment is made consistent with Lender's payment instructions but received after 4:00 PM Central Standard Time on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT.**  Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.  Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Gate City Bank, Bismarck, 304 East Rosser, Bismarck, ND  58502.

**LATE CHARGE.**  If a payment is 10 days or more late, Borrower will be charged 10.000% of the regularly scheduled payment or $10.00, whichever is less.

**INTEREST AFTER DEFAULT.**  Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.**  Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.**  Borrower fails to make any payment when due under this Note.

**Other Defaults.**  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.**  The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.**  Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.**  A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.**  Lender in good faith believes itself insecure.

**PROMISSORY NOTE
(Continued)**

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**POWER OF ATTORNEY.** Any power of attorney granted by Borrower to Lender creates no obligation to Gate City Bank to apply for registration, pay fees or obtain licensing or titling to the motor vehicle.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Burleigh County, State of North Dakota.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by 2014 KENWORTH T660/680/700/800/W900 T800 (121" BBC) (VIN 1NKDX4TX3EJ403810).

**SECURITY INTEREST.** I authorize Lender's security interest to be reflected as a lien on a Certificate of Title for the Property.

**ADDITIONAL OBLIGATIONS.** If I do not pay any required sales tax; registration, transfer, and/or licensing fees Lender may, but is not obligated to, pay such taxes and/or fees and they will be immediately due from me to Lender and will be added to my indebtedness to Lender.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

BORROWER:

STARK ENERGY, INC.

By: _____
Authorized Signer for Stark Energy, Inc.

⊙ **Gate City Bank**

EXHIBIT
**A-7**

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $100,000.00 | 03-04-2020 | 03-01-2025 | ███ 6648 | CLTR | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Stark Energy, Inc.
PO Box 748
Dickinson, ND  58602

**Lender:**  Gate City Bank
Bismarck
304 East Rosser
Bismarck, ND  58502
(701) 355-7620

**Principal Amount: $100,000.00**                                    **Date of Note: March 4, 2020**

PROMISE TO PAY.  Stark Energy, Inc. ("Borrower") promises to pay to Gate City Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Thousand & 00/100 Dollars ($100,000.00), together with interest on the unpaid principal balance from March 4, 2020, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 5.000% per annum based on a year of 360 days, until paid in full.  The interest rate may change under the terms and conditions of the "PREFERRED RATE REDUCTION" section.  The interest rate may also change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.  Unless waived by Lender, any increase in the interest rate will increase the amounts of Borrower's payments.

PAYMENT.  Borrower will pay this loan in 60 payments of $1,889.79 each payment.  Borrower's first payment is due April 1, 2020, and all subsequent payments are due on the same day of each month after that.  Borrower's final payment will be due on March 1, 2025, and will be for all principal and all accrued interest not yet paid.  Payments include principal and interest.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any unpaid collection costs.

PREFERRED RATE REDUCTION.  The interest rate on this Note includes a preferred rate reduction.  Following is a description of the event that would cause the preferred rate reduction to terminate and how the new rate will be determined upon termination of the preferred rate reduction.

   Description of Event That Would Cause the Preferred Rate Reduction to Terminate.
   Termination of automatic deduction from a Gate City Bank checking account .
   How The New Rate Will Be Determined Upon Termination of the Preferred Rate Reduction.
   The interest rate of this loan may increase by an additional 1% (100 basis points) added to the current rate at the time of loan closing.

INTEREST CALCULATION METHOD.  Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding (but not including February 29 in leap years).  All interest payable under this Note is computed using this method.

RECEIPT OF PAYMENTS.  All payments must be made in U.S. dollars and must be received by Lender at:

   Gate City Bank
   P.O. Box 2847, 500 2nd Avenue North
   Fargo, ND  58108

Payments must be received consistent with the following payment instructions: To ensure payments are properly credited to your account all loan payments must be accompanied by the account number or payment coupon provided to you by Gate City Bank.  Loan payments must be sent to Gate City Bank, P.O. Box 2847, Fargo, ND 58108-2847 or P.O. Box 6000, Fargo, ND 58108-6000.  Loan payments may also be made in person at any Gate City Bank office.  Hours of operation for receiving loan payments are 9:00 a.m. to 5:00 p.m. Monday thru Friday, except bank holidays, and during Saturday business hours at any Gate City Bank office that is open.  Payments established by automatic withdrawal from a deposit account will be credited the same day as the withdrawal.  All other payments received will be credited as of the next loan operations business day or as otherwise permitted by law.  . Lender may modify these payment instructions, including changing the address for payments, by providing updated payment instructions to Borrower in writing.  If a payment is made consistent with Lender's payment instructions but received after 4:00 PM Central Standard Time on a business day, Lender will credit Borrower's payment on the next business day.

PREPAYMENT.  Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.  Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule.  Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  Gate City Bank, P.O. Box 2847, 500 2nd Avenue North Fargo, ND  58108.

LATE CHARGE.  If a payment is 10 days or more late, Borrower will be charged 10.000% of the regularly scheduled payment or $10.00, whichever is less.

INTEREST AFTER DEFAULT.  Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

DEFAULT.  Each of the following shall constitute an event of default ("Event of Default") under this Note:

   **Payment Default.**  Borrower fails to make any payment when due under this Note.

   **Other Defaults.**  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

   **False Statements.**  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

   **Insolvency.**  The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

   **Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan.  This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

   **Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

   **Change In Ownership.**  Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

   **Adverse Change.**  A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

   **Insecurity.**  Lender in good faith believes itself insecure.

   **Cure Provisions.**  If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to

| Loan No: ████6648 | PROMISSORY NOTE<br>(Continued) | Page 2 |

Borrower demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**POWER OF ATTORNEY.** Any power of attorney granted by Borrower to Lender creates no obligation to Gate City Bank to apply for registration, pay fees or obtain licensing or titling to the motor vehicle.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Burleigh County, State of North Dakota.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by 2013 Dragon 200 BBL AL Semi-Trailer (Serial Number 1UNST5340DS128291) and 2014 Dragon 200 BBL AL Semi-Trailer (Serial Number 1UNST5346ES140026).

**SECURITY INTEREST.** I authorize Lender's security interest to be reflected as a lien on the Certificate of Title for the Property.

**ADDITIONAL OBLIGATION.** If I do not pay any required sales tax; registration, transfer, and/or licensing fees Lender may, but is not obligated to, pay such taxes and/or fees and they will be immediately due from me to Lender and will be added to my indebtedness to Lender.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

STARK ENERGY, INC.

By: _____
    Authorized Signer for Stark Energy, Inc.

LaserPro, Ver. 12.4.10.006 Copr. Finastra USA Corporation 1997, 2024. All Rights Reserved. - ND C:\CFI\LPL\D20.FC TR-241403 PR-54


**Gate City Bank**

EXHIBIT
A-8

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $152,000.00 | 05-14-2020 | 06-01-2025 | ▉▉7715 | CLTR | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " * * * * " has been omitted due to text length limitations.

**Borrower:** Stark Energy, Inc.
1860 4th Ave E
Dickinson, ND 58601

**Lender:** Gate City Bank
Bismarck
304 East Rosser
Bismarck, ND 58502
(701) 355-7620

---

**Principal Amount: $152,000.00**          **Date of Note: May 14, 2020**

**PROMISE TO PAY.** Stark Energy, Inc. ("Borrower") promises to pay to Gate City Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Fifty-two Thousand & 00/100 Dollars ($152,000.00), together with interest on the unpaid principal balance from May 14, 2020, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 5.000% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "PREFERRED RATE REDUCTION" section. The interest rate may also change under the terms and conditions of the "INTEREST AFTER DEFAULT" section. Unless waived by Lender, any increase in the interest rate will increase the amounts of Borrower's payments.

**PAYMENT.** Borrower will pay this loan in 60 payments of $2,880.54 each payment. Borrower's first payment is due June 1, 2020, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on June 1, 2025, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any unpaid collection costs.

**PREFERRED RATE REDUCTION.** The interest rate on this Note includes a preferred rate reduction. Following is a description of the event that would cause the preferred rate reduction to terminate and how the new rate will be determined upon termination of the preferred rate reduction.

    **Description of Event That Would Cause the Preferred Rate Reduction to Terminate.**
Termination of automatic deduction from a Gate City Bank checking account.
**How The New Rate Will Be Determined Upon Termination of the Preferred Rate Reduction.**
The interest rate of this loan may increase by an additional 1% (100 basis points) added to the current rate at the time of loan closing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding (but not including February 29 in leap years). All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

    Gate City Bank
    P.O. Box 2847, 500 2nd Avenue North
    Fargo, ND 58108

Payments must be received consistent with the following payment instructions: To ensure payments are properly credited to your account all loan payments must be accompanied by the account number or payment coupon provided to you by Gate City Bank. Loan payments must be sent to Gate City Bank, P.O. Box 2847, Fargo, ND 58108-2847 or P.O. Box 6000, Fargo, ND 58108-6000. Loan payments may also be made in person at any Gate City Bank office. Hours of operation for receiving loan payments are 9:00 a.m. to 5:00 p.m. Monday thru Friday, except bank holidays, and during Saturday business hours at any Gate City Bank office that is open. Payments established by automatic withdrawal from a deposit account will be credited the same day as the withdrawal. All other payments received will be credited as of the next loan operations business day or as otherwise permitted by law. . Lender may modify these payment instructions, including changing the address for payments, by providing updated payment instructions to Borrower in writing. If a payment is made consistent with Lender's payment instructions but received after 4:00 PM Central Standard Time on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Gate City Bank, P.O. Box 2847, 500 2nd Avenue North Fargo, ND 58108.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 10.000% of the regularly scheduled payment or $10.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

    **Payment Default.** Borrower fails to make any payment when due under this Note.

    **Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

    **False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

    **Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

    **Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

    **Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

    **Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

    **Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

    **Insecurity.** Lender in good faith believes itself insecure.

    **Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to

**PROMISSORY NOTE**
**(Continued)**

| Loan No: ███7715 | | Page 2 |
|---|---|---|

Borrower demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**POWER OF ATTORNEY.** Any power of attorney granted by Borrower to Lender creates no obligation on Gate City Bank to apply for registration, pay fees or obtain licensing or titling to the motor vehicle.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Burleigh County, State of North Dakota.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by 2016 Sidump'r Dump Trailer (Serial Number 1D9FS4437GC688018), 2016 Sidump'r Dump Trailer (Serial Number 1D9FS4430GC688099), 2013 Dakota MFG Dump Trailer (Serial Number 1D9SH4339DY554348), 2000 Midland MFG Dump Trailer (Serial Number 2MFB2S3D5YR000651), 2000 Midland MFG Dump Trailer (Serial Number 2MFB2S4D3YR001148), 2000 Midland MFG Dump Trailer (Serial Number 2MFB2S3D3YR000650), 2000 Midland MFG Dump Trailer (Serial Number 2MFB253D7YR000652), 1999 Midland MFG Dump Trailer (Serial Number 2MFB2S4D4XR000542).

**SECURITY INTEREST.** I authorize Lender's security interest to be reflected as a lien on the Certificate of Title for the Property.

**ADDITIONAL OBLIGATION.** If I do not pay any required sales tax; registration, transfer, and/or licensing fees Lender may, but is not obligated to, pay such taxes and/or fees and they will be immediately due from me to Lender and will be added to my indebtedness to Lender.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

**BORROWER:**

STARK ENERGY, INC.

By: _____
Authorized Signer for Stark Energy, Inc.

# Gate City Bank

## PROMISSORY NOTE



EXHIBIT
A-9

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $19,379.95 | 03-26-2021 | 04-04-2025 | ▮5202 | CLTR | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Stark Energy, Inc.
1860 4th Ave E
Dickinson, ND 58601

**Lender:** Gate City Bank
Country West - Bismarck
1725 Golf Dr
Bismarck, ND 58503
(701) 355-7650

**Principal Amount: $19,379.95**                                      **Date of Note: March 26, 2021**

**PROMISE TO PAY.** Stark Energy, Inc. ("Borrower") promises to pay to Gate City Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Nineteen Thousand Three Hundred Seventy-nine & 95/100 Dollars ($19,379.95), together with interest on the unpaid principal balance from March 26, 2021, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.000% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "PREFERRED RATE REDUCTION" section. The interest rate may also change under the terms and conditions of the "INTEREST AFTER DEFAULT" section. Whenever increases occur in the interest rate, Lender, at Lender's option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PAYMENT.** Borrower will pay this loan in 48 payments of $438.52 each payment. Borrower's first payment is due May 4, 2021, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on April 4, 2025, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any unpaid collection costs.

**PREFERRED RATE REDUCTION.** The interest rate on this Note includes a preferred rate reduction. Following is a description of the event that would cause the preferred rate reduction to terminate and how the new rate will be determined upon termination of the preferred rate reduction.

**Description of Event That Would Cause the Preferred Rate Reduction to Terminate.**
Termination of automatic deduction from a Gate City Bank checking account .
**How The New Rate Will Be Determined Upon Termination of the Preferred Rate Reduction.**
The interest rate of this loan may increase by an additional 1% (100 basis points) added to the current rate at the time of loan closing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding (but not including February 29 in leap years). All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

Gate City Bank
P.O. Box 2847, 500 2nd Avenue North
Fargo, ND 58108

Payments must be received consistent with the following payment instructions: To ensure payments are properly credited to your account all loan payments must be accompanied by the account number or payment coupon provided to you by Gate City Bank. Loan payments must be sent to Gate City Bank, P.O. Box 2847, Fargo, ND 58108-2847 or P.O. Box 6000, Fargo, ND 58108-6000. Loan payments may also be made in person at any Gate City Bank office. Hours of operation for receiving loan payments are 9:00 a.m. to 5:00 p.m. Monday thru Friday, except bank holidays, and during Saturday business hours at any Gate City Bank office that is open. Payments established by automatic withdrawal from a deposit account will be credited the same day as the withdrawal. All other payments received will be credited as of the next loan operations business day or as otherwise permitted by law. . Lender may modify these payment instructions, including changing the address for payments, by providing updated payment instructions to Borrower in writing. If a payment is made consistent with Lender's payment instructions but received after 4:00 PM Central Standard Time on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Gate City Bank, P.O. Box 2847, 500 2nd Avenue North Fargo, ND 58108.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 10.000% of the regularly scheduled payment or $10.00, whichever is less.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

### PROMISSORY NOTE
### (Continued)

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**POWER OF ATTORNEY.** Any power of attorney granted by Borrower to Lender creates no obligation to Gate City Bank to apply for registration, pay fees or obtain licensing or titling to the motor vehicle.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Dakota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Burleigh County, State of North Dakota.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by 2012 Dragon 150 BBL AL TRLR Trailer (VIN 1UNST4223CL109253).

**SECURITY INTEREST.** I authorize Lender's security interest to be reflected as a lien on the Certificate of Title for the Property.

**ADDITIONAL OBLIGATION.** If I do not pay any required sales tax, registration, transfer, and/or licensing fees Lender may, but is not obligated to, pay such taxes and/or fees and they will be immediately due from me to Lender and will be added to my indebtedness to Lender.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

**STARK ENERGY, INC.**

By: _____
Authorized Signer for Stark Energy, Inc.

# EXHIBIT B-1 THROUGH B-9

**(Security Agreements)**

## COMMERCIAL SECURITY AGREEMENT

EXHIBIT
B-1

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $40,000.00 | 02-19-2018 | 03-01-2024 | ***8942 | CLTR | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Grantor:** Stark Energy, Inc.
PO Box 748
Dickinson, ND 58602

**Lender:** Gate City Bank
Bismarck
304 East Rosser
Bismarck, ND 58502
(701) 355-7620

---

**THIS COMMERCIAL SECURITY AGREEMENT** dated February 19, 2018, is made and executed between Stark Energy, Inc. ("Grantor") and Gate City Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

**2013 Dragon ESP LTD 200 BBL (VIN 1UNST5343DS128172)**

In addition, the word "Collateral" also includes all the following:

(A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of North Dakota, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral if the estimated cost of repair or replacement exceeds $1000.00, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount

**COMMERCIAL SECURITY AGREEMENT**
(Continued)

of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of this policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will: (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the North Dakota Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

| Loan No: 8942 | | Page 4 |

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of North Dakota.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Burleigh County, State of North Dakota.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other

COMMERCIAL SECURITY AGREEMENT
(Continued)

Loan No: 8942                                                                                                    Page 5

secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means Stark Energy, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Stark Energy, Inc..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Gate City Bank, its successors and assigns.

**Note.** The word "Note" means the Note dated February 19, 2018 and executed by Stark Energy, Inc. in the principal amount of $40,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED FEBRUARY 19, 2018.**

Loan No ■ 8942

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Page 6

GRANTOR:

STARK ENERGY, INC.

By: _____
Authorized Signer for Stark Energy, Inc.

By: _____
Authorized Signer for Stark Energy, Inc.

LaserPro, Ver. 17.4.21.003  Copr. D+H USA Corporation. 1997, 2018.  All Rights Reserved.  - ND  C. CFI\PL\E40 FC  TR-20289  PR-09

# COMMERCIAL SECURITY AGREEMENT

EXHIBIT
**B-2**

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $37,439.30 | 11-16-2018 | 11-01-2022 | 5221 | CLCM | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Grantor:** Stark Energy, Inc.
PO Box 748
Dickinson, ND 58602

**Lender:** Gate City Bank
Bismarck
304 East Rosser
Bismarck, ND 58502
(701) 355-7620

THIS COMMERCIAL SECURITY AGREEMENT dated November 16, 2018, is made and executed between Stark Energy, Inc. ("Grantor") and Gate City Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

   **2007 KENWORTH T600/800/2000/W900 T800 (121" B8C) (VIN 1XKDP40X07R197151)**

In addition, the word "Collateral" also includes all the following:

   (A)  All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

   (B)  All products and produce of any of the property described in this Collateral section.

   (C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

   (D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

   (E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

   **Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

   **Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any  (1)  change in Grantor's name;  (2)  change in Grantor's assumed business name(s);  (3)  change in the management of the Corporation Grantor;  (4)  change in the authorized signer(s);  (5)  change in Grantor's principal office address;  (6)  change in Grantor's state of organization;  (7)  conversion of Grantor to a new or different type of business entity; or  (8)  change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender.  No change in Grantor's name or state of organization will take effect until after Lender has received notice.

   **No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

   **Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

   **Location of the Collateral.** Except for vehicles, and except otherwise in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. If the Collateral is a vehicle, Grantor will keep the Collateral at those addresses except for routine travel. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following:  (1)  all real property Grantor owns or is purchasing;  (2)  all real property Grantor is renting or leasing;  (3)  all storage facilities Grantor owns, rents, leases, or uses; and  (4)  all other properties where Collateral is or may be located.

   **Removal of the Collateral.** Except in the ordinary course of Grantor's business,  Grantor shall not remove the Collateral from its existing location without Lender's prior written consent.  To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of North Dakota, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Loan No: ____5221                                                                Page 2

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral if the estimated cost of repair or replacement exceeds $1000.00, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount

Loan No: ███5221

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 3

of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the North Dakota Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Loan No: ████5221    Page 4

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**ADDITIONAL OBLIGATIONS.** If I do not pay any required sales tax; registration, transfer, and/or licensing fees Lender may, but is not obligated to, pay such taxes and/or fees and they will be immediately due from me to Lender and will be added to my Indebtedness to Lender.

**SECURITY INTEREST.** I authorize Lender's security interest to be reflected as a lien on a Certificate of Title for the Property.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of North Dakota.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Burleigh County, State of North Dakota.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Loan No: ▮5221                                                                                              Page 5

shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means Stark Energy, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Stark Energy, Inc..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Gate City Bank, its successors and assigns.

**Note.** The word "Note" means the Note dated November 16, 2018 and executed by Stark Energy, Inc. in the principal amount of $37,439.30, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED NOVEMBER 16, 2018.

Loan No █████5221

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 6

**GRANTOR:**

**STARK ENERGY, INC.**

By: _____
Authorized Signer for Stark Energy, Inc.

By: _____
Authorized Signer for Stark Energy, Inc.

LaserPro, Ver. 18.3.20.019  Copr. Finastra USA Corporation 1997, 2018.  All Rights Reserved.  - ND  C:\CFI\LPL\E40.FC  TR-316318  PR-29

**COMMERCIAL SECURITY AGREEMENT**

EXHIBIT
**B-3**

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $135,000.00 | 11-26-2018 | 11-26-2026 | ████6855 | CLTR | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Grantor:  Stark Energy, Inc.
PO Box 748
Dickinson, ND 58602

Lender:  Gate City Bank
Bismarck
304 East Rosser
Bismarck, ND 58502
(701) 355-7620

---

THIS COMMERCIAL SECURITY AGREEMENT dated November 26, 2018, is made and executed between Stark Energy, Inc. ("Grantor") and Gate City Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

2013 Dragon 200BBL Aluminum Tank Trailer (Serial Number 1UNST5341DS128154)

2013 Dragon 200BBL Aluminum Tank Trailer (Serial Number 1UNST5340DS128162)

2014 Dragon 200BBL Aluminum Tank Trailer (Serial Number 1UNST5340ES128562)

In addition, the word "Collateral" also includes all the following:

(A)  All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B)  All products and produce of any of the property described in this Collateral section.

(C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall

Loan No ██████6855

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Page 2

not take or permit any action which would require application for certificates of title for the vehicles outside the State of North Dakota, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral if the estimated cost of repair or replacement exceeds $1000.00, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

Loan No ███6855

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 3

---

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the North Dakota Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and

**COMMERCIAL SECURITY AGREEMENT**

Loan No: ███6855   (Continued)   Page 4

---

remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of North Dakota.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Burleigh County, State of North Dakota.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**COMMERCIAL SECURITY AGREEMENT**
(Continued)

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means Stark Energy, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Stark Energy, Inc..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Gate City Bank, its successors and assigns.

**Note.** The word "Note" means the Note dated November 26, 2018 and executed by Stark Energy, Inc. in the principal amount of $135,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED NOVEMBER 26, 2018.

Loan No: █████6855

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Page 6

---

GRANTOR:

STARK ENERGY, INC.

By: _____
    Authorized Signer for Stark Energy, Inc.

By: _____
    Authorized Signer for Stark Energy, Inc.

---

LaserPro, Ver. 18.3.20.019  Copr. Finastra USA Corporation 1997, 2018.  All Rights Reserved.  - ND  C:\CFI\LPL\E40.FC  TR-2189.34  PR-95

# COMMERCIAL SECURITY AGREEMENT

EXHIBIT
**B-4**
tabbies®

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $76,639.30 | 12-31-2018 | 01-01-2023 | 3145 | CLCM | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Grantor:    Stark Energy, Inc.
PO Box 748
Dickinson, ND  58602

Lender:    Gate City Bank
Bismarck
304 East Rosser
Bismarck, ND  58502
(701) 355-7620

THIS COMMERCIAL SECURITY AGREEMENT dated December 31, 2018, is made and executed between Stark Energy, Inc. ("Grantor") and Gate City Bank ("Lender").

GRANT OF SECURITY INTEREST.  For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

COLLATERAL DESCRIPTION.  The word "Collateral" as used in this Agreement means the following described property in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

2012 KENWORTH T660/700/800/W900 W900B (VIN 1XKWP4TX8CJ335970)

In addition, the word "Collateral" also includes all the following:

(A)  All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B)  All products and produce of any of the property described in this Collateral section.

(C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

RIGHT OF SETOFF.  To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account).  This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future.  However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law.  Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.  With respect to the Collateral, Grantor represents and promises to Lender that:

Perfection of Security Interest.  Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral.  Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

Notices to Lender.  Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1)  change in Grantor's name;  (2)  change in Grantor's assumed business name(s);  (3)  change in the management of the Corporation Grantor;  (4)  change in the authorized signer(s);  (5)  change in Grantor's principal office address;  (6)  change in Grantor's state of organization;  (7)  conversion of Grantor to a new or different type of business entity; or  (8)  change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender.  No change in Grantor's name or state of organization will take effect until after Lender has received notice.

No Violation.  The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

Enforceability of Collateral.  To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral.  There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

Location of the Collateral.  Except for vehicles, and except otherwise in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender.  If the Collateral is a vehicle, Grantor will keep the Collateral at those addresses except for routine travel.  Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following:  (1)  all real property Grantor owns or is purchasing;  (2)  all real property Grantor is renting or leasing;  (3)  all storage facilities Grantor owns, rents, leases, or uses; and  (4)  all other properties where Collateral is or may be located.

Removal of the Collateral.  Except in the ordinary course of Grantor's business,  Grantor shall not remove the Collateral from its existing location without Lender's prior written consent.  To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of North Dakota, without Lender's prior written consent.  Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

Loan No: ███3145

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Page 2

---

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral if the estimated cost of repair or replacement exceeds $1000.00, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Loan No: ███3145                                                                                          Page 3

---

of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the North Dakota Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

Loan No: ███3145

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 4

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**ADDITIONAL OBLIGATIONS.** If I do not pay any required sales tax; registration, transfer, and/or licensing fees Lender may, but is not obligated to, pay such taxes and/or fees and they will be immediately due from me to Lender and will be added to my Indebtedness to Lender.

**SECURITY INTEREST.** I authorize Lender's security interest to be reflected as a lien on a Certificate of Title for the Property.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of North Dakota.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Burleigh County, State of North Dakota.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses

**COMMERCIAL SECURITY AGREEMENT**

Loan No: ███3145                    (Continued)                                    Page 5

---

shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means Stark Energy, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default."

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Stark Energy, Inc..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Gate City Bank, its successors and assigns.

**Note.** The word "Note" means the Note dated December 31, 2018 and executed by Stark Energy, Inc. in the principal amount of $76,639.30, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED DECEMBER 31, 2018.**

Loan No: ███3145

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 6

---

**GRANTOR:**

**STARK ENERGY, INC.**

By: _____
    Authorized Signer for Stark Energy, Inc.

By: _____
    Authorized Signer for Stark Energy, Inc.

---

# COMMERCIAL SECURITY AGREEMENT

EXHIBIT
B-5
tabbies

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $150,144.65 | 12-27-2019 | 01-01-2026 | 1820 | CLTR | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Grantor:** Stark Energy, Inc.
PO Box 748
Dickinson, ND 58602

**Lender:** Gate City Bank
Bismarck
304 East Rosser
Bismarck, ND 58502
(701) 355-7620

**THIS COMMERCIAL SECURITY AGREEMENT** dated December 27, 2019, is made and executed between Stark Energy, Inc. ("Grantor") and Gate City Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

**2014 Kenworth W900 (VIN 1XKWD49X1EJ413380)**

**2013 Dragon 220 BBL Tank Trailer (Serial Number 1UNST5348DS128118)**

**2007 Reitnauer Trailer (Serial Number 1RNF48A247R019280)**

In addition, the word "Collateral" also includes all the following:

(A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except for vehicles, and except otherwise in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. If the Collateral is a vehicle, Grantor will keep the Collateral at those addresses except for routine travel. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing

Loan No: ███1820

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of North Dakota, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral if the estimated cost of repair or replacement exceeds $1000.00, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain

Loan No: 1820

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Page 3

Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Grantor at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the North Dakota Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title

Loan No: ██████1820

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Page 4

and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of North Dakota.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Burleigh County, State of North Dakota.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees

to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Grantor to a Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means Stark Energy, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Stark Energy, Inc..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Gate City Bank, its successors and assigns.

**Note.** The word "Note" means the Note dated December 27, 2019 and executed by Stark Energy, Inc. in the principal amount of $150,144.65, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED DECEMBER 27, 2019.

**Loan No:** ████1820

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Page 6

GRANTOR:

STARK ENERGY, INC.

By: _____
    Robert G Fettig, Owner of Stark Energy, Inc.

LaserPro, Ver. 19.3.0.038  Copr. Finastra USA Corporation 1997, 2019.  All Rights Reserved.  - ND  C:\CFI\LPL\E40.FC  TR-241048  PR-58

# COMMERCIAL SECURITY AGREEMENT

EXHIBIT **B-6**

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $74,729.97 | 01-16-2020 | 02-01-2025 | 3856 | CLCM | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Grantor:** Stark Energy, Inc.
PO Box 748
Dickinson, ND 58602

**Lender:** Gate City Bank
Bismarck
304 East Rosser
Bismarck, ND 58502
(701) 355-7620

THIS COMMERCIAL SECURITY AGREEMENT dated January 16, 2020, is made and executed between Stark Energy, Inc. ("Grantor") and Gate City Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

**2014 KENWORTH T660/680/700/800/W900 T800 (121" BBC) (VIN 1NKDX4TX3EJ403810)**

In addition, the word "Collateral" also includes all the following:

(A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account. This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except for vehicles, and except otherwise in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. If the Collateral is a vehicle, Grantor will keep the Collateral at those addresses except for routine travel. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of North Dakota, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

Loan No: ███8856                                                                                                          Page 2

**Transactions Involving Collateral.** Except for Inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral if the estimated cost of repair or replacement exceeds $1000.00, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount

| Loan No: ■■3856 | COMMERCIAL SECURITY AGREEMENT (Continued) | Page 3 |

of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the North Dakota Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

| Loan No: ███3856 | **COMMERCIAL SECURITY AGREEMENT**<br>**(Continued)** | Page 4 |
|---|---|---|

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**ADDITIONAL OBLIGATIONS.** If I do not pay any required sales tax; registration, transfer, and/or licensing fees Lender may, but is not obligated to, pay such taxes and/or fees and they will be immediately due from me to Lender and will be added to my indebtedness to Lender.

**SECURITY INTEREST.** I authorize Lender's security interest to be reflected as a lien on a Certificate of Title for the Property.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of North Dakota.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Burleigh County, State of North Dakota.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses

Loan No ████3856

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Page 5

shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means Stark Energy, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Stark Energy, Inc..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other Indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Gate City Bank, its successors and assigns.

**Note.** The word "Note" means the Note dated January 16, 2020 and executed by Stark Energy, Inc. in the principal amount of $74,729.97, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED JANUARY 16, 2020.**

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

**GRANTOR:**

**STARK ENERGY, INC.**

By: _____
    Authorized Signer for Stark Energy, Inc.

## COMMERCIAL SECURITY AGREEMENT

EXHIBIT
**B-7**
tabbies

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $100,000.00 | 03-04-2020 | 03-01-2025 | ▮6648 | CLTR | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Grantor: Stark Energy, Inc.
PO Box 748
Dickinson, ND 58602

Lender: Gate City Bank
Bismarck
304 East Rosser
Bismarck, ND 58502
(701) 355-7620

THIS COMMERCIAL SECURITY AGREEMENT dated March 4, 2020, is made and executed between Stark Energy, Inc. ("Grantor") and Gate City Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

**2013 Dragon 200 BBL AL Semi-Trailer (Serial Number 1UNST5340DS128291)**

**2014 Dragon 200 BBL AL Semi-Trailer (Serial Number 1UNST5346ES140026)**

In addition, the word "Collateral" also includes all the following:

(A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of North Dakota,

Loan No: 6648

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Page 2

without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral if the estimated cost of repair or replacement exceeds $1000.00, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such

information as Lender may reasonably request including the following: (1)  the name of the insurer;  (2)  the risks insured;  (3)  the amount of the policy;  (4)  the property insured;  (5)  the then current value on the basis of which insurance has been obtained and the manner of determining that value; and  (6)  the expiration date of the policy.  In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.**  Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest.  At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property.  Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs.  Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default.  Lender may file a copy of this Agreement as a financing statement.

**GRANTOR'S RIGHT TO POSSESSION.**  Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral.  If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care.  Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.**  If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral.  All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor.  All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.  The Agreement also will secure payment of these amounts.  Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**DEFAULT.**  Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.**  Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.**  Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.**  This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.**  The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness.  This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.**  A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.**  Lender in good faith believes itself insecure.

**Cure Provisions.**  If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default:  (1)  cures the default within ten (10) days; or  (2)  if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.**  If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the North Dakota Uniform Commercial Code.  In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.**  Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.**  Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral.  Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender.  Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral.  If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of North Dakota.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Burleigh County, State of North Dakota.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents

## COMMERCIAL SECURITY AGREEMENT

EXHIBIT

# B-8

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $152,000.00 | 05-14-2020 | 06-01-2025 | ███ 7715 | CLTR | | ••• | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " **** " has been omitted due to text length limitations.

**Grantor:**   Stark Energy, Inc.
1860 4th Ave E
Dickinson, ND 58601

**Lender:**   Gate City Bank
Bismarck
304 East Rosser
Bismarck, ND 58502
(701) 355-7620

---

**THIS COMMERCIAL SECURITY AGREEMENT** dated May 14, 2020, is made and executed between Stark Energy, Inc. ("Grantor") and Gate City Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

**2016 Sidump'r Dump Trailer (Serial Number 1D9FS4437GC688018)**

**2016 Sidump'r Dump Trailer (Serial Number 1D9FS4430GC688099)**

**2013 Dakota MFG Dump Trailer (Serial Number 1D9SH4339DY554348)**

**2000 Midland MFG Dump Trailer (Serial Number 2MF82S3D5YR000651)**

**2000 Midland MFG Dump Trailer (Serial Number 2MFB2S4D3YR001148)**

**2000 Midland MFG Dump Trailer (Serial Number 2MFB2S3D3YR000650)**

**2000 Midland MFG Dump Trailer (Serial Number 2MFB253D7YR000652)**

**1999 Midland MFG Dump Trailer (Serial Number 2MFB2S4D4XR000542)**

In addition, the word "Collateral" also includes all the following:

(A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microficha, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Loan No: 7715        Page 2

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of North Dakota, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole option. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral if the estimated cost of repair or replacement exceeds $1000.00, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall

Loan No: _____7715

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Page 3

be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the

Loan No: ____7715

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Page 4

---

rights of a secured party under the North Dakota Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of North Dakota.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Burleigh County, State of North Dakota.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means Stark Energy, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Stark Energy, Inc..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Gate City Bank, its successors and assigns.

**Note.** The word "Note" means the Note dated May 14, 2020 and executed by Stark Energy, Inc. in the principal amount of $152,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED MAY 14, 2020.

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

GRANTOR:

STARK ENERGY, INC.

By: _____
     **Authorized Signer for Stark Energy, Inc.**

LaserPro, Ver. 20.3.0.034  Copr. Finastra USA Corporation 1997, 2020.  All Rights Reserved.  - ND  C:\CFI\LPL\E40.FC  TR-244695  PR-36

## COMMERCIAL SECURITY AGREEMENT

EXHIBIT
**B-9**

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $19,379.95 | 03-26-2021 | 04-04-2025 | ▬5202 | CLTR | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Grantor:** Stark Energy, Inc.
1860 4th Ave E
Dickinson, ND 58601

**Lender:** Gate City Bank
Country West - Bismarck
1725 Golf Dr
Bismarck, ND 58503
(701) 355-7650

THIS COMMERCIAL SECURITY AGREEMENT dated March 26, 2021, is made and executed between Stark Energy, Inc. ("Grantor") and Gate City Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

**2012 Dragon 150 BBL AL TRLR Trailer (VIN 1UNST4223CL109253)**

In addition, the word "Collateral" also includes all the following:

(A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of North Dakota, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Loan No: 5202                                                                                   Page 2

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral if the estimated cost of repair or replacement exceeds $1000.00, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount

Loan No: ▇5202

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 3

of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the North Dakota Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Dakota without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of North Dakota.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Burleigh County, State of North Dakota.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other

Loan No. 5202

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Page 5

secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means Stark Energy, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Stark Energy, Inc..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Gate City Bank, its successors and assigns.

**Note.** The word "Note" means the Note dated March 26, 2021 and executed by Stark Energy, Inc. in the principal amount of $19,379.95, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED MARCH 26, 2021.**

Loan No █████5202      **COMMERCIAL SECURITY AGREEMENT**
**(Continued)**      Page 6

---

**GRANTOR:**

**STARK ENERGY, INC.**

By: _____
    **Authorized Signer for Stark Energy, Inc.**

---

LaserPro, Ver. 20.4.0.036 Copr. Harland - CFI Corporation 1990, 2021. All Rights Reserved. - ND-C: CFILPL140/C-19.20.20.4-79-99

# **EXHIBIT C**

**(Titled Vehicle Collateral - Original Certificates of Title)**

LEGAL DOCUMENT - - KEEP IN A SAFE PLACE

**CERTIFICATE OF TITLE FOR A VEHICLE**
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION

SFN 2875 (Rev. 06-16)



ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1UNST5343DS128172 | 2013 | 2013 | DRAGON ESP, LTD | SEMI-TRAILER | 200 BBL AL TANK TRL |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| STARK ENERGY INC | ND1555879936 | TRAILER | 0 | 3/13/2019 |

ODOMETER READING

ODOMETER STATUS
EXEMPT

MAIL TO:
GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

**PREVIOUSLY SALVAGED**

THIS VEHICLE HAS BEEN PREVIOUSLY DAMAGED. IF YOU REQUIRE FURTHER INFORMATION, PLEASE CONTACT THE D.O.T.

**PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)**

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|
| Mailing Address | City | State | ZIP Code | County |

| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|
| Mailing Address | City | State | ZIP Code | County |

Check one: ☐ Or ☐ And ☐ And/Joint Tenants with Right of Survivorship

Purchase Date (Mo., Day, Year)

Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (**warning *odometer discrepancy**)

Odometer Reading
NO TENTHS

| Signature of Seller/Transferor X | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee X | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor X | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee X | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone Number | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

LEGAL TITLE OWNER (LIENHOLDER)

Any lien recorded in the office of the Department of Transportation is shown below. The lienholder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

Deputy Director for Driver and Vehicle Services

**LIEN RELEASE**

ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

Lienholder Name

Signature of Agent X

Date

P555390

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.

SFN 2875 (Rev. 07-2015)

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

#2 Note 2 CDS

LEGAL DOCUMENT - - KEEP IN A SAFE PLACE

# CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION

SFN 2875 (Rev. 06-16)

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1XKDP40X07R197151 | 2007 | 2007 | KENWORTH MOTOR | TRACTOR TRUCK, DIESE | CONSTRUCTION |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| STARK ENERGY INC | ND719796224 | TRUCK | 16500 | 4/8/2019 |

ODOMETER READING

ODOMETER STATUS
EXEMPT

MAIL TO:   GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

## PART 1.  ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | ☐ Driver's License ☐ FEIN | | Telephone Number |
|---|---|---|---|
| Mailing Address | City | State | ZIP Code | County |

| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | ☐ Driver's License ☐ FEIN | | Telephone Number |
|---|---|---|---|
| Mailing Address | City | State | ZIP Code | County |

Check one:  ☐ Or   ☐ And   ☐ And/Joint Tenants with Right of Survivorship     Purchase Date (Mo., Day, Year)     Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (**warning \*odometer discrepancy**)

Odometer Reading

| Signature of Seller/Transferor  X | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee  X | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor  X | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee  X | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone Number | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

### LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lienholder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

_____
Deputy Director for Driver and Vehicle Services

### LIEN RELEASE
ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

Lienholder Name

Signature of Agent  X     Date

P578581

1275221

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.     SFN 2875 (Rev. 07-2015)

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

LEGAL DOCUMENT -- KEEP IN A SAFE PLACE

# CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION

SFN 2875 (Rev. 06-16)

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1UNST5341DS128154 | 2013 | 2013 | DRAGON | SEMI-TRAILER | 200 BBL AL TANK TRL |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| STARK ENERGY INC | ND223959040 | TRAILER | 0 | 2/13/2019 |

| ODOMETER READING | ODOMETER STATUS |
|---|---|
| | EXEMPT |

MAIL TO:
GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

PART 1.  ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | ☐ Driver's License   ☐ FEIN | Telephone Number |
|---|---|---|

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | ☐ Driver's License   ☐ FEIN | Telephone Number |
|---|---|---|

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Check one:   ☐ Or   ☐ And   ☐ And/Joint Tenants with Right of Survivorship

| Purchase Date (Mo., Day, Year) | Purchase Price |
|---|---|

Odometer Disclosure: Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits.   ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy)

Odometer Reading ___ NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| X | | X | |
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| X | | X | |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone Number | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

## LEGAL TITLE OWNER (LIENHOLDER)

Any lien recorded in the office of the Department of Transportation is shown below. The lienholder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

_____
Deputy Director for Driver and Vehicle Services

### LIEN RELEASE

ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

| Lienholder Name |
|---|

| Signature of Agent | Date |
|---|---|
| X | |

P533768

1286855

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.

SFN 2875 (Rev. 07-2015)

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

#4 #5 Note 3-ws

LEGAL DOCUMENT -- KEEP IN A SAFE PLACE

## CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION

SFN 2875 (Rev. 06-16)

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1UNST5340DS128162 | 2013 | 2013 | DRAGON | SEMI-TRAILER | 200 BBL AL TANK |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| STARK ENERGY INC | ND1051621376 | TRAILER | 0 | 5/24/2019 |

ODOMETER READING

ODOMETER STATUS
EXEMPT

MAIL TO:   GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

### PART 1.  ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | | ☐ Driver's License ☐ FEIN | | Telephone Number |
|---|---|---|---|---|
| Mailing Address | City | State | ZIP Code | County |
| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | | ☐ Driver's License ☐ FEIN | | Telephone Number |
| Mailing Address | City | State | ZIP Code | County |

Check one:   ☐ Or   ☐ And   ☐ And/Joint Tenants with Right of Survivorship

Purchase Date (Mo., Day, Year)

Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

Odometer Reading

NO TENTHS

I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits.   ☐ Odometer reading is not the actual mileage (**warning *odometer discrepancy**)

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| X | | X | |
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| X | | X | |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone Number | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

### LEGAL TITLE OWNER (LIENHOLDER)

Any lien recorded in the office of the Department of Transportation is shown below. The lienholder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

_Deputy Director for Driver and Vehicle Services_

### LIEN RELEASE

**ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.**

Lienholder Name

Signature of Agent
X

Date

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.

SFN 2875 (Rev. 07-2015)

P583083

1286855 c

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE.

LEGAL DOCUMENT - - KEEP IN A SAFE PLACE

## CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION

SFN 2875 (Rev. 06-16)

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1UNST5340ES128552 | 2014 | 2014 | DRAGON ESP, LTD | SEMI-TRAILER | BBL AL TANK |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| STARK ENERGY INC | ND1293268992 | TRAILER | 0 | 5/24/2019 |

| ODOMETER READING | ODOMETER STATUS |
|---|---|
| | EXEMPT |

MAIL TO:  GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

### PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Check one:  ☐ Or  ☐ And  ☐ And/Joint Tenants with Right of Survivorship

| Purchase Date (Mo., Day, Year) | Purchase Price |
|---|---|

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (**warning *odometer discrepancy**)

| Odometer Reading | NO TENTHS |
|---|---|

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| X | | X | |

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| X | | X | |

| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone Number | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) |
|---|---|---|

### LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lienholder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

Deputy Director for Driver and Vehicle Services

### LIEN RELEASE
ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

| Lienholder Name |
|---|

| Signature of Agent | Date |
|---|---|
| X | |

**THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.**

SFN 2875 (Rev. 07-2015)

P583084

128 6855 c

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE.

LEGAL DOCUMENT · KEEP IN A SAFE PLACE

**CERTIFICATE OF TITLE FOR A VEHICLE**
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION
SFN 2875 (Rev. 06-16)

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1XKWP4TX8CJ335970 | 2012 | 2012 | KENWORTH MOTOR | TRACTOR TRUCK, DIESE | CONSTRUCTION |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| STARK ENERGY INC | ND1422678016 | TRUCK | 18500 | 1/14/2019 |

ODOMETER READING        ODOMETER STATUS
                        EXEMPT

MAIL TO:  GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

**PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)**

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | | ☐ Driver's License ☐ FEIN | | Telephone Number |
|---|---|---|---|---|
| Mailing Address | City | State | ZIP Code | County |

| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | | ☐ Driver's License ☐ FEIN | | Telephone Number |
|---|---|---|---|---|
| Mailing Address | City | State | ZIP Code | County |

Check one: ☐ Or  ☐ And  ☐ And/Joint Tenants with Right of Survivorship        Purchase Date (Mo., Day, Year)        Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.        Odometer Reading        NO TENTHS

I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits.  ☐ Odometer reading is not the actual mileage (**warning *odometer discrepancy**)

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| X | | X | |
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| X | | X | |
| Hand-Printed Name(s) of Seller(s) Transferor(s) | Daytime Telephone Number | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

LEGAL TITLE OWNER (LIENHOLDER)

Any lien recorded in the office of the Department of Transportation is shown below. The lienholder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

_____
Deputy Director for Driver and Vehicle Services

**LIEN RELEASE**

ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

Lienholder Name

Signature of Agent        Date
X

P504885        1333145 c

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.        SFN 2875 (Rev. 07-2015)

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

#7 Note 5 aug

## CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION

SFN 2875 (Rev. 11-2019)

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1XKWD49X1EJ413380 | 2014 | 2014 | KENWORTH MOTOR | TRACTOR TRUCK, DIESE | CONSTRUCTION |

OWNER(S) NAME
STARK ENERGY INC

| TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|
| ND985375744 | TRUCK | 18100 | 3/3/2020 |

ODOMETER READING          ODOMETER STATUS
EXEMPT

MAIL TO:  GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

### PART 1.  ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust):     ☐ Driver's License  ☐ FEIN   Telephone Number

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust):   ☐ Driver's License  ☐ FEIN   Telephone Number

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Check One:  ☐ Or   ☐ And   ☐ And/Joint Tenants with Right of Survivorship   Purchase Date (Mo., Day, Year)   Purchase Price

Odometer Disclosure: Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.
I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:  ☐ Mileage stated is in excess of its mechanical limits.  ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy)

Odometer Reading    NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

### LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert R Rehborg*
Deputy Director for Driver Safety

LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.

SFN 2875 (11-2019)

P914185        1961820c

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

#8 N5R 5 W55

LEGAL DOCUMENT -- KEEP IN A SAFE PLACE

**CERTIFICATE OF TITLE FOR A VEHICLE**
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION
SFN 2875 (Rev. 11-2019)

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1UNST5348DS128118 | 2013 | 2013 | DRAGON ESP, LTD | SEMI-TRAILER | 200 BBL AL TANK TRL |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| STARK ENERGY INC | ND131097600 | TRAILER | 0 | 3/3/2020 |

| ODOMETER READING | ODOMETER STATUS |
|---|---|
| | EXEMPT |

MAIL TO:  GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

**PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)**

Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust):   ☐ Driver's License  ☐ FEIN   Telephone Number

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust):   ☐ Driver's License  ☐ FEIN   Telephone Number

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Check One:  ☐ Or   ☐ And   ☐ And/Joint Tenants with Right of Survivorship   Purchase Date (Mo., Day, Year)   Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.
I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy)

Odometer Reading   NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

**LEGAL TITLE OWNER (LIENHOLDER)**
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

*Robert Rehborg*
Deputy Director for Driver Safety

**LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.**

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

**THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.**   SFN 2875 (11-2019)

P914165   1961820C

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

#9 Axle 5 city

LEGAL DOCUMENT - - KEEP IN A SAFE PLACE

**CERTIFICATE OF TITLE FOR A VEHICLE**
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION

SFN 2875 (Rev. 11-2019)

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|-----|-----------|-----------------|------|-----------|-------|
| 1RNF48A247R019280 | 2007 | 2007 | REITNOUER, INC. | FLATBED OR PLATFORM | UNKNOWN |

OWNER(S) NAME
STARK ENERGY INC

| TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|--------------|--------------|-----------------|-------------|
| ND1522246656 | TRAILER | 0 | 3/3/2020 |

ODOMETER READING     ODOMETER STATUS
EXEMPT

MAIL TO:  GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

**PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)**

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | | Driver's License ☐ FEIN ☐ | Telephone Number |
|---|---|---|---|
| Mailing Address | City | State ZIP Code | County |

| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | | Driver's License ☐ FEIN ☐ | Telephone Number |
|---|---|---|---|
| Mailing Address | City | State ZIP Code | County |

Check One: ☐ Or  ☐ And  ☐ And/Joint Tenants with Right of Survivorship

Purchase Date (Mo., Day, Year)     Purchase Price

Odometer Disclosure: Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.
I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy)

Odometer Reading     NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

**LEGAL TITLE OWNER (LIENHOLDER)**
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert Rehborg*
Deputy Director for Driver Safety

LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

P914203   19618200

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.
SFN 2875 (11-2019)

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE.

#10  Nsk 6  Cez

LEGAL DOCUMENT -- KEEP IN A SAFE PLACE

# CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION

SFN 2875 (Rev. 11-2019)

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1NKDX4TX3EJ403810 | 2014 | 2014 | KENWORTH MOTOR | STRAIGHT TRUCK | T800 |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| STARK ENERGY INC | ND719627264 | TRUCK | 20000 | 2/14/2020 |

| ODOMETER READING | ODOMETER STATUS |
|---|---|
| | EXEMPT |

MAIL TO:
GATE CITY BANK
PO BOX 1266
DICKINSON ND 58602-1266

## PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust):    ☐ Driver's License  ☐ FEIN   Telephone Number

Mailing Address | City | State | ZIP Code | County

Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust):   ☐ Driver's License  ☐ FEIN   Telephone Number

Mailing Address | City | State | ZIP Code | County

Check One:  ☐ Or   ☐ And   ☐ And/Joint Tenants with Right of Survivorship | Purchase Date (Mo., Day, Year) | Purchase Price

Odometer Disclosure: Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy) | Odometer Reading  NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

GATE CITY BANK
PO BOX 1266
DICKINSON ND 58602-1266

Robert Rehborg

Deputy Director for Driver Safety

LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

Lienholder Name

Signature of Agent | Date (Mo., Day, Year)

P902869

9938562

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.

SFN 2875 (11-2019)

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

LEGAL DOCUMENT - - KEEP IN A SAFE PLACE

# CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION

SFN 2875 (Rev. 11-2019)

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1UNST5340DS128291 | 2013 | 2013 | DRAGON | SEMI-TRAILER | 200 BBL AL TANK |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| STARK ENERGY INC | ND1497392128 | TRAILER | 0 | 2/26/2020 |

ODOMETER READING

ODOMETER STATUS
EXEMPT

MAIL TO: GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

## PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | | ☐ Driver's License ☐ FEIN | Telephone Number | |
|---|---|---|---|---|
| Mailing Address | City | State | ZIP Code | County |
| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | | ☐ Driver's License ☐ FEIN | Telephone Number | |
| Mailing Address | City | State | ZIP Code | County |

Check One: ☐ Or  ☐ And  ☐ And/Joint Tenants with Right of Survivorship

| Purchase Date (Mo., Day, Year) | Purchase Price |
|---|---|

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy)

Odometer Reading NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

### LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

Robert Rehborg

Deputy Director for Driver Safety

**LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.**

| Lienholder Name | |
|---|---|
| Signature of Agent | Date (Mo., Day, Year) |

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.

SFN 2875 (11-2019)

P908578   2116648C

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

#12 Note 12 cont

LEGAL DOCUMENT - KEEP IN A SAFE PLACE

# CERTIFICATE OF TITLE FOR A VEHICLE

NORTH DAKOTA DEPARTMENT OF TRANSPORTATION

SFN 2875 (Rev. 11-2019)

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| **VIN** 1UNST5346ES140026 | 2014 | 2014 | DRAGON | SEMI-TRAILER | 200 BBL AL TAMK TRL |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| STARK ENERGY INC | ND829383680 | TRAILER | 0 | 6/16/2020 |

ODOMETER READING

ODOMETER STATUS
EXEMPT

MAIL TO:  GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

## PART 1.  ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Check One: ☐ Or  ☐ And  ☐ And/Joint Tenants with Right of Survivorship | Purchase Date (Mo., Day, Year) | Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (warning "odometer discrepancy")

Odometer Reading ___ NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|

| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) |
|---|---|---|

LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

_Robert Rehborg_
Deputy Director for Driver Safety

LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

R033006         2116648 c
                b05600 c

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.

SFN 2875 (11-2019)

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

LEGAL DOCUMENT - - KEEP IN A SAFE PLACE

# CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION
SFN 2875 (Rev. 11-2019)

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1D9FS4437GC688018 | 2016 | 2016 | SIDUMP'R | SEMI-TRAILER | DUMP |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| STARK ENERGY INC | ND474240000 | TRAILER | 0 | 10/22/2020 |

ODOMETER READING | ODOMETER STATUS
EXEMPT

MAIL TO: GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

**PART 1.  ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)**

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | ☐ Driver's License  ☐ FEIN | Telephone Number |
|---|---|---|

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | ☐ Driver's License  ☐ FEIN | Telephone Number |
|---|---|---|

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Check One:  ☐ Or   ☐ And   ☐ And/Joint Tenants with Right of Survivorship | Purchase Date (Mo., Day, Year) | Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits.  ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy) | Odometer Reading  NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|

| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) |
|---|---|---|

## LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert Rebsong*

Deputy Director for Driver Safety

LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

| Lienholder Name | |
|---|---|
| Signature of Agent | Date (Mo., Day, Year) |

R142394

2257715c

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.
SFN 2875 (11-2019)

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE.

LEGAL DOCUMENT - - KEEP IN A SAFE PLACE

**CERTIFICATE OF TITLE FOR A VEHICLE**
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION
SFN 2875 (Rev. 11-2019)

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1D9FS4430GC688099 | 2016 | 2016 | SIDUMP'R | SEMI-TRAILER | DUMP |

OWNER(S) NAME
STARK ENERGY INC

TITLE NUMBER
ND2071942144

VEHICLE TYPE
TRAILER

SHIPPING WEIGHT
0

DATE ISSUED
10/22/2020

ODOMETER READING

ODOMETER STATUS
EXEMPT

MAIL TO:  GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

**PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)**

Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust):   ☐ Driver's License  ☐ FEIN   Telephone Number

Mailing Address | City | State | ZIP Code | County

Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust):   ☐ Driver's License  ☐ FEIN   Telephone Number

Mailing Address | City | State | ZIP Code | County

Check One:  ☐ Or  ☐ And  ☐ And/Joint Tenants with Right of Survivorship   Purchase Date (Mo., Day, Year) | Purchase Price

Odometer Disclosure: Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.
I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy)   Odometer Reading | NO TENTHS

Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year)

Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year)

Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s)

LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

_Robert Rehborg_
Deputy Director for Driver Safety

LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

Lienholder Name

Signature of Agent | Date (Mo., Day, Year)

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.

SFN 2875 (11-2019)

R142368

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE.

LEGAL DOCUMENT -- KEEP IN A SAFE PLACE

## CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION

SFN 2875 (Rev. 11-2019)

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1D9SH4339DY554348 | 2013 | 2013 | DAKOTA MFG. CO. | SEMI-TRAILER | BELLY DUMP |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| STARK ENERGY INC | ND68826112 | TRAILER | 0 | 10/22/2020 |

ODOMETER READING

ODOMETER STATUS
EXEMPT

MAIL TO:  GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

### PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | | ☐ Driver's License ☐ FEIN | | Telephone Number | |
|---|---|---|---|---|---|
| Mailing Address | City | | State | ZIP Code | County |
| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | | ☐ Driver's License ☐ FEIN | | Telephone Number | |
| Mailing Address | City | | State | ZIP Code | County |

Check One:  ☐ Or   ☐ And   ☐ And/Joint Tenants with Right of Survivorship

Purchase Date (Mo., Day, Year)      Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked. ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (warning "odometer discrepancy)

Odometer Reading              NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

### LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

*Robert Rehborg*

Deputy Director for Driver Safety

LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

R142411

2257715 C

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.

SFN 2875 (11-2019)

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

LEGAL DOCUMENT - KEEP IN A SAFE PLACE

**CERTIFICATE OF TITLE FOR A VEHICLE**
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION
SFN 2875 (Rev. 11-2019)

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 2MFB2S3D5YR000651 | 2000 | 2000 | MIDLAND MFG. LT | SEMI-TRAILER | BELLY DUMP SE |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| STARK ENERGY INC | ND1343894528 | TRAILER | 0 | 10/22/2020 |

ODOMETER READING    ODOMETER STATUS  EXEMPT

MAIL TO:  GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

**PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)**

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|
| Mailing Address | City | State | ZIP Code | County |

| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|
| Mailing Address | City | State | ZIP Code | County |

Check One: ☐ Or  ☐ And  ☐ And/Joint Tenants with Right of Survivorship

Purchase Date (Mo., Day, Year)   Purchase Price

Odometer Disclosure: Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy)

Odometer Reading   NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

**LEGAL TITLE OWNER (LIENHOLDER)**
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert Rehborg*
Deputy Director for Driver Safety

LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

R142360

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.   SFN 2875 (11-2019)

2267715c

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

$11   Note 8   ωω

LEGAL DOCUMENT - KEEP IN A SAFE PLACE

## CERTIFICATE OF TITLE FOR A VEHICLE

NORTH DAKOTA DEPARTMENT OF TRANSPORTATION

SFN 2875 (Rev. 11-2019)

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 2MFB2S4D3YR001148 | 2000 | 2000 | MIDLAND MFG. LT | SEMI-TRAILER | BELLY DUMP SE |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| STARK ENERGY INC | ND1478112256 | TRAILER | 0 | 10/22/2020 |

ODOMETER READING

ODOMETER STATUS
EXEMPT

MAIL TO:   GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

### PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Check One:   ☐ Or   ☐ And   ☐ And/Joint Tenants with Right of Survivorship   Purchase Date (Mo., Day, Year)   Purchase Price

Odometer Disclosure: Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:   ☐ Mileage stated is in excess of its mechanical limits.   ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy)   Odometer Reading   NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|

| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) |
|---|---|---|

### LEGAL TITLE OWNER (LIENHOLDER)

Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

*Robert R Rehborg*

Deputy Director for Driver Safety

LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

| Lienholder Name |
|---|

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

R142422

2257715c

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.   SFN 2875 (11-2019)

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

#18 Note 3 Qusy

LEGAL DOCUMENT - KEEP IN A SAFE PLACE

## CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION

SFN 2875 (Rev. 11-2019)

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 2MFB2S3D3YR000650 | 2000 | 2000 | MIDLAND MFG. LT | SEMI-TRAILER | BELLY DUMP SE |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| STARK ENERGY INC | ND500618240 | TRAILER | 0 | 10/23/2020 |

ODOMETER READING

ODOMETER STATUS
EXEMPT

MAIL TO:   GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

### PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | | ☐ Driver's License ☐ FEIN | | Telephone Number |
|---|---|---|---|---|
| Mailing Address | City | State | ZIP Code | County |
| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | | ☐ Driver's License ☐ FEIN | | Telephone Number |
| Mailing Address | City | State | ZIP Code | County |

Check One:  ☐ Or  ☐ And  ☐ And/Joint Tenants with Right of Survivorship

Purchase Date (Mo., Day, Year)   Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked. ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (warning "odometer discrepancy)

Odometer Reading      NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s) Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

### LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert Rehborg*

Deputy Director for Driver Safety

**LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.**

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

R153755          2257715c

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.          SFN 2875 (11-2019)

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

LEGAL DOCUMENT – KEEP IN A SAFE PLACE

# CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION

SFN 2875 (Rev. 11-2019)



ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 2MFB2S3D7YR000652 | 2000 | 2000 | MIDLAND MFG. LT | SEMI-TRAILER | BELLY DUMP SE |

| OWNER'S NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| STARK ENERGY INC | ND68473856 | TRAILER | 0 | 10/23/2020 |

ODOMETER READING     ODOMETER STATUS
EXEMPT

MAIL TO:
GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

## PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | | ☐ Driver's License ☐ FEIN | | Telephone Number |
|---|---|---|---|---|
| Mailing Address | City | State | ZIP Code | County |
| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | | ☐ Driver's License ☐ FEIN | | Telephone Number |
| Mailing Address | City | State | ZIP Code | County |

Check One: ☐ Or ☐ And ☐ And/Joint Tenants with Right of Survivorship    Purchase Date (Mo., Day, Year)    Purchase Price

Odometer Disclosure: Federal and State laws require that you state the mileage in connection with the transfer of ownership.
Failure to complete or providing a false statement may result in fines and/or imprisonment.
I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following
statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy)

Odometer Reading   NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

### LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert Rehborg*
Deputy Director for Driver Safety

LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

R153752     2257715c

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.
SFN 2875 (11-2019)

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

LEGAL DOCUMENT - - KEEP IN A SAFE PLACE

# CERTIFICATE OF TITLE FOR A VEHICLE

NORTH DAKOTA DEPARTMENT OF TRANSPORTATION

SFN 2875 (Rev. 11-2019)

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 2MFB2S4D4XR000542 | 1999 | 1999 | MIDLAND MFG. LT | SEMI-TRAILER | BELLY DUMP SE |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| STARK ENERGY INC | ND807023616 | TRAILER | 0 | 10/22/2020 |

| | ODOMETER READING | ODOMETER STATUS |
|---|---|---|
| | | EXEMPT |

MAIL TO:
GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

## PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|---|
| Mailing Address | City | State | ZIP Code | County |

| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|
| Mailing Address | City | State | ZIP Code | County |

| Check One: ☐ Or ☐ And ☐ And/Joint Tenants with Right of Survivorship | Purchase Date (Mo., Day, Year) | Purchase Price |

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy)

| | Odometer Reading | NO TENTHS |
|---|---|---|

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

### LEGAL TITLE OWNER (LIENHOLDER)

Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

*Robert Rehborg*

Deputy Director for Driver Safety

**LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.**

| Lienholder Name | |
|---|---|
| Signature of Agent | Date (Mo., Day, Year) |

R142404

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.

SFN 2875 (11-2019)

2257715 C

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

#21 Note 9 *crss*

LEGAL DOCUMENT -- KEEP IN A SAFE PLACE

**CERTIFICATE OF TITLE FOR A VEHICLE**
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION
SFN 2875 (Rev. 06-16)

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1UNST4223CL109253 | 2012 | 2012 | DRAGON | SEMI-TRAILER | 150 BBL AL TRLR |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| STARK ENERGY INC | ND797816832 | TRAILER | 0 | 4/30/2019 |

ODOMETER READING

ODOMETER STATUS
EXEMPT

MAIL
TO:  GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

**PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)**

Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): ☐ Driver's License ☐ FEIN   Telephone Number

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): ☐ Driver's License ☐ FEIN   Telephone Number

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Check one:   ☐ Or   ☐ And   ☐ And/Joint Tenants with Right of Survivorship   Purchase Date (Mo., Day, Year)   Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.
I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits.   ☐ Odometer reading is not the actual mileage (**warning *odometer discrepancy**)

Odometer Reading   NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| X | | X | |
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| X | | X | |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone Number | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

**LEGAL TITLE OWNER (LIENHOLDER)**

Any lien recorded in the office of the Department of Transportation is shown below. The lienholder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*[signature]*

Deputy Director for Driver and Vehicle Services

**LIEN RELEASE**

ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

Lienholder Name

Signature of Agent   Date
X

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.

SFN 2875 (Rev. 07-2015)

P593899

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

## **EXHIBIT D**

**(Replevin Lawsuit - Seizure Order dated October 11, 2023)**

STATE OF NORTH DAKOTA                                    IN DISTRICT COURT

COUNTY OF STARK                              SOUTHWEST JUDICIAL DISTRICT

---

| | |
|---|---|
| Gate City Bank, | Case No. 45-2023-CV-689 |
| Plaintiff, | |
| v. | **ORDER FOR PREJUDGMENT SEIZURE** |
| Stark Energy, Inc., Robert Fettig, and Matthew Barrett, | |
| Defendants. | |

[¶1]    Plaintiff Gate City Bank's Motion for Prejudgment Seizure of Collateral came before this Court for hearing on October 11, 2023 at 2:30 p.m. MT pursuant to an order to show cause that was heard via reliable electronic means. Appearing for Plaintiff Gate City Bank ("Plaintiff") was Caren Stanley of the Vogel Law Firm. Appearing for Defendant Matthew Barrett ("Barrett") was Jennifer M. Gooss of the Solem Law Office. Other appearances were made as identified on the record. Based on all the files and pleadings herein, and the arguments of the parties, the Court makes the following:

## FINDINGS

[¶2]    The Defendant Stark Energy, Inc. (the "Company") is obligated to Plaintiff pursuant to the terms of the following instruments:

   a.    Loan 798942 - Promissory Note dated February 19, 2018 in the original principal sum of $40,000.00 ("Note 1"). Interest accrues on the unpaid balance of Note 1 at the rate of 5.0% per annum. Note 1 required monthly payments of $646.47 commencing on April 1, 2018 and continuing thereafter for 72 months on the 1st day of each month until March 1, 2024 when all outstanding principal plus all accrued unpaid interest was due and owing. *See* Feil Aff., **Exhibit A-1**.

b.    Loan 1275221 – Promissory Note dated November 16, 2018 in the original principal sum of $37,439.30 ("<u>Note 2</u>"). Interest accrues on the unpaid balance of Note 2 at the rate of 5.490% per annum. Note 2 required monthly payments of $869.77 commencing on December 1, 2018 and continuing thereafter for 48 months on the 1st day of each month until November 1, 2022 when all outstanding principal plus all accrued unpaid interest was due and owing. *See* Feil Aff., **<u>Exhibit A-2</u>**.

c.    Loan 1286855 – Promissory Note dated November 26, 2018 in the original principal sum of $135,000.00 ("<u>Note 3</u>"). Interest accrues on the unpaid balance of Note 3 at the initial rate of 6.500% per annum. Note 3 required monthly payments of $1,812.94 commencing on December 26, 2018 and continuing thereafter for 96 months on the 26th day of each month until November 26, 2026 when all outstanding principal plus all accrued unpaid interest was due and owing. *See* Feil Aff., **<u>Exhibit A-3</u>**.

d.    Loan 1333145 – Promissory Note dated December 31, 2018 in the original principal sum of $76,639.30 ("<u>Note 4</u>"). Interest accrues on the unpaid balance of Note 4 at the rate of 3.690% per annum. Note 4 required monthly payments of $1,063.75 commencing on February 1, 2019 and continuing thereafter for 48 months on the 1st day of each month until January 1, 2023 when all outstanding principal plus all accrued unpaid interest was due and owing. *See* Feil Aff., **<u>Exhibit A-4</u>**.

e.    Loan 1961820 – Promissory Note dated December 27, 2019 in the original principal sum of $150,144.65 ("<u>Note 5</u>"). Interest accrues on the unpaid balance of Note 5 at the rate of 5.170% per annum. Note 5 required monthly payments of $2,436.41 commencing on February 1, 2020 and continuing thereafter for 72 months on the 1st day of each month until January 1, 2026 when all outstanding principal plus all accrued unpaid interest was due and owing. *See* Feil Aff., **<u>Exhibit A-5</u>**.

f.    Loan 1993856 – Promissory Note dated January 16, 2020 in the original principal sum of $74,729.97 ("<u>Note 6</u>"). Interest accrues on the unpaid balance of Note 6 at the rate of 4.690% per annum. Note 6 required monthly payments of $1,404.54 commencing on March 1, 2020 and continuing thereafter for 60 months on the 1st day of each month until February 1, 2026 when all outstanding principal plus all accrued unpaid interest was due and owing. *See* Feil Aff., **<u>Exhibit A-6</u>**.

g.    Loan 2116648 – Promissory Note dated March 4, 2020 in the original principal sum of $100,000.00 ("<u>Note 7</u>"). Interest accrues on the unpaid balance of Note 7 at the rate of 5.000% per annum. Note 7 required monthly payments of $1,889.79 commencing on April 1, 2020 and continuing thereafter for 60 months on the 1st day of each month until

        March 1, 2025 when all outstanding principal plus all accrued unpaid interest was due and owing. *See* Feil Aff., **Exhibit A-7**.

h.    Loan 2257715 – Promissory Note dated May 14, 2020 in the original principal sum of $152,000.00 ("Note 8"). Interest accrues on the unpaid balance of Note 8 at the rate of 5.000% per annum. Note 8 required monthly payments of $2,880.54 commencing on July 1, 2020 and continuing thereafter for 60 months on the 1st day of each month until June 1, 2025 when all outstanding principal plus all accrued unpaid interest was due and owing. *See* Feil Aff., **Exhibit A-8**.

i.    Loan 2865202 – Promissory Note dated March 26, 2021 in the original principal sum of $19,379.95 ("Note 9"). Interest accrues on the unpaid balance of Note 9 at the rate of 4.000% per annum. Note 9 required monthly payments of $438.52 commencing on May 4, 2021 and continuing thereafter for 49 months on the 4th day of each month until April 4, 2025 when all outstanding principal plus all accrued unpaid interest was due and owing. *See* Feil Aff., **Exhibit A-9**.

(Note 1, Note 2, Note 3, Note 4, Note 5, Note 6, Note 7, Note 8, and Note 9 are hereinafter collectively the "Notes").

[¶3]    Defendants Robert Fettig ("Fettig") executed all of the Notes as authorized signer for the Company. *See* Feil Aff., **Exhibits A-1 to A-9**. Barrett was an additional authorized signer on behalf of the Company for Notes 1, 2, 3, and 4. *See* Feil Aff., **Exhibits A-1 to A-4**.

[¶4]    To secure the debt due on the Notes, the Company granted to Plaintiff security interests in certain titled vehicles pursuant to Commercial Security Agreement(s) corresponding to the same date as the Notes (collectively, the "Security Agreements"). *See* Feil Aff., **Exhibits B-1 through B-9**.

[¶5]    The Company's titled vehicles subject to Plaintiff's security interests are identified in the table below (hereinafter the "Titled Vehicle Collateral"):

| Note # | Collateral | VIN# |
|---|---|---|
| Note 1 | 2013 Dragon ESP LTD 200 BBL | 1UNST5343DS128172 |

| Note 2 | 2007 Kenworth | 1XKDP40X07R197151 |
|---|---|---|
| Note 3 | 2013 Dragon 200 BBL Alum. Tank Trlr<br>2013 Dragon 200 BBL Alum. Tank Trlr<br>2014 Dragon 200 BBL Alum. Tank Trlr | 1UNST5341DS128154<br>1UNST5340DS128162<br>1UNST5340ES128552 |
| Note 4 | 2012 Kenworth | 1XKWP4TX8CJ335970 |
| Note 5 | 2014 Kenworth W900<br>2013 Dragon 220 BBL Tank Trlr<br>2007 Reitnauer Trailer | 1XKWD49X1EJ413380<br>1UNST5348DS128118<br>1RNF48A247R019280 |
| Note 6 | 2014 Kenworth | 1NKDX4TX3EJ403810 |
| Note 7 | 2013 Dragon 200 BBL AL Semi-Trailer<br>2014 Dragon 200 BBL AL Semi-Trailer | 1UNST5340DS128291<br>1UNST5346ES140026 |
| Note 8 | 2016 Sidump'r Dump Trailer<br>2016 Sidump'r Dump Trailer<br>2013 Dakota MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>1999 Midland MFG Dump Trailer | 1D9FS4437GC688018<br>1D9FS4430GC688099<br>1D9SH4339DY554348<br>2MFB2S3D5YR000651<br>2MFB2S4D3YR001148<br>2MFB2S3D3YR000650<br>2MFB2S3D7YR000652<br>2MFB2S4D4XR000542 |
| Note 9 | 2012 Dragon 150 BBL AL Trailer | 1UNST4223CL109253 |

[¶6]     Plaintiff perfected its security interest in the Titled Vehicle Collateral by having its lien noted on the certificate of title or by holding possession of the original certificate of title. *See* Feil Aff., **Exhibit D**.

[¶7]     Fettig personally guaranteed to Plaintiff the payment and performance of the Company on all of the Notes pursuant to Commercial Guaranty(s) contemporaneously executed at the same day as the Notes (collectively the "Fettig Guarantees"). *See* Feil Aff., **Exhibits E-1 through E-9**.

[¶8]    Barrett personally guaranteed to Plaintiff the payment and performance of the Company on Notes 1, 2, 3, and 4 pursuant to Commercial Guaranty(s) contemporaneously executed on the same day as Notes 1, 2, 3, and 4 (collectively the "Barrett Guarantees"). *See* Feil Aff., **Exhibits F-1 through F-4**.

[¶9]    Defendants Stark Energy, Inc., Robert Fettig, and Matthew Barrett (collectively, the "Defendants') have defaulted on the Notes and the Fettig Guarantees and Barrett Guarantees by failing to pay all sums due and owing under Note 2 and Note 4 by the maturity dates and also by failing to make regular monthly payments on Notes 1, 3, and 5-9. All of the Notes have cross-default provisions. *See* Feil Aff., ¶ 8.

[¶10]   As a consequence of the defaults of the Defendants, Plaintiff accelerated the balance due and owing on the Notes and declared the same to be immediately payable. *See* Feil Aff., ¶ 9.

[¶11]   As of August 24, 2023, the indebtedness owing by the Company to the Plaintiff on the Notes is as follows:

| Note # | Origination Date | Guarantor(s) | Original Principal Amount | Total Balance Owed as of 8/17/23 | Per Diem from and after 8/17/23 |
|---|---|---|---|---|---|
| Note 1 | 2/19/2018 | Fettig Barrett | $40,000.00 | 12,744.24 | $1.52 |
| Note 2 | 11/16/2018 | Fettig Barrett | $37,439.30 | $1,099.89 | $0.12 |
| Note 3 | 11/26/2018 | Fettig Barrett | $135,000.00 | $91,490.11 | $14.62 |
| Note 4 | 12/31/2018 | Fettig Barrett | $76,639.30 | $6,644.45 | $0.53 |
| | | | **Total:** | **$111,978.69** | |
| | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Note 5 | 12/27/2019 | Fettig | $150,144.65 | $102,633.89 | $12.95 |
| Note 6 | 1/16/2020 | Fettig | $74,729.97 | $44,014.73 | $5.00 |
| Note 7 | 3/4/2020 | Fettig | $100,000.00 | $60,762.63 | $7.38 |
| Note 8 | 5/14/2020 | Fettig | $152,000.00 | $89,743.83 | $10.94 |
| Note 9 | 3/26/2021 | Fettig | $19,379.95 | $12,442.06 | $1.20 |
| | | | **Total:** | **$309,597.14** | |
| | | | | | |
| | | | **Grand Total:** | **$421,575.83** | |

*See* Feil Aff., ¶ 10.

[¶12]   Despite repeated demands, the Defendants have wholly refused and failed to discharge their obligations to the Plaintiff. *See* Feil Aff., ¶ 11.

[¶13]   The Defendants' detention of the Titled Vehicle Collateral as against the Plaintiff's demands is wrongful and the Plaintiff is entitled to immediate possession of the Titled Vehicle Collateral. The Plaintiff's interest in the Titled Vehicle Collateral and its right to possession is superior to Defendants or any person claiming through Defendants.

[¶14]   THEREFORE, for good cause shown, it is the Order of this Court as follows:

A.      The Defendants shall immediately deliver to Plaintiff the Titled Vehicle Collateral in which Plaintiff holds a security interest at a place located in Stark County as designated by Plaintiff.

B.      If the Defendants fail to deliver the Titled Vehicle Collateral to Plaintiff, Plaintiff, with such assistance from the Stark County Sheriff or other law enforcement personnel as have jurisdiction may seize the Titled Vehicle Collateral. In recovering the Titled Vehicle Collateral, Plaintiff, the Sheriff of Stark County, or other such law enforcement personnel as have jurisdiction, are permitted to enter upon the real property of Defendants, and any third parties, and force access to any structures situated thereupon in which the Titled Vehicle Collateral are located.

6

C.    After recovery of the Titled Vehicle Collateral, Plaintiff may dispose of the same by commercially reasonable means, with the proceeds to be applied first to the costs and expenses of recovery and sale, and then to the indebtedness due by the Company to Plaintiff on the Notes.

D.    The State of North Dakota is authorized to issue new titles, as necessary, for the Titled Vehicle Collateral in the name of Plaintiff or in the name of the individual or entity to which the Vehicles are sold by Plaintiff.

E.    In that the Defendants did not make a colorable argument to contest Plaintiff's Motion for Prejudgment Seizure of Collateral, this Court does not believe that any good faith basis for litigation exists with respect to Plaintiff's right to recover and dispose of the Titled Vehicle Collateral. As a consequence, Plaintiff shall not be required to post a bond as a condition precedent to recovery and/or disposition of the Titled Vehicle Collateral.

[¶15]  IT IS SO ORDERED:

10/11/2023 2:49:40 PM

BY THE COURT

_____
Judge of District Court

5223314.1

7

## **EXHIBIT E**

**(Replevin Lawsuit – Contempt Order dated November 17, 2023)**

STATE OF NORTH DAKOTA                         IN DISTRICT COURT

COUNTY OF STARK                     SOUTHWEST JUDICIAL DISTRICT

| Gate City Bank,<br><br>                           Plaintiff,<br><br>          v.<br><br>Stark Energy, Inc., Robert Fettig, and Matthew Barrett,<br><br>                           Defendants. | Case No. 45-2023-CV-00689<br><br>**CONTEMPT ORDER FOR DEFENDANTS FAILURE TO COMPLY WITH ORDER FOR PREJUDGMENT SEIZURE OF COLLATERAL DATED OCTOBER 11, 2023** |
|---|---|

[¶1]    A show cause hearing was held in the above-entitled action on the **14ᵗʰ day of November, 2023, at 10:00 A.M. MT** in the Stark County Courthouse, Dickinson, North Dakota. Plaintiff appeared through counsel, Caren Stanley of Vogel Law Firm by reliable electronic means. The Defendant Robert Gene Fettig appeared pro se. The Defendant Robert Gene Fettig was questioned under oath as to as to why Defendants have failed to deliver to Plaintiff the following personal property:

| Note # | Collateral | VIN# |
|---|---|---|
| Note 1 | 2013 Dragon ESP LTD 200 BBL | 1UNST5343DS128172 |
| Note 2 | 2007 Kenworth | 1XKDP40X07R197151 |
| Note 3 | 2013 Dragon 200 BBL Alum. Tank Trlr<br>2013 Dragon 200 BBL Alum. Tank Trlr<br>2014 Dragon 200 BBL Alum. Tank Trlr | 1UNST5341DS128154<br>1UNST5340DS128162<br>1UNST5340ES128552 |
| Note 4 | 2012 Kenworth | 1XKWP4TX8CJ335970 |
| Note 5 | 2014 Kenworth W900<br>2013 Dragon 220 BBL Tank Trlr<br>2007 Reitnauer Trailer | 1XKWD49X1EJ413380<br>1UNST5348DS128118<br>1RNF48A247R019280 |

| | | |
|---|---|---|
| Note 6 | 2014 Kenworth | 1NKDX4TX3EJ403810 |
| Note 7 | 2013 Dragon 200 BBL AL Semi-Trailer<br>2014 Dragon 200 BBL AL Semi-Trailer | 1UNST5340DS128291<br>1UNST5346ES140026 |
| Note 8 | 2016 Sidump'r Dump Trailer<br>2016 Sidump'r Dump Trailer<br>2013 Dakota MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>1999 Midland MFG Dump Trailer | 1D9FS4437GC688018<br>1D9FS4430GC688099<br>1D9SH4339DY554348<br>2MFB2S3D5YR000651<br>2MFB2S4D3YR001148<br>2MFB2S3D3YR000650<br>2MFB2S3D7YR000652<br>2MFB2S4D4XR000542 |
| Note 9 | 2012 Dragon 150 BBL AL Trailer | 1UNST4223CL109253 |

(collectively, the "Gate City Collateral").

[¶1]    Defendant Robert Gene Fettig testified under oath that he did not know what happened to the Gate City Collateral, that he did not have possession or control of the Gate City Collateral, that he did not know where it was, and that Defendants were not using the Gate City Collateral in Defendants' business operations. Defendant Robert Gene Fettig testified that a repossession company may have taken the Gate City Collateral but he was not sure.

[¶1]    The Court did not find Defendant Robert Gene Fettig's testimony to be credible.

[¶1]    Based on all of the files and pleadings herein and the testimony of Defendant Robert Gene Fettig, the Defendants Stark Energy, Inc. and Robert Gene Fettig (collectively, the "Defendants"), are found in contempt.

[¶1]    The Defendants may purge themselves of contempt within thirty (30) days of this Order by:

2

A.      Delivering the Gate City Collateral to the Plaintiff's custody and control. Defendants may contact Plaintiff's attorney, Caren Stanley of Vogel Law Firm at 701.356.6307 or cstanley@vogellaw.com to arrange for delivery of the Gate City Collateral.

B.      Delivering to the Plaintiff's counsel or the Stark County Sheriff's Department the cell phone of Defendant Robert Gene Fettig that he used in his business operations on or before November 14, 2023 (the date of the hearing). Any passcode to provide access to the cell phone shall also be provided. No data shall be removed, deleted, or otherwise altered.

C.      Fully disclose the name of the repossession company and its representative and all contact information including but not limited to phone number, email address, and mailing address.

D.      File with the Court and serve a copy to Plaintiff's counsel of a notarized affidavit of Defendant Robert Gene Fettig under penalty of perjury that: (i) discloses the information in paragraph 5(c) above; (ii) states that he does not have possession or control of the Gate City Collateral; and (iii) states he does not know where the Gate City Collateral is or what happened to it.

[¶1]    Should the Defendants fail to purge themselves of contempt, Plaintiff's attorney may submit an Affidavit of Default to be taken under advisement for the assessment of appropriate sanctions including, but not, limited to incarceration. A bench warrant issued upon the failure of Defendants to purge themselves of contempt may be issued for the incarceration of Defendant Robert Gene Fettig for a period of ten (10) days or until such time as he purges himself of contempt, whichever occurs sooner. The cash bond may be set in the amount of 25% of the anticipated judgment amount ($105,393.96) with respect to a bench warrant that is

issued upon Defendants failure to purge themselves of contempt.

11/17/2023 11:50:45 AM

Dann E. Greenwood
Judge of the District Court

5260680.1

## <u>EXHIBIT F</u>

**(Replevin Lawsuit – Replevin Judgment dated December 29, 2023)**

STATE OF NORTH DAKOTA                                IN DISTRICT COURT

COUNTY OF STARK                               SOUTHWEST JUDICIAL DISTRICT

| | |
|---|---|
| Gate City Bank,<br><br>                    Plaintiff,<br><br>        v.<br><br> Stark Energy, Inc., Robert Fettig, and Matthew Barrett,<br><br>                    Defendants. | Case No. 45-2023-CV-689<br><br><br>**JUDGMENT<br>AS TO DEFENDANTS<br>STARK ENERGY, INC.<br>AND ROBERT FETTIG** |

[¶1]    The Summons and Complaint in this matter was served upon the Defendants Stark Energy, Inc. and Robert Fettig (collectively the "<u>Defendants</u>"), and the Court, upon due proof of such service and the default of the Defendants, has ordered judgment against the Defendants.

[¶2]    THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

A.    That Defendants immediately deliver the Titled Vehicle Collateral as identified on the attached **Exhibit A** to Plaintiff's possession. If the Defendants fail to deliver the Titled Vehicle Collateral to the Plaintiff, the Plaintiff, with such assistance from the Stark County Sheriff or other law enforcement personnel as have jurisdiction, shall be permitted to seize the same. In recovering the Titled Vehicle Collateral, Plaintiff, the Sheriff of Stark County and such other law enforcement personnel as have jurisdiction, shall be permitted to enter upon the real property of the Defendants and any third parties and force access into any structures located on said real property in which the Titled Vehicle Collateral may be situated.

B.    For a judgment against Defendants, jointly and severally, in the amounts due on the Notes and the Fettig Guarantees as of December 7, 2023, in the amount of $427,438.87 together with statutory costs to be taxed and allowed by the Court in the amount of $170.00, for a total judgment of $427,608.87. Net proceeds

from disposition of the Titled Vehicle Collateral shall be applied to the judgment debt(s).

C.      That Plaintiff's security interest in the Titled Vehicle Collateral shall not merge into the judgment to be entered herein.

D.      The State of North Dakota is authorized to issue a new title, as necessary, for the Titled Vehicle Collateral in the name of Plaintiff or in the name of the individual or entity to which the Titled Vehicle Collateral is sold by Plaintiff.

E.      Plaintiff shall not be required to post a bond as a condition precedent to recovery and/or disposition of the Titled Vehicle Collateral.

[¶3]    WITNESS, the Honorable ___Dann Greenwood___, Judge of the District Court, Stark County, North Dakota, and my hand and seal of said Court.

BY: _____, Deputy
       District Court Clerk         12/29/2023 4:06:47 PM

5288571.1

2

## EXHIBIT A

## TITLED VEHICLE COLLATERAL

| Note # | Collateral | VIN# |
|---|---|---|
| Note 1 | 2013 Dragon ESP LTD 200 BBL | 1UNST5343DS128172 |
| Note 2 | 2007 Kenworth | 1XKDP40X07R197151 |
| Note 3 | 2013 Dragon 200 BBL Alum. Tank Trlr<br>2013 Dragon 200 BBL Alum. Tank Trlr<br>2014 Dragon 200 BBL Alum. Tank Trlr | 1UNST5341DS128154<br>1UNST5340DS128162<br>1UNST5340ES128552 |
| Note 4 | 2012 Kenworth | 1XKWP4TX8CJ335970 |
| Note 5 | 2014 Kenworth W900<br>2013 Dragon 220 BBL Tank Trlr<br>2007 Reitnauer Trailer | 1XKWD49X1EJ413380<br>1UNST5348DS128118<br>1RNF48A247R019280 |
| Note 6 | 2014 Kenworth | 1NKDX4TX3EJ403810 |
| Note 7 | 2013 Dragon 200 BBL AL Semi-Trailer<br>2014 Dragon 200 BBL AL Semi-Trailer | 1UNST5340DS128291<br>1UNST5346ES140026 |
| Note 8 | 2016 Sidump'r Dump Trailer<br>2016 Sidump'r Dump Trailer<br>2013 Dakota MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>1999 Midland MFG Dump Trailer | 1D9FS4437GC688018<br>1D9FS4430GC688099<br>1D9SH4339DY554348<br>2MFB2S3D5YR000651<br>2MFB2S4D3YR001148<br>2MFB2S3D3YR000650<br>2MFB2S3D7YR000652<br>2MFB2S4D4XR000542 |
| Note 9 | 2012 Dragon 150 BBL AL Trailer | 1UNST4223CL109253 |

The Titled Vehicle Collateral also includes all of the accessions, attachments, accessories, replacements, products, accounts, proceeds, etc. with respect to or arising out of these vehicles.

## EXHIBIT G-1 THROUGH G-9

**(Loan History Reports)**

## Note No. 1

**Loan Number** ██942

| Transaction Description | Effective Date | Post Date | Due Date | Balance Description | Amount | Running Balance |
|---|---|---|---|---|---|---|
| New Loan Disbursement | | | | | | |
| ██ 942 Stark | 2/20/2018 | 2/20/2018 | | Note Balance | $40,000.00 | $40,000.00 |
| Fee Receipt | 2/20/2018 | 2/20/2018 | | Credit Bureau Fee | $9.30 | |
| Fee Receipt | 2/20/2018 | 2/20/2018 | | Total | $200.00 | |
| Fee Receipt | 2/20/2018 | 2/20/2018 | | Miscellaneous Fee | $5.00 | |
| Regular Payment ██942 | 4/2/2018 | 4/2/2018 | 4/1/2018 | Note Interest | ($227.78) | |
| | | | | Note Balance | ($418.69) | $39,581.31 |
| | | | | Total | $646.47 | |
| Regular Payment ██942 | 5/1/2018 | 5/1/2018 | 5/1/2018 | Note Interest | ($159.42) | |
| | | | | Note Balance | ($487.05) | $39,094.26 |
| | | | | Total | $646.47 | |
| Regular Payment ██942 | 6/1/2018 | 6/1/2018 | 6/1/2018 | Note Interest | ($168.33) | |
| | | | | Note Balance | ($478.14) | $38,616.12 |
| | | | | Total | $646.47 | |
| Regular Payment ██942 | 7/2/2018 | 7/2/2018 | 7/1/2018 | Note Interest | ($166.26) | |
| | | | | Note Balance | ($480.21) | $38,135.91 |
| | | | | Total | $646.47 | |
| Regular Payment ██942 | 8/1/2018 | 8/1/2018 | 8/1/2018 | Note Interest | ($158.90) | |
| | | | | Note Balance | ($487.57) | $37,648.34 |
| | | | | Total | $646.47 | |
| Regular Payment ██942 | 9/1/2018 | 9/1/2018 | 9/1/2018 | Note Interest | ($162.10) | |
| | | | | Note Balance | ($484.37) | $37,163.97 |
| | | | | Total | $646.47 | |
| Regular Payment ██942 | 10/1/2018 | 10/1/2018 | 10/1/2018 | Note Interest | ($154.85) | |
| | | | | Note Balance | ($491.62) | $36,672.35 |
| | | | | Total | $646.47 | |
| Regular Payment ██942 | 11/1/2018 | 11/1/2018 | 11/1/2018 | Note Interest | ($157.89) | |
| | | | | Note Balance | ($488.58) | $36,183.77 |
| | | | | Total | $646.47 | |
| Regular Payment ██942 | 12/1/2018 | 12/1/2018 | 12/1/2018 | Note Interest | ($150.77) | |
| | | | | Note Balance | ($495.70) | $35,688.07 |
| | | | | Total | $646.47 | |
| Regular Payment ██942 | 1/2/2019 | 1/2/2019 | 1/1/2019 | Note Interest | ($158.61) | |
| | | | | Note Balance | ($487.86) | $35,200.21 |
| | | | | Total | $646.47 | |
| Regular Payment ██942 | 2/1/2019 | 2/1/2019 | 2/1/2019 | Note Interest | ($146.67) | |
| | | | | Note Balance | ($499.80) | $34,700.41 |

| | | | | | Total | $646.47 | |
|---|---|---|---|---|---|---|---|
| Regular Payment | ███942 | 3/1/2019 | 3/1/2019 | 3/1/2019 | Note Interest<br>Note Balance<br>Total | ($134.94)<br>($511.53)<br>$646.47 | $34,188.88 |
| Regular Payment | ███942 | 4/1/2019 | 4/1/2019 | 4/1/2019 | Note Interest<br>Note Balance<br>Total | ($147.21)<br>($499.26)<br>$646.47 | $33,689.62 |
| Regular Payment | ███942 | 5/1/2019 | 5/1/2019 | 5/1/2019 | Note Interest<br>Note Balance<br>Total | ($140.37)<br>($506.10)<br>$646.47 | $33,183.52 |
| Regular Payment | ███942 | 6/1/2019 | 6/1/2019 | 6/1/2019 | Note Interest<br>Note Balance<br>Total | ($142.87)<br>($503.60)<br>$646.47 | $32,679.92 |
| Regular Payment | ███942 | 7/1/2019 | 7/1/2019 | 7/1/2019 | Note Interest<br>Note Balance<br>Total | ($136.17)<br>($510.30)<br>$646.47 | $32,169.62 |
| Regular Payment | ███942 | 8/1/2019 | 8/1/2019 | 8/1/2019 | Note Interest<br>Note Balance<br>Total | ($138.51)<br>($507.96)<br>$646.47 | $31,661.66 |
| Regular Payment | ███942 | 9/3/2019 | 9/3/2019 | 9/1/2019 | Note Interest<br>Note Balance<br>Total | ($145.11)<br>($501.36)<br>$646.47 | $31,160.30 |
| Regular Payment | ███942 | 10/1/2019 | 10/1/2019 | 10/1/2019 | Note Interest<br>Note Balance<br>Total | ($121.18)<br>($525.29)<br>$646.47 | $30,635.01 |
| Regular Payment | ███942 | 11/1/2019 | 11/1/2019 | 11/1/2019 | Note Interest<br>Note Balance<br>Total | ($131.90)<br>($514.57)<br>$646.47 | $30,120.44 |
| Regular Payment | ███942 | 12/2/2019 | 12/2/2019 | 12/1/2019 | Note Interest<br>Note Balance<br>Total | ($129.69)<br>($516.78)<br>$646.47 | $29,603.66 |
| Regular Payment | ███942 | 1/2/2020 | 1/2/2020 | 1/1/2020 | Note Interest<br>Note Balance<br>Total | ($127.46)<br>($519.01)<br>$646.47 | $29,084.65 |
| Regular Payment | ███942 | 2/1/2020 | 2/1/2020 | 2/1/2020 | Note Interest<br>Note Balance<br>Total | ($121.18)<br>($525.29)<br>$646.47 | $28,559.36 |
| Regular Payment | ███942 | 3/2/2020 | 3/2/2020 | 3/1/2020 | Note Interest<br>Note Balance<br>Total | ($119.00)<br>($527.47)<br>$646.47 | $28,031.89 |
| Regular Payment | ███942 | 4/1/2020 | 4/1/2020 | 4/1/2020 | Note Interest | ($116.80) | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | Note Balance | ($529.67) | $27,502.22 |
| | | | | Total | $646.47 | |
| Payment Reversal | 4/1/2020 | 4/16/2020 | 4/1/2020 | Note Interest | $116.80 | |
| | | | | Note Balance | $529.67 | |
| | | | | Total | ($646.47) | $28,031.89 |
| Loan Modification | 4/16/2020 | 4/16/2020 | | Note Balance | $0.00 | $28,031.89 |
| Regular Payment ███942 | 6/4/2020 | 6/4/2020 | 6/1/2020 | Note Interest | ($365.97) | |
| | | | | Note Balance | ($280.50) | |
| | | | | Total | $646.47 | $27,751.39 |
| Payment Reversal | 6/4/2020 | 6/8/2020 | 6/1/2020 | Note Interest | $365.97 | |
| | | | | Note Balance | $280.50 | |
| | | | | Total | ($646.47) | $28,031.89 |
| Loan Modification | 6/8/2020 | 6/8/2020 | | Note Balance | $0.00 | $28,031.89 |
| Loan Modification | 6/29/2020 | 6/29/2020 | | Note Balance | $0.00 | $28,031.89 |
| Regular Payment ███942 | 8/1/2020 | 8/1/2020 | 8/1/2020 | Note Interest | ($591.79) | |
| | | | | Note Balance | ($54.68) | |
| | | | | Total | $646.47 | $27,977.21 |
| Regular Payment ███942 | 9/1/2020 | 9/1/2020 | 9/1/2020 | Note Interest | ($120.45) | |
| | | | | Note Balance | ($526.02) | |
| | | | | Total | $646.47 | $27,451.19 |
| Regular Payment ███942 | 10/1/2020 | 10/1/2020 | 10/1/2020 | Note Interest | ($114.38) | |
| | | | | Note Balance | ($532.09) | |
| | | | | Total | $646.47 | $26,919.10 |
| Regular Payment ███942 | 11/2/2020 | 11/2/2020 | 11/1/2020 | Note Interest | ($119.64) | |
| | | | | Note Balance | ($526.83) | |
| | | | | Total | $646.47 | $26,392.27 |
| Regular Payment ███942 | 12/1/2020 | 12/1/2020 | 12/1/2020 | Note Interest | ($106.31) | |
| | | | | Note Balance | ($540.16) | |
| | | | | Total | $646.47 | $25,852.11 |
| Regular Payment ███942 | 1/2/2021 | 1/2/2021 | 1/1/2021 | Note Interest | ($114.89) | |
| | | | | Note Balance | ($531.58) | |
| | | | | Total | $646.47 | $25,320.53 |
| Regular Payment ███942 | 2/1/2021 | 2/1/2021 | 2/1/2021 | Note Interest | ($105.51) | |
| | | | | Note Balance | ($540.96) | |
| | | | | Total | $646.47 | $24,779.57 |
| Regular Payment ███942 | 3/1/2021 | 3/1/2021 | 3/1/2021 | Note Interest | ($96.36) | |
| | | | | Note Balance | ($550.11) | |
| | | | | Total | $646.47 | $24,229.46 |
| Regular Payment ███942 | 4/1/2021 | 4/1/2021 | 4/1/2021 | Note Interest | ($104.32) | |
| | | | | Note Balance | ($542.15) | $23,687.31 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | Total | $646.47 | |
| Regular Payment ▇942 | 5/1/2021 | 5/1/2021 | 5/1/2021 | Note Interest | ($98.70) | |
| | | | | Note Balance | ($547.77) | $23,139.54 |
| | | | | Total | $646.47 | |
| Regular Payment ▇942 | 6/1/2021 | 6/1/2021 | 6/1/2021 | Note Interest | ($99.63) | |
| | | | | Note Balance | ($546.84) | $22,592.70 |
| | | | | Total | $646.47 | |
| Regular Payment ▇942 | 7/1/2021 | 7/1/2021 | 7/1/2021 | Note Interest | ($94.13) | |
| | | | | Note Balance | ($552.34) | $22,040.36 |
| | | | | Total | $646.47 | |
| Regular Payment ▇942 | 8/2/2021 | 8/2/2021 | 8/1/2021 | Note Interest | ($97.96) | |
| | | | | Note Balance | ($548.51) | $21,491.85 |
| | | | | Total | $646.47 | |
| Regular Payment ▇942 | 9/1/2021 | 9/1/2021 | 9/1/2021 | Note Interest | ($89.55) | |
| | | | | Note Balance | ($556.92) | $20,934.93 |
| | | | | Total | $646.47 | |
| Regular Payment ▇942 | 10/6/2021 | 10/6/2021 | 10/1/2021 | Note Interest | ($101.77) | |
| | | | | Note Balance | ($544.70) | $20,390.23 |
| | | | | Total | $646.47 | |
| Regular Payment ▇942 | 11/1/2021 | 11/1/2021 | 11/1/2021 | Note Interest | ($73.63) | |
| | | | | Note Balance | ($572.84) | $19,817.39 |
| | | | | Total | $646.47 | |
| Regular Payment ▇942 | 12/10/2021 | 12/10/2021 | 12/1/2021 | Note Interest | ($107.34) | |
| | | | | Note Balance | ($539.13) | $19,278.26 |
| | | | | Total | $646.47 | |
| Payment Reversal | 12/10/2021 | 12/13/2021 | 12/1/2021 | Note Interest | $107.34 | |
| | | | | Note Balance | $539.13 | $19,817.39 |
| | | | | Total | ($646.47) | |
| Regular Payment ▇942 | 12/13/2021 | 12/13/2021 | 12/1/2021 | Note Interest | ($115.60) | |
| | | | | Note Balance | ($530.87) | $19,286.52 |
| | | | | Total | $646.47 | |
| Regular Payment ▇942 | 1/10/2022 | 1/10/2022 | 1/1/2022 | Note Interest | ($75.00) | |
| | | | | Note Balance | ($571.47) | $18,715.05 |
| | | | | Total | $646.47 | |
| Regular Payment ▇942 | 2/10/2022 | 2/10/2022 | 2/1/2022 | Note Interest | ($80.58) | |
| | | | | Note Balance | ($565.89) | $18,149.16 |
| | | | | Total | $646.47 | |
| Regular Payment ▇942 | 3/10/2022 | 3/10/2022 | 3/1/2022 | Note Interest | ($70.58) | |
| | | | | Note Balance | ($575.89) | $17,573.27 |
| | | | | Total | $646.47 | |
| Regular Payment ▇942 | 4/11/2022 | 4/11/2022 | 4/1/2022 | Note Interest | ($78.11) | |

| Transaction | Date | Date | Due Date | Description | Amount | Balance |
|---|---|---|---|---|---|---|
| | | | | Note Balance | ($568.36) | $17,004.91 |
| | | | | Total | $646.47 | |
| Regular Payment ██942 | 5/10/2022 | 5/10/2022 | 5/1/2022 | Note Interest | ($68.49) | |
| | | | | Note Balance | ($577.98) | $16,426.93 |
| | | | | Total | $646.47 | |
| Regular Payment ██942 | 6/10/2022 | 6/10/2022 | 6/1/2022 | Note Interest | ($70.72) | |
| | | | | Note Balance | ($575.75) | $15,851.18 |
| | | | | Total | $646.47 | |
| Regular Payment ██942 | 7/11/2022 | 7/11/2022 | 7/1/2022 | Note Interest | ($68.25) | |
| | | | | Note Balance | ($578.22) | $15,272.96 |
| | | | | Total | $646.47 | |
| Late Charge Assessment | 8/11/2022 | 8/11/2022 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 9/12/2022 | 9/12/2022 | | Late Charge Balance | $10.00 | |
| Regular Payment | 9/21/2022 | 9/21/2022 | 8/1/2022 | Note Interest | ($152.73) | |
| | | | | Note Balance | ($1,786.68) | $13,486.28 |
| | | | | Late Charge Balance | ($10.00) | |
| | | | 9/1/2022 | Late Charge Balance | ($10.00) | |
| | | | | Total | $1,959.41 | |
| Late Charge Assessment | 11/12/2022 | 11/12/2022 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 12/12/2022 | 12/12/2022 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 1/11/2023 | 1/11/2023 | | Late Charge Balance | $10.00 | |
| Escrow Receipt CPI PREMIUM ACCT# ██942 | 1/31/2023 | 1/31/2023 | | Escrow Balance | $0.00 | $0.00 |
| Escrow Disbursement CPI PREMIUM  ACCT# ██942 | 1/31/2023 | 1/31/2023 | | Escrow Balance | ($1,552.00) | ($1,552.00) |
| Late Charge Assessment | 2/11/2023 | 2/11/2023 | | Late Charge Balance | $10.00 | |
| Regular Payment | 2/22/2023 | 2/22/2023 | 11/1/2022 | Note Interest | ($288.46) | |
| | | | | Note Balance | ($358.01) | $13,128.27 |
| | | | | Total | $646.47 | |
| Late Charge Assessment | 3/11/2023 | 3/11/2023 | | Late Charge Balance | $10.00 | |
| Regular Payment | 3/31/2023 | 3/31/2023 | 12/1/2022 | Note Interest | ($67.46) | |
| | | | | Note Balance | ($579.01) | $12,549.26 |
| | | | | Total | $646.47 | |
| Late Charge Assessment | 4/11/2023 | 4/11/2023 | | Late Charge Balance | $10.00 | |
| Regular Payment | 4/28/2023 | 5/1/2023 | 1/1/2023 | Note Interest | ($48.81) | |
| | | | | Note Balance | ($597.66) | $11,951.60 |
| | | | | Total | $646.47 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Late Charge Assessment | 5/11/2023 | 5/11/2023 | | Late Charge Balance | $10.00 | |
| Regular Payment | 5/30/2023 | 5/31/2023 | 2/1/2023 | Note Interest | ($53.11) | |
| | | | | Note Balance | ($981.26) | $10,970.34 |
| | | | | Total | $1,034.37 | |
| Late Charge Assessment | 6/12/2023 | 6/12/2023 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 7/11/2023 | 7/11/2023 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 8/11/2023 | 8/11/2023 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 9/11/2023 | 9/11/2023 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 10/11/2023 | 10/11/2023 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 11/13/2023 | 11/13/2023 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 12/11/2023 | 12/11/2023 | | Late Charge Balance | $10.00 | |
| Escrow Disbursement CPI Premium | 1/3/2024 | 1/3/2024 | | Escrow Balance | ($773.00) | ($2,325.00) |
| Late Charge Assessment | 1/11/2024 | 1/11/2024 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 2/12/2024 | 2/12/2024 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 3/11/2024 | 3/11/2024 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 4/11/2024 | 4/11/2024 | | Late Charge Balance | $10.00 | |

## Note No. 2

Loan Number ███ 221

| Transaction Description | Effective Date | Post Date | Due Date | Balance Description | Amount | Running Balance |
|---|---|---|---|---|---|---|
| New Loan Disbursement ███ 221 Stark | 11/16/2018 | 11/20/2018 | | Note Balance | $37,300.00 | $ 37,300.00 |
| Financed Disbursement ███ 221 Stark | 11/16/2018 | 11/20/2018 | | Note Balance | $125.00 | $ 37,425.00 |
| Financed Disbursement ███ 221 Stark | 11/16/2018 | 11/20/2018 | | Note Balance | $9.30 | $ 37,434.30 |
| | | | | Credit Bureau Financed | $0.00 | |
| | | | | Total | ($9.30) | |
| Financed Disbursement ███ 221 Stark | 11/16/2018 | 11/20/2018 | | Note Balance | $5.00 | $ 37,439.30 |
| | | | | Miscellaneous Financed | $0.00 | |
| | | | | Total | ($5.00) | |
| Regular Payment ███ 221 | 12/1/2018 | 12/1/2018 | 12/1/2018 | Note Interest | ($85.64) | |
| | | | | Note Balance | ($784.13) | $ 36,655.17 |
| | | | | Total | $869.77 | |
| Regular Payment ███ 221 | 1/2/2019 | 1/2/2019 | 1/1/2019 | Note Interest | ($178.88) | |
| | | | | Note Balance | ($690.89) | $ 35,964.28 |
| | | | | Total | $869.77 | |
| Regular Payment ███ 221 | 2/1/2019 | 2/1/2019 | 2/1/2019 | Note Interest | ($164.54) | |
| | | | | Note Balance | ($705.23) | $ 35,259.05 |
| | | | | Total | $869.77 | |
| Regular Payment ███ 221 | 3/1/2019 | 3/1/2019 | 3/1/2019 | Note Interest | ($150.55) | |
| | | | | Note Balance | ($719.22) | $ 34,539.83 |
| | | | | Total | $869.77 | |
| Regular Payment ███ 221 | 4/1/2019 | 4/1/2019 | 4/1/2019 | Note Interest | ($163.29) | |
| | | | | Note Balance | ($706.48) | $ 33,833.35 |
| | | | | Total | $869.77 | |
| Regular Payment ███ 221 | 5/1/2019 | 5/1/2019 | 5/1/2019 | Note Interest | ($154.79) | |
| | | | | Note Balance | ($714.98) | $ 33,118.37 |
| | | | | Total | $869.77 | |
| Regular Payment ███ 221 | 6/1/2019 | 6/1/2019 | 6/1/2019 | Note Interest | ($156.56) | |
| | | | | Note Balance | ($713.21) | $ 32,405.16 |
| | | | | Total | $869.77 | |
| Regular Payment ███ 221 | 7/1/2019 | 7/1/2019 | 7/1/2019 | Note Interest | ($148.26) | |
| | | | | Note Balance | ($721.51) | $ 31,683.65 |
| | | | | Total | $869.77 | |
| Regular Payment ███ 221 | 8/1/2019 | 8/1/2019 | 8/1/2019 | Note Interest | ($149.78) | |
| | | | | Note Balance | ($719.99) | $ 30,963.66 |
| | | | | Total | $869.77 | |
| Regular Payment ███ 221 | 9/3/2019 | 9/3/2019 | 9/1/2019 | Note Interest | ($155.83) | |
| | | | | Note Balance | ($713.94) | $ 30,249.72 |
| | | | | Total | $869.77 | |

| Regular Payment ▇ 221 | 10/1/2019 | 10/1/2019 | 10/1/2019 | Note Interest | ($129.16) | |
| | | | | Note Balance | ($740.61) | $ 29,509.11 |
| | | | | Total | $869.77 | |
| Regular Payment ▇ 221 | 11/1/2019 | 11/1/2019 | 11/1/2019 | Note Interest | ($139.51) | |
| | | | | Note Balance | ($730.26) | $ 28,778.85 |
| | | | | Total | $869.77 | |
| Regular Payment ▇ 221 | 12/2/2019 | 12/2/2019 | 12/1/2019 | Note Interest | ($136.05) | |
| | | | | Note Balance | ($733.72) | $ 28,045.13 |
| | | | | Total | $869.77 | |
| Regular Payment ▇ 221 | 1/2/2020 | 1/2/2020 | 1/1/2020 | Note Interest | ($132.58) | |
| | | | | Note Balance | ($737.19) | $ 27,307.94 |
| | | | | Total | $869.77 | |
| Regular Payment ▇ 221 | 2/1/2020 | 2/1/2020 | 2/1/2020 | Note Interest | ($124.94) | |
| | | | | Note Balance | ($744.83) | $ 26,563.11 |
| | | | | Total | $869.77 | |
| Regular Payment ▇ 221 | 3/2/2020 | 3/2/2020 | 3/1/2020 | Note Interest | ($121.52) | |
| | | | | Note Balance | ($748.25) | $ 25,814.86 |
| | | | | Total | $869.77 | |
| Regular Payment ▇ 221 | 4/1/2020 | 4/1/2020 | 4/1/2020 | Note Interest | ($118.11) | |
| | | | | Note Balance | ($751.66) | $ 25,063.20 |
| | | | | Total | $869.77 | |
| Payment Reversal | 4/1/2020 | 4/16/2020 | 4/1/2020 | Note Interest | $118.11 | |
| | | | | Note Balance | $751.66 | $ 25,814.86 |
| | | | | Total | ($869.77) | |
| Loan Modification | 4/16/2020 | 4/16/2020 | | Note Balance | $0.00 | $ 25,814.86 |
| Regular Payment ▇ 221 | 6/15/2020 | 6/15/2020 | 6/15/2020 | Note Interest | ($413.36) | |
| | | | | Note Balance | ($456.41) | $ 25,358.45 |
| | | | | Total | $869.77 | |
| Payment Reversal | 6/15/2020 | 6/17/2020 | 6/15/2020 | Note Interest | $413.36 | |
| | | | | Note Balance | $456.41 | $ 25,814.86 |
| | | | | Total | ($869.77) | |
| Loan Modification | 6/17/2020 | 6/17/2020 | | Note Balance | $0.00 | $ 25,814.86 |
| Loan Modification | 6/29/2020 | 6/29/2020 | | Note Balance | $0.00 | $ 25,814.86 |
| Regular Payment ▇ 221 | 8/15/2020 | 8/15/2020 | 8/15/2020 | Note Interest | ($653.51) | |
| | | | | Note Balance | ($216.26) | $ 25,598.60 |
| | | | | Total | $869.77 | |
| Regular Payment ▇ 221 | 9/15/2020 | 9/15/2020 | 9/15/2020 | Note Interest | ($121.01) | |
| | | | | Note Balance | ($748.76) | $ 24,849.84 |
| | | | | Total | $869.77 | |
| Regular Payment ▇ 221 | 10/15/2020 | 10/15/2020 | 10/15/2020 | Note Interest | ($113.69) | |
| | | | | Note Balance | ($756.08) | $ 24,093.76 |
| | | | | Total | $869.77 | |
| Regular Payment ▇ 221 | 11/16/2020 | 11/16/2020 | 11/15/2020 | Note Interest | ($117.58) | |

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
|  |  |  |  | Note Balance | ($752.19) | $ 23,341.57 |
|  |  |  |  | Total | $869.77 |  |
| Regular Payment ■ 221 | 12/15/2020 | 12/15/2020 | 12/15/2020 | Note Interest | ($103.23) |  |
|  |  |  |  | Note Balance | ($766.54) | $ 22,575.03 |
|  |  |  |  | Total | $869.77 |  |
| Regular Payment ■ 221 | 1/15/2021 | 1/15/2021 | 1/15/2021 | Note Interest | ($106.72) |  |
|  |  |  |  | Note Balance | ($763.05) | $ 21,811.98 |
|  |  |  |  | Total | $869.77 |  |
| Regular Payment ■ 221 | 2/15/2021 | 2/15/2021 | 2/15/2021 | Note Interest | ($103.12) |  |
|  |  |  |  | Note Balance | ($766.65) | $ 21,045.33 |
|  |  |  |  | Total | $869.77 |  |
| Regular Payment ■ 221 | 3/15/2021 | 3/15/2021 | 3/15/2021 | Note Interest | ($89.86) |  |
|  |  |  |  | Note Balance | ($779.91) | $ 20,265.42 |
|  |  |  |  | Total | $869.77 |  |
| Regular Payment ■ 221 | 4/15/2021 | 4/15/2021 | 4/15/2021 | Note Interest | ($95.80) |  |
|  |  |  |  | Note Balance | ($773.97) | $ 19,491.45 |
|  |  |  |  | Total | $869.77 |  |
| Regular Payment ■ 221 | 5/15/2021 | 5/15/2021 | 5/15/2021 | Note Interest | ($89.18) |  |
|  |  |  |  | Note Balance | ($780.59) | $ 18,710.86 |
|  |  |  |  | Total | $869.77 |  |
| Regular Payment ■ 221 | 6/15/2021 | 6/15/2021 | 6/15/2021 | Note Interest | ($88.45) |  |
|  |  |  |  | Note Balance | ($781.32) | $ 17,929.54 |
|  |  |  |  | Total | $869.77 |  |
| Regular Payment ■ 221 | 7/15/2021 | 7/15/2021 | 7/15/2021 | Note Interest | ($82.03) |  |
|  |  |  |  | Note Balance | ($787.74) | $ 17,141.80 |
|  |  |  |  | Total | $869.77 |  |
| Regular Payment ■ 221 | 8/16/2021 | 8/16/2021 | 8/15/2021 | Note Interest | ($83.65) |  |
|  |  |  |  | Note Balance | ($786.12) | $ 16,355.68 |
|  |  |  |  | Total | $869.77 |  |
| Regular Payment ■ 221 | 9/15/2021 | 9/15/2021 | 9/15/2021 | Note Interest | ($74.83) |  |
|  |  |  |  | Note Balance | ($794.94) | $ 15,560.74 |
|  |  |  |  | Total | $869.77 |  |
| Regular Payment ■ 221 | 10/15/2021 | 10/15/2021 | 10/15/2021 | Note Interest | ($71.19) |  |
|  |  |  |  | Note Balance | ($798.58) | $ 14,762.16 |
|  |  |  |  | Total | $869.77 |  |
| Regular Payment ■ 221 | 11/15/2021 | 11/15/2021 | 11/15/2021 | Note Interest | ($69.79) |  |
|  |  |  |  | Note Balance | ($799.98) | $ 13,962.18 |
|  |  |  |  | Total | $869.77 |  |
| Regular Payment ■ 221 | 12/24/2021 | 12/24/2021 | 12/15/2021 | Note Interest | ($83.04) |  |
|  |  |  |  | Note Balance | ($786.73) | $ 13,175.45 |
|  |  |  |  | Total | $869.77 |  |
| Regular Payment ■ 221 | 1/24/2022 | 1/24/2022 | 1/15/2022 | Note Interest | ($62.29) |  |
|  |  |  |  | Note Balance | ($807.48) | $ 12,367.97 |
|  |  |  |  | Total | $869.77 |  |
| Regular Payment ■ 221 | 2/24/2022 | 2/24/2022 | 2/15/2022 | Note Interest | ($58.47) |  |

| Transaction | Date | Date | Date | Type | Amount | | Balance |
|---|---|---|---|---|---|---|---|
| | | | | Note Balance | ($811.30) | $ | 11,556.67 |
| | | | | Total | $869.77 | | |
| Regular Payment ▮221 | 3/24/2022 | 3/24/2022 | 3/15/2022 | Note Interest | ($49.34) | | |
| | | | | Note Balance | ($820.43) | $ | 10,736.24 |
| | | | | Total | $869.77 | | |
| Regular Payment ▮221 | 4/25/2022 | 4/25/2022 | 4/15/2022 | Note Interest | ($52.40) | | |
| | | | | Note Balance | ($817.37) | $ | 9,918.87 |
| | | | | Total | $869.77 | | |
| Regular Payment ▮221 | 5/24/2022 | 5/24/2022 | 5/15/2022 | Note Interest | ($43.86) | | |
| | | | | Note Balance | ($825.91) | $ | 9,092.96 |
| | | | | Total | $869.77 | | |
| Regular Payment ▮221 | 6/24/2022 | 6/24/2022 | 6/15/2022 | Note Interest | ($42.99) | | |
| | | | | Note Balance | ($826.78) | $ | 8,266.18 |
| | | | | Total | $869.77 | | |
| Late Charge Assessment | 7/25/2022 | 7/25/2022 | | Late Charge Balance | $10.00 | | |
| Late Charge Assessment | 8/25/2022 | 8/25/2022 | | Late Charge Balance | $10.00 | | |
| Regular Payment | 9/21/2022 | 9/21/2022 | 7/15/2022 | Note Interest | ($112.19) | | |
| | | | | Note Balance | ($2,497.12) | $ | 5,769.06 |
| | | | | Late Charge Balance | ($10.00) | | |
| | | | 8/15/2022 | Late Charge Balance | ($10.00) | | |
| | | | | Total | $2,629.31 | | |
| Late Charge Assessment | 10/25/2022 | 10/25/2022 | | Late Charge Balance | $10.00 | | |
| Late Charge Assessment | 11/25/2022 | 11/25/2022 | | Late Charge Balance | $10.00 | | |
| Regular Payment | 12/15/2022 | 12/15/2022 | 10/15/2022 | Note Interest | ($74.78) | | |
| | | | | Note Balance | ($814.99) | $ | 4,954.07 |
| | | | | Total | $889.77 | | |
| Late Charge Assessment | 12/27/2022 | 12/27/2022 | | Late Charge Balance | $10.00 | | |
| Late Charge Assessment | 1/25/2023 | 1/25/2023 | | Late Charge Balance | $10.00 | | |
| Escrow Receipt Force Placed Insurance Premium | 2/1/2023 | 2/1/2023 | | Escrow Balance | $0.00 | $ | - |
| Escrow Disbursement Force Placed Insurance Premium | 2/1/2023 | 2/1/2023 | | Escrow Balance | ($209.00) | $ | (209.00) |
| Regular Payment | 2/22/2023 | 2/22/2023 | 11/15/2022 | Note Interest | ($52.13) | | |
| | | | | Note Balance | ($817.64) | $ | 4,136.43 |
| | | | | Total | $869.77 | | |
| Late Charge Assessment | 2/25/2023 | 2/25/2023 | | Late Charge Balance | $10.00 | | |
| Late Charge Assessment | 3/25/2023 | 3/25/2023 | | Late Charge Balance | $10.00 | | |
| Regular Payment | 4/10/2023 | 4/10/2023 | 12/15/2022 | Note Interest | ($29.65) | | |
| | | | | Note Balance | ($840.12) | $ | 3,296.31 |
| | | | | Total | $869.77 | | |
| Unapplied Receipt | 4/21/2023 | 4/21/2023 | | Unapplied Balance | $849.77 | | |

| Regular Payment | 4/21/2023 | 4/21/2023 | 1/15/2023 | Note Interest | ($5.53) | |
| | | | | Note Balance | ($844.24) $ | 2,452.07 |
| | | | | Total | $849.77 | |
| Unapplied Disbursement | 4/21/2023 | 4/21/2023 | | Unapplied Balance | ($849.77) | |
| Late Charge Assessment | 4/25/2023 | 4/25/2023 | | Late Charge Balance | $1.96 | |
| Late Charge Assessment | 5/25/2023 | 5/25/2023 | | Late Charge Balance | $1.14 | |
| Regular Payment | 5/30/2023 | 5/31/2023 | 2/15/2023 | Note Interest | ($14.58) | |
| | | | | Note Balance | ($1,635.38) $ | 816.69 |
| | | | | Total | $1,649.96 | |
| Late Charge Assessment | 6/26/2023 | 6/26/2023 | | Late Charge Balance | $0.76 | |
| Late Charge Assessment | 7/25/2023 | 7/25/2023 | | Late Charge Balance | $0.37 | |
| Late Charge Assessment | 8/25/2023 | 8/25/2023 | | Late Charge Balance | $0.39 | |
| Late Charge Assessment | 9/25/2023 | 9/25/2023 | | Late Charge Balance | $0.39 | |
| Late Charge Assessment | 10/25/2023 | 10/25/2023 | | Late Charge Balance | $0.37 | |
| Late Charge Assessment | 11/25/2023 | 11/25/2023 | | Late Charge Balance | $0.39 | |
| Late Charge Assessment | 12/26/2023 | 12/26/2023 | | Late Charge Balance | $0.37 | |
| Late Charge Assessment | 1/25/2024 | 1/25/2024 | | Late Charge Balance | $0.39 | |
| Late Charge Assessment | 2/26/2024 | 2/26/2024 | | Late Charge Balance | $0.39 | |
| Late Charge Assessment | 3/25/2024 | 3/25/2024 | | Late Charge Balance | $0.36 | |

## Note No. 3

**Loan Number** ██855

| Transaction Description | Effective Date | Post Date | Due Date | Balance Description | Amount | Running Balance |
|---|---|---|---|---|---|---|
| New Loan Disbursement ██855 Stark Energy | 11/26/2018 | 11/26/2018 | | Note Balance | $134,310.00 | $134,310.00 |
| Financed Disbursement ██855 Stark Energy | 11/26/2018 | 11/26/2018 | | Note Balance | $675.00 | $134,985.00 |
| Financed Disbursement ██855 Stark Energy | 11/26/2018 | 11/26/2018 | | Note Balance | $15.00 | $135,000.00 |
| | | | | Miscellaneous Financed | $0.00 | |
| | | | | Total | ($15.00) | |
| Regular Payment ██855 | 12/26/2018 | 12/26/2018 | 12/26/2018 | Note Interest | ($731.25) | |
| | | | | Note Balance | ($1,081.69) | $133,918.31 |
| | | | | Total | $1,812.94 | |
| Regular Payment ██855 | 1/26/2019 | 1/26/2019 | 1/26/2019 | Note Interest | ($749.57) | |
| | | | | Note Balance | ($1,063.37) | $132,854.94 |
| | | | | Total | $1,812.94 | |
| Regular Payment ██855 | 2/26/2019 | 2/26/2019 | 2/26/2019 | Note Interest | ($743.62) | |
| | | | | Note Balance | ($1,069.32) | $131,785.62 |
| | | | | Total | $1,812.94 | |
| Regular Payment ██855 | 3/26/2019 | 3/26/2019 | 3/26/2019 | Note Interest | ($666.25) | |
| | | | | Note Balance | ($1,146.69) | $130,638.93 |
| | | | | Total | $1,812.94 | |
| Regular Payment ██855 | 4/26/2019 | 4/26/2019 | 4/26/2019 | Note Interest | ($731.21) | |
| | | | | Note Balance | ($1,081.73) | $129,557.20 |
| | | | | Total | $1,812.94 | |
| Regular Payment ██855 | 5/28/2019 | 5/28/2019 | 5/26/2019 | Note Interest | ($748.56) | |
| | | | | Note Balance | ($1,064.38) | $128,492.82 |
| | | | | Total | $1,812.94 | |
| Regular Payment ██855 | 6/26/2019 | 6/26/2019 | 6/26/2019 | Note Interest | ($672.80) | |
| | | | | Note Balance | ($1,140.14) | $127,352.68 |
| | | | | Total | $1,812.94 | |
| Regular Payment ██855 | 7/26/2019 | 7/26/2019 | 7/26/2019 | Note Interest | ($689.83) | |
| | | | | Note Balance | ($1,123.11) | $126,229.57 |
| | | | | Total | $1,812.94 | |
| Regular Payment ██855 | 8/26/2019 | 8/26/2019 | 8/26/2019 | Note Interest | ($706.53) | |
| | | | | Note Balance | ($1,106.41) | $125,123.16 |
| | | | | Total | $1,812.94 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Regular Payment ███ 855 | 9/26/2019 | 9/26/2019 | 9/26/2019 | Note Interest<br>Note Balance<br>Total | ($700.34)<br>($1,112.60)<br>$1,812.94 | $124,010.56 |
| Regular Payment ███ 855 | 10/26/2019 | 10/26/2019 | 10/26/2019 | Note Interest<br>Note Balance<br>Total | ($671.73)<br>($1,141.21)<br>$1,812.94 | $122,869.35 |
| Regular Payment ███ 855 | 11/26/2019 | 11/26/2019 | 11/26/2019 | Note Interest<br>Note Balance<br>Total | ($687.72)<br>($1,125.22)<br>$1,812.94 | $121,744.13 |
| Regular Payment ███ 855 | 12/26/2019 | 12/26/2019 | 12/26/2019 | Note Interest<br>Note Balance<br>Total | ($659.45)<br>($1,153.49)<br>$1,812.94 | $120,590.64 |
| Regular Payment ███ 855 | 1/27/2020 | 1/27/2020 | 1/26/2020 | Note Interest<br>Note Balance<br>Total | ($696.75)<br>($1,116.19)<br>$1,812.94 | $119,474.45 |
| Regular Payment ███ 855 | 2/26/2020 | 2/26/2020 | 2/26/2020 | Note Interest<br>Note Balance<br>Total | ($647.15)<br>($1,165.79)<br>$1,812.94 | $118,308.66 |
| Regular Payment ███ 855 | 3/26/2020 | 3/26/2020 | 3/26/2020 | Note Interest<br>Note Balance<br>Total | ($619.48)<br>($1,193.46)<br>$1,812.94 | $117,115.20 |
| Loan Modification | 4/16/2020 | 4/16/2020 | | Note Balance | $0.00 | $117,115.20 |
| Loan Modification | 6/17/2020 | 6/17/2020 | | Note Balance | $0.00 | $117,115.20 |
| Loan Modification | 6/29/2020 | 6/29/2020 | | Note Balance | $0.00 | $117,115.20 |
| Regular Payment ███ 855 | 8/26/2020 | 8/26/2020 | 8/26/2020 | Note Interest | ($1,812.94) | |
| Regular Payment ███ 855 | 9/26/2020 | 9/26/2020 | 9/26/2020 | Note Interest | ($1,812.94) | |
| Regular Payment ███ 855 | 10/26/2020 | 10/26/2020 | 10/26/2020 | Note Interest<br>Note Balance<br>Total | ($899.32)<br>($913.62)<br>$1,812.94 | $116,201.58 |
| Regular Payment ███ 855 | 11/27/2020 | 11/27/2020 | 11/26/2020 | Note Interest<br>Note Balance<br>Total | ($671.39)<br>($1,141.55)<br>$1,812.94 | $115,060.03 |
| Regular Payment ███ 855 | 12/26/2020 | 12/26/2020 | 12/26/2020 | Note Interest<br>Note Balance<br>Total | ($602.46)<br>($1,210.48)<br>$1,812.94 | $113,849.55 |
| Regular Payment ███ 855 | 1/26/2021 | 1/26/2021 | 1/26/2021 | Note Interest<br>Note Balance<br>Total | ($637.24)<br>($1,175.70)<br>$1,812.94 | $112,673.85 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Regular Payment ▮855 | 2/26/2021 | 2/26/2021 | 2/26/2021 | Note Interest<br>Note Balance<br>Total | ($630.67)<br>($1,182.27)<br>$1,812.94 | $111,491.58 |
| Regular Payment ▮855 | 3/26/2021 | 3/26/2021 | 3/26/2021 | Note Interest<br>Note Balance<br>Total | ($563.65)<br>($1,249.29)<br>$1,812.94 | $110,242.29 |
| Regular Payment ▮855 | 4/26/2021 | 4/26/2021 | 4/26/2021 | Note Interest<br>Note Balance<br>Total | ($617.05)<br>($1,195.89)<br>$1,812.94 | $109,046.40 |
| Regular Payment ▮855 | 5/26/2021 | 5/26/2021 | 5/26/2021 | Note Interest<br>Note Balance<br>Total | ($590.67)<br>($1,222.27)<br>$1,812.94 | $107,824.13 |
| Regular Payment ▮855 | 6/26/2021 | 6/26/2021 | 6/26/2021 | Note Interest<br>Note Balance<br>Total | ($603.51)<br>($1,209.43)<br>$1,812.94 | $106,614.70 |
| Regular Payment ▮855 | 7/26/2021 | 7/26/2021 | 7/26/2021 | Note Interest<br>Note Balance<br>Total | ($577.50)<br>($1,235.44)<br>$1,812.94 | $105,379.26 |
| Regular Payment ▮855 | 8/26/2021 | 8/26/2021 | 8/26/2021 | Note Interest<br>Note Balance<br>Total | ($589.83)<br>($1,223.11)<br>$1,812.94 | $104,156.15 |
| Regular Payment ▮855 | 9/27/2021 | 9/27/2021 | 9/26/2021 | Note Interest<br>Note Balance<br>Total | ($601.79)<br>($1,211.15)<br>$1,812.94 | $102,945.00 |
| Regular Payment ▮855 | 10/26/2021 | 10/26/2021 | 10/26/2021 | Note Interest<br>Note Balance<br>Total | ($539.03)<br>($1,273.91)<br>$1,812.94 | $101,671.09 |
| Regular Payment ▮855 | 11/26/2021 | 11/26/2021 | 11/26/2021 | Note Interest<br>Note Balance<br>Total | ($569.08)<br>($1,243.86)<br>$1,812.94 | $100,427.23 |
| Regular Payment ▮855 | 1/4/2022 | 1/4/2022 | 12/26/2021 | Note Interest<br>Note Balance<br>Total | ($707.17)<br>($1,105.77)<br>$1,812.94 | $99,321.46 |
| Regular Payment ▮855 | 2/4/2022 | 2/4/2022 | 1/26/2022 | Note Interest<br>Note Balance<br>Total | ($555.93)<br>($1,257.01)<br>$1,812.94 | $98,064.45 |
| Regular Payment ▮855 | 3/7/2022 | 3/7/2022 | 2/26/2022 | Note Interest<br>Note Balance<br>Total | ($548.88)<br>($1,264.06)<br>$1,812.94 | $96,800.39 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Regular Payment ▮855 | 4/4/2022 | 4/4/2022 | 3/26/2022 | Note Interest | ($489.38) | |
| | | | | Note Balance | ($1,323.56) | $95,476.83 |
| | | | | Total | $1,812.94 | |
| Regular Payment ▮855 | 5/5/2022 | 5/5/2022 | 4/26/2022 | Note Interest | ($534.41) | |
| | | | | Note Balance | ($1,278.53) | $94,198.30 |
| | | | | Total | $1,812.94 | |
| Regular Payment ▮855 | 6/4/2022 | 6/4/2022 | 5/26/2022 | Note Interest | ($510.24) | |
| | | | | Note Balance | ($1,302.70) | $92,895.60 |
| | | | | Total | $1,812.94 | |
| Regular Payment ▮855 | 7/5/2022 | 7/5/2022 | 6/26/2022 | Note Interest | ($519.96) | |
| | | | | Note Balance | ($1,292.98) | $91,602.62 |
| | | | | Total | $1,812.94 | |
| Late Charge Assessment | 8/5/2022 | 8/5/2022 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 9/6/2022 | 9/6/2022 | | Late Charge Balance | $10.00 | |
| Regular Payment | 9/21/2022 | 9/21/2022 | 7/26/2022 | Note Interest | ($1,290.07) | |
| | | | | Note Balance | ($4,148.75) | $87,453.87 |
| | | | | Late Charge Balance | ($10.00) | |
| | | | 8/26/2022 | Late Charge Balance | ($10.00) | |
| | | | | Total | $5,458.82 | |
| Late Charge Assessment | 11/5/2022 | 11/5/2022 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 12/6/2022 | 12/6/2022 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 1/5/2023 | 1/5/2023 | | Late Charge Balance | $10.00 | |
| Regular Payment | 1/20/2023 | 1/20/2023 | 10/26/2022 | Note Interest | ($1,812.94) | |
| Escrow Receipt CPI PREMIUM  ACCT# ▮855 | 1/31/2023 | 1/31/2023 | | Escrow Balance | $0.00 | $0.00 |
| Escrow Disbursement CPI PREMIUM ACCT# ▮855 | 1/31/2023 | 1/31/2023 | | Escrow Balance | ($4,028.00) | ($4,028.00) |
| Escrow Disbursement CPI PREMIUM ACCT# ▮855 | 1/31/2023 | 1/31/2023 | | Escrow Balance | ($3,020.00) | ($7,048.00) |
| Escrow Disbursement CPI PREMIUM ACCT# ▮855 | 1/31/2023 | 1/31/2023 | | Escrow Balance | ($3,020.00) | ($10,068.00) |

| | | | | | | |
|---|---|---|---|---|---|---|
| Late Charge Assessment | 2/6/2023 | 2/6/2023 | | Late Charge Balance | $10.00 | |
| Regular Payment | 2/28/2023 | 2/28/2023 | 11/26/2022 | Note Interest | ($713.50) | $86,354.43 |
| | | | | Note Balance | ($1,099.44) | |
| | | | | Total | $1,812.94 | |
| Late Charge Assessment | 3/8/2023 | 3/8/2023 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 4/5/2023 | 4/5/2023 | | Late Charge Balance | $10.00 | |
| Regular Payment | 4/10/2023 | 4/10/2023 | 12/26/2022 | Note Interest | ($639.27) | $86,180.76 |
| | | | | Note Balance | ($173.67) | |
| | | | | Total | $812.94 | |
| Unapplied Receipt | 4/21/2023 | 4/21/2023 | | Unapplied Balance | $1,000.00 | |
| Regular Payment | 4/21/2023 | 4/21/2023 | 12/26/2022 | Note Interest | ($171.16) | $85,351.92 |
| | | | | Note Balance | ($828.84) | |
| | | | | Total | $1,000.00 | |
| Unapplied Disbursement | 4/21/2023 | 4/21/2023 | | Unapplied Balance | ($1,000.00) | |
| Regular Payment | 4/28/2023 | 5/1/2023 | 1/26/2023 | Note Interest | ($107.88) | $83,646.86 |
| | | | | Note Balance | ($1,705.06) | |
| | | | | Total | $1,812.94 | |
| Late Charge Assessment | 5/6/2023 | 5/6/2023 | | Late Charge Balance | $10.00 | |
| Regular Payment | 5/30/2023 | 5/31/2023 | 2/26/2023 | Note Interest | ($483.29) | |
| | | | | Escrow Balance | $839.00 | ($9,229.00) |
| | | | | Note Balance | ($2,655.62) | $80,991.24 |
| | | | | Total | $3,977.91 | |
| Late Charge Assessment | 6/5/2023 | 6/5/2023 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 7/6/2023 | 7/6/2023 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 8/5/2023 | 8/5/2023 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 9/5/2023 | 9/5/2023 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 10/6/2023 | 10/6/2023 | | Late Charge Balance | $10.00 | |

| Description | Date | Date | Balance Type | Amount | Amount |
|---|---|---|---|---|---|
| Late Charge Assessment | 11/6/2023 | 11/6/2023 | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 12/6/2023 | 12/6/2023 | Late Charge Balance | $10.00 | |
| Escrow Disbursement CPI Premium | 1/3/2024 | 1/3/2024 | Escrow Balance | ($9,324.00) | ($18,553.00) |
| Late Charge Assessment | 1/5/2024 | 1/5/2024 | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 2/5/2024 | 2/5/2024 | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 3/7/2024 | 3/7/2024 | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 4/5/2024 | 4/5/2024 | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 9/25/2023 | 9/25/2023 | Late Charge Balance | $0.39 | |
| Late Charge Assessment | 10/25/2023 | 10/25/2023 | Late Charge Balance | $0.37 | |
| Late Charge Assessment | 11/25/2023 | 11/25/2023 | Late Charge Balance | $0.39 | |
| Late Charge Assessment | 12/26/2023 | 12/26/2023 | Late Charge Balance | $0.37 | |
| Late Charge Assessment | 1/25/2024 | 1/25/2024 | Late Charge Balance | $0.39 | |
| Late Charge Assessment | 2/26/2024 | 2/26/2024 | Late Charge Balance | $0.39 | |
| Late Charge Assessment | 3/25/2024 | 3/25/2024 | Late Charge Balance | $0.36 | |

## Note No. 4

**Loan Number** ██████ 145

| Transaction Description | Effective Date | Post Date | Due Date | Balance Description | Amount | Running Balance |
|---|---|---|---|---|---|---|
| Financed Disbursement ██ 145 Stark | 12/31/2018 | 12/31/2018 | | Note Balance | $125.00 | $76,625.00 |
| Financed Disbursement ██ 145 Stark | 12/31/2018 | 12/31/2018 | | Note Balance | $9.30 | $76,634.30 |
| | | | | Credit Bureau Financed | $0.00 | |
| | | | | Total | ($9.30) | |
| Financed Disbursement ██ 145 Stark | 12/31/2018 | 12/31/2018 | | Note Balance | $5.00 | $76,639.30 |
| | | | | Miscellaneous Financed | $0.00 | |
| | | | | Total | ($5.00) | |
| Regular Payment ██ 145 | 2/1/2019 | 2/1/2019 | 2/1/2019 | Note Interest | ($251.38) | |
| | | | | Note Balance | ($1,470.24) | $75,169.06 |
| | | | | Total | $1,721.62 | |
| Regular Payment ██ 145 | 3/1/2019 | 3/1/2019 | 3/1/2019 | Note Interest | ($215.73) | |
| | | | | Note Balance | ($1,505.89) | $73,663.17 |
| | | | | Total | $1,721.62 | |
| Regular Payment ██ 145 | 4/1/2019 | 4/1/2019 | 4/1/2019 | Note Interest | ($234.07) | |
| | | | | Note Balance | ($1,487.55) | $72,175.62 |
| | | | | Total | $1,721.62 | |
| Regular Payment ██ 145 | 5/1/2019 | 5/1/2019 | 5/1/2019 | Note Interest | ($221.94) | |
| | | | | Note Balance | ($1,499.68) | $70,675.94 |
| | | | | Total | $1,721.62 | |
| Regular Payment ██ 145 | 6/1/2019 | 6/1/2019 | 6/1/2019 | Note Interest | ($224.57) | |
| | | | | Note Balance | ($1,497.05) | $69,178.89 |
| | | | | Total | $1,721.62 | |
| Regular Payment ██ 145 | 7/1/2019 | 7/1/2019 | 7/1/2019 | Note Interest | ($212.72) | |
| | | | | Note Balance | ($1,508.90) | $67,669.99 |
| | | | | Total | $1,721.62 | |
| Regular Payment ██ 145 | 8/1/2019 | 8/1/2019 | 8/1/2019 | Note Interest | ($215.03) | |
| | | | | Note Balance | ($1,506.59) | $66,163.40 |
| | | | | Total | $1,721.62 | |
| Regular Payment ██ 145 | 9/3/2019 | 9/3/2019 | 9/1/2019 | Note Interest | ($223.79) | |
| | | | | Note Balance | ($1,497.83) | $64,665.57 |
| | | | | Total | $1,721.62 | |

| Regular Payment ■145 | 10/1/2019 | 10/1/2019 | 10/1/2019 | Note Interest<br>Note Balance<br>Total | ($185.59)<br>($1,536.03)<br>$1,721.62 | $63,129.54 |
| Regular Payment ■145 | 11/1/2019 | 11/1/2019 | 11/1/2019 | Note Interest<br>Note Balance<br>Total | ($200.60)<br>($1,521.02)<br>$1,721.62 | $61,608.52 |
| Regular Payment ■145 | 12/2/2019 | 12/2/2019 | 12/1/2019 | Note Interest<br>Note Balance<br>Total | ($195.76)<br>($1,525.86)<br>$1,721.62 | $60,082.66 |
| Regular Payment ■145 | 1/2/2020 | 1/2/2020 | 1/1/2020 | Note Interest<br>Note Balance<br>Total | ($190.91)<br>($1,530.71)<br>$1,721.62 | $58,551.95 |
| Regular Payment ■145 | 2/1/2020 | 2/1/2020 | 2/1/2020 | Note Interest<br>Note Balance<br>Total | ($180.05)<br>($1,541.57)<br>$1,721.62 | $57,010.38 |
| Regular Payment ■145 | 3/2/2020 | 3/2/2020 | 3/1/2020 | Note Interest<br>Note Balance<br>Total | ($175.31)<br>($1,546.31)<br>$1,721.62 | $55,464.07 |
| Regular Payment ■145 | 4/1/2020 | 4/1/2020 | 4/1/2020 | Note Interest<br>Note Balance<br>Total | ($170.55)<br>($1,551.07)<br>$1,721.62 | $53,913.00 |
| Payment Reversal | 4/1/2020 | 4/16/2020 | 4/1/2020 | Note Interest<br>Note Balance<br>Total | $170.55<br>$1,551.07<br>($1,721.62) | $55,464.07 |
| Loan Modification | 4/16/2020 | 4/16/2020 | | Note Balance | $0.00 | $55,464.07 |
| Regular Payment ■145 | 6/15/2020 | 6/15/2020 | 6/15/2020 | Note Interest<br>Note Balance<br>Total | ($596.93)<br>($1,124.69)<br>$1,721.62 | $54,339.38 |
| Payment Reversal | 6/15/2020 | 6/17/2020 | 6/15/2020 | Note Interest<br>Note Balance<br>Total | $596.93<br>$1,124.69<br>($1,721.62) | $55,464.07 |
| Loan Modification | 6/17/2020 | 6/17/2020 | | Note Balance | $0.00 | $55,464.07 |
| Loan Modification | 6/29/2020 | 6/29/2020 | | Note Balance | $0.00 | $55,464.07 |
| Regular Payment ■145 | 8/15/2020 | 8/15/2020 | 8/15/2020 | Note Interest<br>Note Balance<br>Total | ($943.72)<br>($777.90)<br>$1,721.62 | $54,686.17 |
| Regular Payment ■145 | 9/15/2020 | 9/15/2020 | 9/15/2020 | Note Interest<br>Note Balance<br>Total | ($173.76)<br>($1,547.86)<br>$1,721.62 | $53,138.31 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Regular Payment | █ 145 | 10/15/2020 | 10/15/2020 | 10/15/2020 | Note Interest | ($163.40) | |
| | | | | | Note Balance | ($1,558.22) | |
| | | | | | Total | $1,721.62 | $51,580.09 |
| Regular Payment | █ 145 | 11/16/2020 | 11/16/2020 | 11/15/2020 | Note Interest | ($169.19) | |
| | | | | | Note Balance | ($1,552.43) | |
| | | | | | Total | $1,721.62 | $50,027.66 |
| Regular Payment | █ 145 | 12/15/2020 | 12/15/2020 | 12/15/2020 | Note Interest | ($148.70) | |
| | | | | | Note Balance | ($1,572.92) | |
| | | | | | Total | $1,721.62 | $48,454.74 |
| Regular Payment | █ 145 | 1/15/2021 | 1/15/2021 | 1/15/2021 | Note Interest | ($153.97) | |
| | | | | | Note Balance | ($1,567.65) | |
| | | | | | Total | $1,721.62 | $46,887.09 |
| Regular Payment | █ 145 | 2/15/2021 | 2/15/2021 | 2/15/2021 | Note Interest | ($148.98) | |
| | | | | | Note Balance | ($1,572.64) | |
| | | | | | Total | $1,721.62 | $45,314.45 |
| Regular Payment | █ 145 | 3/15/2021 | 3/15/2021 | 3/15/2021 | Note Interest | ($130.05) | |
| | | | | | Note Balance | ($1,591.57) | |
| | | | | | Total | $1,721.62 | $43,722.88 |
| Regular Payment | █ 145 | 4/15/2021 | 4/15/2021 | 4/15/2021 | Note Interest | ($138.93) | |
| | | | | | Note Balance | ($1,582.69) | |
| | | | | | Total | $1,721.62 | $42,140.19 |
| Regular Payment | █ 145 | 5/15/2021 | 5/15/2021 | 5/15/2021 | Note Interest | ($129.58) | |
| | | | | | Note Balance | ($1,592.04) | |
| | | | | | Total | $1,721.62 | $40,548.15 |
| Regular Payment | █ 145 | 6/15/2021 | 6/15/2021 | 6/15/2021 | Note Interest | ($128.85) | |
| | | | | | Note Balance | ($1,592.77) | |
| | | | | | Total | $1,721.62 | $38,955.38 |
| Regular Payment | █ 145 | 7/15/2021 | 7/15/2021 | 7/15/2021 | Note Interest | ($119.78) | |
| | | | | | Note Balance | ($1,601.84) | |
| | | | | | Total | $1,721.62 | $37,353.54 |
| Regular Payment | █ 145 | 8/16/2021 | 8/16/2021 | 8/15/2021 | Note Interest | ($122.52) | |
| | | | | | Note Balance | ($1,599.10) | |
| | | | | | Total | $1,721.62 | $35,754.44 |
| Regular Payment | █ 145 | 9/15/2021 | 9/15/2021 | 9/15/2021 | Note Interest | ($109.95) | |
| | | | | | Note Balance | ($1,611.67) | |
| | | | | | Total | $1,721.62 | $34,142.77 |
| Regular Payment | █ 145 | 10/15/2021 | 10/15/2021 | 10/15/2021 | Note Interest | ($104.99) | |
| | | | | | Note Balance | ($1,616.63) | |
| | | | | | Total | $1,721.62 | $32,526.14 |

| Regular Payment | 145 | 11/15/2021 | 11/15/2021 | 11/15/2021 | Note Interest<br>Note Balance<br>Total | ($103.35)<br>($1,618.27)<br>$1,721.62 | $30,907.87 |
| Regular Payment | 145 | 12/24/2021 | 12/24/2021 | 12/15/2021 | Note Interest<br>Note Balance<br>Total | ($123.55)<br>($1,598.07)<br>$1,721.62 | $29,309.80 |
| Regular Payment | 145 | 1/24/2022 | 1/24/2022 | 1/15/2022 | Note Interest<br>Note Balance<br>Total | ($93.14)<br>($1,628.48)<br>$1,721.62 | $27,681.32 |
| Regular Payment | 145 | 2/24/2022 | 2/24/2022 | 2/15/2022 | Note Interest<br>Note Balance<br>Total | ($87.95)<br>($1,633.67)<br>$1,721.62 | $26,047.65 |
| Regular Payment | 145 | 3/24/2022 | 3/24/2022 | 3/15/2022 | Note Interest<br>Note Balance<br>Total | ($74.76)<br>($1,646.86)<br>$1,721.62 | $24,400.79 |
| Regular Payment | 145 | 4/25/2022 | 4/25/2022 | 4/15/2022 | Note Interest<br>Note Balance<br>Total | ($80.03)<br>($1,641.59)<br>$1,721.62 | $22,759.20 |
| Regular Payment | 145 | 5/24/2022 | 5/24/2022 | 5/15/2022 | Note Interest<br>Note Balance<br>Total | ($67.66)<br>($1,653.96)<br>$1,721.62 | $21,105.24 |
| Regular Payment | 145 | 6/24/2022 | 6/24/2022 | 6/15/2022 | Note Interest<br>Note Balance<br>Total | ($67.06)<br>($1,654.56)<br>$1,721.62 | $19,450.68 |
| Late Charge Assessment | | 7/25/2022 | 7/25/2022 | | Late Charge<br>Balance | $10.00 | |
| Late Charge Assessment | | 8/25/2022 | 8/25/2022 | | Late Charge<br>Balance | $10.00 | |
| Regular Payment | | 9/8/2022 | 9/8/2022 | 7/15/2022 | Note Interest<br>Note Balance<br>Total | ($151.52)<br>($1,570.10)<br>$1,721.62 | $17,880.58 |
| Regular Payment | | 9/21/2022 | 9/21/2022 | 7/15/2022<br><br>8/15/2022 | Late Charge<br>Balance<br>Note Interest<br>Note Balance<br>Late Charge<br>Balance<br>Total | ($10.00)<br><br>($23.82)<br>($3,419.42)<br>($10.00)<br><br>$3,463.24 | $14,461.16 |
| Late Charge Assessment | | 10/25/2022 | 10/25/2022 | | Late Charge<br>Balance | $10.00 | |

| Description | | | | | | |
|---|---|---|---|---|---|---|
| Late Charge Assessment | 11/25/2022 | 11/25/2022 | | Late Charge Balance | $10.00 | |
| Regular Payment | 12/15/2022 | 12/15/2022 | 10/15/2022 | Note Interest | ($126.00) | |
| | | | | Note Balance | ($1,615.62) | $12,845.54 |
| | | | | Total | $1,741.62 | |
| Late Charge Assessment | 12/27/2022 | 12/27/2022 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 1/25/2023 | 1/25/2023 | | Late Charge Balance | $10.00 | |
| Escrow Receipt Force Placed Insurance Premium | 2/1/2023 | 2/1/2023 | | Escrow Balance | $0.00 | $0.00 |
| Escrow Disbursement Force Placed Insurance Premium | 2/1/2023 | 2/1/2023 | | Escrow Balance | ($803.00) | ($803.00) |
| Regular Payment | 2/22/2023 | 2/22/2023 | 11/15/2022 | Note Interest | ($47.35) | |
| Late Charge Assessment | 2/25/2023 | 2/25/2023 | | Late Charge Balance | $10.00 | |
| Regular Payment | 2/28/2023 | 2/28/2023 | 11/15/2022 | Note Interest | ($51.40) | |
| | | | | Note Balance | ($1,635.66) | $11,209.88 |
| | | | | Total | $1,687.06 | |
| Late Charge Assessment | 3/25/2023 | 3/25/2023 | | Late Charge Balance | $10.00 | |
| Regular Payment | 4/10/2023 | 4/10/2023 | 12/15/2022 | Note Interest | ($47.11) | |
| | | | | Note Balance | ($1,674.51) | $9,535.37 |
| | | | | Total | $1,721.62 | |
| Late Charge Assessment | 4/25/2023 | 4/25/2023 | | Late Charge Balance | $10.00 | |
| Regular Payment | 4/28/2023 | 5/1/2023 | 1/15/2023 | Note Interest | ($17.59) | |
| | | | | Note Balance | ($1,671.24) | $7,864.13 |
| | | | | Total | $1,688.83 | |
| Late Charge Assessment | 5/25/2023 | 5/25/2023 | | Late Charge Balance | $10.00 | |
| Regular Payment | 5/30/2023 | 5/31/2023 | 2/15/2023 | Note Interest | ($25.79) | |
| | | | | Note Balance | ($2,690.47) | $5,173.66 |
| | | | | Total | $2,716.26 | |
| Late Charge Assessment | 6/26/2023 | 6/26/2023 | | Late Charge Balance | $1.77 | |

| | | | | | |
|---|---|---|---|---|---|
| Escrow Disbursement Force Placed Insurance Premium | 7/6/2023 | 7/6/2023 | Escrow Balance | ($342.00) | ($1,145.00) |
| Late Charge Assessment | 7/25/2023 | 7/25/2023 | Late Charge Balance | $1.59 | |
| Late Charge Assessment | 8/25/2023 | 8/25/2023 | Late Charge Balance | $1.64 | |
| Late Charge Assessment | 9/25/2023 | 9/25/2023 | Late Charge Balance | $1.64 | |
| Late Charge Assessment | 10/25/2023 | 10/25/2023 | Late Charge Balance | $1.59 | |
| Escrow Disbursement CPI Premium | 11/21/2023 | 11/21/2023 | Escrow Balance | ($246.00) | ($1,391.00) |
| Late Charge Assessment | 11/25/2023 | 11/25/2023 | Late Charge Balance | $1.64 | |
| Late Charge Assessment | 12/26/2023 | 12/26/2023 | Late Charge Balance | $1.59 | |
| Late Charge Assessment | 1/25/2024 | 1/25/2024 | Late Charge Balance | $1.64 | |
| Late Charge Assessment | 2/26/2024 | 2/26/2024 | Late Charge Balance | $1.64 | |
| Late Charge Assessment | 3/25/2024 | 3/25/2024 | Late Charge Balance | $1.54 | |
| Escrow Disbursement Force Placed Insurance Premium | 4/16/2024 | 4/16/2024 | Escrow Balance | ($251.00) | ($1,642.00) |
| Late Charge Assessment | 4/25/2024 | 4/25/2024 | Late Charge Bala | $1.64 | |

## Note No. 5

**Loan Number** ████820

| Transaction Description | Effective Date | Post Date | Due Date | Balance Description | Amount | Running Balance |
|---|---|---|---|---|---|---|
| New Loan Disbursement ████820 Stark | 12/27/2019 | 12/30/2019 | | Note Balance | $150,000.00 | $150,000.00 |
| Financed Disbursement ████820 Stark | 12/27/2019 | 12/30/2019 | | Note Balance | $125.00 | $150,125.00 |
| Financed Disbursement ████820 Stark | 12/27/2019 | 12/30/2019 | | Note Balance | $4.65 | $150,129.65 |
| | | | | Credit Bureau Financed | $0.00 | |
| | | | | Total | ($4.65) | |
| Financed Disbursement ████820 Stark | 12/27/2019 | 12/30/2019 | | Note Balance | $15.00 | $150,144.65 |
| | | | | Miscellaneous Financed | $0.00 | |
| | | | | Total | ($15.00) | |
| Regular Payment ████820 | 2/1/2020 | 2/1/2020 | 2/1/2020 | Note Interest | ($776.25) | |
| | | | | Note Balance | ($1,660.16) | $148,484.49 |
| | | | | Total | $2,436.41 | |
| Regular Payment ████820 | 3/2/2020 | 3/2/2020 | 3/1/2020 | Note Interest | ($639.72) | |
| | | | | Note Balance | ($1,796.69) | $146,687.80 |
| | | | | Total | $2,436.41 | |
| Regular Payment ████820 | 4/1/2020 | 4/1/2020 | 4/1/2020 | Note Interest | ($631.98) | |
| | | | | Note Balance | ($1,804.43) | $144,883.37 |
| | | | | Total | $2,436.41 | |
| Payment Reversal | 4/1/2020 | 4/16/2020 | 4/1/2020 | Note Interest | $631.98 | |
| | | | | Note Balance | $1,804.43 | $146,687.80 |
| | | | | Total | ($2,436.41) | |
| Loan Modification | 4/16/2020 | 4/16/2020 | | Note Balance | $0.00 | $146,687.80 |
| Regular Payment ████820 | 6/5/2020 | 6/5/2020 | 6/1/2020 | Note Interest | ($2,001.27) | |
| | | | | Note Balance | ($435.14) | $146,252.66 |
| | | | | Total | $2,436.41 | |
| Payment Reversal | 6/5/2020 | 6/8/2020 | 6/1/2020 | Note Interest | $2,001.27 | |
| | | | | Note Balance | $435.14 | $146,687.80 |
| | | | | Total | ($2,436.41) | |
| Loan Modification | 6/8/2020 | 6/8/2020 | | Note Balance | $0.00 | $146,687.80 |
| Loan Modification | 6/29/2020 | 6/29/2020 | | Note Balance | $0.00 | $146,687.80 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Regular Payment | ███ 820 | 8/1/2020 | 8/1/2020 | 8/1/2020 | Note Interest | ($2,436.41) | |
| Regular Payment | ███ 820 | 9/1/2020 | 9/1/2020 | 9/1/2020 | Note Interest<br>Note Balance<br>Total | ($1,418.67)<br>($1,017.74)<br>$2,436.41 | $145,670.06 |
| Regular Payment | ███ 820 | 10/1/2020 | 10/1/2020 | 10/1/2020 | Note Interest<br>Note Balance<br>Total | ($627.59)<br>($1,808.82)<br>$2,436.41 | $143,861.24 |
| Regular Payment | ███ 820 | 11/2/2020 | 11/2/2020 | 11/1/2020 | Note Interest<br>Note Balance<br>Total | ($661.12)<br>($1,775.29)<br>$2,436.41 | $142,085.95 |
| Regular Payment | ███ 820 | 12/1/2020 | 12/1/2020 | 12/1/2020 | Note Interest<br>Note Balance<br>Total | ($591.75)<br>($1,844.66)<br>$2,436.41 | $140,241.29 |
| Regular Payment | ███ 820 | 1/2/2021 | 1/2/2021 | 1/1/2021 | Note Interest<br>Note Balance<br>Total | ($644.49)<br>($1,791.92)<br>$2,436.41 | $138,449.37 |
| Regular Payment | ███ 820 | 2/1/2021 | 2/1/2021 | 2/1/2021 | Note Interest<br>Note Balance<br>Total | ($596.48)<br>($1,839.93)<br>$2,436.41 | $136,609.44 |
| Regular Payment | ███ 820 | 3/1/2021 | 3/1/2021 | 3/1/2021 | Note Interest<br>Note Balance<br>Total | ($549.33)<br>($1,887.08)<br>$2,436.41 | $134,722.36 |
| Regular Payment | ███ 820 | 4/1/2021 | 4/1/2021 | 4/1/2021 | Note Interest<br>Note Balance<br>Total | ($599.77)<br>($1,836.64)<br>$2,436.41 | $132,885.72 |
| Regular Payment | ███ 820 | 5/1/2021 | 5/1/2021 | 5/1/2021 | Note Interest<br>Note Balance<br>Total | ($572.52)<br>($1,863.89)<br>$2,436.41 | $131,021.83 |
| Regular Payment | ███ 820 | 6/1/2021 | 6/1/2021 | 6/1/2021 | Note Interest<br>Note Balance<br>Total | ($583.30)<br>($1,853.11)<br>$2,436.41 | $129,168.72 |
| Regular Payment | ███ 820 | 7/1/2021 | 7/1/2021 | 7/1/2021 | Note Interest<br>Note Balance<br>Total | ($556.50)<br>($1,879.91)<br>$2,436.41 | $127,288.81 |
| Regular Payment | ███ 820 | 8/2/2021 | 8/2/2021 | 8/1/2021 | Note Interest<br>Note Balance<br>Total | ($584.97)<br>($1,851.44)<br>$2,436.41 | $125,437.37 |
| Regular Payment | ███ 820 | 9/1/2021 | 9/1/2021 | 9/1/2021 | Note Interest<br>Note Balance<br>Total | ($540.42)<br>($1,895.99)<br>$2,436.41 | $123,541.38 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Regular Payment ▮▮820 | 10/6/2021 | 10/6/2021 | 10/1/2021 | Note Interest<br>Note Balance<br>Total | ($620.97)<br>($1,815.44)<br>$2,436.41 | | $121,725.94 |
| Regular Payment ▮▮820 | 11/1/2021 | 11/1/2021 | 11/1/2021 | Note Interest<br>Note Balance<br>Total | ($454.51)<br>($1,981.90)<br>$2,436.41 | | $119,744.04 |
| Regular Payment ▮▮820 | 12/10/2021 | 12/10/2021 | 12/1/2021 | Note Interest<br>Note Balance<br>Total | ($670.67)<br>($1,765.74)<br>$2,436.41 | | $117,978.30 |
| Payment Reversal | 12/10/2021 | 12/13/2021 | 12/1/2021 | Note Interest<br>Note Balance<br>Total | $670.67<br>$1,765.74<br>($2,436.41) | | $119,744.04 |
| Regular Payment ▮▮820 | 12/14/2021 | 12/14/2021 | 12/1/2021 | Note Interest<br>Note Balance<br>Total | ($739.45)<br>($1,696.96)<br>$2,436.41 | | $118,047.08 |
| Regular Payment ▮▮820 | 1/10/2022 | 1/10/2022 | 1/1/2022 | Note Interest<br>Note Balance<br>Total | ($457.73)<br>($1,978.68)<br>$2,436.41 | | $116,068.40 |
| Regular Payment ▮▮820 | 2/10/2022 | 2/10/2022 | 2/1/2022 | Note Interest<br>Note Balance<br>Total | ($516.73)<br>($1,919.68)<br>$2,436.41 | | $114,148.72 |
| Regular Payment ▮▮820 | 3/10/2022 | 3/10/2022 | 3/1/2022 | Note Interest<br>Note Balance<br>Total | ($459.00)<br>($1,977.41)<br>$2,436.41 | | $112,171.31 |
| Regular Payment ▮▮820 | 4/11/2022 | 4/11/2022 | 4/1/2022 | Note Interest<br>Note Balance<br>Total | ($515.49)<br>($1,920.92)<br>$2,436.41 | | $110,250.39 |
| Regular Payment ▮▮820 | 5/10/2022 | 5/10/2022 | 5/1/2022 | Note Interest<br>Note Balance<br>Total | ($459.17)<br>($1,977.24)<br>$2,436.41 | | $108,273.15 |
| Regular Payment ▮▮820 | 6/10/2022 | 6/10/2022 | 6/1/2022 | Note Interest<br>Note Balance<br>Total | ($482.02)<br>($1,954.39)<br>$2,436.41 | | $106,318.76 |
| Regular Payment ▮▮820 | 7/11/2022 | 7/11/2022 | 7/1/2022 | Note Interest<br>Note Balance<br>Total | ($473.33)<br>($1,963.08)<br>$2,436.41 | | $104,355.68 |
| Late Charge Assessment | 8/11/2022 | 8/11/2022 | | Late Charge<br>Balance | $10.00 | | |

| Description | Date 1 | Date 2 | Date 3 | Category | Amount | Balance |
|---|---|---|---|---|---|---|
| Late Charge Assessment | 9/12/2022 | 9/12/2022 | | Late Charge Balance | $10.00 | |
| Regular Payment | 9/21/2022 | 9/21/2022 | 8/1/2022 | Note Interest | ($1,079.04) | |
| | | | | Note Balance | ($6,230.19) | $98,125.49 |
| | | | | Late Charge Balance | ($10.00) | |
| | | | 9/1/2022 | Late Charge Balance | ($10.00) | |
| | | | | Total | $7,329.23 | |
| Late Charge Assessment | 11/12/2022 | 11/12/2022 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 12/12/2022 | 12/12/2022 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 1/11/2023 | 1/11/2023 | | Late Charge Balance | $10.00 | |
| Escrow Receipt CPI PREMIUM  ACCT# ███820 | 1/24/2023 | 1/24/2023 | | Escrow Balance | $0.00 | $0.00 |
| Escrow Disbursement CPI PREMIUM ACCT# ███820 | 1/24/2023 | 1/24/2023 | | Escrow Balance | ($4,519.00) | ($4,519.00) |
| Escrow Disbursement CPI PREMIUM ACCT# ███820 | 1/24/2023 | 1/24/2023 | | Escrow Balance | ($3,390.00) | ($7,909.00) |
| Escrow Disbursement CPI PREMIUM ACCT# ███820 | 1/31/2023 | 1/31/2023 | | Escrow Balance | ($3,390.00) | ($11,299.00) |
| Late Charge Assessment | 2/11/2023 | 2/11/2023 | | Late Charge Balance | $10.00 | |
| Regular Payment | 2/22/2023 | 2/22/2023 | 11/1/2022 | Note Interest | ($2,170.15) | |
| | | | | Note Balance | ($266.26) | $97,859.23 |
| | | | | Total | $2,436.41 | |
| Late Charge Assessment | 3/11/2023 | 3/11/2023 | | Late Charge Balance | $10.00 | |
| Regular Payment | 3/31/2023 | 3/31/2023 | 12/1/2022 | Note Interest | ($519.99) | |
| | | | | Note Balance | ($1,833.54) | $96,025.69 |
| | | | | Total | $2,353.53 | |
| Regular Payment | 4/7/2023 | 4/10/2023 | 12/1/2022 | Note Interest | ($83.98) | |
| Late Charge Assessment | 4/11/2023 | 4/11/2023 | | Late Charge Balance | $10.00 | |
| Regular Payment | 4/28/2023 | 5/1/2023 | 1/1/2023 | Note Interest | ($302.15) | |
| | | | | Note Balance | ($2,133.16) | $93,892.53 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | Total | $2,435.31 | |
| Late Charge Assessment | 5/11/2023 | 5/11/2023 | | Late Charge Balance | $10.00 | |
| Regular Payment | 5/30/2023 | 5/31/2023 | 2/1/2023 | Note Interest | ($431.48) | |
| | | | | Note Balance | ($3,693.93) | $90,198.60 |
| | | | | Total | $4,125.41 | |
| Late Charge Assessment | 6/12/2023 | 6/12/2023 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 7/11/2023 | 7/11/2023 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 8/11/2023 | 8/11/2023 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 9/11/2023 | 9/11/2023 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 10/11/2023 | 10/11/2023 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 11/13/2023 | 11/13/2023 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 12/11/2023 | 12/11/2023 | | Late Charge Balance | $10.00 | |
| Escrow Disbursement Force Placed Insurance Premium | 12/29/2023 | 12/29/2023 | | Escrow Balance | ($4,154.00) | ($15,453.00) |
| Escrow Disbursement Force Placed Insurance Premium | 12/29/2023 | 12/29/2023 | | Escrow Balance | ($3,116.00) | ($18,569.00) |
| Escrow Disbursement CPI Premium | 1/3/2024 | 1/3/2024 | | Escrow Balance | ($3,116.00) | ($21,685.00) |
| Late Charge Assessment | 1/11/2024 | 1/11/2024 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 2/12/2024 | 2/12/2024 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 3/11/2024 | 3/11/2024 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 4/11/2024 | 4/11/2024 | | Late Charge Balance | $10.00 | |

# Note No. 6

**Loan Number** ████ 856

| Transaction Description | Effective Date | Post Date | Due Date | Balance Description | Amount | Running Balance |
|---|---|---|---|---|---|---|
| New Loan Disbursement ████ 856 Stark | 1/16/2020 | 1/21/2020 | | Note Balance | $74,600.00 | $74,600.00 |
| Financed Disbursement ████ 856 Stark | 1/16/2020 | 1/21/2020 | | Note Balance | $125.00 | $74,725.00 |
| Financed Disbursement ████ 856 Stark | 1/16/2020 | 1/21/2020 | | Note Balance | $4.97 | $74,729.97 |
| | | | | Credit Bureau Financed | $0.00 | |
| | | | | Financed Total | ($4.97) | |
| Regular Payment ████ 856 | 3/2/2020 | 3/2/2020 | 3/1/2020 | Note Interest | ($447.84) | |
| | | | | Note Balance | ($956.70) | $73,773.27 |
| | | | | Total | $1,404.54 | |
| Regular Payment ████ 856 | 4/1/2020 | 4/1/2020 | 4/1/2020 | Note Interest | ($288.33) | |
| | | | | Note Balance | ($1,116.21) | $72,657.06 |
| | | | | Total | $1,404.54 | |
| Payment Reversal | 4/1/2020 | 4/16/2020 | 4/1/2020 | Note Interest | $288.33 | |
| | | | | Note Balance | $1,116.21 | $73,773.27 |
| | | | | Total | ($1,404.54) | |
| Loan Modification | 4/16/2020 | 4/16/2020 | | Note Balance | $0.00 | $73,773.27 |
| Regular Payment ████ 856 | 6/15/2020 | 6/15/2020 | 6/15/2020 | Note Interest | ($1,009.16) | |
| | | | | Note Balance | ($395.38) | $73,377.89 |
| | | | | Total | $1,404.54 | |
| Payment Reversal | 6/15/2020 | 6/17/2020 | 6/15/2020 | Note Interest | $1,009.16 | |
| | | | | Note Balance | $395.38 | $73,773.27 |
| | | | | Total | ($1,404.54) | |
| Loan Modification | 6/17/2020 | 6/17/2020 | | Note Balance | $0.00 | $73,773.27 |
| Loan Modification | 6/29/2020 | 6/29/2020 | | Note Balance | $0.00 | $73,773.27 |
| Regular Payment ████ 856 | 8/15/2020 | 8/15/2020 | 8/15/2020 | Note Interest | ($1,404.54) | |
| Regular Payment ████ 856 | 9/15/2020 | 9/15/2020 | 9/15/2020 | Note Interest | ($488.83) | |
| | | | | Note Balance | ($915.71) | $72,857.56 |
| | | | | Total | $1,404.54 | |
| Regular Payment ████ 856 | 10/15/2020 | 10/15/2020 | 10/15/2020 | Note Interest | ($284.75) | |
| | | | | Note Balance | ($1,119.79) | $71,737.77 |
| | | | | Total | $1,404.54 | |

| Regular Payment ███ 856 | 11/16/2020 | 11/16/2020 | 11/15/2020 | Note Interest<br>Note Balance<br>Total | ($299.07)<br>($1,105.47)<br>$1,404.54 | $70,632.30 |
|---|---|---|---|---|---|---|
| Regular Payment ███ 856 | 12/15/2020 | 12/15/2020 | 12/15/2020 | Note Interest<br>Note Balance<br>Total | ($266.85)<br>($1,137.69)<br>$1,404.54 | $69,494.61 |
| Regular Payment ███ 856 | 1/15/2021 | 1/15/2021 | 1/15/2021 | Note Interest<br>Note Balance<br>Total | ($280.66)<br>($1,123.88)<br>$1,404.54 | $68,370.73 |
| Regular Payment ███ 856 | 2/15/2021 | 2/15/2021 | 2/15/2021 | Note Interest<br>Note Balance<br>Total | ($276.13)<br>($1,128.41)<br>$1,404.54 | $67,242.32 |
| Regular Payment ███ 856 | 3/15/2021 | 3/15/2021 | 3/15/2021 | Note Interest<br>Note Balance<br>Total | ($245.28)<br>($1,159.26)<br>$1,404.54 | $66,083.06 |
| Regular Payment ███ 856 | 4/15/2021 | 4/15/2021 | 4/15/2021 | Note Interest<br>Note Balance<br>Total | ($266.89)<br>($1,137.65)<br>$1,404.54 | $64,945.41 |
| Regular Payment ███ 856 | 5/15/2021 | 5/15/2021 | 5/15/2021 | Note Interest<br>Note Balance<br>Total | ($253.82)<br>($1,150.72)<br>$1,404.54 | $63,794.69 |
| Regular Payment ███ 856 | 6/15/2021 | 6/15/2021 | 6/15/2021 | Note Interest<br>Note Balance<br>Total | ($257.65)<br>($1,146.89)<br>$1,404.54 | $62,647.80 |
| Regular Payment ███ 856 | 7/15/2021 | 7/15/2021 | 7/15/2021 | Note Interest<br>Note Balance<br>Total | ($244.84)<br>($1,159.70)<br>$1,404.54 | $61,488.10 |
| Regular Payment ███ 856 | 8/16/2021 | 8/16/2021 | 8/15/2021 | Note Interest<br>Note Balance<br>Total | ($256.34)<br>($1,148.20)<br>$1,404.54 | $60,339.90 |
| Regular Payment ███ 856 | 9/15/2021 | 9/15/2021 | 9/15/2021 | Note Interest<br>Note Balance<br>Total | ($235.83)<br>($1,168.71)<br>$1,404.54 | $59,171.19 |
| Regular Payment ███ 856 | 10/15/2021 | 10/15/2021 | 10/15/2021 | Note Interest<br>Note Balance<br>Total | ($231.26)<br>($1,173.28)<br>$1,404.54 | $57,997.91 |
| Regular Payment ███ 856 | 11/15/2021 | 11/15/2021 | 11/15/2021 | Note Interest<br>Note Balance<br>Total | ($234.23)<br>($1,170.31)<br>$1,404.54 | $56,827.60 |
| Regular Payment ███ 856 | 12/24/2021 | 12/24/2021 | 12/15/2021 | Note Interest | ($288.73) | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | Note Balance | ($1,115.81) | $55,711.79 |
| | | | | Total | $1,404.54 | |
| Regular Payment ▮856 | 1/24/2022 | 1/24/2022 | 1/15/2022 | Note Interest | ($225.00) | |
| | | | | Note Balance | ($1,179.54) | $54,532.25 |
| | | | | Total | $1,404.54 | |
| Regular Payment ▮856 | 2/24/2022 | 2/24/2022 | 2/15/2022 | Note Interest | ($220.24) | |
| | | | | Note Balance | ($1,184.30) | $53,347.95 |
| | | | | Total | $1,404.54 | |
| Regular Payment ▮856 | 3/24/2022 | 3/24/2022 | 3/15/2022 | Note Interest | ($194.60) | |
| | | | | Note Balance | ($1,209.94) | $52,138.01 |
| | | | | Total | $1,404.54 | |
| Regular Payment ▮856 | 4/25/2022 | 4/25/2022 | 4/15/2022 | Note Interest | ($217.35) | |
| | | | | Note Balance | ($1,187.19) | $50,950.82 |
| | | | | Total | $1,404.54 | |
| Regular Payment ▮856 | 5/24/2022 | 5/24/2022 | 5/15/2022 | Note Interest | ($192.50) | |
| | | | | Note Balance | ($1,212.04) | $49,738.78 |
| | | | | Total | $1,404.54 | |
| Regular Payment ▮856 | 6/24/2022 | 6/24/2022 | 6/15/2022 | Note Interest | ($200.88) | |
| | | | | Note Balance | ($1,203.66) | $48,535.12 |
| | | | | Total | $1,404.54 | |
| Late Charge Assessment | 7/25/2022 | 7/25/2022 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 8/25/2022 | 8/25/2022 | | Late Charge Balance | $10.00 | |
| Regular Payment | 9/8/2022 | 9/8/2022 | 7/15/2022 | Note Interest | ($480.55) | |
| | | | | Note Balance | ($923.99) | $47,611.13 |
| | | | | Total | $1,404.54 | |
| Regular Payment | 9/21/2022 | 9/21/2022 | 7/15/2022 | Late Charge Balance | ($10.00) | |
| | | | 8/15/2022 | Note Interest | ($80.63) | |
| | | | | Note Balance | ($2,728.45) | $44,882.68 |
| | | | | Late Charge Balance | ($10.00) | |
| | | | | Total | $2,829.08 | |
| Late Charge Assessment | 10/25/2022 | 10/25/2022 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 11/25/2022 | 11/25/2022 | | Late Charge Balance | $10.00 | |
| Regular Payment | 12/15/2022 | 12/15/2022 | 10/15/2022 | Note Interest | ($497.01) | |
| | | | | Note Balance | ($927.53) | $43,955.15 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | Total | $1,424.54 | |
| Late Charge Assessment | 12/27/2022 | 12/27/2022 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 1/25/2023 | 1/25/2023 | | Late Charge Balance | $10.00 | |
| Escrow Receipt CPI PREMIUM ACCT# ███856 | 1/31/2023 | 1/31/2023 | | Escrow Balance | $0.00 | $0.00 |
| Escrow Disbursement CPI PREMIUM ACCT# ██856 | 1/31/2023 | 1/31/2023 | | Escrow Balance | ($5,167.00) | ($5,167.00) |
| Regular Payment | 2/15/2023 | 2/15/2023 | 11/15/2022 | Note Interest Note Balance Total | ($355.04) ($2,002.27) $2,357.31 | $41,952.88 |
| Late Charge Assessment | 2/25/2023 | 2/25/2023 | | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 3/25/2023 | 3/25/2023 | | Late Charge Balance | $10.00 | |
| Regular Payment | 4/10/2023 | 4/10/2023 | 12/15/2022 | Note Interest Note Balance Total | ($295.14) ($1,108.30) $1,403.44 | $40,844.58 |
| Unapplied Receipt | 4/21/2023 | 4/21/2023 | | Unapplied Balance | $432.87 | |
| Regular Payment | 4/21/2023 | 4/21/2023 | 1/15/2023 | Note Interest Note Balance Total | ($58.53) ($374.34) $432.87 | $40,470.24 |
| Unapplied Disbursement | 4/21/2023 | 4/21/2023 | | Unapplied Balance | ($432.87) | |
| Late Charge Assessment | 4/25/2023 | 4/25/2023 | | Late Charge Balance | $10.00 | |
| Regular Payment | 4/28/2023 | 5/1/2023 | 2/15/2023 | Note Interest Note Balance Total | ($36.91) ($1,367.63) $1,404.54 | $39,102.61 |
| Late Charge Assessment | 5/25/2023 | 5/25/2023 | | Late Charge Balance | $10.00 | |
| Regular Payment | 5/30/2023 | 5/31/2023 | 3/15/2023 | Note Interest Note Balance Total | ($163.01) ($754.55) $917.56 | $38,348.06 |

| | | | | | |
|---|---|---|---|---|---|
| Late Charge Assessment | 6/26/2023 | 6/26/2023 | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 7/25/2023 | 7/25/2023 | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 8/25/2023 | 8/25/2023 | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 9/25/2023 | 9/25/2023 | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 10/25/2023 | 10/25/2023 | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 11/25/2023 | 11/25/2023 | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 12/26/2023 | 12/26/2023 | Late Charge Balance | $10.00 | |
| Escrow Disbursement CPI Premium | 1/3/2024 | 1/3/2024 | Escrow Balance | ($4,416.00) | ($9,583.00) |
| Late Charge Assessment | 1/25/2024 | 1/25/2024 | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 2/26/2024 | 2/26/2024 | Late Charge Balance | $10.00 | |
| Late Charge Assessment | 3/25/2024 | 3/25/2024 | Late Charge Balance | $10.00 | |

## Note No. 7

**Loan Number** ▮648

| Transaction Description | Effective Date | Post Date | Due Date | Balance Description | Amount | Running Balance |
|---|---|---|---|---|---|---|
| New Loan Disbursement ▮648 Stark | 3/4/2020 | 3/4/2020 | | Note Balance | $100,000.00 | $100,000.00 |
| Fee Receipt | 3/4/2020 | 3/4/2020 | | Total | $500.00 | |
| Fee Receipt | 3/4/2020 | 3/4/2020 | | Miscellaneous Fee | $10.00 | |
| Regular Payment ▮648 | 4/1/2020 | 4/1/2020 | 4/1/2020 | Note Interest<br>Note Balance<br>Total | ($388.89)<br>($1,500.90)<br>$1,889.79 | $98,499.10 |
| Payment Reversal | 4/1/2020 | 4/16/2020 | 4/1/2020 | Note Interest<br>Note Balance<br>Total | $388.89<br>$1,500.90<br>($1,889.79) | $100,000.00 |
| Loan Modification | 4/16/2020 | 4/16/2020 | | Note Balance | $0.00 | $100,000.00 |
| Regular Payment ▮648 | 6/4/2020 | 6/4/2020 | 6/1/2020 | Note Interest<br>Note Balance<br>Total | ($1,277.78)<br>($612.01)<br>$1,889.79 | $99,387.99 |
| Payment Reversal | 6/4/2020 | 6/8/2020 | 6/1/2020 | Note Interest<br>Note Balance<br>Total | $1,277.78<br>$612.01<br>($1,889.79) | $100,000.00 |
| Loan Modification | 6/8/2020 | 6/8/2020 | | Note Balance | $0.00 | $100,000.00 |
| Loan Modification | 6/29/2020 | 6/29/2020 | | Note Balance | $0.00 | $100,000.00 |
| Regular Payment ▮648 | 8/4/2020 | 8/4/2020 | 8/1/2020 | Note Interest | ($1,889.79) | |
| Regular Payment ▮648 | 9/1/2020 | 9/1/2020 | 9/1/2020 | Note Interest<br>Note Balance<br>Total | ($624.10)<br>($1,265.69)<br>$1,889.79 | $98,734.31 |
| Regular Payment ▮648 | 10/1/2020 | 10/1/2020 | 10/1/2020 | Note Interest<br>Note Balance<br>Total | ($411.39)<br>($1,478.40)<br>$1,889.79 | $97,255.91 |
| Regular Payment ▮648 | 11/2/2020 | 11/2/2020 | 11/1/2020 | Note Interest<br>Note Balance<br>Total | ($432.25)<br>($1,457.54)<br>$1,889.79 | $95,798.37 |
| Regular Payment ▮648 | 12/1/2020 | 12/1/2020 | 12/1/2020 | Note Interest<br>Note Balance<br>Total | ($385.85)<br>($1,503.94)<br>$1,889.79 | $94,294.43 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Regular Payment ▮648 | 1/2/2021 | 1/2/2021 | 1/1/2021 | Note Interest<br>Note Balance<br>Total | ($419.09)<br>($1,470.70)<br>$1,889.79 | $92,823.73 |
| Regular Payment ▮648 | 2/1/2021 | 2/1/2021 | 2/1/2021 | Note Interest<br>Note Balance<br>Total | ($386.77)<br>($1,503.02)<br>$1,889.79 | $91,320.71 |
| Regular Payment ▮648 | 3/1/2021 | 3/1/2021 | 3/1/2021 | Note Interest<br>Note Balance<br>Total | ($355.13)<br>($1,534.66)<br>$1,889.79 | $89,786.05 |
| Regular Payment ▮648 | 4/1/2021 | 4/1/2021 | 4/1/2021 | Note Interest<br>Note Balance<br>Total | ($386.58)<br>($1,503.21)<br>$1,889.79 | $88,282.84 |
| Regular Payment ▮648 | 5/1/2021 | 5/1/2021 | 5/1/2021 | Note Interest<br>Note Balance<br>Total | ($367.85)<br>($1,521.94)<br>$1,889.79 | $86,760.90 |
| Regular Payment ▮648 | 6/1/2021 | 6/1/2021 | 6/1/2021 | Note Interest<br>Note Balance<br>Total | ($373.55)<br>($1,516.24)<br>$1,889.79 | $85,244.66 |
| Regular Payment ▮648 | 7/1/2021 | 7/1/2021 | 7/1/2021 | Note Interest<br>Note Balance<br>Total | ($355.19)<br>($1,534.60)<br>$1,889.79 | $83,710.06 |
| Regular Payment ▮648 | 8/2/2021 | 8/2/2021 | 8/1/2021 | Note Interest<br>Note Balance<br>Total | ($372.04)<br>($1,517.75)<br>$1,889.79 | $82,192.31 |
| Regular Payment ▮648 | 9/1/2021 | 9/1/2021 | 9/1/2021 | Note Interest<br>Note Balance<br>Total | ($342.47)<br>($1,547.32)<br>$1,889.79 | $80,644.99 |
| Regular Payment ▮648 | 10/6/2021 | 10/6/2021 | 10/1/2021 | Note Interest<br>Note Balance<br>Total | ($392.02)<br>($1,497.77)<br>$1,889.79 | $79,147.22 |
| Regular Payment ▮648 | 11/1/2021 | 11/1/2021 | 11/1/2021 | Note Interest<br>Note Balance<br>Total | ($285.81)<br>($1,603.98)<br>$1,889.79 | $77,543.24 |
| Regular Payment ▮648 | 12/10/2021 | 12/10/2021 | 12/1/2021 | Note Interest<br>Note Balance<br>Total | ($420.03)<br>($1,469.76)<br>$1,889.79 | $76,073.48 |
| Payment Reversal | 12/10/2021 | 12/13/2021 | 12/1/2021 | Note Interest<br>Note Balance<br>Total | $420.03<br>$1,469.76<br>($1,889.79) | $77,543.24 |
| Regular Payment ▮648 | 12/14/2021 | 12/14/2021 | 12/1/2021 | Note Interest | ($463.11) | |

| Transaction | Date | Date | Due Date | Detail | Amount | Balance |
|---|---|---|---|---|---|---|
| | | | | Note Balance | ($1,426.68) | $76,116.56 |
| | | | | Total | $1,889.79 | |
| Regular Payment ████648 | 1/10/2022 | 1/10/2022 | 1/1/2022 | Note Interest | ($285.44) | |
| | | | | Note Balance | ($1,604.35) | $74,512.21 |
| | | | | Total | $1,889.79 | |
| Regular Payment ████648 | 2/10/2022 | 2/10/2022 | 2/1/2022 | Note Interest | ($320.81) | |
| | | | | Note Balance | ($1,568.98) | $72,943.23 |
| | | | | Total | $1,889.79 | |
| Regular Payment ████648 | 3/10/2022 | 3/10/2022 | 3/1/2022 | Note Interest | ($283.67) | |
| | | | | Note Balance | ($1,606.12) | $71,337.11 |
| | | | | Total | $1,889.79 | |
| Regular Payment ████648 | 4/11/2022 | 4/11/2022 | 4/1/2022 | Note Interest | ($317.05) | |
| | | | | Note Balance | ($1,572.74) | $69,764.37 |
| | | | | Total | $1,889.79 | |
| Regular Payment ████648 | 5/10/2022 | 5/10/2022 | 5/1/2022 | Note Interest | ($281.00) | |
| | | | | Note Balance | ($1,608.79) | $68,155.58 |
| | | | | Total | $1,889.79 | |
| Regular Payment ████648 | 6/10/2022 | 6/10/2022 | 6/1/2022 | Note Interest | ($293.45) | |
| | | | | Note Balance | ($1,596.34) | $66,559.24 |
| | | | | Total | $1,889.79 | |
| Regular Payment ████648 | 7/11/2022 | 7/11/2022 | 7/1/2022 | Note Interest | ($286.57) | |
| | | | | Note Balance | ($1,603.22) | $64,956.02 |
| | | | | Total | $1,889.79 | |
| Late Charge Assessment | 8/11/2022 | 8/11/2022 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 9/12/2022 | 9/12/2022 | | Late Charge Bala | $10.00 | |
| Regular Payment | 9/21/2022 | 9/21/2022 | 8/1/2022 | Note Interest | ($649.56) | |
| | | | | Note Balance | ($5,019.81) | $59,936.21 |
| | | | | Late Charge Bala | ($10.00) | |
| | | | 9/1/2022 | Late Charge Bala | ($10.00) | |
| | | | | Total | $5,689.37 | |
| Late Charge Assessment | 11/12/2022 | 11/12/2022 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 12/12/2022 | 12/12/2022 | | Late Charge Bala | $10.00 | |
| Regular Payment | 1/3/2023 | 1/3/2023 | 11/1/2022 | Note Interest | ($865.75) | |
| | | | | Note Balance | ($2,933.83) | $57,002.38 |
| | | | | Total | $3,799.58 | |
| Late Charge Assessment | 1/11/2023 | 1/11/2023 | | Late Charge Bala | $10.00 | |
| Escrow Receipt CPI PREMIUM  ACCT# ████648 | 1/31/2023 | 1/31/2023 | | Escrow Balance | $0.00 | $0.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Escrow Disbursement CPI PREMIUM | | | | | | | |
| ACCT# ████648 | 1/31/2023 | 1/31/2023 | | Escrow Balance | ($3,451.00) | ($3,451.00) | |
| | | | | | | | |
| Escrow Disbursement CPI PREMIUM | | | | | | | |
| ACCT# ████648 | 1/31/2023 | 1/31/2023 | | Escrow Balance | ($3,451.00) | ($6,902.00) | |
| | | | | | | | |
| Late Charge Assessment | 2/11/2023 | 2/11/2023 | | Late Charge Bala | $10.00 | | |
| Late Charge Assessment | 3/11/2023 | 3/11/2023 | | Late Charge Bala | $10.00 | | |
| Late Charge Assessment | 4/11/2023 | 4/11/2023 | | Late Charge Bala | $10.00 | | |
| Regular Payment | 4/28/2023 | 5/1/2023 | 1/1/2023 | Note Interest | ($910.45) | | |
| | | | | Note Balance | ($959.34) | $56,043.04 | |
| | | | | Total | $1,869.79 | | |
| Late Charge Assessment | 5/11/2023 | 5/11/2023 | | Late Charge Bala | $10.00 | | |
| Regular Payment | 5/30/2023 | 5/31/2023 | 2/1/2023 | Note Interest | ($249.08) | | |
| | | | | Note Balance | ($2,873.19) | $53,169.85 | |
| | | | | Total | $3,122.27 | | |
| Late Charge Assessment | 6/12/2023 | 6/12/2023 | | Late Charge Bala | $10.00 | | |
| Late Charge Assessment | 7/11/2023 | 7/11/2023 | | Late Charge Bala | $10.00 | | |
| Late Charge Assessment | 8/11/2023 | 8/11/2023 | | Late Charge Bala | $10.00 | | |
| Late Charge Assessment | 9/11/2023 | 9/11/2023 | | Late Charge Bala | $10.00 | | |
| Late Charge Assessment | 10/11/2023 | 10/11/2023 | | Late Charge Bala | $10.00 | | |
| Late Charge Assessment | 11/13/2023 | 11/13/2023 | | Late Charge Bala | $10.00 | | |
| Late Charge Assessment | 12/11/2023 | 12/11/2023 | | Late Charge Bala | $10.00 | | |
| Escrow Disbursement CPI Premium | 1/3/2024 | 1/3/2024 | | Escrow Balance | ($6,122.00) | ($13,024.00) | |
| Late Charge Assessment | 1/11/2024 | 1/11/2024 | | Late Charge Bala | $10.00 | | |
| Late Charge Assessment | 2/12/2024 | 2/12/2024 | | Late Charge Bala | $10.00 | | |
| Late Charge Assessment | 3/11/2024 | 3/11/2024 | | Late Charge Bala | $10.00 | | |
| Late Charge Assessment | 4/11/2024 | 4/11/2024 | | Late Charge Bala | $10.00 | | |

# Note No. 8

**Loan Number** ██ **715**

| Transaction Description | Effective Date | Post Date | Due Date | Balance Description | Amount | Running Balance |
|---|---|---|---|---|---|---|
| New Loan Disbursement ██ 715 Stark | 5/15/2020 | 5/16/2020 | | Note Balance | $152,000.00 | $152,000.00 |
| Fee Receipt | 5/16/2020 | 5/16/2020 | | Total | $760.00 | |
| Fee Receipt | 5/16/2020 | 5/16/2020 | | Credit Bureau Fee | $4.97 | |
| Fee Receipt | 5/16/2020 | 5/16/2020 | | Miscellaneous Fee | $40.00 | |
| Loan Modification | 6/29/2020 | 6/29/2020 | | Note Balance | $0.00 | $152,000.00 |
| Regular Payment ██ 715 | 8/1/2020 | 8/1/2020 | 8/1/2020 | Note Interest<br>Note Balance<br>Total | ($1,646.67)<br>($1,233.87)<br>$2,880.54 | $150,766.13 |
| Regular Payment ██ 715 | 9/1/2020 | 9/1/2020 | 9/1/2020 | Note Interest<br>Note Balance<br>Total | ($649.13)<br>($2,231.41)<br>$2,880.54 | $148,534.72 |
| Regular Payment ██ 715 | 10/1/2020 | 10/1/2020 | 10/1/2020 | Note Interest<br>Note Balance<br>Total | ($618.89)<br>($2,261.65)<br>$2,880.54 | $146,273.07 |
| Regular Payment ██ 715 | 11/2/2020 | 11/2/2020 | 11/1/2020 | Note Interest<br>Note Balance<br>Total | ($650.11)<br>($2,230.43)<br>$2,880.54 | $144,042.64 |
| Regular Payment ██ 715 | 12/1/2020 | 12/1/2020 | 12/1/2020 | Note Interest<br>Note Balance<br>Total | ($580.17)<br>($2,300.37)<br>$2,880.54 | $141,742.27 |
| Regular Payment ██ 715 | 1/2/2021 | 1/2/2021 | 1/1/2021 | Note Interest<br>Note Balance<br>Total | ($629.96)<br>($2,250.58)<br>$2,880.54 | $139,491.69 |
| Regular Payment ██ 715 | 2/1/2021 | 2/1/2021 | 2/1/2021 | Note Interest<br>Note Balance<br>Total | ($581.22)<br>($2,299.32)<br>$2,880.54 | $137,192.37 |
| Regular Payment ██ 715 | 3/1/2021 | 3/1/2021 | 3/1/2021 | Note Interest<br>Note Balance<br>Total | ($533.52)<br>($2,347.02)<br>$2,880.54 | $134,845.35 |
| Regular Payment ██ 715 | 4/1/2021 | 4/1/2021 | 4/1/2021 | Note Interest<br>Note Balance<br>Total | ($580.59)<br>($2,299.95)<br>$2,880.54 | $132,545.40 |

| Description | | Date 1 | Date 2 | Date 3 | Type | Amount | Balance |
|---|---|---|---|---|---|---|---|
| Regular Payment | ▇715 | 5/1/2021 | 5/1/2021 | 5/1/2021 | Note Interest | ($552.27) | |
| | | | | | Note Balance | ($2,328.27) | |
| | | | | | Total | $2,880.54 | $130,217.13 |
| Regular Payment | ▇715 | 6/1/2021 | 6/1/2021 | 6/1/2021 | Note Interest | ($560.66) | |
| | | | | | Note Balance | ($2,319.88) | |
| | | | | | Total | $2,880.54 | $127,897.25 |
| Regular Payment | ▇715 | 7/1/2021 | 7/1/2021 | 7/1/2021 | Note Interest | ($532.90) | |
| | | | | | Note Balance | ($2,347.64) | |
| | | | | | Total | $2,880.54 | $125,549.61 |
| Regular Payment | ▇715 | 8/2/2021 | 8/2/2021 | 8/1/2021 | Note Interest | ($558.00) | |
| | | | | | Note Balance | ($2,322.54) | |
| | | | | | Total | $2,880.54 | $123,227.07 |
| Escrow Receipt CPI PREMIUM  ACCT# ▇715 | | 8/3/2021 | 8/3/2021 | | Escrow Balance | $0.00 | $0.00 |
| Escrow Disbursement CPI PREMIUM ACCT# ▇715 | | 8/3/2021 | 8/3/2021 | | Escrow Balance | ($198.00) | ($198.00) |
| Regular Payment | ▇715 | 9/1/2021 | 9/1/2021 | 9/1/2021 | Note Interest | ($513.45) | |
| | | | | | Escrow Balance | $16.50 | ($181.50) |
| | | | | | Note Balance | ($2,367.09) | $120,859.98 |
| | | | | | Total | $2,897.04 | |
| Escrow Disbursement | | 9/2/2021 | 9/2/2021 | | Escrow Balance | ($16.50) | ($198.00) |
| Escrow Receipt Refund CPI payments ACCT# ▇715 | | 9/3/2021 | 9/3/2021 | | Escrow Balance | $198.00 | $0.00 |
| Regular Payment | ▇715 | 10/6/2021 | 10/6/2021 | 10/1/2021 | Note Interest | ($587.51) | |
| | | | | | Note Balance | ($2,293.03) | |
| | | | | | Total | $2,880.54 | $118,566.95 |
| Regular Payment | ▇715 | 11/1/2021 | 11/1/2021 | 11/1/2021 | Note Interest | ($428.16) | |
| | | | | | Note Balance | ($2,452.38) | |
| | | | | | Total | $2,880.54 | $116,114.57 |
| Regular Payment | ▇715 | 12/10/2021 | 12/10/2021 | 12/1/2021 | Note Interest | ($628.95) | |
| | | | | | Note Balance | ($2,251.59) | |
| | | | | | Total | $2,880.54 | $113,862.98 |
| Payment Reversal | | 12/10/2021 | 12/13/2021 | 12/1/2021 | Note Interest | $628.95 | |
| | | | | | Note Balance | $2,251.59 | |
| | | | | | Total | ($2,880.54) | $116,114.57 |
| Regular Payment | ▇715 | 12/16/2021 | 12/16/2021 | 12/1/2021 | Note Interest | ($725.72) | |
| | | | | | Note Balance | ($2,154.82) | |
| | | | | | Total | $2,880.54 | $113,959.75 |

| Regular Payment ▮715 | 1/10/2022 | 1/10/2022 | 1/1/2022 | Note Interest<br>Note Balance<br>Total | ($395.69)<br>($2,484.85)<br>$2,880.54 | $111,474.90 |
| Regular Payment ▮715 | 2/10/2022 | 2/10/2022 | 2/1/2022 | Note Interest<br>Note Balance<br>Total | ($479.96)<br>($2,400.58)<br>$2,880.54 | $109,074.32 |
| Regular Payment ▮715 | 3/10/2022 | 3/10/2022 | 3/1/2022 | Note Interest<br>Note Balance<br>Total | ($424.18)<br>($2,456.36)<br>$2,880.54 | $106,617.96 |
| Regular Payment ▮715 | 4/11/2022 | 4/11/2022 | 4/1/2022 | Note Interest<br>Note Balance<br>Total | ($473.86)<br>($2,406.68)<br>$2,880.54 | $104,211.28 |
| Regular Payment ▮715 | 5/10/2022 | 5/10/2022 | 5/1/2022 | Note Interest<br>Note Balance<br>Total | ($419.74)<br>($2,460.80)<br>$2,880.54 | $101,750.48 |
| Regular Payment ▮715 | 6/10/2022 | 6/10/2022 | 6/1/2022 | Note Interest<br>Note Balance<br>Total | ($438.09)<br>($2,442.45)<br>$2,880.54 | $99,308.03 |
| Regular Payment ▮715 | 7/11/2022 | 7/11/2022 | 7/1/2022 | Note Interest<br>Note Balance<br>Total | ($427.58)<br>($2,452.96)<br>$2,880.54 | $96,855.07 |
| Late Charge Assessment | 8/11/2022 | 8/11/2022 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 9/12/2022 | 9/12/2022 | | Late Charge Bala | $10.00 | |
| Regular Payment | 9/21/2022 | 9/21/2022 | 8/1/2022<br><br><br>9/1/2022 | Note Interest<br>Note Balance<br>Late Charge Bala<br>Late Charge Bala<br>Total | ($968.55)<br>($7,836.96)<br>($10.00)<br>($10.00)<br>$8,825.51 | $89,018.11 |
| Late Charge Assessment | 11/12/2022 | 11/12/2022 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 12/12/2022 | 12/12/2022 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 1/11/2023 | 1/11/2023 | | Late Charge Bala | $10.00 | |
| Regular Payment | 1/12/2023 | 1/12/2023 | 11/1/2022 | Note Interest<br>Note Balance<br>Total | ($1,397.09)<br>($1,483.45)<br>$2,880.54 | $87,534.66 |
| Escrow Disbursement CPI PREMIUM<br>ACCT# ▮715 | 1/24/2023 | 1/24/2023 | | Escrow Balance | ($3,382.00) | ($3,382.00) |
| Escrow Disbursement CPI PREMIUM<br>ACCT# ▮715 | 1/24/2023 | 1/24/2023 | | Escrow Balance | ($1,332.00) | ($4,714.00) |

| | | | | | | |
|---|---|---|---|---|---|---|
| Escrow Disbursement CPI PREMIUM | | | | | | |
| ACCT# ███715 | 1/24/2023 | 1/24/2023 | | Escrow Balance | ($3,382.00) | ($8,096.00) |
| Late Charge Assessment | 2/11/2023 | 2/11/2023 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 3/11/2023 | 3/11/2023 | | Late Charge Bala | $10.00 | |
| Regular Payment | 4/10/2023 | 4/10/2023 | 12/1/2022 | Note Interest | ($1,069.86) | |
| | | | | Note Balance | ($1,810.68) | $85,723.98 |
| | | | | Total | $2,880.54 | |
| Late Charge Assessment | 4/11/2023 | 4/11/2023 | | Late Charge Bala | $10.00 | |
| Unapplied Receipt | 4/21/2023 | 4/21/2023 | | Unapplied Balan | $268.79 | |
| Regular Payment | 4/21/2023 | 4/21/2023 | 1/1/2023 | Note Interest | ($130.97) | |
| | | | | Note Balance | ($137.82) | $85,586.16 |
| | | | | Total | $268.79 | |
| Unapplied Disbursement | 4/21/2023 | 4/21/2023 | | Unapplied Balan | ($268.79) | |
| Regular Payment | 4/28/2023 | 5/1/2023 | 1/1/2023 | Note Interest | ($83.21) | |
| | | | | Note Balance | ($2,528.54) | $83,057.62 |
| | | | | Total | $2,611.75 | |
| Late Charge Assessment | 5/11/2023 | 5/11/2023 | | Late Charge Bala | $10.00 | |
| Regular Payment | 5/30/2023 | 5/31/2023 | 2/1/2023 | Note Interest | ($369.14) | |
| | | | | Note Balance | ($4,289.00) | $78,768.62 |
| | | | | Total | $4,658.14 | |
| Late Charge Assessment | 6/12/2023 | 6/12/2023 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 7/11/2023 | 7/11/2023 | | Late Charge Bala | $10.00 | |
| Escrow Disbursement CPI Premium | 8/9/2023 | 8/9/2023 | | Escrow Balance | ($1,904.00) | ($10,000.00) |
| Late Charge Assessment | 8/11/2023 | 8/11/2023 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 9/11/2023 | 9/11/2023 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 10/11/2023 | 10/11/2023 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 11/13/2023 | 11/13/2023 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 12/11/2023 | 12/11/2023 | | Late Charge Bala | $10.00 | |
| Escrow Disbursement Force Placed Insurance Premium | 12/29/2023 | 12/29/2023 | | Escrow Balance | ($2,993.00) | ($12,993.00) |
| Escrow Disbursement Force Placed Insurance Premium | 12/29/2023 | 12/29/2023 | | Escrow Balance | ($2,993.00) | ($15,986.00) |

| | | | | | |
|---|---|---|---|---|---|
| Escrow Disbursement Force Placed Insurance Premium | 12/29/2023 | 12/29/2023 | Escrow Balance | ($1,179.00) | ($17,165.00) |
| Late Charge Assessment | 1/11/2024 | 1/11/2024 | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 2/12/2024 | 2/12/2024 | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 3/11/2024 | 3/11/2024 | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 4/11/2024 | 4/11/2024 | Late Charge Bala | $10.00 | |

## Note No. 9

**Loan Number** ███202

| Transaction Description | Effective Date | Post Date | Due Date | Balance Description | Amount | Running Balance |
|---|---|---|---|---|---|---|
| New Loan Disbursement ███202 Stark Energy | 3/26/2021 | 3/31/2021 | | Note Balance | $19,379.95 | $19,379.95 |
| Fee Receipt | 3/31/2021 | 3/31/2021 | | Credit Bureau Fee | $4.97 | |
| Fee Receipt | 3/31/2021 | 3/31/2021 | | Origination Fee | $100.00 | |
| Regular Payment ███202 | 5/4/2021 | 5/4/2021 | 5/4/2021 | Note Interest<br>Note Balance<br>Total | ($83.98)<br>($354.54)<br>$438.52 | $19,025.41 |
| Regular Payment ███202 | 6/4/2021 | 6/4/2021 | 6/4/2021 | Note Interest<br>Note Balance<br>Total | ($65.53)<br>($372.99)<br>$438.52 | $18,652.42 |
| Regular Payment ███202 | 7/6/2021 | 7/6/2021 | 7/4/2021 | Note Interest<br>Note Balance<br>Total | ($66.32)<br>($372.20)<br>$438.52 | $18,280.22 |
| Regular Payment ███202 | 8/4/2021 | 8/4/2021 | 8/4/2021 | Note Interest<br>Note Balance<br>Total | ($58.90)<br>($379.62)<br>$438.52 | $17,900.60 |
| Regular Payment ███202 | 9/4/2021 | 9/4/2021 | 9/4/2021 | Note Interest<br>Note Balance<br>Total | ($61.66)<br>($376.86)<br>$438.52 | $17,523.74 |
| Regular Payment ███202 | 10/6/2021 | 10/6/2021 | 10/4/2021 | Note Interest<br>Note Balance<br>Total | ($62.31)<br>($376.21)<br>$438.52 | $17,147.53 |
| Regular Payment ███202 | 11/4/2021 | 11/4/2021 | 11/4/2021 | Note Interest<br>Note Balance<br>Total | ($55.25)<br>($383.27)<br>$438.52 | $16,764.26 |
| Regular Payment ███202 | 12/14/2021 | 12/14/2021 | 12/4/2021 | Note Interest<br>Note Balance<br>Total | ($74.51)<br>($364.01)<br>$438.52 | $16,400.25 |
| Regular Payment | 1/11/2022 | 1/11/2022 | 1/4/2022 | Note Interest<br>Note Balance<br>Total | ($51.02)<br>($387.50)<br>$438.52 | $16,012.75 |
| Regular Payment ███202 | 2/14/2022 | 2/14/2022 | 2/4/2022 | Note Interest<br>Note Balance<br>Total | ($60.50)<br>($378.02)<br>$438.52 | $15,634.73 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Regular Payment ▮202 | 3/14/2022 | 3/14/2022 | 3/4/2022 | Note Interest | ($48.64) | | |
| | | | | Note Balance | ($389.88) | | $15,244.85 |
| | | | | Total | $438.52 | | |
| Regular Payment ▮202 | 4/13/2022 | 4/13/2022 | 4/4/2022 | Note Interest | ($50.81) | | |
| | | | | Note Balance | ($387.71) | | $14,857.14 |
| | | | | Total | $438.52 | | |
| Regular Payment ▮202 | 5/13/2022 | 5/13/2022 | 5/4/2022 | Note Interest | ($49.53) | | |
| | | | | Note Balance | ($388.99) | | $14,468.15 |
| | | | | Total | $438.52 | | |
| Regular Payment ▮202 | 6/13/2022 | 6/13/2022 | 6/4/2022 | Note Interest | ($49.83) | | |
| | | | | Note Balance | ($388.69) | | $14,079.46 |
| | | | | Total | $438.52 | | |
| Regular Payment ▮202 | 7/13/2022 | 7/13/2022 | 7/4/2022 | Note Interest | ($46.93) | | |
| | | | | Note Balance | ($391.59) | | $13,687.87 |
| | | | | Total | $438.52 | | |
| Late Charge Assessment | 8/15/2022 | 8/15/2022 | | Late Charge Bala | $10.00 | | |
| Regular Payment | 9/8/2022 | 9/8/2022 | 8/4/2022 | Note Interest | ($86.69) | | |
| | | | | Note Balance | ($433.82) | | $13,254.05 |
| | | | | Total | $520.51 | | |
| Late Charge Assessment | 9/14/2022 | 9/14/2022 | | Late Charge Bala | $10.00 | | |
| Regular Payment | 9/21/2022 | 9/21/2022 | 9/4/2022 | Note Interest | ($19.15) | | |
| | | | | Note Balance | ($632.01) | | $12,622.04 |
| | | | | Total | $651.16 | | |
| Late Charge Assessment | 10/14/2022 | 10/14/2022 | | Late Charge Bala | $10.00 | | |
| Late Charge Assessment | 11/14/2022 | 11/14/2022 | | Late Charge Bala | $10.00 | | |
| Regular Payment | 12/5/2022 | 12/5/2022 | 10/4/2022 | Note Interest | ($105.18) | | |
| | | | | Note Balance | ($517.23) | | $12,104.81 |
| | | | | Total | $622.41 | | |
| Late Charge Assessment | 12/14/2022 | 12/14/2022 | | Late Charge Bala | $10.00 | | |
| Regular Payment | 1/12/2023 | 1/12/2023 | 12/4/2022 | Note Interest | ($51.11) | | |
| | | | | Note Balance | ($785.93) | | $11,318.88 |
| | | | | Total | $837.04 | | |
| Escrow Receipt CPI PREMIUM  ACCT# ▮202 | 1/31/2023 | 1/31/2023 | | Escrow Balance | $0.00 | | $0.00 |
| Escrow Disbursement CPI PREMIUM ACCT# ▮202 | 1/31/2023 | 1/31/2023 | | Escrow Balance | ($1,453.00) | | ($1,453.00) |

| Late Charge Assessment | 2/14/2023 | 2/14/2023 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 3/14/2023 | 3/14/2023 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 4/14/2023 | 4/14/2023 | | Late Charge Bala | $10.00 | |
| Regular Payment | 4/28/2023 | 5/1/2023 | 2/4/2023 | Note Interest | ($133.31) | |
| | | | | Note Balance | ($230.08) | $11,088.80 |
| | | | | Total | $363.39 | |
| Late Charge Assessment | 5/15/2023 | 5/15/2023 | | Late Charge Bala | $10.00 | |
| Regular Payment | 5/30/2023 | 5/31/2023 | 2/4/2023 | Note Interest | ($39.43) | |
| | | | | Note Balance | ($315.50) | $10,773.30 |
| | | | | Total | $354.93 | |
| Late Charge Assessment | 6/14/2023 | 6/14/2023 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 7/14/2023 | 7/14/2023 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 8/14/2023 | 8/14/2023 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 9/14/2023 | 9/14/2023 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 10/14/2023 | 10/14/2023 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 11/14/2023 | 11/14/2023 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 12/14/2023 | 12/14/2023 | | Late Charge Bala | $10.00 | |
| Escrow Disbursement CPI Premium | 1/3/2024 | 1/3/2024 | | Escrow Balance | ($1,240.00) | ($2,693.00) |
| Late Charge Assessment | 1/16/2024 | 1/16/2024 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 2/14/2024 | 2/14/2024 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 3/14/2024 | 3/14/2024 | | Late Charge Bala | $10.00 | |
| Late Charge Assessment | 4/15/2024 | 4/15/2024 | | Late Charge Bala | $10.00 | |

## **EXHIBIT H**

**(Stark County Sheriff's Office Evidence & Inventory Receipt dated March 15, 2024)**

# STARK COUNTY SHERIFF'S OFFICE

### EVIDENCE AND INVENTORY RECEIPT

| Case Agent<br>3760 - Bloodsaw, Holly | Case Number<br>SO24-01206 | Page __ of ___ |
|---|---|---|
| Name of Subject<br>YUKER, ANDREW<br>BENJAMIN<br>FETTIG, ROBERT GENE | Date/Time Search Initiated<br>03/15/24 11:01 | Date/Time Terminated<br>03/15/24 16:00 |
| Address/Place of Search/Seizure<br>3046 HIGHWAY 22<br>DICKINSON, ND  58601 | | |

| Item # | Description and List of Evidence | Found by | Location Property or Evidence/Received |
|---|---|---|---|
| 2013 DRAGON ESP LTD 200 BBL | 1UNST5343DS128172 | 4642 | NORTH LOT OF PROPERTY |
| 2007 KENWORTH | 1XKDP40X07R197151 | 4642 | NORTH LOT OF PROPERTY |
| 2013 DRAGON 200 BBL ALUM. TANK TRAILER | 1UNST5341DS128154 | 4642 | NORTH LOT OF PROPERTY |
| 2013 DRAON 200 BBL SLUM. TANK TRAILER | 1UNST5340DS128162 | 4642 | NORTH LOT OF PROPERTY |
| 2014 DRAGON 200 BBL ALUM. TANK TRAILER | 1UNST5340ES128552 | 4642 | NORTH LOT OF PROPERTY |
| 2012 KENWORTH | 1XKWP4TX8CJ335970 | 4642 | NORTH LOT OF PROPERTY |
| 2014 KENWORTH W900 | 1XKWD49X1EJ413380 | 4642 | NORTH LOT OF PROPERTY |
| 2013 DRAGON 200 BBL TANK TRAILER | 1UNST5348DS128118 | 4642 | NORTH LOT OF PROPERTY |
| 2000 MIDLAND MFG DUMPTRAILER | 2MFB2S3D5YR000651 | 4642 | NORTH LOT OF PROPERTY |
| 2014 KENWORTH | 1NKDX4TX3EJ403810 | 4642 | NORTH LOT OF PROPERTY |

| | | | |
|---|---|---|---|
| 2013 DRAGON 200 BBL AL SEMI TRAILER | 1UNST5340DS128291 | 4642 | NORTH LOT OF PROPERTY |
| 2000 MIDLAND MFG DUMP TAILER | 2MFB2S4D3YR001148 | 4642 | NORTH LOT OF PROPERTY |
| 2016 SIDUMP'R DUMP TRAILER | 1D9FS4437GC688018 | 4642 | NORTH LOT OF PROPERTY |
| 2016 SIDUMP'R DUMP TRAILER | 1D9FS4430GC688099 | 4642 | NORTH LOT OF PROPERTY |
| 2013 DAKOTA MFG DUMP TRAILER | 1D9SH4339DY554348 | 4642 | NORTH LOT OF PROPERTY |
| 2000 MIDLAND MFG DUMP TAILER | 2MFB2S3D3YR000650 | 4642 | NORTH LOT OF PROPERTY |
| 2000 MIDLAND MFG DUMP TAILER | 2MFB2S3D7YR000652 | 4642 | NORTH LOT OF PROPERTY |
| | | | |
| | | | |
| | | | |

## CHAIN OF CUSTODY

| Item # | Date/Time | Received By | Released By | Purpose |
|---|---|---|---|---|
| 1-17 | 02/15/24 12:15 | US RECOVERY | 3760 | CIVIL RECOVERY |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## <u>EXHIBIT I</u>

**(Picture Reports RE: Recovered Vehicle Collateral)**

# Picture Report

**Location Services, LLC**
11350 N Meridian Suite 200
Carmel, IN 46032
**Phone:** 888-525-3818 **Fax:**

03/18/2024
**Case #:** 2128059440
**Reference #:** 86884
**Acct #:** 798942

| **Client** | **Lien Holder** |
|---|---|
| Gate City Bank | Gate City Bank |
| 500 2nd Ave N | |
| Fargo, ND 58102 | |
| **Phone:** (701) 293-2578 **Fax:** | |

| **Debtor** | **Vehicle** |
|---|---|
| STARK ENERGY | 2013 DRAGON ESP, LTD 200 BBL AL TANK TRL |
| | **VIN:** 1UNST5343DS128172 |

The following pictures were taken of the above listed vehicle and are hereby provided in this report. The pictures below are representations of the state of the vehicle at the time of repossession. It will be assumed by the client, and for all legal purposes, that any damages depicted herein are the result of mistreatment by the borrower. Location Services, LLC accepts no responsibility for the overall condition of this vehicle as shown and client agrees to hold Location Services, LLC harmless from any and all claims related to vehicle's condition.








# Picture Report

## Location Services, LLC
11350 N Meridian Suite 200
Carmel, IN 46032
**Phone:** 888-525-3818 **Fax:**

03/18/2024
**Case #:** 2128060005
**Reference #:** 86886
**Acct #:** 1275221

| **Client** | **Lien Holder** |
|---|---|
| Gate City Bank | Gate City Bank |
| 500 2nd Ave N | |
| Fargo, ND 58102 | |
| **Phone:** (701) 293-2578 **Fax:** | |

| **Debtor** | **Vehicle** |
|---|---|
| STARK ENERGY | 2007 KENWORTH MOTOR CONSTRUCTION |
| | **VIN:** 1XKDP40X07R197151 |

The following pictures were taken of the above listed vehicle and are hereby provided in this report. The pictures below are representations of the state of the vehicle at the time of repossession. It will be assumed by the client, and for all legal purposes, that any damages depicted herein are the result of mistreatment by the borrower. Location Services, LLC accepts no responsibility for the overall condition of this vehicle as shown and client agrees to hold Location Services, LLC harmless from any and all claims related to vehicle's condition.





# Picture Report

**Location Services, LLC**
11350 N Meridian Suite 200
Carmel, IN 46032
**Phone:** 888-525-3818 **Fax:**

03/18/2024
**Case #:** 2128074147
**Reference #:** 86932
**Acct #:** 1286855

| **Client** | **Lien Holder** |
|---|---|
| Gate City Bank | Gate City Bank |
| 500 2nd Ave N | |
| Fargo, ND 58102 | |
| **Phone:** (701) 293-2578 **Fax:** | |

| **Debtor** | **Vehicle** |
|---|---|
| STARK ENERGY | 2013 DRAGON 200 BBL AL TANK TRL |
| | **VIN:** 1UNST5341DS128154 |

The following pictures were taken of the above listed vehicle and are hereby provided in this report. The pictures below are representations of the state of the vehicle at the time of repossession. It will be assumed by the client, and for all legal purposes, that any damages depicted herein are the result of mistreatment by the borrower. Location Services, LLC accepts no responsibility for the overall condition of this vehicle as shown and client agrees to hold Location Services, LLC harmless from any and all claims related to vehicle's condition.






# Picture Report

**Location Services, LLC**
11350 N Meridian Suite 200
Carmel, IN 46032
**Phone:** 888-525-3818 **Fax:**

03/18/2024
**Case #:** 2128074442
**Reference #:** 86933
**Acct #:** 1286855-A

| **Client** | **Lien Holder** |
|---|---|
| Gate City Bank | Gate City Bank |
| 500 2nd Ave N | |
| Fargo, ND 58102 | |
| **Phone:** (701) 293-2578 **Fax:** | |

| **Debtor** | **Vehicle** |
|---|---|
| STARK ENERGY | 2013 DRAGON 200 BBL AL TANK TRL |
| | **VIN:** 1UNST5340DS128162 |

The following pictures were taken of the above listed vehicle and are hereby provided in this report. The pictures below are representations of the state of the vehicle at the time of repossession. It will be assumed by the client, and for all legal purposes, that any damages depicted herein are the result of mistreatment by the borrower. Location Services, LLC accepts no responsibility for the overall condition of this vehicle as shown and client agrees to hold Location Services, LLC harmless from any and all claims related to vehicle's condition.





# Picture Report

**Location Services, LLC**
11350 N Meridian Suite 200
Carmel, IN 46032
**Phone:** 888-525-3818 **Fax:**

03/18/2024
**Case #:** 2128074690
**Reference #:** 86935
**Acct #:** 1286855-B

| **Client** | **Lien Holder** |
|---|---|
| Gate City Bank | Gate City Bank |
| 500 2nd Ave N | |
| Fargo, ND 58102 | |
| **Phone:** (701) 293-2578 **Fax:** | |

| **Debtor** | **Vehicle** |
|---|---|
| STARK ENERGY | 2014 DRGON ESP LTD BBL AL TANK |
| | **VIN:** 1UNST5340ES128552 |

The following pictures were taken of the above listed vehicle and are hereby provided in this report. The pictures below are representations of the state of the vehicle at the time of repossession. It will be assumed by the client, and for all legal purposes, that any damages depicted herein are the result of mistreatment by the borrower. Location Services, LLC accepts no responsibility for the overall condition of this vehicle as shown and client agrees to hold Location Services, LLC harmless from any and all claims related to vehicle's condition.







# Picture Report

**Location Services, LLC**
11350 N Meridian Suite 200
Carmel, IN 46032
**Phone:** 888-525-3818 **Fax:**

03/18/2024
**Case #:** 2128029687
**Reference #:** 86727
**Acct #:** 1333145

| **Client** | **Lien Holder** |
|---|---|
| Gate City Bank | Gate City Bank |
| 500 2nd Ave N | |
| Fargo, ND 58102 | |
| **Phone:** (701) 293-2578 **Fax:** | |

| **Debtor** | **Vehicle** |
|---|---|
| STARK ENERGY | 2012 KENWORTH MOTOR TRACTOR TRUCK |
| | **VIN:** 1XKWP4TX8CJ335970 |

The following pictures were taken of the above listed vehicle and are hereby provided in this report. The pictures below are representations of the state of the vehicle at the time of repossession. It will be assumed by the client, and for all legal purposes, that any damages depicted herein are the result of mistreatment by the borrower. Location Services, LLC accepts no responsibility for the overall condition of this vehicle as shown and client agrees to hold Location Services, LLC harmless from any and all claims related to vehicle's condition.





# Picture Report

**Location Services, LLC**
11350 N Meridian Suite 200
Carmel, IN 46032
**Phone:** 888-525-3818 **Fax:**

03/18/2024
**Case #:** 2128031392
**Reference #:** 86734
**Acct #:** 1961820

| **Client** | **Lien Holder** |
|---|---|
| Gate City Bank | Gate City Bank |
| 500 2nd Ave N | |
| Fargo, ND 58102 | |
| **Phone:** (701) 293-2578 **Fax:** | |

| **Debtor** | **Vehicle** |
|---|---|
| STARK ENERGY | 2014 KENWORTH MOTOR TRACTOR TRUCK DIESEL |
| | **VIN:** 1XKWD49X1EJ413380 |

The following pictures were taken of the above listed vehicle and are hereby provided in this report. The pictures below are representations of the state of the vehicle at the time of repossession. It will be assumed by the client, and for all legal purposes, that any damages depicted herein are the result of mistreatment by the borrower. Location Services, LLC accepts no responsibility for the overall condition of this vehicle as shown and client agrees to hold Location Services, LLC harmless from any and all claims related to vehicle's condition.








# Picture Report

## Location Services, LLC
11350 N Meridian Suite 200
Carmel, IN 46032
**Phone:** 888-525-3818 **Fax:**

03/18/2024
**Case #:** 2128031715
**Reference #:** 86735
**Acct #:** 1961820-A

| | |
|---|---|
| **Client** | **Lien Holder** |
| Gate City Bank | Gate City Bank |
| 500 2nd Ave N | |
| Fargo, ND 58102 | |
| **Phone:** (701) 293-2578 **Fax:** | |

| | |
|---|---|
| **Debtor** | **Vehicle** |
| STARK ENERGY | 2013 DRAGON ESP LTD 200 BBL AL TANK TRL |
| | **VIN:** 1UNST5348DS128118 |

The following pictures were taken of the above listed vehicle and are hereby provided in this report. The pictures below are representations of the state of the vehicle at the time of repossession. It will be assumed by the client, and for all legal purposes, that any damages depicted herein are the result of mistreatment by the borrower. Location Services, LLC accepts no responsibility for the overall condition of this vehicle as shown and client agrees to hold Location Services, LLC harmless from any and all claims related to vehicle's condition.






# Picture Report

## Location Services, LLC
11350 N Meridian Suite 200
Carmel, IN 46032
**Phone:** 888-525-3818 **Fax:**

03/18/2024
**Case #:** 2128060777
**Reference #:** 86891
**Acct #:** 1993856

| | |
|---|---|
| **Client** | **Lien Holder** |
| Gate City Bank | Gate City Bank |
| 500 2nd Ave N | |
| Fargo, ND 58102 | |
| **Phone:** (701) 293-2578 **Fax:** | |

| | |
|---|---|
| **Debtor** | **Vehicle** |
| STARK ENERGY | 2014 KENWORTH MOTOR STRAIGHT TRUCK T800 |
| | **VIN:** 1NKDX4TX3EJ403810 |

The following pictures were taken of the above listed vehicle and are hereby provided in this report. The pictures below are representations of the state of the vehicle at the time of repossession. It will be assumed by the client, and for all legal purposes, that any damages depicted herein are the result of mistreatment by the borrower. Location Services, LLC accepts no responsibility for the overall condition of this vehicle as shown and client agrees to hold Location Services, LLC harmless from any and all claims related to vehicle's condition.





# Picture Report

**Location Services, LLC**
11350 N Meridian Suite 200
Carmel, IN 46032
**Phone:** 888-525-3818 **Fax:**

03/18/2024
**Case #:** 2128061623
**Reference #:** 86896
**Acct #:** 2116648-A

| **Client** | **Lien Holder** |
|---|---|
| Gate City Bank | Gate City Bank |
| 500 2nd Ave N | |
| Fargo, ND 58102 | |
| **Phone:** (701) 293-2578 **Fax:** | |

| **Debtor** | **Vehicle** |
|---|---|
| STARK ENERGY | 2013 DRAGON 200 BBL AL TANK TRL |
| | **VIN:** 1UNST5340DS128291 |

The following pictures were taken of the above listed vehicle and are hereby provided in this report. The pictures below are representations of the state of the vehicle at the time of repossession. It will be assumed by the client, and for all legal purposes, that any damages depicted herein are the result of mistreatment by the borrower. Location Services, LLC accepts no responsibility for the overall condition of this vehicle as shown and client agrees to hold Location Services, LLC harmless from any and all claims related to vehicle's condition.






# Picture Report

**Location Services, LLC**
11350 N Meridian Suite 200
Carmel, IN 46032
**Phone:** 888-525-3818 **Fax:**

03/18/2024
**Case #:** 2128071078
**Reference #:** 86921
**Acct #:** 2257715-F

---

**Client**
Gate City Bank
500 2nd Ave N
Fargo, ND 58102
**Phone:** (701) 293-2578 **Fax:**

**Lien Holder**
Gate City Bank

---

**Debtor**
STARK ENERGY

**Vehicle**
2016 SIDUMP'R DUMP
**VIN:** 1D9FS4437GC688018

---

The following pictures were taken of the above listed vehicle and are hereby provided in this report. The pictures below are representations of the state of the vehicle at the time of repossession. It will be assumed by the client, and for all legal purposes, that any damages depicted herein are the result of mistreatment by the borrower. Location Services, LLC accepts no responsibility for the overall condition of this vehicle as shown and client agrees to hold Location Services, LLC harmless from any and all claims related to vehicle's condition.





# Picture Report

## Location Services, LLC

11350 N Meridian Suite 200
Carmel, IN 46032
**Phone:** 888-525-3818 **Fax:**

03/18/2024
**Case #:** 2128070408
**Reference #:** 86918
**Acct #:** 2257715-E

---

**Client**
Gate City Bank
500 2nd Ave N
Fargo, ND 58102
**Phone:** (701) 293-2578 **Fax:**

**Lien Holder**
Gate City Bank

---

**Debtor**
STARK ENERGY

**Vehicle**
2016 SIDUMP'R DUMP
**VIN:** 1D9FS4430GC688099

---

The following pictures were taken of the above listed vehicle and are hereby provided in this report. The pictures below are representations of the state of the vehicle at the time of repossession. It will be assumed by the client, and for all legal purposes, that any damages depicted herein are the result of mistreatment by the borrower. Location Services, LLC accepts no responsibility for the overall condition of this vehicle as shown and client agrees to hold Location Services, LLC harmless from any and all claims related to vehicle's condition.





# Picture Report

**Location Services, LLC**
11350 N Meridian Suite 200
Carmel, IN 46032
**Phone:** 888-525-3818 **Fax:**

03/18/2024
**Case #:** 2128071468
**Reference #:** 86924
**Acct #:** 2257715-G

---

**Client**
Gate City Bank
500 2nd Ave N
Fargo, ND 58102
**Phone:** (701) 293-2578 **Fax:**

**Lien Holder**
Gate City Bank

---

**Debtor**
STARK ENERGY

**Vehicle**
2013 DAKOTA MFG CO BELLY DUMP
**VIN:** 1D9SH4339DY554348

---

The following pictures were taken of the above listed vehicle and are hereby provided in this report. The pictures below are representations of the state of the vehicle at the time of repossession. It will be assumed by the client, and for all legal purposes, that any damages depicted herein are the result of mistreatment by the borrower. Location Services, LLC accepts no responsibility for the overall condition of this vehicle as shown and client agrees to hold Location Services, LLC harmless from any and all claims related to vehicle's condition.





# Picture Report

## Location Services, LLC

11350 N Meridian Suite 200
Carmel, IN 46032
**Phone:** 888-525-3818 **Fax:**

03/18/2024
**Case #:** 2128068499
**Reference #:** 86909
**Acct #:** 2257715-D

| **Client** | **Lien Holder** |
|---|---|
| Gate City Bank | Gate City Bank |
| 500 2nd Ave N | |
| Fargo, ND 58102 | |
| **Phone:** (701) 293-2578 **Fax:** | |

| **Debtor** | **Vehicle** |
|---|---|
| STARK ENERGY | 2000 MIDLAND MFG LT BELLY DUMP SE |
| | **VIN:** 2MFB2S3D5YR000651 |

The following pictures were taken of the above listed vehicle and are hereby provided in this report. The pictures below are representations of the state of the vehicle at the time of repossession. It will be assumed by the client, and for all legal purposes, that any damages depicted herein are the result of mistreatment by the borrower. Location Services, LLC accepts no responsibility for the overall condition of this vehicle as shown and client agrees to hold Location Services, LLC harmless from any and all claims related to vehicle's condition.







# Picture Report

**Location Services, LLC**
11350 N Meridian Suite 200
Carmel, IN 46032
**Phone:** 888-525-3818 **Fax:**

03/18/2024
**Case #:** 2128067125
**Reference #:** 86905
**Acct #:** 2257715-A

| **Client** | **Lien Holder** |
|---|---|
| Gate City Bank | Gate City Bank |
| 500 2nd Ave N | |
| Fargo, ND 58102 | |
| **Phone:** (701) 293-2578 **Fax:** | |

| **Debtor** | **Vehicle** |
|---|---|
| STARK ENERGY | 2000 MIDLAND MFG LT BELLY DUMP SE |
| | **VIN:** 2MFB2S4D3YR001148 |

The following pictures were taken of the above listed vehicle and are hereby provided in this report. The pictures below are representations of the state of the vehicle at the time of repossession. It will be assumed by the client, and for all legal purposes, that any damages depicted herein are the result of mistreatment by the borrower. Location Services, LLC accepts no responsibility for the overall condition of this vehicle as shown and client agrees to hold Location Services, LLC harmless from any and all claims related to vehicle's condition.






# Picture Report

**Location Services, LLC**
11350 N Meridian Suite 200
Carmel, IN 46032
**Phone:** 888-525-3818 **Fax:**

03/18/2024
**Case #:** 2128067827
**Reference #:** 86908
**Acct #:** 2257715-C

| **Client** | **Lien Holder** |
|---|---|
| Gate City Bank | Gate City Bank |
| 500 2nd Ave N | |
| Fargo, ND 58102 | |
| **Phone:** (701) 293-2578 **Fax:** | |

| **Debtor** | **Vehicle** |
|---|---|
| STARK ENERGY | 2000 MIDLAND MFG LT BELLY DUMP SE |
| | **VIN:** 2MFB2S3D3YR000650 |

The following pictures were taken of the above listed vehicle and are hereby provided in this report. The pictures below are representations of the state of the vehicle at the time of repossession. It will be assumed by the client, and for all legal purposes, that any damages depicted herein are the result of mistreatment by the borrower. Location Services, LLC accepts no responsibility for the overall condition of this vehicle as shown and client agrees to hold Location Services, LLC harmless from any and all claims related to vehicle's condition.







# Picture Report

**Location Services, LLC**
11350 N Meridian Suite 200
Carmel, IN 46032
**Phone:** 888-525-3818 **Fax:**

03/19/2024
**Case #:** 2128067486
**Reference #:** 86906
**Acct #:** 2257715-B

---

**Client**
Gate City Bank
500 2nd Ave N
Fargo, ND 58102
**Phone:** (701) 293-2578 **Fax:**

**Lien Holder**
Gate City Bank

---

**Debtor**
STARK ENERGY

**Vehicle**
2000 MIDLAND MFG LT BELLY DUMP SE
**VIN:** 2MFB2S3D7YR000652

---

The following pictures were taken of the above listed vehicle and are hereby provided in this report. The pictures below are representations of the state of the vehicle at the time of repossession. It will be assumed by the client, and for all legal purposes, that any damages depicted herein are the result of mistreatment by the borrower. Location Services, LLC accepts no responsibility for the overall condition of this vehicle as shown and client agrees to hold Location Services, LLC harmless from any and all claims related to vehicle's condition.



*#20 Note 2. Cess*

# Picture Report

## Location Services, LLC

11350 N Meridian Suite 200
Carmel, IN 46032
**Phone:** 888-525-3818 **Fax:**

03/18/2024
**Case #:** 2128066064
**Reference #:** 86903
**Acct #:** 2257715

| **Client** | **Lien Holder** |
|---|---|
| Gate City Bank | Gate City Bank |
| 500 2nd Ave N | |
| Fargo, ND 58102 | |
| **Phone:** (701) 293-2578 **Fax:** | |

| **Debtor** | **Vehicle** |
|---|---|
| STARK ENERGY INC | 1999 MILDAND BELLY DUMP SE |
| | **VIN:** 2MFB2S4D4XR000542 |

The following pictures were taken of the above listed vehicle and are hereby provided in this report. The pictures below are representations of the state of the vehicle at the time of repossession. It will be assumed by the client, and for all legal purposes, that any damages depicted herein are the result of mistreatment by the borrower. Location Services, LLC accepts no responsibility for the overall condition of this vehicle as shown and client agrees to hold Location Services, LLC harmless from any and all claims related to vehicle's condition.





# EXHIBIT J

**(Pifer's Auction Listings – Recovered Vehicle Collateral)**

#2    Note 2 - Class

‹ Back to lots view

**#163** | 2007 Kenworth T800 Semi



CURRENT BID

**$2,300**

44 bids ⌄

**Register to bid**

Watch only

**Webcast running**

## Detailed description

VIN: 1XKDP40X07R197151, NOTE: This Truck Was Tipped on Passenger Side, No Transmission, New Rear End, Mileage Unknown **Attention Buyers: Be aware that this item is being sold "As Is-Where Is," with its working condition unknown. Neither the Auction Company nor the Owner have operated or seen this truck operate. Additionally, some parts may be missing. This truck is currently owned by a financial institution and sells with a title.**

#3    Note 3 - Cess

**#188** | 2013 Dragon Vacuum Tank Trailer



Click or tap the image to zoom in and out

**Register to bid**

Watch only

**Webcast running**

## Detailed description

VIN: 1UNST5341DS128154, 8400 Gallon Capacity, 200 Barrel, Challenger Blower, Quad Axle, Unit T-101 **Attention Buyers: Be aware that this item is being sold "As Is-Where Is," with its working condition unknown. Neither the Auction Company nor the Owner have operated or seen this trailer operate. Additionally, some parts may be missing. This trailer is currently owned by a financial institution and sells with a title.**

#4    Note 3  - CWS

**#190** | 2013 Dragon Vacuum Tank Trailer





Register to bid

Watch only

**Webcast running**

## Detailed description

VIN: 1UNST5340DS128162, 51 ft. x 96 in., 8400 Gallon Capacity, 200 Barrel, Quad Axle, Unit T-113 NOTE: Missing Blower **Attention Buyers: Be aware that this item is being sold "As Is-Where Is," with its working condition unknown. Neither the Auction Company nor the Owner have operated or seen this trailer operate. Additionally, some parts may be missing. This trailer is currently owned by a financial institution and sells with a title.**

#5    Note 3. CWS

**#191** | 2014 Dragon ESP Trailer



Click or tap the image to zoom in and out



Register to bid

Watch only

**Webcast running**

## Detailed description

VIN: 1UNST5340ES128552, 8400 Gallon, 200 Barrel, Quad Axle, Unit T-103 NOTE: Missing Blower **Attention Buyers: Be aware that this item is being sold "As Is-Where Is," with its working condition unknown. Neither the Auction Company nor the Owner have operated or seen this trailer operate. Additionally, some parts may be missing. This trailer is currently owned by a financial institution and sells with a title.**

#6    Note 4 - ccws

**#162** | 2012 Kenworth W900 Semi





Watch only

**Webcast running**

## Detailed description

VIN: IXKWP4TXBCJ335970, Unit Number: S-209, Cummins ISX 15, 525 hp, 3 Stage Jake, Triple Axle, Lift Pusher, Fixed 5th Wheel Plate, Mileage Unknown  **Attention Buyers: Be aware that this item is being sold "As Is-Where Is," with its working condition unknown. Neither the Auction Company nor the Owner have operated or seen this truck operate. Additionally, some parts may be missing. This truck is currently owned by a financial institution and sells with a title.**

#7 Note 5 - Cuss

**#164 | 2014 Kenworth W900 Semi**



Click or tap the image to zoom in and out



Register to bid

Watch only

**Webcast running**

## Detailed description

VIN: 1XKWD4PX1EJ413380, Cummins ISX 15 Engine, 3 Stage Jake, 5th Wheel Air Slide, Air Suspension, 600 Hp, Showing 843,735 Miles
**Attention Buyers: Be aware that this item is being sold "As Is-Where Is," with its working condition unknown. Neither the Auction Company nor the Owner have operated or seen this truck operate. Additionally, some parts may be missing. This truck is currently owned by a financial institution and sells with a title.**

#8    Note 5/8    Cw5



**#189** | 2013 Dragon Vacuum Tank Trailer



Click or tap the image to zoom in and out

Register to bid

Watch only

**Webcast running**

## Detailed description

VIN: 1UNST5348DS128118, 51 ft. x 96 in., 8400 Gallon Capacity, 200 Barrel, Challenger Blower, Air Suspension, Quad Axle, Unit T-021

**Attention Buyers: Be aware that this item is being sold "As Is-Where Is," with its working condition unknown. Neither the Auction Company nor the Owner have operated or seen this trailer operate. Additionally, some parts may be missing. This trailer is currently owned by a financial institution and sells with a title.**

#10    Note 6 - CWS

< Back to lots view

**#165** | 2013 Kenworth T800 Semi



Click or tap the image to zoom in and out

CURRENT BID
**$9,000**

57 bids ⌄

**Register to bid**

Watch only

**Webcast running**

## Detailed description

VIN: 1NKDX4TX3EJ403810, Cummins ISX 15 Engine, 550 hp, 18 Speed, 3 Stage Jake,  NOTE: Not in Running Condition, Missing Key, Has Oil In Coolant Tank, Mileage Unknown **Attention Buyers: Be aware that this item is being sold "As Is-Where Is," with its working condition unknown. Neither the Auction Company nor the Owner have operated or seen this truck operate. Additionally, some parts may be missing. This truck is currently owned by a financial institution and sells with a title.**

#11    Note 7 Cross

**#192** | 2013 Dragon Vacuum Tank Trailer



Click or tap the image to zoom in and out



Register to bid

Watch only

**Webcast running**

## Detailed description

VIN: 1UNST5340DS128291, 51 ft. x 96 in., 8400 Gallon Capacity, 200 Barrel, Quad Axle, Air Suspension NOTE: Missing Blower, Has Damage to Left Side, Toolbox and Wheels, Unit T-105 **Attention Buyers: Be aware that this item is being sold "As Is-Where Is," with its working condition unknown. Neither the Auction Company nor the Owner have operated or seen this trailer operate. Additionally, some parts may be missing. This trailer is currently owned by a financial institution and sells with a title.**

#13  Note 8 - Cuss

‹ Back to lots view

**#182** | 2016 Sidump'r Trailer



Click or tap the image to zoom in and out

**Register to bid**

Watch only

**Webcast running**

## Detailed description

VIN: 1D9FS4437GC688018, 42 ft. x 96 in., Tri-Axle, Duals, Electric Roll Tarp, Unit SD-002 **Attention Buyers: Be aware that this item is being sold "As Is-Where Is," Additionally, some parts may be missing. This trailer is currently owned by a financial institution and sells with a title.**

#14    Note 8 - CWS

‹ Back to lots view

**#181** | 2016 Sidump'r Trailer



Click or tap the image to zoom in and out

**Register to bid**

Watch only

**Webcast running**

## Detailed description

VIN: 1D9FS4430GC688099, 42 ft. x 96 in., Tri-Axle, Duals, Electric Roll Tarp, Unit SD-001 **Attention Buyers: Be aware that this item is being sold "As Is-Where Is," Additionally, some parts may be missing. This trailer is currently owned by a financial institution and sells with a title.**

#15    Note \$\frac{\theta}{\theta}\$ - CW5

**#183** | 2012 Dakota Mfg. Belly Dump Trailer



Register to bid

Watch only

**Webcast running**

## Detailed description

VIN: 1D9SH4339DY554348, 43 ft. x 96 in., Tri-Axle, Duals, 11R22.5 Tires
**Attention Buyers: Be aware that this item is being sold "As Is-Where
Is." Additionally, some parts may be missing. This trailer is currently
owned by a financial institution and sells with a title.**

#16    Note 8  - CWS

‹ Back to lots view

**#185** | 1999 Midland Belly Dump Trailer



Click or tap the image to zoom in and out

**Register to bid**

Watch only

**Webcast running**

## Detailed description

VIN: 2MFB2S3D5YR000651, 44 ft. x 96 in., Tri-Axle, Duals, Unit BD-005
**Attention Buyers: Be aware that this item is being sold "As Is-Where Is." Additionally, some parts may be missing. This trailer is currently owned by a financial institution and sells with a title.**

#17    Note 8 . CWS

**#187** | 2000 Midland Belly Dump



Click or tap the image to zoom in and out

Register to bid

Watch only

**Webcast running**

## Detailed description

VIN: 2MFB2S4D3YR001148, 48 ft. x 96 in. Unit BD-004 NOTE: Missing Axle, Missing Tires, Missing Air Valve on Back Side of Hopper, Missing Lights **Attention Buyers: Be aware that this item is being sold "As Is-Where Is." Additionally, some parts may be missing. This trailer is currently owned by a financial institution and sells with a title.**

#18    Pete 8 - CWS

**#184** | 1999 Midland Belly Dump



Click or tap the image to zoom in and out

**Register to bid**

Watch only

**Webcast running**

## Detailed description

VIN: 2MFB2S3D3YR000650, 44 ft. x 96 in., Tri-Axle, Duals, Unit BD-002
**Attention Buyers: Be aware that this item is being sold "As Is-Where Is." Additionally, some parts may be missing. This trailer is currently owned by a financial institution and sells with a title.**

*#19 or #20 ?    Nok8 -CeeJ*

**#186 | 1999 Midland Belly Dump Trailer**



Click or tap the image to zoom in and out


Register to bid

Watch only

**Webcast running**

## Detailed description

VIN: Unknown, 44 ft. x 96 in., Tri-Axle, Duals, Unit BD-003 **Attention Buyers: Be aware that this item is being sold "As Is-Where Is." Additionally, some parts may be missing. This trailer is currently owned by a financial institution and sells with a title.**

# **EXHIBIT K**

**(New Certificates of Title – Recovered Vehicle Collateral)**

**LEGAL DOCUMENT -- KEEP IN A SAFE PLACE**

## CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION

SFN 2875

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1UNST5343DS128172 | 2013 | 2013 | DRAGON ESP, LTD | SEMI-TRAILER | 200 BBL AL TANK TRL |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| GATE CITY BANK | ND297507328 | TRAILER | 0 | 3/26/2024 |

| ODOMETER READING | ODOMETER STATUS |
|---|---|
| | EXEMPT |

MAIL TO:
GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

### PREVIOUSLY SALVAGED

THIS VEHICLE HAS BEEN PREVIOUSLY DAMAGED. IF YOU REQUIRE FURTHER INFORMATION, PLEASE CONTACT THE D.O.T.

---

**PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)**

Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust):   ☐ Driver's License  ☐ FEIN    Telephone Number

| Mailing Address | | City | State | ZIP Code | County |
|---|---|---|---|---|---|

Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust):   ☐ Driver's License  ☐ FEIN    Telephone Number

| Mailing Address | | City | State | ZIP Code | County |
|---|---|---|---|---|---|

Check One:  ☐ Or   ☐ And   ☐ And/Joint Tenants with Right of Survivorship    Purchase Date (Mo., Day, Year)    Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.
I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked. ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (**warning \*odometer discrepancy**)

Odometer Reading    NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

### LEGAL TITLE OWNER (LIENHOLDER)

Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert Rehberg*

Deputy Director for Driver Safety

**LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.**

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

S319916

**THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.**    SFN 2875 (9-2023)

**ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE**

LEGAL DOCUMENT -- KEEP IN A SAFE PLACE

# CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION
SFN 2875

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1XKDP40X07R197151 | 2007 | 2007 | KENWORTH MOTOR | TRACTOR TRUCK, DIESE | CONSTRUCTION |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| GATE CITY BANK | ND5937664 | TRUCK | 16500 | 3/26/2024 |

ODOMETER READING

ODOMETER STATUS
EXEMPT

MAIL TO:
GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

## PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): ☐ Driver's License ☐ FEIN | Telephone Number

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): ☐ Driver's License ☐ FEIN | Telephone Number

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Check One: ☐ Or   ☐ And   ☐ And/Joint Tenants with Right of Survivorship | Purchase Date (Mo., Day, Year) | Purchase Price

Odometer Disclosure: Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy)

Odometer Reading

NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

### LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

_Robert Rehborg_

Deputy Director for Driver Safety

LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

S319920

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.

SFN 2875 (9-2023)

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

LEGAL DOCUMENT -- KEEP IN A SAFE PLACE

**CERTIFICATE OF TITLE FOR A VEHICLE**
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION
SFN 2875

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1UNST5341DS128154 | 2013 | 2013 | DRAGON ESP, LTD | SEMI-TRAILER | 200 BBL AL TANK TRL |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| GATE CITY BANK | ND374364672 | TRAILER | 0 | 4/4/2024 |

| | ODOMETER READING | ODOMETER STATUS |
|---|---|---|
| | | EXEMPT |

MAIL TO:
GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

**PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)**

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | | ☐ Driver's License ☐ FEIN | | Telephone Number |
|---|---|---|---|---|
| Mailing Address | City | State | ZIP Code | County |
| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | | ☐ Driver's License ☐ FEIN | | Telephone Number |
| Mailing Address | City | State | ZIP Code | County |

Check One: ☐ Or  ☐ And  ☐ And/Joint Tenants with Right of Survivorship

Purchase Date (Mo., Day, Year) | Purchase Price

Odometer Disclosure: Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy).

Odometer Reading    NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

**LEGAL TITLE OWNER (LIENHOLDER)**
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert Rehborg*

Deputy Director for Driver Safety

LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.    SFN 2875 (9-2023)

S346756

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

LEGAL DOCUMENT -- KEEP IN A SAFE PLACE

## CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION
SFN 2875

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1UNST5340DS128162 | 2013 | 2013 | DRAGON ESP, LTD | SEMI-TRAILER | 200 BBL AL TANK |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| GATE CITY BANK | ND565942784 | TRAILER | 0 | 3/26/2024 |

ODOMETER READING

ODOMETER STATUS
EXEMPT

MAIL TO:  GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

**PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)**

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | ☐ Driver's License  ☐ FEIN | Telephone Number |
|---|---|---|

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | ☐ Driver's License  ☐ FEIN | Telephone Number |
|---|---|---|

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Check One:  ☐ Or  ☐ And  ☐ And/Joint Tenants with Right of Survivorship

Purchase Date (Mo., Day, Year) | Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy*)

Odometer Reading            NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|

| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) |
|---|---|---|

**LEGAL TITLE OWNER (LIENHOLDER)**

Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert Rehborg*

Deputy Director for Driver Safety

**LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.**

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.        SFN 2875 (9-2023)

S319917

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

**LEGAL DOCUMENT -- KEEP IN A SAFE PLACE**

# CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION

SFN 2875

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1UNST5340ES128552 | 2014 | 2014 | DRAGON ESP, LTD | SEMI-TRAILER | BBL AL TANK |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| GATE CITY BANK | ND1102813696 | TRAILER | 0 | 3/26/2024 |

| ODOMETER READING | ODOMETER STATUS |
|---|---|
| | EXEMPT |

MAIL TO:
GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

## PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | ☐ Driver's License ☐ FEIN | | Telephone Number |
|---|---|---|---|
| Mailing Address | City | State | ZIP Code | County |

| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | ☐ Driver's License ☐ FEIN | | Telephone Number |
|---|---|---|---|
| Mailing Address | City | State | ZIP Code | County |

Check One: ☐ Or ☐ And ☐ And/Joint Tenants with Right of Survivorship | Purchase Date (Mo., Day, Year) | Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (**warning \*odometer discrepancy**)

Odometer Reading

NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

### LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert Rehborg*

Deputy Director for Driver Safety

**LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.**

| Lienholder Name | |
|---|---|
| Signature of Agent | Date (Mo., Day, Year) |

S319918

**THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.**

SFN 2875 (9-2023)

**ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE**

**LEGAL DOCUMENT - KEEP IN A SAFE PLACE**

## CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION
SFN 2875

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|-----|-----------|-----------------|------|-----------|-------|
| 1XKWP4TX8CJ335970 | 2012 | 2012 | KENWORTH MOTOR | TRACTOR TRUCK, DIESE | CONSTRUCTION |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---------------|--------------|--------------|-----------------|-------------|
| GATE CITY BANK | ND2018793984 | TRUCK | 18500 | 3/26/2024 |

ODOMETER READING

ODOMETER STATUS
EXEMPT

MAIL TO:   GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

### PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Check One:  ☐ Or   ☐ And   ☐ And/Joint Tenants with Right of Survivorship | Purchase Date (Mo., Day, Year) | Purchase Price

Odometer Disclosure: Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy*)

Odometer Reading | NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|

| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) |
|---|---|---|

### LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert Rehberg*

Deputy Director for Driver Safety

**LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.**

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.    SFN 2875 (9-2023)

S319919

**ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE**

LEGAL DOCUMENT -- KEEP IN A SAFE PLACE

# CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION
SFN 2875

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1XKWD49X1EJ413380 | 2014 | 2014 | KENWORTH MOTOR | TRACTOR TRUCK, DIESE | CONSTRUCTION |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| GATE CITY BANK | ND1625987584 | TRUCK | 18100 | 3/26/2024 |

ODOMETER READING          ODOMETER STATUS
                          EXEMPT

MAIL TO: GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

## PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | | ☐ Driver's License ☐ FEIN | | | Telephone Number |
|---|---|---|---|---|---|
| Mailing Address | City | State | ZIP Code | | County |
| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | | ☐ Driver's License ☐ FEIN | | | Telephone Number |
| Mailing Address | City | State | ZIP Code | | County |

Check One: ☐ Or  ☐ And  ☐ And/Joint Tenants with Right of Survivorship | Purchase Date (Mo., Day, Year) | Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.
I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (**warning *odometer discrepancy**)

Odometer Reading
NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

### LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert Rehborg*

Deputy Director for Driver Safety

LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

S319922

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.

SFN 2875 (9-2023)

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

LEGAL DOCUMENT - - KEEP IN A SAFE PLACE

# CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION
SFN 2875

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1UNST5348DS128118 | 2013 | 2013 | DRAGON ESP, LTD | SEMI-TRAILER | 200 BBL AL TANK TRL |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| GATE CITY BANK | ND945052160 | TRAILER | 0 | 3/26/2024 |

| | ODOMETER READING | ODOMETER STATUS |
|---|---|---|
| | | EXEMPT |

MAIL TO:  GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

## PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust):  ☐ Driver's License  ☐ FEIN  Telephone Number

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust):  ☐ Driver's License  ☐ FEIN  Telephone Number

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Check One: ☐ Or  ☐ And  ☐ And/Joint Tenants with Right of Survivorship  | Purchase Date (Mo., Day, Year) | Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked. ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (**warning** •odometer discrepancy)

Odometer Reading    NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|

| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) |
|---|---|---|

**LEGAL TITLE OWNER (LIENHOLDER)**
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert Rehborg*

Deputy Director for Driver Safety

LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

S319921

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.    SFN 2875 (9-2023)

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

LEGAL DOCUMENT -- KEEP IN A SAFE PLACE

## CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION
SFN 2875

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1NKDX4TX3EJ403810 | 2014 | 2014 | KENWORTH MOTOR | STRAIGHT TRUCK | T800 |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| GATE CITY BANK | ND2030672384 | TRUCK | 20000 | 4/4/2024 |

| ODOMETER READING | ODOMETER STATUS |
|---|---|
| | EXEMPT |

MAIL TO:  GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

### PART 1.  ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | | ☐ Driver's License  ☐ FEIN | Telephone Number |
|---|---|---|---|
| Mailing Address | City | State | ZIP Code | County |

| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | | ☐ Driver's License  ☐ FEIN | Telephone Number |
|---|---|---|---|

| Mailing Address | City | State | ZIP Code | County |

Check One:  ☐ Or   ☐ And   ☐ And/Joint Tenants with Right of Survivorship    Purchase Date (Mo., Day, Year)   Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.
I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (**warning \*odometer discrepancy**)

Odometer Reading        NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

### LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert R Rehborg*

Deputy Director for Driver Safety

LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

| Lienholder Name | |
|---|---|
| Signature of Agent | Date (Mo., Day, Year) |

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.                    SFN 2875 (9-2023)

S346755

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

**LEGAL DOCUMENT -- KEEP IN A SAFE PLACE**

## CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION
SFN 2875

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1UNST5340DS128291 | 2013 | 2013 | DRAGON ESP, LTD | SEMI-TRAILER | 200 BBL AL TANK |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| GATE CITY BANK | ND2126223872 | TRAILER | 0 | 3/26/2024 |

ODOMETER READING

ODOMETER STATUS
EXEMPT

MAIL TO:  GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

**PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)**

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|---|
| Mailing Address | City | State  ZIP Code | County |

Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust):   ☐ Driver's License ☐ FEIN   Telephone Number

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Check One: ☐ Or ☐ And ☐ And/Joint Tenants with Right of Survivorship | Purchase Date (Mo., Day, Year) | Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.
I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy).

Odometer Reading   NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

### LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert Rehborg*

Deputy Director for Driver Safety

**LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.**

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

**THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.**   SFN 2875 (9-2023)

S319923

**ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE**

*Property Nike's CCS*

**LEGAL DOCUMENT -- KEEP IN A SAFE PLACE**

## CERTIFICATE OF TITLE FOR A VEHICLE

NORTH DAKOTA DEPARTMENT OF TRANSPORTATION

SFN 2875

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1D9FS4437GC688018 | 2016 | 2016 | SIDUMP'R | SEMI-TRAILER | DUMP |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| GATE CITY BANK | ND1079679488 | TRAILER | 0 | 3/26/2024 |

| | ODOMETER READING | ODOMETER STATUS |
|---|---|---|
| | | EXEMPT |

MAIL TO:  GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

---

### PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): ☐ Driver's License ☐ FEIN   Telephone Number

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): ☐ Driver's License ☐ FEIN   Telephone Number

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Check One: ☐ Or  ☐ And  ☐ And/Joint Tenants with Right of Survivorship   Purchase Date (Mo., Day, Year)   Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.
I certify that to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy)   Odometer Reading   NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

---

### LEGAL TITLE OWNER (LIENHOLDER)

Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert Rehborg*

Deputy Director for Driver Safety

**LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.**

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.   SFN 2875 (9-2023)

S319914

**ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE**

**LEGAL DOCUMENT -- KEEP IN A SAFE PLACE**

## CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION
SFN 2875

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1D9FS4430GC688099 | 2016 | 2016 | SIDUMP'R | SEMI-TRAILER | DUMP |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| GATE CITY BANK | ND676616704 | TRAILER | 0 | 3/26/2024 |

| ODOMETER READING | ODOMETER STATUS |
|---|---|
| | EXEMPT |

MAIL TO:
GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

### PART 1.  ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Check One: ☐ Or  ☐ And  ☐ And/Joint Tenants with Right of Survivorship | Purchase Date (Mo., Day, Year) | Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (**warning** *odometer discrepancy*).

Odometer Reading | NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|

| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) |
|---|---|---|

### LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert Rehborg*

Deputy Director for Driver Safety

**LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.**

Lienholder Name

Signature of Agent | Date (Mo., Day, Year)

S319924

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.

SFN 2875 (9-2023)

**ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE**

**LEGAL DOCUMENT - - KEEP IN A SAFE PLACE**

## CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION

SFN 2875

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 1D9SH4339DY554348 | 2013 | 2013 | DAKOTA MFG. CO. | SEMI-TRAILER | BELLY DUMP |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| GATE CITY BANK | ND1603967488 | TRAILER | 0 | 3/26/2024 |

ODOMETER READING          ODOMETER STATUS
EXEMPT

MAIL TO:  GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

### PART 1.  ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Check One:  ☐ Or  ☐ And  ☐ And/Joint Tenants with Right of Survivorship     Purchase Date (Mo., Day, Year)     Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:  ☐ Mileage stated is in excess of its mechanical limits.  ☐ Odometer reading is not the actual mileage (**warning *odometer discrepancy**)

Odometer Reading _____ NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|

| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant/Buyer(s)/Transferee(s) |
|---|---|---|

### LEGAL TITLE OWNER (LIENHOLDER)

Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert Rehborg*

Deputy Director for Driver Safety

**LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.**

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

**THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.**

SFN 2875 (9-2023)

S319925

**ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE**

**LEGAL DOCUMENT - - KEEP IN A SAFE PLACE**

## CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION
SFN 2875

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 2MFB2S3D5YR000651 | 2000 | 2000 | MIDLAND MFG. LT | SEMI-TRAILER | BELLY DUMP SE |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| GATE CITY BANK | ND72636928 | TRAILER | 0 | 3/26/2024 |

ODOMETER READING       ODOMETER STATUS
EXEMPT

MAIL TO:  GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

### PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|---|
| Mailing Address | City | State | ZIP Code | County |

| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|---|
| Mailing Address | City | State | ZIP Code | County |

Check One: ☐ Or  ☐ And  ☐ And/Joint Tenants with Right of Survivorship   Purchase Date (Mo., Day, Year)   Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy)

Odometer Reading  NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

#### LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert Rehborg*

Deputy Director for Driver Safety

LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

S319915

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.

SFN 2875 (9-2023)

**ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE**

LEGAL DOCUMENT -- KEEP IN A SAFE PLACE

## CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION
SFN 2875

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 2MFB2S4D3YR001148 | 2000 | 2000 | MIDLAND MFG. LT | SEMI-TRAILER | BELLY DUMP SE |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| GATE CITY BANK | ND1169267200 | TRAILER | 0 | 3/27/2024 |

ODOMETER READING          ODOMETER STATUS
                          EXEMPT

MAIL TO:
GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

### PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | | ☐ Driver's License ☐ FEIN | Telephone Number | |
|---|---|---|---|---|
| Mailing Address | City | State | ZIP Code | County |

| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | | ☐ Driver's License ☐ FEIN | Telephone Number | |
|---|---|---|---|---|
| Mailing Address | City | State | ZIP Code | County |

Check One: ☐ Or  ☐ And  ☐ And/Joint Tenants with Right of Survivorship    Purchase Date (Mo., Day, Year)    Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.
I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy)

Odometer Reading ___ NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

### LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert Rehborg*

Deputy Director for Driver Safety

LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

S347541

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.

SFN 2875 (9-2023)

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

LEGAL DOCUMENT - KEEP IN A SAFE PLACE

## CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION
SFN 2875

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 2MFB2S3D3YR000650 | 2000 | 2000 | MIDLAND MFG. LT | SEMI-TRAILER | BELLY DUMP SE |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| GATE CITY BANK | ND1627953664 | TRAILER | 0 | 3/22/2024 |

| ODOMETER READING | ODOMETER STATUS |
|---|---|
| | EXEMPT |

MAIL TO: GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

---

**PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)**

Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): ☐ Driver's License ☐ FEIN Telephone Number

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): ☐ Driver's License ☐ FEIN Telephone Number

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Check One: ☐ Or ☐ And ☐ And/Joint Tenants with Right of Survivorship | Purchase Date (Mo., Day, Year) | Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy).

Odometer Reading ___ NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

**LEGAL TITLE OWNER (LIENHOLDER)**
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert Rehborg*

Deputy Director for Driver Safety

**LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.**

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

**THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.**

SFN 2875 (9-2023)

S347830

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

LEGAL DOCUMENT - - KEEP IN A SAFE PLACE

## CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION
SFN 2875

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 2MFB2S3D7YR000652 | 2000 | 2000 | MIDLAND MFG. LT | SEMI-TRAILER | BELLY DUMP SE |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| GATE CITY BANK | ND685152768 | TRAILER | 0 | 3/22/2024 |

| ODOMETER READING | ODOMETER STATUS |
|---|---|
| | EXEMPT |

MAIL TO:  GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

### PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust):  ☐ Driver's License  ☐ FEIN  Telephone Number

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust):  ☐ Driver's License  ☐ FEIN  Telephone Number

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

Check One:  ☐ Or  ☐ And  ☐ And/Joint Tenants with Right of Survivorship   Purchase Date (Mo., Day, Year)   Purchase Price

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:  ☐ Mileage stated is in excess of its mechanical limits.  ☐ Odometer reading is not the actual mileage (warning *odometer discrepancy)

Odometer Reading   NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|
| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) | |

### LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

_Robert Rehborg_

Deputy Director for Driver Safety

LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.

Lienholder Name

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

S347829

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.   SFN 2875 (9-2023)

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

LEGAL DOCUMENT -- KEEP IN A SAFE PLACE

## CERTIFICATE OF TITLE FOR A VEHICLE
NORTH DAKOTA DEPARTMENT OF TRANSPORTATION

SFN 2875

ND DEPT. OF TRANSPORTATION
MOTOR VEHICLE DIVISION
608 E BOULEVARD AVE
BISMARCK ND 58505-0780
Telephone: (701) 328-2725

| VIN | YEAR MODEL | YEAR REGISTERED | MAKE | BODY STYLE | MODEL |
|---|---|---|---|---|---|
| 2MFB2S4D4XR000542 | 1999 | 1999 | MIDLAND MFG. LT | SEMI-TRAILER | BELLY DUMP SE |

| OWNER(S) NAME | TITLE NUMBER | VEHICLE TYPE | SHIPPING WEIGHT | DATE ISSUED |
|---|---|---|---|---|
| GATE CITY BANK | ND825514496 | TRAILER | 0 | 3/27/2024 |

| | ODOMETER READING | ODOMETER STATUS |
|---|---|---|
| | | EXEMPT |

MAIL TO:  GATE CITY BANK
PO BOX 2847
FARGO ND 58108-2847

### PART 1. ASSIGNMENT AND WARRANTY OF TITLE (DELIVER TITLE TO BUYER WITHIN 15 DAYS FROM DATE OF SALE)

| Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessor, Trust): | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

| Co-Applicant's/Buyer's Legal Name (first, middle, last) or Firm Name (Lessee, Trust): | ☐ Driver's License ☐ FEIN | Telephone Number |
|---|---|---|

| Mailing Address | City | State | ZIP Code | County |
|---|---|---|---|---|

| Check One: ☐ Or ☐ And ☐ And/Joint Tenants with Right of Survivorship | Purchase Date (Mo., Day, Year) | Purchase Price |
|---|---|---|

**Odometer Disclosure:** Federal and State laws require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment. I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked: ☐ Mileage stated is in excess of its mechanical limits. ☐ Odometer reading is not the actual mileage (**warning** *odometer discrepancy*)

Odometer Reading ___ NO TENTHS

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|

| Signature of Seller/Transferor | Date (Mo., Day, Year) | Signature of Applicant/Buyer/Transferee | Date (Mo., Day, Year) |
|---|---|---|---|

| Hand-Printed Name(s) of Seller(s)/Transferor(s) | Daytime Telephone No. | Hand-Printed Name(s) of Applicant(s)/Buyer(s)/Transferee(s) |
|---|---|---|

### LEGAL TITLE OWNER (LIENHOLDER)
Any lien recorded in the office of the Department of Transportation is shown below. The lien holder named is and shall remain legal owner of the vehicle until the encumbrance is released or satisfied.

I certify that the applicant has complied with the requirements of Title 39 of the North Dakota Century Code relative to the issuance of a certificate of title for a vehicle.

*Robert Rehborg*

Deputy Director for Driver Safety

**LIEN RELEASE - ALL INTERESTS IN THE VEHICLE DESCRIBED ABOVE ARE RELEASED.**

| Lienholder Name |
|---|

| Signature of Agent | Date (Mo., Day, Year) |
|---|---|

S347540

THE DEPARTMENT OF TRANSPORTATION IS NOT RESPONSIBLE FOR FALSE OR FRAUDULENT STATEMENTS MADE IN THE ASSIGNMENT OF THE CERTIFICATE OF TITLE.

SFN 2875 (9-2023)

ERASURES, ALTERATIONS OR MUTILATIONS VOID THIS TITLE

# EXHIBIT L

**(Criminal Case – Docket and Criminal Complaint)**

Skip to Main Content  Logout  My Account  My Cases  Search Menu  New Criminal Search  Refine Search  Back        Location : Southwest District   Images Help

# REGISTER OF ACTIONS
## CASE NO. 45-2024-CR-00157

| State of North Dakota vs. Robert Gene Fettig | § | Case Type: | **Felony** |
|---|---|---|---|
| | § | Date Filed: | **02/16/2024** |
| | § | Location: | **-- Stark County** |
| | § | | |
| | § | | |

### PARTY INFORMATION

| | | | **Attorneys** |
|---|---|---|---|
| **Defendant** | **Fettig, Robert Gene** | Male White | **Philip Becher** |
| | Dickinson, ND 58602 | DOB: 1984 | *Retained* |
| | DL: NDFET848663 | 5' 10", 220 lbs | 701-609-1510 x0000(W) |
| | | | |
| **Plaintiff** | **State of North Dakota** | | **Peter David Morowski** |
| | | | 701-456-7647 x0000(W) |

### CHARGE INFORMATION

| Charges: Fettig, Robert Gene | Statute | Level | Date |
|---|---|---|---|
| 1. Defrauding Secured Creditors | 12.1-23-08 | Felony C | 08/30/2023 |

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 02/16/2024 | **Complaint**    Index # 1 |
| 02/16/2024 | **Criminal Summons Issued**    Index # 2 |
| | *w/Complaint cc:Sheriff's Office* |
| 02/26/2024 | **Criminal Summons Served**    Index # 3 |
| 02/26/2024 | **Sheriff's Return Served**    Index # 4 |
| | *criminal summons and complaint served* |
| 03/06/2024 | **Initial Appearance**  (9:00 AM) (Judicial Officer Ehlis, Rhonda R) |
| | Result: Hearing Ended |
| 03/06/2024 | **Notice of Hearing**    Index # 5 |
| | *prelim* |
| 03/06/2024 | **Notification of Rights and Acknowledgement**    Index # 6 |
| 03/06/2024 | **Order**    Index # 7 |
| | *Spec Cond of Relea* |
| 03/19/2024 | **Request**    Index # 8 |
| | *Request to Continue Preliminary Hearing* |
| 03/19/2024 | **Notice of Hearing**    Index # 9 |
| | *Rescheduled Notice of Preliminary Hearing* |
| 03/19/2024 | **Service Document**    Index # 10 |
| | *Certificate of Service - Fettig* |
| 03/22/2024 | **Service Document**    Index # 11 |
| | *Certificate of Service on Stark County State's Attorneys Office* |
| 03/22/2024 | **Certificate**    Index # 12 |
| | *Certificate of Representation* |
| 03/22/2024 | **Rule 16 Discovery Request**    Index # 13 |
| | *Rule 16 Discovery Request* |
| 04/09/2024 | **Stipulation / Agreement**    Index # 14 |
| | *Stipulation for Continuance of Preliminary Hearing* |
| 04/09/2024 | **Proposed Order**    Index # 15 |
| | *Order for Continuance (P. Morowski)* |
| 04/09/2024 | **Order**    Index # 16 |
| | *for Continuance* |
| 04/29/2024 | **Notice**    Index # 17 |
| | *Notice of Appearance of Attorney and Invocation of Marsy's Rights* |
| 04/29/2024 | **Service Document**    Index # 18 |
| | *Affidavit of Service Upon Peter Morowski and Phillip Becher* |
| 06/03/2024 | **Preliminary Hearing and/or Arraignment**  (2:30 PM) (Judicial Officer Greenwood, Dann) |
| | Continued |
| | *04/01/2024 Continued to 04/15/2024 - Continuance - Other - State of North Dakota* |
| | *04/15/2024 Continued to 06/03/2024 - Continuance - Stipulation and Order Filed - Fettig, Robert Gene; State of North Dakota* |

STATE OF NORTH DAKOTA

COUNTY OF STARK

State of North Dakota,

                       Plaintiff,

      vs.

Robert Gene Fettig,
YOB: 1984
Race: 1     OLN: ND FEI848663

                Defendant.

IN DISTRICT COURT

SOUTHWEST JUDICIAL DISTRICT

**CRIMINAL COMPLAINT**

Case No. 45-2024-CR- 157

¶1      Dalton King       , being duly sworn, says that between August 30, 2023 and February 16, 2024, in the County of Stark, in the State of North Dakota, the above-named Defendant, Robert Gene Fettig, did commit the crime of DEFRAUDING SECURED CREDITORS – THEFT OF PROPERTY: committed in the manner following, to-wit:

¶2      That at said time and at said place the Defendant, Robert Gene Fettig, destroyed, removed, damaged, concealed, encumbered, transferred, or otherwise dealt with property that is subject to a security interest with the intent to prevent collection of the debt represented by the security interest. Further, the Defendant, Robert Gene Fettig, knowingly took or exercised unauthorized control over, or made an unauthorized transfer of an interest in, the property of another with intent to deprive the owner thereof, to wit: the Defendant, Robert Gene Fettig destroyed, removed, damaged, concealed, encumbered, transferred, or otherwise dealt with a 2015 Kenworth W900 (VIN: 1XKWP4EX1FJ435264) and/or a 2014 Kenworth W900 (VIN: 1XKWP4EX5EJ420085) that is/are subject to a security interest with the intent to prevent collection of the debt represented by the security interest. The property has a value of more than one thousand dollars ($1,000.00), as determined under N.D.C.C. §12.1-23-05(7). This, in violation of N.D.C.C. §12.1-23-08, N.D.C.C. §12.1-23-02, and N.D.C.C. §12.1-23-05, constitutes a Class C Felony against the peace and dignity of the State of North Dakota.



STARK COUNTY STATE'S ATTORNEY
AMANDA ENGELSTAD

ASSISTANT STATE'S ATTORNEYS
JAMES HOPE
AMY PIKOVSKY
PETER MOROWSKI

¶3    WHEREFORE, Complainant prays that Defendant, Robert Gene Fettig, may be arrested and dealt with according to law.

_____ 3767
Delton King

Subscribed and sworn to before me this ___ day of February, 2024.

Complaint Approved.
Let a Warrant Issue Thereon.

_____
Notary Public, Stark County, ND
My Commission Expires: _____

_____
Assistant State's Attorney
Stark County, North Dakota

MYA KUNTZ
NOTARY PUBLIC, STATE OF NORTH DAKOTA
MY COMMISSION EXPIRES MAR 6, 2024

4/30/24, 1:25 PM    Case 24-30168    Doc 16    Filed 05/01/24    Entered 05/01/24 16:31:37    Desc Main
Document    Page 236 of 241
Skip to Main Content Logout My Account My Cases Search Menu New Criminal Search Refine Search Back    Location : Southwest District    Images Help

# REGISTER OF ACTIONS
## CASE NO. 45-2024-CR-00277

| | | |
|---|---|---|
| State of North Dakota vs. Robert Gene Fettig | §<br>§<br>§<br>§<br>§ | Case Type: **Felony**<br>Date Filed: **03/18/2024**<br>Location: **-- Stark County** |

---

### PARTY INFORMATION

| | | | | |
|---|---|---|---|---|
| | | | | **Attorneys** |
| **Defendant** | **Fettig, Robert Gene**<br>Dickinson, ND 58602<br>DL: NDFET848663 | Male White<br>DOB: 1984<br>5' 10", 220 lbs | | **Philip Becher**<br>*Retained*<br>701-609-1510 x0000(W) |
| **Plaintiff** | **State of North Dakota** | | | **Peter David Morowski**<br>701-456-7647 x0000(W) |

---

### CHARGE INFORMATION

| Charges: Fettig, Robert Gene | Statute | Level | Date |
|---|---|---|---|
| 1. Defrauding Secured Creditors | 12.1-23-08 | Felony C | 10/11/2023 |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 03/18/2024 | **Complaint**    Index # 1 |
| 03/18/2024 | **Proposed Order**    Index # 2 |
| | *Warrant of Arrest* |
| 03/18/2024 | **Warrant of Arrest Issued**    Index # 3 |
| | *cc: SO w/ complaint* |
| 03/20/2024 | **Notice**    Index # 4 |
| | *Notice of Appearance of Attorney and Invocation of Marsy's Rights* |
| 03/20/2024 | **Service Document**    Index # 5 |
| | *Affidavit of Service Upon Peter Morowski and Robert G. Fettig* |
| 03/22/2024 | **Service Document**    Index # 6 |
| | *Certificate of Service on Stark County State's Attorneys Office* |
| 03/22/2024 | **Certificate**    Index # 7 |
| | *Certificate of Representation* |
| 03/22/2024 | **Rule 16 Discovery Request**    Index # 8 |
| | *Rule 16 Discovery Request* |
| 04/17/2024 | **Service Document**    Index # 9 |
| | *Certificate of Service via Electronic Filing - Stark County State's Attorney's Office* |
| 04/17/2024 | **Request**    Index # 10 |
| | *Request to Appear Remotely* |
| 04/17/2024 | **Proposed Order**    Index # 11 |
| | *Order Granting Request to Appear Remotely* |
| 04/17/2024 | **Initial Appearance**   (10:30 AM) (Judicial Officer Herauf, William A.) |
| | *Warrant served, atty by zoom* |
| | Result: Hearing Ended |
| 04/17/2024 | **Notice to Defendant and Consent to ITV**    Index # 12 |
| 04/17/2024 | **Notification of Rights and Acknowledgement**    Index # 13 |
| 04/17/2024 | **Order**    Index # 14 |
| | *granting zoom* |
| 04/17/2024 | **Sheriff's Return Served**    Index # 15 |
| | *warrant of arrest served* |
| 04/17/2024 | **Warrant of Arrest Served**    Index # 16 |
| 04/17/2024 | **Notice of Hearing**    Index # 17 |
| | *Prelim* |
| 04/17/2024 | **Order**    Index # 18 |
| | *Spec Cond of Release cc:S/O & Jail* |
| 05/20/2024 | **Preliminary Hearing and/or Arraignment**   (2:30 PM) (Judicial Officer Herauf, William A.) |

STATE OF NORTH DAKOTA

COUNTY OF STARK

IN DISTRICT COURT

SOUTHWEST JUDICIAL DISTRICT

State of North Dakota,

                Plaintiff,

    vs.

Robert Gene Fettig,
YOB: 1984
Race: 1      OLN:  ND FET848663

               Defendant.

**CRIMINAL COMPLAINT**

Case No. 45-2024-CR-*277*

¶1    LaTasha Klatt _____, being duly sworn, says that about or between October 11, 2023 and March 15, 2024, in the County of Stark, in the State of North Dakota, the above-named Defendant, Robert Gene Fettig, did commit the crime of DEFRAUDING SECURED CREDITORS – THEFT OF PROPERTY: committed in the manner following, to-wit:

¶2    That at said time and at said place the Defendant, Robert Gene Fettig, destroyed, removed, damaged, concealed, encumbered, transferred, or otherwise dealt with property that is subject to a security interest with the intent to prevent collection of the debt represented by the security interest.  Further, the Defendant, Robert Gene Fettig, knowingly took or exercised unauthorized control over, or made an unauthorized transfer of an interest in, the property of another with intent to deprive the owner thereof, to wit: the Defendant, Robert Gene Fettig destroyed, removed, damaged, concealed, encumbered, transferred, or otherwise dealt with the property attached hereto as Exhibit 1 that is/are subject to a security interest held by Gate City Bank with the intent to prevent collection of the debt represented by the security interest.  The property has a value of more than one thousand dollars ($1,000.00), as determined under N.D.C.C. §12.1-23-05(7).  This, in violation of N.D.C.C. §12.1-23-08, N.D.C.C. §12.1-23-02, and N.D.C.C. §12.1-23-05, constitutes a Class C Felony against the peace and dignity of the State of North Dakota.


*Stark County North Dakota*

STARK COUNTY STATE'S ATTORNEY
AMANDA ENGELSTAD

ASSISTANT STATE'S ATTORNEYS
JAMES HOPE
AMY PIKOVSKY
PETER MOROWSKI

¶3    WHEREFORE, Complainant prays that Defendant, Robert Gene Fettig, may be arrested and dealt with according to law.

Latasha Klatt

Subscribed and sworn to before me this ___ day of March, 2024.

Complaint Approved.
Let a Warrant Issue Thereon.

Notary Public, Stark County, ND
My Commission Expires: _____

Assistant State's Attorney
Stark County, North Dakota

MYA KUNTZ
Notary Public
State of North Dakota
My Commission Expires March 6, 2028

## Exhibit 1

| Collateral Description | VIN |
|---|---|
| 2013 Dragon ESP LTD 200 BBL | 1UNST5343DS128172 |
| 2007 Kenworth | 1XKDP40X07R197151 |
| 2013 Dragon 200 BBL Alum. Tank Trlr | 1UNST5341DS128154 |
| 2013 Dragon 200 BBL Alum. Tank Trlr | 1UNST5340DS128162 |
| 2014 Dragon 200 BBL Alum. Tank Trlr | 1UNST5340ES128552 |
| 2012 Kenworth | 1XKWP4TX8CJ335970 |
| 2014 Kenworth W900 | 1XKWD49X1EJ413380 |
| 2013 Dragon 220 BBL Tank Trlr | 1UNST5348DS128118 |
| 2007 Reitnauer Trailer | 1RNF48A247R019280 |
| 2013 Dragon 200 BBL AL Semi-Trailer | 1UNST5340DS128291 |
| 2014 Dragon 200 BBL AL Semi-Trailer | 1UNST5346ES140026 |
| 2016 Sidump'r Dump Trailer | 1D9FS4437GC688018 |
| 2016 Sidump'r Dump Trailer | 1D9FS4430GC688099 |
| 2013 Dakota MFG Dump Trailer | 1D9SH4339DY554348 |
| 2000 Midland MFG Dump Trailer | 2MFB2S3D5YR000651 |
| 2000 Midland MFG Dump Trailer | 2MFB2S4D3YR001148 |
| 2000 Midland MFG Dump Trailer | 2MFB2S3D3YR000650 |
| 2000 Midland MFG Dump Trailer | 2MFB2S3D7YR000652 |
| 1999 Midland MFG Dump Trailer | 2MFB2S4D4XR000542 |
| 2012 Dragon 150 BBL AL Trailer | 1UNST4223CL109253 |

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: | Case No.:  24-30168 |
| Stark Energy, Inc., | Chapter 11, Subchapter V |
| Debtor. | |

## NOTICE OF MOTION

TO ALL INTERESTED PARTIES:

NOTICE IS HEREBY GIVEN that Gate City Bank, a secured creditor of the Debtor Stark Energy, Inc., has filed a Motion to Lift Automatic Stay, a copy of which motion is annexed hereto and herewith served upon you.

NOTICE IS FURTHER GIVEN that written objections to said motion, if any, shall be filed with the Clerk of the United States Bankruptcy Court, whose address is 655 First Avenue North, Suite 210, Fargo, ND 58102-4932, with a copy mailed to counsel for Gate City Bank, whose name and address is listed below, within fourteen (14) days from the date of the mailing of this Notice.  Any objections not filed and served may be deemed waived.

Dated this 30th day of April, 2024.

**VOGEL LAW FIRM**


BY: _/s/ Caren W. Stanley_
      Caren W. Stanley (#06100)
      cstanley@vogellaw.com
      218 NP Avenue
      PO Box 1389
      Fargo, ND  58107-1389
      Telephone:  701.237.6983
      ATTORNEYS FOR GATE CITY BANK

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: | Case No.:  24-30168 |
| Stark Energy, Inc., | Chapter 11, Subchapter V |
| Debtor. | **CERTIFICATE OF SERVICE** |

I hereby certify that on April 30, 2024, the following documents:

### Gate City Bank's Notice and Motion to Lift Stay

were filed electronically with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing (NEF) to the following:

### ALL PARTIES BY ECF

I further certify that a copy of the foregoing documents will be mailed by first-class mail, postage paid, to the following non-ECF participants:

> Stark Energy, Inc.
> 1860 4th Ave E
> PO Box 748
> Dickinson, ND 58602

### VOGEL LAW FIRM

BY:_/s/  Caren W. Stanley_ _____
    Caren W. Stanley (#06100)
    cstanley@vogellaw.com
    218 NP Avenue
    PO Box 1389
    Fargo, ND  58107-1389
    701.237.6983
    ATTORNEYS FOR GATE CITY BANK

*5408014.1*

18