UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 24-30168 |
| Stark Energy, Inc., | ) | Chapter 11, Subchapter V |
| | ) | |
| Debtor. | ) | |

MOTION OF DEBTOR-IN-POSSESSION FOR APPROVAL OF POST-PETITION FINANCING PURSUANT TO SECTIONS 364(c) AND (d) OF THE BANKRUPTCY CODE

Stark Energy, Inc., Debtor and Debtor-in-Possession, (the "Debtor") by and through its counsel, files this Motion For Approval of Post-Petition Financing Pursuant to Sections 363 And 364(c) And (d) Of The Bankruptcy Code (the "Motion"), and in support of its Motion states as follows:

1. Debtor filed its voluntary Petition under Chapter 11 of the Bankruptcy Code on April 23, 2024 and, pursuant to Sections 1107 and 1108 is authorized to continue in the operation and management of its business as the Debtor-in Possession.

2. The Debtor is the owner of certain accounts and will continue to create additional accounts from its operations ("Accounts Receivable").

3. In order for the Debtor to continue the orderly operation of its business and to propose a Plan of Reorganization, it is essential that Debtor's operation obtain financing.

4. Debtor attempted to obtain credit, both secured and unsecured, from banks and financial institutions, on terms equal to or more favorable than those

provided by Riviera Finance of Texas, Inc. d/b/a Riviera Finance, and those efforts were unsuccessful.

5. Riviera is willing to provide financing to the Debtor provided this Court enters an Order in the form submitted herewith, authorizing the use and sale of Debtor's accounts and the method of obtaining credit secured by a lien on certain collateral.

6. Upon this Court's approval, Riviera and the Debtor will enter into a Security Agreement ("Security Agreement") a copy of which is attached hereto as Exhibit "A" and made a part hereof.

7. Pursuant to the terms of the Security Agreement, the Debtor agrees to sell certain accounts to Riviera for a sum equal to the face value of each account less a stated discount fee. The financing provided by Riviera shall be secured by a first lien on and security interest in, <u>inter alia</u>, Debtor's presently existing and future accounts, accounts receivable, contract rights, chattel paper, documents, instruments, reserve accounts, rebates, machinery, equipment, inventory, furniture, fixtures and general intangibles, and all books and records pertaining to accounts and all proceeds of the foregoing property (the "Collateral"). This Collateral will be given as security for all future obligations and liabilities of Debtor to Riviera.

8. Riviera and Debtor recognize the Collateral is comprehensive and limits Debtor's ability to seek additional or enlarged financing without Riviera and the Court's consent. Debtor's forward business and commercial opportunities may require financing beyond cashflow financing in the relative near-term, such as obtaining more

equipment and transportation assets. Debtor's reorganization is dependent on Riviera's and the Court's review of Debtor's future financing requirements accordingly, where qualified and feasible financing requests are not unreasonably withheld.

9. Pursuant to the Security Agreement, Riviera will provide a factoring arrangement to the Debtor. Riviera will, in its discretion, purchase certain accounts of the Debtor and make loans, advances, or other extensions of credit to or for the benefit of the Debtor from the purchases.

10. The Security Agreement shall provide, in part:

A. As collateral for the purchase by Riviera of accounts of Debtor and all of Debtor's obligations to Riviera, Riviera is granted a first priority security interest in and lien on all of Debtor's personal property and rights presently existing or hereinafter acquired, including but not limited to Pre-petition and Post-petition accounts, accounts receivable, contract rights, chattel paper, documents, instruments, reserves, reserve accounts, rebates, machinery, equipment, inventory, furniture, fixtures and general intangibles, all books and records pertaining to accounts, all causes of action arising under 11 U.S.C. Sections 544, 545, 547, 548, 549 and 550, together with all proceeds and products of the foregoing all as more fully defined and described in the Security Agreement. Once Riviera has purchased an account, the payment from customers to that account shall be the sole property of Riviera.

B. All sums owing to Riviera shall constitute a super priority administrative expense claim under Section 364(c)(1) of the Bankruptcy Code, which shall have priority over any and all administrative and other expenses in this

bankruptcy case, including, but not limited to those set forth in Sections 503(b) and 507(b) of the Bankruptcy Code and all costs, fees and expenses incurred in this Chapter 11 proceeding or any subsequent Chapter 7 proceeding in this bankruptcy case. In addition, Riviera shall not be subject to any charge of any kind or nature which may otherwise be imposed upon it under Sections 105, 506(c) or any other sections of the Bankruptcy Code in this Chapter 11 proceeding or any subsequent Chapter 7 proceeding in this bankruptcy case.

        C.      Said liens and security interest of Riviera shall constitute a priming and senior lien, under Section 364(c)(2) and 364(d)(1) of the Bankruptcy Code, which shall have priority over any and all liens and security interests in the Collateral in this Chapter 11 proceeding or any subsequent Chapter 7 proceeding in this bankruptcy case.

        D.      The obligations of the Debtor to Riviera shall be guaranteed by the Debtor and by Robert Gene Fettig, as an individual.

        E.      All fees and costs incurred by Riviera, including attorneys fees incurred in negotiating, documenting and closing the Post-petition financing shall be paid by the Debtor without further Order of this Court. At Riviera's sole discretion, these fees may be paid by deductions, at such times and in such amounts, as determined by Riviera, from sums paid to the Debtor by Riviera on account of Riviera's purchase of the Debtor's accounts.

    11.      The Debtor believe that the requested financing will minimize disruption of the Debtor as a "going concern," will increase the possibilities for a successful reorganization, and is in the best interest of the Debtor, its creditors and its Estate.

Accordingly, the Debtor respectfully requests that the financing be approved according to the terms set forth in the Security Agreement.

**WHEREFORE**, the Debtor prays for entry of an Order in the form which is submitted.

                                        Ahlgren Law Office, PLLC

Dated: May 23, 2024              /s/Erik A. Ahlgren
                                        ND Attorney #09561
                                        220 West Washington Ave, Ste 105
                                        Fergus Falls, MN 56537
                                        Office: 218-998-2775
                                        Fax: 218-998-6404
                                        erik@ahlgrenlawoffice.net

                                        ATTORNEY FOR DEBTOR

*EXHIBIT A*

**SECURITY AGREEMENT**

This Security Agreement (hereinafter called the "Agreement"), dated for purposes of reference August 16, 2018, is between the undersigned (hereinafter called the "CLIENT") and Riviera Finance, its successors and assigns (hereinafter called "RIVIERA"). CLIENT and RIVIERA agree as follows:

1. **PURPOSE**: CLIENT desires to obtain financing by factoring, selling and assigning to RIVIERA acceptable accounts receivable at a discount below the face value. Such financing is subject to the terms and conditions of the Agreement and is commercial in nature, and not for household, family, and/or personal use.

2. **DEFINITIONS**: The following definitions shall be used in determining the terms of this Agreement:
   "**ACCOUNT**" shall have the same meaning as it does in the Uniform Commercial Code; an "Invoice" is the tangible statement of an Account and is interchangeable with "Account" in this Agreement.
   "**ACCEPTABLE ACCOUNT**" means an Account conforming to the warranties and terms set forth herein and in Schedules of Accounts.
   "**CUSTOMER**" means CLIENT's customer; a Customer is also referred to as an "Account Debtor."
   "**CLIENT**" means the seller and assignor of the Accounts; the CLIENT is a "Debtor" to RIVIERA under the Uniform Commercial Code.
   "**COLLATERAL**" shall have the same meaning as it does in the Uniform Commercial Code; Collateral granted to RIVIERA by CLIENT is specifically described in Section 4 below.
   "**CREDIT PROBLEM**" means a Customer is unable to pay its debts because of its insolvency, dissolution, termination of existence, business failure, or the filing of any bankruptcy petition or other proceeding of Customer such that payment on the Account is or will be impaired.
   "**CUSTOMER DISPUTE**" means a claim by Customer against CLIENT of any kind whatsoever that reduces the amount collectible from Customer by RIVIERA; a Customer Dispute may arise from any kind of disagreement between Customer and CLIENT whatsoever, *valid or invalid*, and may arise at any time, both before and after the signing of this Agreement or the purchase of any Account by RIVIERA.
   "**INDEBTEDNESS**" means all advances, debts, liabilities, loans, obligations, covenants and duties owing by CLIENT to RIVIERA, direct or indirect, absolute or contingent, due or to become due, and all principal, interest, charges, costs, expenses and fees (including attorney's fees) owed by CLIENT hereunder.
   "**WARRANT**" means to guarantee, as a material element of this Agreement. Each warranty herein and pursuant to any Schedule of Accounts is an independent condition to RIVIERA's duties under this Agreement.

3. **REPRESENTATIONS, WARRANTIES, & DISCLOSURES**: As an inducement for RIVIERA to enter into this Agreement, CLIENT hereby incorporates by reference each representation and warranty included in each Schedule of Accounts executed by CLIENT and, with the full knowledge that RIVIERA is relying upon the truth and accuracy of these statements, CLIENT further represents that:
   (a) TAXES: CLIENT has made and shall continue to make timely payment of all required state and federal taxes; CLIENT agrees to provide to RIVIERA proof of payment and/or compliance of all taxes required by law and to notify RIVIERA of any levy issued against CLIENT;
   (b) INSURANCE: CLIENT will maintain such insurance covering CLIENT's business and/or the property of Customers as is customary or required, and will name RIVIERA as loss payee of such insurance;
   (c) RECORDS: All financial records, accounts, statements, books, or documents shown to RIVIERA by CLIENT at any time are true, complete, accurate, and represent the true financial condition of CLIENT; CLIENT agrees to furnish RIVIERA financial statements upon request;
   (d) CHANGES IN BUSINESS: CLIENT will notify RIVIERA in writing prior to any change in the location of CLIENT's state of registration and/or principal place of business; the location where CLIENT's books and records concerning Accounts are kept; the CLIENT's name, identity, legal entity or structure whether by merger, acquisition, or sale of substantially all of CLIENT's assets; use of trade name(s); and/or any proposed change in any of the officer, principals, managers, directors, partners, and/or owners of the CLIENT; CLIENT will promptly notify RIVIERA of any attachment, lien, levy, garnishment, seizure or any other legal process taken against CLIENT or any Customer;
   (e) CUSTOMER CREDIT: Each Customer's business is solvent to the best of CLIENT's information and knowledge, and CLIENT has not received any notice, verbal or written, of a Credit Problem concerning any Customer that has not been disclosed to RIVIERA in writing;
   (f) NO PLEDGE: CLIENT will not pledge the credit of RIVIERA to any person or business for any purpose;
   (g) CUSTOMER TERMS: CLIENT will not modify any term of its Accounts with any Customer unless RIVIERA first consents in writing;
   (h) TITLE: CLIENT is the lawful owner of, and has undisputed title to, the Accounts sold to RIVIERA by CLIENT; CLIENT will not factor, sell, or assign Accounts except to RIVIERA for the period of this Agreement and for as long as any Account remains unpaid to RIVIERA by CLIENT or any Customer;
   (i) SECURITY: CLIENT has not transferred, pledged or granted a security interest in the Collateral described below to any party not disclosed in writing to RIVIERA; CLIENT will not transfer, pledge, or grant a security interest or lien to any other party in the Collateral described below for the term of this Agreement and for long as any Account remains unpaid to RIVIERA by CLIENT or any Customer.

4. **SECURITY INTEREST IN COLLATERAL, SALE/ASSIGNMENT, & NOTIFICATION**: As a further inducement for RIVIERA to enter into this Agreement, CLIENT gives to RIVIERA a security interest in the following described property as collateral for the repayment of any and all obligations and liabilities whatsoever of CLIENT to RIVIERA under the Uniform Commercial Code in the following described property, hereinafter collectively called "Collateral": All presently existing or hereafter arising, now owned or hereafter acquired accounts, accounts receivable, deposit accounts, contract rights, chattel paper, electronic chattel paper, documents, instruments, reserves, reserve accounts, rebates, and general intangibles, and all books and records pertaining to accounts and all proceeds of the foregoing property.
   (a) APPROVAL: CLIENT shall from time to time sell, transfer, or assign Accounts to RIVIERA subject to RIVIERA's instructions and approval. Accounts shall be identified by separate and subsequent bills of sale on forms known as Schedule of Accounts; CLIENT must supply RIVIERA with original invoices, inclusive of supporting documents required for payment, and true and accurate copies of the same. RIVIERA will not purchase an Account unless CLIENT first submits such Account to RIVIERA for approval.
   (b) NO OBLIGATION: RIVIERA is not obligated to buy any Account from CLIENT and shall have no liability to CLIENT, any Customer, or any supplier of CLIENT for RIVIERA's failure or refusal to purchase an Account.
   (c) ASSIGNMENT OF ALL INVOICES: Notwithstanding CLIENT's election to sell select accounts to RIVIERA, *CLIENT hereby fully assigns to RIVIERA all accounts of CLIENT*; RIVIERA may notify any Customer of this assignment and direct payment of all accounts of CLIENT to RIVIERA in order to secure the repayment of CLIENT's obligations to RIVIERA; CLIENT may not terminate or modify this assignment without RIVIERA's written consent in the form of a release letter signed by RIVIERA; RIVIERA shall release the assignment if and only if all obligations and indebtedness owed by CLIENT to RIVIERA are discharged or, in RIVIERA's sole discretion, a partial release of the assignment pertaining to a specific Customer is issued by Riviera in a separate writing.

Initials _____ / _____

 (d)  AUTHORITY: RIVIERA shall have the right to, in CLIENT'S name or in RIVIERA's name, whether CLIENT is in default of this agreement or not, demand, sue for, collect, settle, and give releases for any and all monies due or to become due on the Collateral.

 (e)  NOTIFICATION: RIVIERA will, at any time within its discretion, notify any Customer to make payment(s) directly to RIVIERA.

 (f)  SOLE PROPERTY: Once RIVIERA has purchased an Account, the Account is the *sole and exclusive property* of RIVIERA. CLIENT shall make proper entries on its books and records disclosing the absolute sale of the Account to RIVIERA.

5. **MAXIMUM ACCOUNT LIMIT, FEES, & CHARGES**: RIVIERA agrees to buy Acceptable Accounts, at a discount, from CLIENT that have been approved for purchase from CLIENT, subject to the limits, fees, and charges described in this Agreement. The maximum amount of outstanding Accounts purchased by RIVIERA shall not exceed the sum of $250,000.00 at any given time.

 (a)  FACTORING FEE: RIVIERA shall withhold a *Fee Deposit* of Ten Percent (10.0%) from the face value of each Account. From the fee deposit, CLIENT agrees to pay to RIVIERA a *Factoring Fee* equal to the sum of (1) Two Percent (2.0%) of the face value of each Account and (2) One Percent (1.0%) of the face value of each Account for every Ten (10) day period, or portion thereof, that an Account remains unpaid to RIVIERA beyond Thirty (30) days. *The Factoring Fee shall not exceed the Fee Deposit of each Account.*

 (b)  FEE REBATES: As an inducement to CLIENT to sell only the Accounts from which Riviera can expect prompt payment in full *directly from Customer*, Riviera agrees to return monthly to CLIENT, when said Account(s) is/are paid in full by Customer, the amount of Fee Deposit in excess of the Factoring Fee in the form of a Fee Rebate. Any such rebate to CLIENT may be retained by RIVIERA at RIVIERA'S sole discretion as further security for payment of any and all obligations and indebtedness owing by CLIENT. In the event of a default by CLIENT for any reason, no rebate shall be due or payable to CLIENT.

 (c)  RESERVE & REFUNDS: In addition to the Fee Deposit, RIVIERA will reserve and withhold an amount in a reserve account (the 'reserve amount') equal to N/A of the gross face amount of all Accounts purchased. Said reserve amount may be held and/or applied by RIVIERA against any chargebacks or obligations of CLIENT to RIVIERA, known or anticipated, and said reserve amount is not due and payable to CLIENT until any and all obligations and indebtedness arising hereunder are paid in full. If there is no outstanding indebtedness of CLIENT to RIVIERA known or anticipated, RIVIERA will return to CLIENT the reserve amount of any individual Account that is not subject to offset *when said Account is paid in full*. Reserve refunds will be released N/A, unless otherwise agreed to by RIVIERA in writing. The reserve shall be a book balance maintained on the records of RIVIERA and shall not be a segregated fund.

 (d)  CHARGES: RIVIERA will deduct wire transfer fees or courier charges, if used by CLIENT, from each Schedule of Accounts.

 (e)  ROAM: CLIENT will submit all Schedule of Accounts to RIVIERA via *Riviera Online Account Management* (ROAM). CLIENT will pay to RIVIERA a service charge of Twenty Dollars ($20) for any Schedule of Accounts that is not entered into ROAM by CLIENT.

6. **RECOURSE, EXCEPTIONS, DISPUTES, & CHARGEBACKS**: NO RECOURSE: RIVIERA will have no recourse against CLIENT when an account is not paid by Customer when due, if the reason for non-payment is a Credit Problem except as enumerated below:

 (a)  EXCEPTIONS: RIVIERA will always have recourse against CLIENT for unpaid Accounts where (i) CLIENT has breached any warranty, representation, covenant, or promise in this Agreement or the Schedule of Accounts with regard to an unpaid Account, (ii) CLIENT has contributed to or aggravated a Customer's Credit Problem, (iii) CLIENT and any Customer are involved in a dispute of any kind, regardless of validity, (iv) Customer asserts a claim of loss, offset, set-off, or recoupment of any kind against CLIENT to RIVIERA, and/or (v) an invoice has been sent to a Customer by CLIENT without RIVIERA's Notice of Assignment stamp and said Account is not paid to RIVIERA within forty-five (45) days of purchase by RIVIERA.

 (b)  DISPUTES: CLIENT will immediately notify RIVIERA of any dispute between Customer and CLIENT and shall pay to RIVIERA the full amount of any Account subject to the Customer Dispute. Mistaken, incorrect, or erroneous invoices submitted by CLIENT to RIVIERA may be, at RIVIERA's discretion, deemed a disputed invoice.

 (c)  CHARGEBACKS: If CLIENT does not fully settle the dispute with Customer within 24 hours, RIVIERA may, in addition to any other remedies under this Agreement: (i) settle or compromise such dispute with Customer without receiving additional consent or authority of CLIENT even if settlement reduces CLIENT's recourse against Customer, (ii) charge back or sell the Account to CLIENT, subject however to RIVIERA's security interest therein. RIVIERA will provide CLIENT a written statement of any charge-backs taken.

7. **COLLECTION & PAYMENTS**: RIVIERA has the right to receive payment directly from Customers on *all* CLIENT Accounts.

 (a)  HOLD HARMLESS: CLIENT shall hold RIVIERA harmless against any claim, cause of action, liability in tort, contract, or equity, or Customer ill-will arising from RIVIERA's collecting or attempting to collect any Account(s).

 (b)  HOLD IN TRUST: If any payment is received by CLIENT on an Account assigned to RIVIERA, CLIENT will hold in trust said payment as the property of RIVIERA, and immediately turn over to RIVIERA the *identical* check or other form of payment received, *whether or not the payment includes payment on Accounts not purchased by RIVIERA*; this provision *does not* authorize CLIENT to receive payments from any Customer and is not a waiver of RIVIERA's rights against any Customer for failing to honor any notice of assignment. If applicable, RIVIERA will refund CLIENT'S portion subject to any indebtedness or obligation of CLIENT to RIVIERA.

 (c)  DOUBLE PAYMENTS & NON-FACTORED ACCOUNTS: RIVIERA may, in its sole discretion, carry unidentified, duplicate, or non-factored payments as open accounting entries and return said payments to the payor or, in the case of non-factored payments only, forward the payment to CLIENT upon proper identification, subject to any outstanding obligations or charge-backs due RIVIERA.

8. **POWER OF ATTORNEY**: In order to carry out this Agreement, CLIENT irrevocably appoints RIVIERA or any person designated by RIVIERA, its special attorney-in-fact, or agent, whose authority granted should remain in full force and effect until all Accounts are paid in full and any indebtedness of CLIENT to RIVIERA is discharged, with power to:

 (a) Notify Customers that CLIENT'S Accounts have been assigned to RIVIERA and that RIVIERA has a security interest therein;

 (b) Direct CLIENT'S Customers to make payment of all Accounts direct to RIVIERA and forward invoices directly to such Customers;

 (c) Strike out CLIENT'S address on all Accounts mailed to Customers and put RIVIERA'S address on all Accounts;

 (d) Receive, open and dispose of all mail addressed to CLIENT via RIVIERA'S address;

 (e) Endorse the name(s) of CLIENT on any checks or other evidences of payment that may come into the possession of RIVIERA on Accounts purchased by RIVIERA or pursuant to default on any other documents relating to any of the Accounts or to Collateral;

 (f) In CLIENT'S name(s), or otherwise, demand, sue for, collect, and give releases for any and all monies due or to become due on Accounts;

 (g) Compromise, settle, prosecute, or defend any action, claim or proceeding as to said Accounts;

 (h) From time to time offer trade discounts to CLIENT'S customer in addition to CLIENT'S normal business discounts with said Customer;

Initials _____ _____

(i) Upon any Event of Default, to direct any financial institution or bank which is the institution with which any deposit account is maintained by CLIENT, to pay to RIVIERA all moneys on deposit by CLIENT, which are payable by said institution to CLIENT regardless of any loss of interest, charge, or penalty as a result of payment before maturity; and

(j) Do any and all things necessary and proper to carry out the purpose intended by this Agreement and to protect CLIENT'S and RIVIERA'S interest in the Accounts or other Collateral.

9. **DEFAULT**: Any one or more of the following shall be a default hereunder and may cause the cessation of purchasing by RIVIERA:
   (a) CLIENT shall fail to pay an indebtedness to RIVIERA when due;
   (b) CLIENT shall breach any term, provision, covenant, warranty or representation contained in this Agreement or a Schedule of Accounts;
   (c) Any documentation, report or other statement made by CLIENT to RIVIERA shall be false, erroneous, or misleading in any respect;
   (d) CLIENT shall become insolvent or unable to pay debts as they mature, make a general assignment for the benefit of creditors, be subject to an appointment of a receiver or trustee over any portion of CLIENT's assets, or voluntarily file under any bankruptcy or similar law;
   (e) Any involuntary petition in bankruptcy shall be filed against CLIENT and shall not be dismissed within sixty (60) days;
   (f) Any judgment, levies of attachment, executions, tax assessments or similar process shall be issued against CLIENT or any of the Collateral;
   (g) CLIENT shall cease factoring while RIVIERA has factored Accounts outstanding, the collectibility of which is uncertain, in whole or part;
   (h) CLIENT, without prior notice or disclosure to RIVIERA, terminates, discontinues or suspends the operations of its business.

10. **REMEDIES AFTER DEFAULT**: In the event of a default, RIVIERA may do any one or more of the following without notice or demand to CLIENT except as expressly required under this Agreement:
    (a) declare any and all indebtedness, other than outstanding factored Accounts not subject to recourse, immediately due and payable in full;
    (b) notify any Customers and take possession of Collateral and collect any Accounts without judicial process;
    (c) take control in any manner of any goods, equipment, inventory or other personal property relating to any Account;
    (d) direct any financial institution or bank which is the institution with which any deposit account is maintained by CLIENT, to pay to RIVIERA all moneys on deposit by CLIENT, which are payable by said institution to CLIENT;
    (e) require CLIENT to assemble the Collateral and records pertaining to Accounts and deliver them to RIVIERA'S offices;
    (f) exercise all or any of the rights and remedies of a secured creditor under the Uniform Commercial Code or any other applicable law or at equity;
    (g) grant extensions, compromise claims and settle Accounts for less than face value, without prior notice to CLIENT;
    (h) hold CLIENT liable for any deficiency;
    (i) Charge interest on any indebtedness outstanding at the highest rate permitted by law, which interest shall become part of the indebtedness.

11. **CONTRACT TERM**: This Agreement becomes effective when it is accepted and executed by an authorized representative of RIVIERA. The Term of Agreement shall be Nine months from the date of acceptance by RIVIERA. *RIVIERA continues to have a security interest in the Collateral of CLIENT until all outstanding factored accounts and all indebtedness of CLIENT to RIVIERA are paid in full.* CLIENT shall pay RIVIERA a Termination Fee of Three Percent (3.0%) of the maximum account limit if CLIENT terminates the Agreement prior to the expiration of the Term; the Term shall automatically renew every Nine months, for another Nine month period, unless RIVIERA receives written notice of termination from CLIENT at least thirty (30) days prior to the expiration of the current Term.

12. **MERGER, INTERPRETATION, LEGAL FEES, & OTHER RIGHTS**: This Agreement together with each Schedule of Accounts contain the entire Agreement between the parties and any modification hereto must be signed by CLIENT and RIVIERA. CLIENT disclaims the existence of, or reliance upon, any oral representation by RIVIERA. This Agreement inures to the benefit of and is binding upon the heirs, executors, administrators, successors and assigns of the parties and may not be assigned by CLIENT without RIVIERA's prior written consent.
    (a) LEGAL FEES: Except as prohibited by law, CLIENT shall pay to RIVIERA all costs and expenses including, without limitation, attorneys fees and costs incurred by RIVIERA in the enforcement of any of RIVIERA'S rights or claims pertaining to this Agreement and any indebtedness of CLIENT to RIVIERA. CLIENT shall pay such amounts on demand after notice by RIVIERA.
    (b) SEVERABILITY: If any provision of this Agreement shall be declared illegal or contrary to law, it is agreed that such provision shall be disregarded and this Agreement shall continue in force as though such provision had not been incorporated herein.
    (c) CUMULATIVE RIGHTS: All rights, remedies and powers granted to RIVIERA in this Agreement, or in any note or other agreement given by CLIENT to RIVIERA, are cumulative and may be exercised singularly or concurrently with such other rights as RIVIERA may have and from time to time as to all or any part of the pledged Collateral as RIVIERA in its discretion may determine.

13. **INDEMNIFICATION**: CLIENT agrees to indemnify and hold RIVIERA harmless from any and all liability, obligations, claims, losses, damages, actions and suits, including counsel fees, costs of suit and interest which RIVIERA may incur in any way relating to or resulting from this Agreement or the failure of the CLIENT to pay withholding taxes and/or any other amounts due and payable to any taxing authority.

14. **FIDUCIARY DUTY**: CLIENT understands and agrees that *neither* this Agreement nor any transaction or any totality of circumstances related hereto and/or arising hereunder creates a fiduciary duty owed by Riviera to CLIENT and that RIVIERA owes no fiduciary duty to CLIENT whatsoever.

15. **CHOICE OF LAW & JURISDICTION**: This Agreement shall be governed by and construed in accordance with the laws of the State of North Dakota. **CLIENT CONSENTS TO THE EXCLUSIVE PERSONAL JURISDICTION AND VENUE OF THE LOCAL, STATE, OR FEDERAL COURTS LOCATED WITHIN THE STATE OF Illinois AND EXPRESSLY WAIVES ANY RIGHT TO OBJECT TO THE FORUM AS AN INCONVENIENT FORUM (*FORUM NON CONVENIENS*).**

AGREED TO ___/___ INITIAL(s).

16. **MUTUAL WAIVER OF RIGHT TO JURY TRIAL**: BOTH CLIENT AND RIVIERA ACKNOWLEDGE THE EXTREME COSTS ATTENDANT TO TRIAL BY JURY, AND THEREFORE BOTH CLIENT AND RIVIERA WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM, OR COUNTERCLAIM, WHETHER IN CONTRACT OR TORT, AT LAW OR IN EQUITY, ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT.

Initials ___/___

AGREED TO _____ INITIAL(s)

*Each person signing this Agreement represents and warrants that he or she is duly authorized and has legal capacity to execute and deliver this Agreement, that the execution and delivery of the Agreement and the performance of such party's obligations hereunder have been duly authorized, and that the Agreement is a valid and legal agreement binding on such party and enforceable in accordance with its terms.*

**EXECUTED AND AGREED BY THE UNDERSIGNED:**

CLIENT NAME: Stark Energy, Inc. (TRADE NAME: Stark Energy, Inc.)
ADDRESS: 1860 4th Avenue East, Dickinson, ND, 58601

BY: _____  Date: 8/17/18
Robert Gene Fettig - President/Secretary

BY: _____  Date: 8/17/18
Matthew John Barrett - Vice President

RIVIERA FINANCE:
BY: _____  Date: 8-29-2018
Greg Kmiecik - Operations Manager

**NOTARY PUBLIC**

Signature & Commission Expiration Date 05/19/2021

[Stamp: CHARLOTTE HOLVERSON, NOTARY PUBLIC, STATE OF NORTH DAKOTA, MY COMMISSION EXPIRES MAY 19, 2021]

**CONTINUING GUARANTY:** The undersigned, as individuals, jointly and severally, unconditionally guarantee to RIVIERA full payment and prompt and faithful performance by the CLIENT of all of its present and future indebtedness and obligations to RIVIERA which may arise pursuant to the Agreement, each Schedule of Accounts, and any addenda or modifications thereto. This guaranty shall constitute a continuing guaranty of the obligations. The undersigned waives any right to require RIVIERA to proceed against the CLIENT, any Customer, or any other person, or proceed against or exhaust any security, or pursue any other remedy in RIVIERA's power. The words "indebtedness" and "obligations" are used herein in their most comprehensive sense and include any and all advances, debts, obligations and liabilities of the CLIENT heretofore, whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, and whether the CLIENT may be liable individually or jointly with others, or whether recovery may be or hereafter become barred by any statute of limitations or otherwise become unenforceable. The undersigned guarantors hereby represent and warrant that it is in the undersigned guarantor's direct interest to assist the CLIENT because of the undersigned guarantor's position in and economic or other relations with the CLIENT.

**JURISDICTION AND CHOICE OF LAW:** The undersigned agrees to resolve all matters concerning this Guaranty in the state referenced in Section 15 of the Security Agreement between CLIENT and RIVIERA; the undersigned consents to the exclusive personal jurisdiction of the courts located in, and choice of law of, that state to the exclusion of all other jurisdictions.

**ATTORNEY FEES:** Whether or not suit be instituted, the undersigned agree to pay reasonable attorney's fees and all other costs and expenses incurred by RIVIERA in enforcing this Agreement and in any action or proceedings arising out of or relating to this Agreement.

**EXECUTED AND GUARANTEED BY THE UNDERSIGNED:**

Robert Gene Fettig - 1860 4th Avenue East, Dickinson, ND 58601

BY: _____  Date: 8/17/18
Signature (Executed as an Individual)

Matthew John Barrett - 1430 Mike Street, Dickinson, ND 58601

BY: _____  Date: 8/17/18
Signature (Executed as an Individual)

BY: _____  Date: _____
Signature (Executed as an Individual)

BY: _____  Date: _____
Signature (Executed as an Individual)

**WITNESS(ES) OF THIS GUARANTY**

_____

[Stamp: CHARLOTTE HOLVERSON, NOTARY PUBLIC, STATE OF NORTH DAKOTA, MY COMMISSION EXPIRES MAY 19, 2021]

Initials _____

**CERTIFIED COPY OF RESOLUTIONS**

"**RESOLVED**, that the agreement dated August 16, 2018 between this company and RIVIERA FINANCE and all other agreements and documents connected therewith be, and the same hereby are, approved on the terms and conditions as set forth therein";

"**RESOLVED**, that any officer of this company be, and he hereby is, authorized and directed to enter into said agreement and all other agreements and documents connected therewith and to execute the same for and on behalf of this company on the terms and conditions set forth therein";

"**RESOLVED**, that any officer of this company be, and he hereby is, authorized and directed to negotiate, agree upon, execute and deliver, from time to time, in the name of, and on behalf of, this company, such agreements, amendments, and supplements to said agreement or any other agreement or document connected therewith, documents, instruments, certificates, notices and further assurances and to perform any and all such acts and things as may be required by RIVIERA FINANCE in connection with said agreement or any other agreement or document connected therewith, or may to him seem necessary or proper to implement and effect complete consummation of said agreement or any other agreement or document connected therewith in all respects and the purposes set forth in these resolutions";

"**RESOLVED**, that these resolutions shall remain in full force and effect until written notice of their amendment or repeal shall be received by RIVIERA FINANCE and until all indebtedness and obligations arising out of said agreement and all other agreements and documents connected therewith shall have been paid and satisfied in full."

The undersigned, __Robert Gene Fetty__, as the duly constituted Secretary of Stark Energy, Inc. does hereby certify that the foregoing is a true and correct copy of the resolutions duly adopted at a meeting of the Board of Directors of Stark Energy, Inc. a North Dakota company, duly called, noticed and held on __4/4/16__, at which meeting there was at all times present and acting a quorum of the members of said Board; that said resolutions are in full force and effect; and that the following is a true and correct list of the present officers of this corporation.

_____, President
_____, Vice President
_____, Secretary
_____, Treasurer

Hereby Sworn:
_____
Secretary

Dated: __5/17/18__

## SIGNATURE AUTHORIZATION

RIVIERA FINANCE IS HEREBY AUTHORIZED TO ACCEPT THE SIGNATURE(S) APPEARING BELOW AS BINDING ON BEHALF OF STARK ENERGY, INC., ON ALL SCHEDULES OF ACCOUNTS, OR IN ANY WAY CONNECTED WITH THE AGREEMENT ENTERED INTO BETWEEN RIVIERA FINANCE AND THE UNDERSIGNED STARK ENERGY, INC.:

1. _[signature]_ — Robert G. Fettig / President — 8/17/18
   Signature / Printed Name & Title / Effective Date

2. _[signature]_ — Matthew J. Barrett / VP — 8/17/18
   Signature / Printed Name & Title / Effective Date

3. _____ / _____ / _____
   Signature / Printed Name & Title / Effective Date

## RIVIERA FINANCE ONLINE ACCOUNT MANAGEMENT SETUP

This document serves as authorization to set up your Riviera Online Account Management (ROAM) account. ROAM provides access to real time information about your account with Riviera. ROAM access includes the ability to view and print reports regarding your factored invoices, credit limits, and account ledgers. Please indicate below the name and e-mail address of the individual(s) that you wish to have access to your ROAM account.

*Riviera Finance reserves all rights to modify or terminate access to ROAM without notice. Information provided by ROAM which does not concur with the client's physical account information and book records should be verified with a manager or authorized representative of Riviera immediately; failure to report any discrepancy is considered acceptance and verification of the accuracy of data displayed in ROAM.*

The individuals listed below may be sent ROAM account set-up information via e-mail, and are hereby authorized for ROAM/access to our company account information. Please establish ROAM access for the following individuals:

1. Robert Gene Fettig — Rob.Fetty@gmail.com
2. Matthew John Barrett — Wakc4life94@gmail.com
3. _____ — _____
4. _____ — _____

This authorization of Stark Energy, Inc. regarding both SIGNATURE AUTHORIZATION and ROAM Access will continue in full force and effect until Riviera Finance receives written notice from the undersigned to the contrary.

Authorized Signature of CLIENT, Stark Energy, Inc.:

X _[signature]_                          8/17/18
Robert Gene Fettig - President/Secretary    Date

### ELECTRONIC SIGNATURE ADOPTION & WAIVER

I hereby adopt the symbol adjacent to my physical signature below as my electronic signature for the purpose of executing, signing, and authenticating each schedule of accounts submitted to Riviera Finance.

I authorize Riviera Finance to accept my electronic signature on every schedule of accounts submitted to Riviera Finance as valid and binding, and as if physically signed, attached with present intent, logically associated with the schedule of accounts as an authenticated record, and in lieu of a my physical signature without further investigation or verification from me, personally.

I hereby waive any defense or claim that any schedule of accounts submitted to Riviera Finance is not enforceable against Stark Energy, Inc. or any of its guarantors under the statute of frauds or as not having been authenticated under section 9102(a)(7)(B) or 9203(b)(3)(a) of the Uniform Commercial Code.

PHYSICAL SIGNATURE                    ELECTRONIC SIGNATURE

1. [signature: Robert G. Fettig]       [electronic signature: Rob Fettig — dotloop verified 08/22/18 4:17PM EDT KUOT-EFPV-OY2A-WM9E]

Robert G. Fettig, President            8/23/18
Printed Name & Title                   Effective Date

### ELECTRONIC SIGNATURE ADOPTION & WAIVER

I hereby adopt the symbol adjacent to my physical signature below as my electronic signature for the purpose of executing, signing, and authenticating each schedule of accounts submitted to Riviera Finance.

I authorize Riviera Finance to accept my electronic signature on every schedule of accounts submitted to Riviera Finance as valid and binding, and as if physically signed, attached with present intent, logically associated with the schedule of accounts as an authenticated record, and in lieu of a my physical signature without further investigation or verification from me, personally.

I hereby waive any defense or claim that any schedule of accounts submitted to Riviera Finance is not enforceable against Stark Energy, Inc. or any of its guarantors under the statute of frauds or as not having been authenticated under section 9102(a)(7)(B) or 9203(b)(3)(a) of the Uniform Commercial Code.

PHYSICAL SIGNATURE                    ELECTRONIC SIGNATURE

2. [signature: Matthew J. Barrett]     [electronic signature: Matt Barrett — dotloop verified 08/22/18 8:09PM EDT OYEG-MCLJ-VTWR-B0CH]

Matthew J. Barrett, Vice President     8/23/18
Printed Name & Title                   Effective Date

**ELECTRONIC SIGNATURE ADOPTION & WAIVER**

I hereby adopt the symbol adjacent to my physical signature below as my electronic signature for the purpose of executing, signing, and authenticating each schedule of accounts submitted to Riviera Finance.

I authorize Riviera Finance to accept my electronic signature on every schedule of accounts submitted to Riviera Finance as valid and binding, and as if physically signed, attached with present intent, logically associated with the schedule of accounts as an authenticated record, and in lieu of a my physical signature without further investigation or verification from me, personally.

I hereby waive any defense or claim that any schedule of accounts submitted to Riviera Finance is not enforceable against Stark Energy, Inc. or any of its guarantors under the statute of frauds or as not having been authenticated under section 9102(a)(7)(B) or 9203(b)(3)(a) of the Uniform Commercial Code.

| | PHYSICAL SIGNATURE | ELECTRONIC SIGNATURE |
|---|---|---|
| 1. | [signature] Robert G. Fettig  President — Printed Name & Title | *Rob Fettig* — dotloop verified 08/22/18 4:17PM EDT KUOT-EFPV-OY2A-WM9E<br>8/17/18 — Effective Date |

**ELECTRONIC SIGNATURE ADOPTION & WAIVER**

I hereby adopt the symbol adjacent to my physical signature below as my electronic signature for the purpose of executing, signing, and authenticating each schedule of accounts submitted to Riviera Finance.

I authorize Riviera Finance to accept my electronic signature on every schedule of accounts submitted to Riviera Finance as valid and binding, and as if physically signed, attached with present intent, logically associated with the schedule of accounts as an authenticated record, and in lieu of a my physical signature without further investigation or verification from me, personally.

I hereby waive any defense or claim that any schedule of accounts submitted to Riviera Finance is not enforceable against Stark Energy, Inc. or any of its guarantors under the statute of frauds or as not having been authenticated under section 9102(a)(7)(B) or 9203(b)(3)(a) of the Uniform Commercial Code.

| | PHYSICAL SIGNATURE | ELECTRONIC SIGNATURE |
|---|---|---|
| 2. | [signature] Matthew Barrett  VP — Printed Name & Title | *Matt Barrett* — dotloop verified 08/22/18 8:09PM EDT OYEG-MCLJ-VTWR-8OCH<br>8/17/18 — Effective Date |

**ELECTRONIC SIGNATURE ADOPTION & WAIVER**

I hereby adopt the symbol adjacent to my physical signature below as my electronic signature for the purpose of executing, signing, and authenticating each schedule of accounts submitted to Riviera Finance.

I authorize Riviera Finance to accept my electronic signature on every schedule of accounts submitted to Riviera Finance as valid and binding, and as if physically signed, attached with present intent, logically associated with the schedule of accounts as an authenticated record, and in lieu of a my physical signature without further investigation or verification from me, personally.

I hereby waive any defense or claim that any schedule of accounts submitted to Riviera Finance is not enforceable against Stark Energy, Inc. or any of its guarantors under the statute of frauds or as not having been authenticated under section 9102(a)(7)(B) or 9203(b)(3)(a) of the Uniform Commercial Code.

|    | PHYSICAL SIGNATURE | ELECTRONIC SIGNATURE |
|----|---|---|
| 1. | *[signature]* | |
|    | Robert G. Fettig  President | 8/17/18 |
|    | Printed Name & Title | Effective Date |

**ELECTRONIC SIGNATURE ADOPTION & WAIVER**

I hereby adopt the symbol adjacent to my physical signature below as my electronic signature for the purpose of executing, signing, and authenticating each schedule of accounts submitted to Riviera Finance.

I authorize Riviera Finance to accept my electronic signature on every schedule of accounts submitted to Riviera Finance as valid and binding, and as if physically signed, attached with present intent, logically associated with the schedule of accounts as an authenticated record, and in lieu of a my physical signature without further investigation or verification from me, personally.

I hereby waive any defense or claim that any schedule of accounts submitted to Riviera Finance is not enforceable against Stark Energy, Inc. or any of its guarantors under the statute of frauds or as not having been authenticated under section 9102(a)(7)(B) or 9203(b)(3)(a) of the Uniform Commercial Code.

|    | PHYSICAL SIGNATURE | ELECTRONIC SIGNATURE |
|----|---|---|
| 2. | *[signature]* | |
|    | Matthew Barrett  VP | 8/17/18 |
|    | Printed Name & Title | Effective Date |

## METHOD OF FUNDING SELECTION FORM

Riviera offers you several options as to the method of funding from our office.
PLEASE SELECT ONE OF THE FOLLOWING:

_____ 1a) Direct wiring of funds ($17.50 per wire transaction).

\_\_\_X\_\_\_\_\_ 1b) Direct wiring via ACH ($7.50 per ACH) - Offered in Limited Jurisdictions

_____ 1c) Toronto-Dominion Bank (TD Bank) Transfer ($7.50 each) - Canada Only

Riviera requires a preprinted deposit slip signed by one of the authorized persons you've designated on the signature authorization sheet in your legal file. This deposit slip and signature will instruct Riviera to wire the funds for invoices purchased to the named account and account number preprinted on the deposit slip. No change in wire instructions will take place without a preprinted deposit slip and authorized signature. If a deposit slip is unavailable, a signed check, marked VOID, from the appropriate account will be acceptable.

_____ 2) Overnight our check to your address (*US Domestic Delivery: $20.00 per transaction; Canadian Clients will be charged the pass through rate from Federal Express*).

_____ 3) Regular U.S. Mail our check to your address (no charge).

_____ 4) Customer pickup (no charge).

## SAME DAY FUNDING CHARGES

The undersigned, Stark Energy, Inc. ("Client"), understands and hereby acknowledges that Riviera provides 24 hour funding upon verification of invoices; but if Client requests a priority same day funding, then Riviera will charge Client a fee of $25.00 per schedule.

Charges for the above will be deducted from each appropriate buy schedule.

Please indicate your choice above and acknowledgement to these charges by signing below and returning this form to Riviera as soon as possible.

**Stark Energy, Inc.**

X _[signature]_ Date: 8/17/18
Robert Gene Fettig - President/Secretary

**RIVIERA FINANCE**

X _[signature]_ Date: 8.29.2018
Greg Kmiecik - Operations Manager

# Stark Energy, Inc.
Dickinson, ND

## NOTICE OF ASSIGNMENT

RE: Joint and Irrevocable Notice by Stark Energy, Inc. and Riviera Finance
**EFFECTIVE FOR ALL PAYMENTS MADE ON AND AFTER THIS DATE: August 16, 2018**

In order to accommodate the changes and growth in our business, we have been fortunate to obtain the services of RIVIERA FINANCE as a source of capital funding. The availability of this service will enable us to serve our customers in a more efficient manner. Therefore, we wish to inform you that payments on all invoices from Stark Energy, Inc. must be made **PAYABLE AND MAILED/PAID DIRECTLY TO**:

| PAYMENT BY MAIL: | PAYMENT BY WIRE and ACH: | |
|---|---|---|
| **RIVIERA FINANCE, Assignee for:** | Bank: | **Wells Fargo N.A. - San Francisco** |
| **Stark Energy, Inc.** | | *Bank Phone Number (415)243-7377* |
| **P.O. Box 310243** | Credit to: | **Riviera Finance** |
| **Des Moines, IA 50331-0243** | Routing #: | **121000248** |
| | Account #: | **4945269918** |

This assignment has been duly recorded under applicable state statutes, and under the Uniform Commercial Code. Please make the proper notations on your ledger and return a signed copy of this letter to RIVIERA FINANCE.

If there are any questions concerning your billing, or claims or offsets affecting the accounts, please call RIVIERA FINANCE at 800-624-5390 or Fax to 630-620-0681.

**This notice and instruction remains in full force and effect until you receive a written release from RIVIERA FINANCE.** This letter serves as statutory notice and does not require your consent to be effective or enforced.

Sincerely,

*[COPIES DELIVERED TO CUSTOMERS OF CLIENT WILL BE SIGNED BY RIVIERA AND CLIENT]*

ACKNOWLEDGED BY: _____

TITLE: _____

COMPANY NAME: _____

RIVIERA FINANCE Federal ID# 74-2052129 is not subject to backup withholding.

**SIGN HERE** ➤

*SIGNATURE SCAN AUTHORIZATION*
*By signing your signature in the adjacent box, you hereby authorize Riviera Finance to scan and securely store your signature for the sole and limited purpose of generating Notices Of Assignment based on this signed copy and deliver the same to your Customers.*

PLEASE SIGN COMPLETELY IN THE BOX

Stark Energy, Inc.

[signature]

Robert Gene Fettig - President/Secretary

## INVOICE SUBMISSION INSTRUCTIONS

**How do you submit an invoice for sale to Riviera?** Two (2) ways: PAPER or ONLINE (ROAM).

A "Schedule of Accounts" is a table of contents for your invoices; it is a legal 'Bill of Sale' that is used to show that you are selling your invoices to Riviera. It must be legible; if handwritten, use blue or black ink.

When a Schedule is "processed," it is assigned a Batch #. If only part of the Schedule is processed, that Batch # will be split, resulting in a second batch (e.g., Batch 1001 becomes 1001-1).

You can find information about submitted Schedules (as well as other account details) on ROAM, before and after your invoices are purchased by Riviera.

**If you submit your invoices as PAPER, you will deliver the Schedule of Accounts with original invoices, back-up documents, and a set of copies for Riviera to our local office.** For faster processing of paper invoices, "prepare" the Schedule online if submitting with paper invoices, but you will need to deliver a signed copy with your invoices.

**If you submit your invoices ONLINE (ROAM), you will submit your Schedule of Accounts and related documents through an invoice uploading platform.** Riviera will ask for originals to be delivered when required by your customer.

**Each Schedule must contain the following information:**

- [ ] **Full, correct, legal name of the debtor** (your customer).
- [ ] **Invoice date.**
- [ ] **Invoice number.**
- [ ] **Reference number.** This is the number that *your customer* associates with, or requires to pay, the invoice.
- [ ] **Invoice Amount.** The amount must be accurate and reflect all advances, credits, and charges.
- [ ] **The date you are submitting the Schedule**.
- [ ] **Your company name** (should appear on bottom of Schedule as "Seller").
- [ ] **An Authorized Signature. A signature is valid only if it is signed by one of the following:**
    *a) An officer or company owner whose signature appears on the Security Agreement, OR*
    *b) A representative with written authority by the Company as per the enclosed Signature Authorization Form.*

**Schedules can be signed electronically if Riviera has received an electronic signature adoption form and you use the ONLINE (ROAM) platform.**

**Each Schedule must include the following documentation:**

- [ ] **Original invoice(s).** Some debtors will accept copies - some won't. You may be required to send original invoices to Riviera if your customer requires original (pen-ink) invoices and back-up documents.

- [ ] **All back-up paperwork (clear and legible) required by your customer to process payment of the invoice.** *Examples are: Rate Confirmations; Purchase Orders; Contracts; Bills of lading; any document that proves delivery and acceptance of goods or services (with date and signature of the individual accepting the delivery of goods or services).*

    NOTE! Some debtors will reject photos or copies of backup; ask an Account Executive what is required.

- [ ] **A complete set of copies** of the items above (unless the submission is online).

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:

Stark Energy, Inc.                                             Case No.: 24-30168
                                                               Chapter 11, Subchapter V

    Debtor.

## NOTICE OF MOTION

The Debtor filed and served a Motion for Approval of Post-Petition Financing Pursuant to Sections 364(c) and (d) of the Bankruptcy Code dated May 23, 2024.  Your rights may be affected in the action.  You should read the papers carefully and discuss the matters with your attorney if you have one.  If you want the court to consider your views you should mail a written response to the action, within 14 days of the date of mailing of this document, and file the response with the Clerk of Bankruptcy Court.

  Clerk, U.S. Bankruptcy Court
  Quentin N Burdick U.S. Courthouse
  655 First Ave N – Ste 210
  Fargo ND  58107-4932

Dated:  May 23, 2024                     /s/ Erik Ahlgren
                                               Erik Ahlgren (ND #09561, MN# 191814)
                                               Ahlgren Law Office, PLLC
                                               220 W Washington Ave. Ste 105
                                               Fergus Falls MN  56537
                                                218-998-2775
                                                erik@ahlgrenlawoffice.net