## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| In Re: | Case No.: 24-30168 |
|---|---|
| | Chapter 11, Subchapter V |
| Stark Energy, Inc., | |
| Debtor. | |

### DECLARATION OF CAREN STANLEY IN SUPPORT OF
### MOTION TO LIFT AUTOMATIC STAY

Pursuant to 28 U.S.C. § 1746, I, Caren Stanley, do hereby declare, under penalty of perjury, the following to the best of my knowledge, information, and belief:

1.     I am the attorney for Gate City Bank ("Bank") and for Midland State Bank and make this Declaration in support of the Bank's Motion to Lift Automatic Stay ("Motion") [Doc. 16].

2.     If called as a witness, I could and would competently testify to the matters set forth herein based on my personal knowledge. In my capacity as the Bank's attorney, I am familiar with Bank's litigation against the Debtor Stark Energy, Inc. ("Debtor") and its principal Robert Fettig (described below). I was also the attorney for Midland States Bank in its lawsuit against the Debtor and Robert Fettig (described below). My testimony herein is based on my service as the attorney for the Bank and Midland States Bank, and my review of the court dockets in the various lawsuits against Debtor and Robert Fettig.

### A.     Midland States Bank - Case No. 45-2023-CV-475 (the "Midland Lawsuit")

3.     In June 2023, Midland States Bank commenced suit against the Debtor and Robert Fettig in Stark County District Court, Case No. 45-2023-CV-475 ("Midland Lawsuit").

4.      An Amended Order for Prejudgment Seizure of Collateral was entered on July 21, 2023 and a Judgment was entered on August 30, 2023. Midland States Bank's collateral consisted of two Kenworth Trucks. True and correct copies of the Amended Order for Prejudgment Seizure of Collateral dated July 21, 2023 and the Judgment dated August 30, 2023 are attached as **Exhibit 1**.

5.      On October 20, 2023, Robert Fettig was picked up on a bench warrant for failure to comply with the Amended Order for Prejudgment Seizure of Collateral dated July 21, 2023 and the Judgment dated August 30, 2023. True and correct copies of the Contempt Order for Failure to Comply with Amended Order for Prejudgment Seizure of Collateral dated September 27, 2023, the Bench Warrant dated October 5, 2023, and the Service of the Bench Warrant on October 20, 2023 are attached as **Exhibit 2**.

6.      A true and correct copy of the transcript for the bond hearing that occurred on October 23, 2023 in front of Judge Herauf is attached as **Exhibit 3**.

7.      Due to the ongoing failure of the Debtor and Robert Fettig to turn over the two Kenworth trucks to Midland States Bank, an order to show cause hearing was held before Judge Gion in the Midland Lawsuit on November 14, 2023 at the Stark County Courthouse. A true and correct copy of the transcript for the Midland Lawsuit Order to Show Cause hearing on November 14, 2023 is attached as **Exhibit 4**.

   **B.      Gate City Bank – Case No. 45-2023-CV-00689 (the "_Replevin Suit_")**

8.      In September 2023, the Bank commenced suit against the Debtor and its President, Robert Fettig, in Stark County District Court, Case No. 45-2023-CV-00689 (the "Replevin Suit").

2

9.      An Order for Prejudgment Seizure was entered on October 11, 2023 (the "Seizure Order") with respect to the Replevin Lawsuit requiring the Debtor and Robert Fettig to turn over the Titled Vehicle Collateral to the Bank. A certified copy of the Seizure Order dated October 11, 2023 is attached as **Exhibit 5**.

10.     Due to the failure of the Debtor and Robert Fettig to turn over the Titled Vehicle Collateral to the Bank, an order to show cause hearing was held before Judge Greenwood in the Replevin Lawsuit on November 14, 2023 at the Stark County Courthouse. A true and correct copy of a transcript of Replevin Lawsuit Order to Show Cause Hearing before Judge Greenwood dated November 14, 2023 is attached as **Exhibit 6**.

11.     A certified copy of the Contempt Order for Defendants Failure to Comply with Order for Prejudgment Seizure of Collateral dated November 17, 2023 is attached as **Exhibit 7**.

12.     A certified copy of the Judgment as to Defendants Stark Energy, Inc. and Robert Fettig dated December 29, 2023 is attached as **Exhibit 8**.

### C.      Gate City Bank – Case No. 45-2023-CV-00775 ("*Fettig Lawsuit*")

13.     In October 2023, the Bank commenced suit against Robert Fettig in Stark County District Court, Case No. 45-2023-CV-00775 ("Fettig Lawsuit").

14.     True and correct copies of the Order for Judgment dated December 8, 2023 and the Judgment dated December 8, 2023 are attached as **Exhibit 9**.

### D.      The Two Criminal Cases Against Robert Fettig

15.     The Debtor's principal, Robert Fettig, is currently the defendant in two criminal cases in Stark County District Court, Case No. 45-2024-CR-157 and Case No. 45-2024-CR-277 (collectively, the "Criminal Cases") for defrauding secured creditors – theft of property

pursuant to N.D.C.C. §§ 12.1-23-02, 12.1-23-05, and 12.1-23-08. True and correct copies of the dockets for the Criminal Cases and the Criminal Complaints are attached as **Exhibit 10** and terms of the same incorporated herein by reference.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated this 28th day of May, 2024.

**VOGEL LAW FIRM**

BY: /s/  Caren W. Stanley _____
Caren W. Stanley (#06100)
cstanley@vogellaw.com
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
ATTORNEYS FOR GATE CITY BANK

**EXHIBIT 1**

STATE OF NORTH DAKOTA                          IN DISTRICT COURT

COUNTY OF STARK                          SOUTHWEST JUDICIAL DISTRICT

---

| | |
|---|---|
| Midland States Bank, | Case No. 45-2023-CV-00475 |
| Plaintiff, | |
| v. | **AMENDED** |
| | **ORDER FOR PREJUDGMENT** |
| Stark Energy, Inc. and Robert Gene Fettig, | **SEIZURE OF COLLATERAL** |
| Defendants. | |

---

Plaintiff's Motion for Prejudgment Seizure of Collateral came before this Court for hearing on July 20, 2023, at 9:00 a.m. Mountain Time pursuant to an order to show cause. Appearing for Plaintiff Midland States Bank ("Plaintiff") was Briana Rummel of the Vogel Law Firm. Other appearances were made as on the record. Based on all the files and pleadings herein, and the arguments of the parties, the Court makes the following FINDINGS:

1.      Pursuant to a Master Equipment Finance Agreement No. 7678 and accompanying Schedule No. 1 dated July 19, 2021 (collectively, the "Agreement"), KLE Financial, Inc. financed Defendant Stark Energy, Inc.'s (the "Company") purchase of the following:

**2015 Kenworth W900 VIN:1XKWP4EX1FJ435264**

**2014 Kenworth W900 VIN:1XKWP4EX5EJ420085**

(collectively, the "Vehicles")

2.      The Defendant Robert Fettig is identified in the Agreement as the President of the Company and executed the Agreement on behalf of the Company.

3.      The amount financed under the terms of the Agreement was $194,000.00, together with interest accruing on the sale at the rate of 4.92% per annum. Payments due under the Agreement included one initial payment of $7,665.42 together with sales/use tax, and sixty (60) monthly payments of $3,832.71 commencing on January 20, 2022 and the final payment being due on December 20, 2026.

4.      To collateralize the subject indebtedness, the Company granted a security interest in the Vehicles together with all replacements, parts, repairs, additions, accessions, and accessories incorporated therein or affixed or attached thereto.

5.      Subsequent to funding of the loan evidenced by the Agreement, KLE Financial, Inc. assigned all of its right, title and interest in the Agreement to Plaintiff.

6.      Plaintiff perfected its security interest in the Vehicles by causing its name to be identified on the Certificates of Title as a Lienholder.

7.      The Company defaulted on its payments to Plaintiff and its predecessor assignees under the Agreement. As a consequence, Plaintiff accelerated the entire indebtedness and declared the same to be immediately due and owing.

8.      After the application of all payments and credits, there remains due and owing on the Agreement the sum of $213,977.34 as of June 20, 2023 plus interest and late charges which accrue thereafter, together with costs and disbursements. The per diem interest rate from and after June 20, 2023 is $91.43.

9.      Despite repeated demands by Plaintiff, the Company has wholly refused and failed to discharge the debt due under the Agreement.

10.      The Defendants' detention of the Vehicles as against the Plaintiff's demands is wrongful and the Plaintiff is entitled to immediate possession of the Vehicles. The Plaintiff's

interest in the Vehicles and its right to possession is superior to Defendants or any person claiming through Defendants.

11.    THEREFORE, for good cause shown, it is the Order of this Court as follows

A.    The Defendants shall immediately deliver to Plaintiff the Vehicle Collateral in which Plaintiff holds a security interest at a place located in Stark County.

B.    If the Defendants fail to deliver the Vehicles to Plaintiff, Plaintiff, with such assistance from the Stark County Sheriff or other law enforcement personnel as have jurisdiction may seize the Vehicles. In recovering the Vehicles, Plaintiff, the Sheriff of Stark County, or other such law enforcement personnel as have jurisdiction, are permitted to enter upon the real property of Defendants, and any third parties, and force access to any structures situated thereupon in which the Vehicles are located.

C.    After recovery of the Vehicles, Plaintiff may dispose of the same by commercially reasonable means, with the proceeds to be applied first to the costs and expenses of recovery and sale, and then to the indebtedness due by the Company to Plaintiff on the Agreement.

D.    The State of North Dakota is authorized to issue new titles, as necessary, for the Vehicles in the name of Plaintiff or in the name of the individual or entity to which the Vehicles are sold by Plaintiff.

E.    In that the Defendants did not contest Plaintiff's Motion for Prejudgment Seizure of Collateral, this Court does not believe that any good faith basis for litigation exists with respect to Plaintiff's right to recover and dispose of the Vehicles. As a consequence, Plaintiff shall not be required to post a bond as a condition precedent to recovery and/or disposition of the Vehicles.

IT IS SO ORDERED.

7/21/2023 11:52:14 AM

_____
Hon. James D. Gion
Judge of the District Court

5174557.1

3

STATE OF NORTH DAKOTA

COUNTY OF STARK

IN DISTRICT COURT

SOUTHWEST JUDICIAL DISTRICT

| | |
|---|---|
| Midland States Bank,<br><br>             Plaintiff,<br><br>    v.<br><br>Stark Energy, Inc. and Robert Gene Fettig,<br><br>             Defendants. | Case No. 45-2023-CV-00475<br><br><br>**JUDGMENT** |

The Summons and Complaint in this matter was served upon the Defendants, and the Court, upon due proof of such service and the default of the Defendants, has ordered judgment against the Defendants.

THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.    That the Plaintiff have and recover from the Defendants, jointly and severally, the sum of $220,377.75 and statutory costs and disbursements in the sum of $278.52, making a total judgment in favor of the Plaintiff and against the Defendants in the sum of $220,656.27.

2.    That Plaintiff's interest in the 2015 Kenworth W900 VIN:1XKWP4EX1FJ435264 and the 2014 Kenworth W900 VIN:1XKWP4EX5EJ420085 (collectively, the "Vehicles") shall not be deemed merged into any money judgment entered in favor of the Plaintiff and against the Defendants, but that Plaintiff shall be permitted to recover the Vehicles and

dispose of the same, in recovering and liquidating the collateral, and then to the indebtedness of the Defendants to the Plaintiff.

3.     That Defendants be ordered to deliver immediately the Vehicles to Plaintiff's possession. If the Defendants fails to deliver the Vehicle to the Plaintiff, then the Plaintiff, with such assistance from the Stark County Sheriff or other law enforcement personnel as have jurisdiction, shall be permitted to seize the same. In recovering the Vehicles, Plaintiff, the Sheriff of Stark County and such other law enforcement personnel as have jurisdiction, shall be permitted to enter upon the real property of the Defendants and any third parties and force access into any structures located on said real property in which the Vehicle may be situated.

4.     The State of North Dakota is authorized to issue a new title or titles, as necessary, for the Vehicles in the name of Plaintiff or in the name of the individual or entity to which the Vehicles are sold by Plaintiff.

WITNESS, the Honorable James D. Gion, Judge of the District Court, Stark County, North Dakota, and my hand and seal of said Court.

8/30/2023 2:16:07 PM

BY: _____, Deputy _____
District Court Clerk

5198217.1

2



STATE OF NORTH DAKOTA                                    IN DISTRICT COURT

COUNTY OF STARK                              SOUTHWEST JUDICIAL DISTRICT

---

| | |
|---|---|
| Midland States Bank,<br><br>Plaintiff,<br><br>v.<br><br>Stark Energy, Inc. and Robert Gene Fettig,<br><br>Defendants. | Case No. 45-2023-CV-00475<br><br><br>**CONTEMPT ORDER FOR FAILURE TO COMPLY WITH AMENDED ORDER FOR PREJUDGMENT SEIZURE OF COLLATERAL DATED JULY 21, 2023 AND JUDGMENT DATED AUGUST 30, 2023** |

---

[¶1]    A show cause hearing was held in the above-entitled action on the 27th day of September, 2023 at 2:30 P.M. MT in the Stark County Courthouse, Dickinson, North Dakota. The Defendants did not appear personally or through counsel. Plaintiff appeared through counsel, Caren Stanley of Vogel Law Firm by reliable electronic means. Based on all of the files and pleadings herein the Defendants, Stark Energy, Inc. and Robert Gene Fettig (collectively, the "Defendants"), are found in contempt. The Defendants may purge themselves of contempt after being served personally with a copy of this Contempt Order by:

A.    Delivering the **2015 Kenworth W900 VIN:1XKWP4EX1FJ435264 vehicle** (the "2015 Kenworth") to the Plaintiff's custody and control **on or before 5:00 p.m. MT on Wednesday, October 4, 2023**. Defendants may contact Plaintiff's attorney, Caren Stanley of Vogel Law Firm at 701.356.6307 or cstanley@vogellaw.com to arrange for delivery of the 2015 Kenworth.

[¶1]      Should the Defendants fail to purge themselves of contempt, Plaintiff's attorney may submit an Affidavit of Default to be taken under advisement for the assessment of appropriate sanctions including, but not, limited to incarceration. A bench warrant issued upon the failure of Defendants to purge themselves of contempt may be issued for the incarceration of Defendant Robert Gene Fettig for a period of ten (10) days or until such time as he purges himself of contempt, whichever occurs sooner. The cash bond may be set in the amount of 25% of the judgment amount with respect to a bench warrant that is issued upon Defendants failure to purge themselves of contempt.      9/27/2023 4:49:14 PM

_____

Judge of the District Court

5240356.1

STATE OF NORTH DAKOTA                    IN DISTRICT COURT

COUNTY OF STARK                  SOUTHWEST JUDICIAL DISTRICT

| | |
|---|---|
| Midland States Bank, | Case No. 45-2023-CV-00475 |
| Plaintiff, | |
| v. | **BENCH WARRANT** |
| Stark Energy, Inc. and Robert Gene Fettig, | |
| Defendants. | |

Pursuant to the Court's Contempt Order dated September 27, 2023, the Defendants, Stark Energy, Inc. and Robert Gene Fettig, were held in contempt for their failure to comply with this Court's Amended Order for Prejudgment Seizure of Collateral dated July 21, 2023 and Judgment dated August 30, 2023. The Contempt Order was personally served on the Defendants on September 29, 2023.

The Defendants, Stark Energy, Inc. and Robert Gene Fettig, were given the opportunity to purge themselves of the contempt by delivering the 2015 Kenworth W900 VIN:1XKWP4EX1FJ435264 vehicle (the "2015 Kenworth") to the Plaintiff's custody and control on or before 5:00 p.m. MT on Wednesday, October 4, 2023. To date, the Defendants have failed to deliver the 2015 Kenworth to Plaintiff's custody or control, or otherwise comply with this Court's Amended Order for Prejudgment Seizure of Collateral dated July 21, 2023 and Judgment dated August 30, 2023 in any respect. Accordingly, the Defendants have failed to purge themselves of the contempt.

THEREFORE, IT IS HEREBY ORDERED:

1.    This Bench Warrant is directed to all peace officers of the state;

2.    Defendant, Robert Gene Fettig, is to be apprehended and brought before a referee or judge presiding over this Court;

3.    The Defendant, Robert Gene Fettig, may be incarcerated for a period of ten (10) days, unless up until such time that he purges himself of contempt by delivering the 2015 Kenworth to Plaintiff's custody and control as previously ordered by the Court, or upon the posting of cash bail in the amount of 25% of the judgment ($55,164.07), whichever occurs sooner; and

4.    In the event the Defendant, Robert Gene Fettig, fails to comply with paragraph 3 above by delivering the 2015 Kenworth to Plaintiff's custody and control, prior to release from incarceration he shall be brought before the Court and must fully and truthfully disclose under oath the current location of the 2015 Kenworth and/or why Defendants are unable to explain where it is located and if it was disposed of by Defendants then testify to the specifics of the disposition.

10/5/2023 3:06:06 PM

_____
Judge of the District Court

5240409.1

2



# STARK COUNTY SHERIFF'S OFFICE

66 WEST MUSEUM DRIVE  ·  PO BOX 130  ·  DICKINSON, NORTH DAKOTA 58601-0130
TELEPHONE 701.456.7610  ·  FACSIMILE 701.456.7692
SHERIFF COREY LEE

**ORI: ND0450000**

The information contained in this message is privileged and **CONFIDENTIAL**. It is intended for the use of the individual or entity named ONLY. If the reader of this message **IS NOT** THE INTENDED RECIPIENT, you are hereby notified that ANY dissemination, distribution or copying of this communication is strictly prohibited.

If you have received this in error, **PLEASE NOTIFY THE ORIGINATOR IMMEDIATELY,** identify yourself as a "mistaken recipient" and return the original message to us at the above address via U.S. Postal Service. Thank you.

| STATE OF NORTH DAKOTA, | } | DISTRICT COURT, |
|---|---|---|
| | } | |
| County of STARK | } | Southwest Judicial District |

**STATE OF NORTH DAKOTA**

  **PLAINTIFF**          **Sheriff's Return**

   **vs.**

**ROBERT GENE FETTIG**          **CASE NUMBER  45-2023-cv-00475**

   **DEFENDANT**

| STATE OF NORTH DAKOTA, | } | |
|---|---|---|
| | } ss: | |
| County of STARK | } | |

I hereby certify that by virtue of the forgoing warrant, I have arrested the within named Defendant **ROBERT GENE FETTIG** and give him/her now before the Court of Custody.

Dated this day _10/20/23_   A.D.

_____
Sheriff of Stark County, North Dakota

_____
Signature

_____
Printed Name

STATE OF NORTH DAKOTA                    IN DISTRICT COURT

COUNTY OF STARK                    SOUTHWEST JUDICIAL DISTRICT

| | |
|---|---|
| Midland States Bank,<br><br>        Plaintiff,<br><br>  v.<br><br>Stark Energy, Inc. and Robert Gene Fettig,<br><br>        Defendants. | Case No. 45-2023-CV-00475<br><br>**BENCH WARRANT** |

Pursuant to the Court's Contempt Order dated September 27, 2023, the Defendants, Stark Energy, Inc. and Robert Gene Fettig, were held in contempt for their failure to comply with this Court's Amended Order for Prejudgment Seizure of Collateral dated July 21, 2023 and Judgment dated August 30, 2023. The Contempt Order was personally served on the Defendants on September 29, 2023.

The Defendants, Stark Energy, Inc. and Robert Gene Fettig, were given the opportunity to purge themselves of the contempt by delivering the 2015 Kenworth W900 VIN:1XKWP4EX1FJ435264 vehicle (the "2015 Kenworth") to the Plaintiff's custody and control on or before 5:00 p.m. MT on Wednesday, October 4, 2023. To date, the Defendants have failed to deliver the 2015 Kenworth to Plaintiff's custody or control, or otherwise comply with this Court's Amended Order for Prejudgment Seizure of Collateral dated July 21, 2023 and Judgment dated August 30, 2023 in any respect. Accordingly, the Defendants have failed to purge themselves of the contempt.

THEREFORE, IT IS HEREBY ORDERED:

1.   This Bench Warrant is directed to all peace officers of the state;

2.   Defendant, Robert Gene Fettig, is to be apprehended and brought before a referee or judge presiding over this Court;

3.   The Defendant, Robert Gene Fettig, may be incarcerated for a period of ten (10) days, unless up until such time that he purges himself of contempt by delivering the 2015 Kenworth to Plaintiff's custody and control as previously ordered by the Court, or upon the posting of cash bail in the amount of 25% of the judgment ($55,164.07), whichever occurs sooner; and

4.   In the event the Defendant, Robert Gene Fettig, fails to comply with paragraph 3 above by delivering the 2015 Kenworth to Plaintiff's custody and control, prior to release from incarceration he shall be brought before the Court and must fully and truthfully disclose under oath the current location of the 2015 Kenworth and/or why Defendants are unable to explain where it is located and if it was disposed of by Defendants then testify to the specifics of the disposition.

10/5/2023 3:06:06 PM

_____
Judge of the District Court

5240409.1

2



EXHIBIT
3

STATE OF NORTH DAKOTA, COUNTY OF STARK

IN DISTRICT COURT, SOUTHWEST JUDICIAL DISTRICT

| | | |
|---|---|---|
| Midland States Bank, | ) | |
| | ) | **BOND HEARING** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Stark County Case No. |
| Stark Energy, Inc., and | ) | 45-2023-CV-475 |
| Robert G. Fettig, | ) | |
| | ) | |
| Defendants. | ) | |

**TRANSCRIPT OF PROCEEDINGS**

BEFORE THE HONORABLE WILLIAM HERAUF, DISTRICT JUDGE
Stark County Courthouse
Dickinson, North Dakota
October 23, 2023

A P P E A R A N C E S

FOR PLAINTIFF:
    Caren Stanley
    Attorney at Law
    218 NP Avenue
    Fargo, ND 58107

FOR DEFENDANT ROBERT FETTIG:
    Robert Fettig
    PO Box 748
    Dickinson, ND 58602

RECORDED BY:
Brenda Trochmann
TRANSCRIBED BY:
Tyler Culver, ND-CR/T
Electronic Court Recorder
51 3rd Street East
Dickinson, ND 58601

1          (The before-entitled matter came on for hearing before the

2    Court, the Honorable William Herauf, district judge, presiding,

3    commencing at 2:03 P.M. October 23, 2023, in the Stark County

4    Courthouse in Dickinson, North Dakota.  Present were Caren

5    Stanley, of Fargo, North Dakota, representing the Plaintiff,

6    Midland States Bank; and the Defendant, Robert Fettig, on

7    behalf of Stark Energy, Inc., et al.)

8          THE COURT:  Mr. Fettig, interesting one.  Haven't

9    seen this ever since I've been a judge, but it appears as

10   though you were to go ahead and deliver a 2015 Kenworth K -- or

11   W900, and that didn't get done.  And then there was a time for

12   hearing that was set, and you didn't end up showing up.

13         Judge Gion ended up setting a bond, 25 percent of the

14   judgment, and it says $55,164.07.  I don't know if that's the

15   judgment or the bond amount; nevertheless, there's something

16   that would be owed.  And fails to comply with paragraph three,

17   must appear in front of the Court, and then answer as to the

18   location of it and/or if he's disposed of it.

19         Ms. Stanley, did I somewhat get what had gone on in

20   this?

21         MS. STANLEY:  Yes, Your Honor.  The judgment was

22   $212,000; so that 55,000 in there is the 25 percent of the

23   judgment amount.

24         THE COURT:  Okay.  And was there a hearing that was

25   set up, and he didn't show up?

1          MS. STANLEY:  Correct.

2          THE COURT:  All right.  Mr. Fettig --

3          MR. FETTIG:  Yes, sir.

4          THE COURT:  -- how come you didn't show up at the

5    hearing?

6          MR. FETTIG:  I've been out in the field, chasing

7    work, trying to save my business.  I wasn't at my house.  I

8    didn't know about the documentation that was served at my

9    house.  I didn't make the court hearing, and then when I was

10   made aware of it, it was too late.  And then when I was made

11   aware of another court hearing, I went -- had presided at that

12   court hearing the best I could through telecommunication.  I'm

13   just trying to save my business.  I'm not trying to be dubious.

14         I don't have $55,000 right now.  I feel that that's

15   an exorbitant amount of money.  If I did, I would have given it

16   to anybody that I owe any amount of money to at this time.

17         So, yeah, that's -- I'm just trying to answer your

18   questions, sir.  I'm sorry.

19         THE COURT:  All right.  Raise your right hand.

20                          **ROBERT FETTIG,**

21   having been duly sworn, testified as follows:

22                        **DIRECT EXAMINATION**

23   **BY JUDGE HERAUF:**

24   Q.    Where's the 2015 Kenworth?

25   A.    I don't know, Your Honor.  It was on my property at

1    one point in time.  There was a, what do they call it, a "repo

2    company" that was looking for it, but it's no longer there.

3    It's not at my property.  It's not being driven.  I don't know

4    where it's at.  I'm being truthful, and I'm swearing under

5    oath.

6        Q.    Which -- when did you last see it?

7        A.    Like, two or three months ago or more than that.  I

8    was in the process of repairing it.  I had it outside my shop,

9    or whatever, and I wasn't able to repair it at the time.  There

10   was a problem with the motor.  I hired a mechanic that said he

11   could work on the motor, and I trusted him when he said that he

12   could do what he could do to fix the motor.  He was in the

13   process of taking it apart, and after that period of time, I've

14   never seen it.  I'm sorry.  I interrupted you.

15       Q.    No.  You can put your hand down.  What's the name

16   of the mechanic?

17       A.    It was a gentleman that I hired off of Craigslist.

18   I could find the mechanic.  I think his first name was Craig.

19   But I've had so many turnovers of employees.  I have no problem

20   trying to find that individual's name and number and providing

21   that to the Court.  I honestly don't have that problem.

22       I'm not trying to be dubious.  I think this is the lawyer

23   for the bank.  But I'm telling you honestly, I don't, right now

24   off the top of my head, know that gentleman's first and last

25   name.  I can jog my memory.  I can ask my mother to go

1   throughout my business, and I can get you a name.  I have no

2   problem with that, but I hired an individual that was from

3   Belfield -- Belfield, Your Honor.  I hired him.  He said he

4   could work on it.  When I got back to the shop a couple of

5   times, he was, like, in the process of taking it apart, but it

6   was never fully taken apart.  Like, you know, it wasn't, like,

7   stripped down.  He was trying to fix the motor.  There was a

8   problem with the lock on the motor.  They said that there was

9   an injector problem.

10       But the problem is that I have a high turnover rate of

11  employees because I've been getting a lot of people walking

12  away from me and thinking that my company's not going to

13  survive, but I've been chasing work and able to get some work.

14       I've had a negotiator person reach out to this gal here

15  and said -- his name -- last name is Mr. Mullens -- and we were

16  going to try to satisfy the thing by giving -- I was going to

17  save up enough money, at the period of time, of $15,000 to give

18  to them, and then pay a monthly payment to pay down the loan

19  because I don't want to have a judgment because I can't get

20  anymore business loans if I keep running my business.

21       I have to pay back my bank no matter what, but I'm just in

22  a very financial hardship right now.

23       Q.    Who's your bank?

24       A.    It's a Midstates Bank -- or this was a Midstates

25  Bank.

1      Q.      Where are they at?

2      A.      I -- it was a KLC Financial organization that ended

3   up packaging together my truck -- and they put that loan in the

4   -- and then they gave to a bank -- another bank, and another

5   bank, called Midstates Bank, bought that bank.  So I've never

6   dealt with this bank.  I mean, I've made payments but --

7      Q.      What's the name of the repo company?

8      A.      It was a New York number.  There was a New York

9   phone number.  They called me from New York.  It was a 716

10  number, I believe -- or a 761 number.  They have a New York

11  person who calls.  He's from New York.  He said he was looking

12  for it.  I said I don't know where --

13     Q.      Okay.  How much money can you afford for bail?

14     A.      Maybe two grand, and that's trying to be generous.

15  I'm not trying to be rude.  I'm not trying to be disrespectful.

16  I mean, that's -- it's a lot of money.  I'm a hurting person.

17           THE COURT:  Ms. Stanley, what do you want to do?

18           MS. STANLEY:  Thank you, Your Honor.  I really want

19  to know what happened to it, and I don't think he's being

20  truthful because, Your Honor, I've got another case open for

21  Gate City with 21 pieces of equipment that I'm currently trying

22  to retrieve as well, and just found out that they are all

23  missing as well from the same place in Belfield that he's

24  talking about, I believe.

25           MR. FETTIG:  I'm not being dishonest.  And for her to

1  be able to talk about another case, another Judge talked about

2  something, that's nothing that we're going to be talking about

3  here.  I'm not trying to be disrespectful to her, but I don't

4  have a lawyer, and I'm trying to stick up for myself.

5          I'm here because of Midstates Bank.  That's why I'm

6  currently here in front of you, Your Honor.  And I'm not trying

7  to be disrespectful to you, but I'm trying to stick up for

8  myself.  I'm trying to stick up for myself and my business and

9  try to do right by my business and do right by my -- I already

10  satisfied a loan with Gate City Bank.  I brought my mortgage

11  current.  I was delinquent on my mortgage, and I was able to

12  get the money together to bring that current.  I'm trying to --

13          THE COURT:  Whoa, whoa, whoa.  Time.  Do you have

14  another case?  I mean, we got also missing equipment?

15          MR. FETTIG:  Well, I don't know about the idea of a

16  missing equipment thing, but I do have another case pending

17  with Gate City Bank.  Yeah.  I'm a struggling business owner,

18  sir.  I'm trying to turn a business around, and I've been

19  unable to do that.  I've been able to bring my mortgage

20  current.

21          THE COURT:  Well, okay.  Here's what we're -- sir, I

22  don't know about your story, and I don't have time to go ahead

23  and try to analyze this.  This is not my case.  This is Judge

24  Gion's case.  But they're going to set another hearing, and

25  you're going to be out on bond, $2,000.  That's what we're

1  going to charge --

2          MR. FETTIG:  Okay.

3          THE COURT:  -- but you show up at the next hearing;

4  otherwise, if we've got a problem -- if we've got a problem,

5  you're going to end up spending a lot of time in jail, and

6  we'll just keep you there because then we'll know where you're

7  at, and then we'll just transport you from the jailhouse to the

8  hearing, and you can explain it to Judge Gion.

9          Did I make myself clear?

10         MR. FETTIG:  100 percent.

11         THE COURT:  If you know where that truck is, you

12  better make sure it's protected.  If you can find it, you

13  better start digging to figure out where it is because Ms.

14  Stanley and her client, if it's collateral, they're entitled to

15  it, and if there's other judgment creditors out there, the

16  creditors can fight about it.  But you better be honest as to

17  where it is, and make sure everybody who needs to know gets the

18  information.

19         Do you understand?

20         MR. FETTIG:  Yes, Your Honor.

21         THE COURT:  All right.

22         Ms. Stanley, I know it's not your $55,000, but I

23  can't get that for you.  I can get $2,000, and then you can get

24  a hearing, ask him all the questions you want.  I suspect

25  there's another creditor out there.  If you don't know where it

1   is, you're going to end up with a creditors' war on it, and I

2   don't know what to tell you about that.

3           Do you have anything else, Ms. Stanley?

4           MS. STANLEY:  Nothing at the moment.  Thank you for

5   your time.

6           THE COURT:  All right.

7           Did you get all that, Marie?  It's an oddball case.

8           CLERK OF COURT:  Mm-hmm.

9           THE COURT:  Sir, when I get a chance to sign an

10  order, we'll get you out, but you got to pay the $2,000.  And

11  then you make sure you show up at the next hearing.  Right?

12          MR. FETTIG:  Yes, sir.  Yes, Your Honor.  Yes.

13          THE COURT:  And if you don't get paperwork in the

14  next four days, you better be making some phone calls.  When

15  you show up at the hearing, make sure you're not late.  In

16  other words, be ten minutes early.

17          Thank you.  Court's in recess.

18      (The case was adjourned at 2:13 P.M.)

19

20

21

22

23

24

25

**CERTIFICATE OF COURT RECORDER**

I, Tyler Culver, a duly certified digital electronic court reporter and transcriber,

DO CERTIFY that I recorded the foregoing proceedings had and made of record at the time and place indicated.

DO FUTHER CERTIFY that the foregoing and attached typewritten pages numbered 1 through 9 contain a true, accurate, and complete transcript from the electronic sound recording then and there taken.

Dated at Dickinson, North Dakota, this 23rd day of May, 2024.

_____

Tyler Culver, ND-CR/T

THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT DOES NOT APPLY TO THE REPRODUCTION OF THE SAME BY ANY MEANS, UNLESS UNDER THE DIRECT CONTROL AND/OR DIRECTION OF THE CERTIFYING COURT RECORDER.



STATE OF NORTH DAKOTA, COUNTY OF STARK

IN DISTRICT COURT, SOUTHWEST JUDICIAL DISTRICT

Midland States Bank,        )

                                )      <u>ORDER TO SHOW CAUSE</u>

    Plaintiff,      )

                                )

       vs.          )

                                )      Stark County Case No.

Stark Energy, Inc., and    )      45-2023-CV-475

Robert G. Fettig,       )

                                )

    Defendants.     )

<u>TRANSCRIPT OF PROCEEDINGS</u>

BEFORE THE HONORABLE JIM GION, DISTRICT JUDGE
Stark County Courthouse
Dickinson, North Dakota
November 11, 2023

A P P E A R A N C E S

FOR PLAINTIFF:
    Caren Stanley
    Attorney at Law
    218 NP Avenue
    Fargo, ND 58107

FOR DEFENDANT ROBERT FETTIG:
    Robert Fettig
    PO Box 748
    Dickinson, ND 58602

RECORDED AND TRANSCRIBED BY:
Tyler Culver, ND-CR/T
Electronic Court Recorder
51 3rd Street East
Dickinson, ND 58601

1          (The before-entitled matter came on for hearing before the

2     Court, the Honorable James D. Gion, district judge, presiding,

3     commencing at 9:00 A.M. on November 14, 2023, in the Stark

4     County Courthouse in Dickinson, North Dakota.  Present were

5     Caren Stanley, of Fargo, North Dakota, representing the

6     Plaintiff, Midland States Bank; and the Defendant, Robert

7     Fettig, on behalf of Stark Energy, Inc., et al.)

8          THE COURT:  The Southwest Judicial District Court is

9     in session.  I'm Jim Gion, a judge of the district.  We are

10    convened in the basement courtroom of the Stark County

11    Courthouse on the 14th day of November, 2023, at 9:00 o'clock

12    A.M. in case 45-2023-CV-475, Midland States Bank v. Stark

13    Energy, Inc., et al.

14         The record should reflect this is the time and place

15    set for a hearing on an order to show cause.  The Plaintiff,

16    Midland States Bank, is represented by Caren Stanley, who is

17    appearing by Zoom; the Defendant, Robert Fettig is present --

18         MR. FETTIG:  Yep.

19         THE COURT:  -- in the courtroom.  And I believe you

20    are the principle in Stark Energy, Inc., as well, Mr. Fettig?

21         MR. FETTIG:  Correct.

22         THE COURT:  Okay.  As I stated, this is the time and

23    place set for a hearing on an order to show cause.  My

24    understanding is that there is an order -- or a judgment out

25    there that required Stark Energy, Inc., to surrender certain

1  personal property, I believe in this case some trucks and the

2  like, to Midland States Bank, and that hasn't happened.

3          Is that correct, Ms. Stanley?

4          MS. STANLEY:  There is one truck that remains

5  missing.  The other was dismantled, if you will.

6          THE COURT:  Okay.

7          MR. FETTIG:  That's incorrect.

8          THE COURT:  So can you identify, just so that we're

9  clear, Ms. Stanley, which truck are we talking about?

10          MS. STANLEY:  The 2015 Kenworth W900.  The vin number

11  1XKWP4EX1FJ435264.

12          THE COURT:  Okay.  I didn't get it all written down,

13  but that's fine.

14          So essentially, Mr. Fettig, what we want to know is

15  why haven't you turned that truck over to Midland States Bank.

16  Understand something, an order to show cause, if it turns --

17  basically it's an order to show cause why you should not be

18  held in contempt of court for disobeying the order.

19          So there is a possibility with contempt orders

20  always, even in civil cases, that there could be incarceration

21  involved.  In other words, if the Court determines that you

22  deliberately disobeyed an order, you could be ordered to serve

23  jail time.

24          MR. FETTIG:  Okay.

25          THE COURT:  You don't have an attorney with you.

1        MR. FETTIG:  No.  I'm working on trying to get an

2   attorney, but, yeah.

3        THE COURT:  I guess I'm going to ask Ms. Stanley.

4   Does the Plaintiff anticipate a request for incarceration in

5   this?

6        MS. STANLEY:  Your Honor, we've already had that.  In

7   this case, you issued a prior bench warrant.  So there was a

8   prior contempt order, holding him in contempt.  Mr. Fettig was

9   incarcerated over the weekend, and I believe it was Judge

10  Herauf that had the bond hearing.

11       THE COURT:  Yes.

12       MS. STANLEY:  And he was released on a $2,000 bond

13  because he was not able to pay the amount listed in the bond,

14  but he still was not able to identify and explain what happened

15  to the 2015 Kenworth; so we are here again, asking him to

16  explain and tell me where it is.

17       THE COURT:  Okay.

18       Well, Mr. Fettig, I guess, I don't want to delay this

19  matter any further than it has to be because that doesn't do

20  anybody any good, but I also can't guarantee you that if it's

21  determined that you are deliberately concealing that, you're

22  not telling people where it's at, there would be that

23  possibility.  I am willing to give you the opportunity to

24  explain.

25       The concern I have is that if your -- your

1    explanation may lead to some -- or include some admissions that
2    could lead to the Court determining that you deliberately are
3    hiding this.  And then you get an attorney, and the attorney
4    said, well, he didn't really mean that, but I'll know what I
5    heard.
6          So I want to make sure that you understand.  I'm
7    reluctant to say, yeah, we'll continue this so you can get an
8    attorney because you have indicated you're attempting to get an
9    attorney.  I anticipate, because of the legal issues you have
10   faced since these problems started, that, financially, you're
11   struggling.
12         MR. FETTIG:  Yeah.
13         THE COURT:  Yes, sir.
14         MR. FETTIG:  I'm sorry.  Just trying to say
15   something.  Yeah, I am struggling financially, and I'm here
16   today because I missed a court -- initial court appearance
17   because I had a situation with a driving infraction.  I was in
18   Dunn -- sorry -- I was in Dunn County the same date of the
19   first hearing for this thing, and I didn't know that.  And then
20   there was a bench warrant issued, and I was kind of, like,
21   scared, didn't know what to do, and then I contacted an
22   attorney to try to get somebody available.
23         And then I did, you know, go before the Court, and
24   the judge there made me swear that I had to be here every time
25   you guys send me a letter.  I'm here today.  I'm not trying to

1   hide.  So --

2           THE COURT:  Okay.  Well, then, let's -- I'm willing

3   to give you the opportunity to explain where this truck is.

4   Because we have a court order, this truck is -- unless this

5   truck has disappeared from the face of the earth somehow, there

6   is a court order that says this truck must be delivered.

7           Now, I need to know why it hasn't been or why it

8   won't be.  If you can answer that question and it is determined

9   that it is because of something that can be remedied -- so, in

10  other words, if you can get it delivered somehow or other, or

11  if you can give us the information so that it can be delivered

12  -- here's the situation that Midland States Bank is facing.

13  They have an order that says they're entitled to certain

14  amounts of money from Stark Energy and, I don't remember, maybe

15  from you individually.

16          MS. STANLEY:  Yes, Your Honor.

17          THE COURT:  And so that Court order has not been

18  appealed.  It stands.  It's going to stand.  They have --

19  they're out their money.

20          MR. FETTIG:  Yep.

21          THE COURT:  They need -- or they have the right to

22  get that back.  So what I'm trying to tell you, in the long

23  run, we're going to get this thing resolved one way or the

24  other.  It's just how long does it take and how many gyrations

25  does the Plaintiff have to go through.

1          So do you want to tell me why you haven't?

2          MR. FETTIG:  I don't know where it's at currently.  I

3     really don't.  I know that there was equipment at my yard, and

4     I know that I have creditors that are out looking for

5     equipment, and I don't know where it's at.  I know that a repo

6     company contacted me from the East Coast, and he had stated

7     that.  I know that a previous employee stated that there was a

8     repo man that approached him at one point in time and said

9     something.  You know what I'm saying?  This was, like, months

10    and months and months ago that things -- like, a pickup truck

11    of mine was up for repo.  I've been struggling financially.  If

12    I had the ability to produce the item, I would do that happily.

13         There's a comment she made that there was a truck in

14    disrepair -- what was it called -- stripped down.  I would

15    never run a chop shop.  That's inferring that I'm doing

16    something criminal.  I hired a mechanic at the time to work on

17    a truck, you know, and he -- you know, he didn't know what he

18    was doing.  You know, I've had plenty of people come and go

19    from my company that don't know what they're doing.  They take

20    apart stuff, and then they try to put it back together.  I have

21    a struggling time trying to find employees.  I've had a very

22    tough go of it.

23         I even reached out to Midland States Bank and other

24    creditors and asked them that -- due to the COVID nature and

25    everything, I lost $800,000 during COVID.  I went through

1    another $3,000,000 in really bad predatory loans.  They were up

2    to the 48th percentile.  They're illegal.  They're called

3    merchant cash advances.  I don't know if you're familiar with

4    them, but they prey on small businesses in their time of need,

5    and they put me into a very financial tailspin.

6            I am a struggling business owner, and I'm trying very

7    hard to not file Chapter 11, 13, 7, or whatever.  I'm trying to

8    keep working.  I have a truck that's free and clear, and I've

9    been able to work with that truck, you know.  That truck is not

10   encumbered by anybody.

11           And I've actually reached out to Midland States Bank.

12   I reached out to credit consolidation people, or whatever, and

13   they said that they contacted this gal, or made many contacts

14   to her, and said that they would be willing to try to work --

15   broker a settlement agreement.  I'm not trying to duck or hide

16   from anybody.

17           I've actually reached out to a lawyer.  His name is

18   Brandon.  He was out of the country at the time, and since he

19   just got back to the country within the last, I'd say, two

20   weeks, he's been working on his log of -- whatever they call --

21   the case log, or something, and he said he would reach out to

22   me and get me in touch with a good financial attorney to help

23   me out to navigate my situation.

24           But to say that I'm doing anything, like,

25   deliberately, it's not correct.  I mean, there was a

1   conversation with that lender guy -- not the lender guy -- the

2   judge, and he said that they might have a situation where

3   creditors are now going to, you know, have to duke it out or

4   something, and the --

5        THE COURT:  Well, the question I have for you, Mr.

6   Fettig, is what have you done to determine which creditor may

7   have repossessed this 2015 Kenworth?

8        MR. FETTIG:  Oh, what have I done?  I've reached out

9   to the repo company that contacted me.  It was, like, a 716

10  number.  I asked them if he did get it, and he said no, and he

11  said that there is an -- when they do this repo thing, when

12  they do that thing where they put out the issue, that they tend

13  to send that out to multiple people.

14        And I said, okay, well who did you send -- like, who

15  did you send that out to?  You know, I'm just kind of at a loss

16  of words right now.  I mean, I'm trying to work and function

17  and be able to maybe mitigate this situation.  Because you

18  said, at the end of the day, I'm still going to have to solve

19  the issue of whatever's owed.

20        And I was trying to negotiate that with that gal

21  there through another gentleman because he said that when I

22  represent myself as a business, I need to have a lawyer because

23  when you go into a court of law, your business can't be

24  represented by the principle.  I'm just learning this stuff.

25  I'm not a lawyer, and I'm not --

1          THE COURT:  Well, here's the concern I have.  First

2     of all, I find it somewhat suspicious that a repo company can

3     come in and take this truck, give it to a creditor, and the

4     creditor doesn't have to notify you that they've got it.

5          MR. FETTIG:  Well, I haven't got any notification by

6     any creditor.  I go on record of that.  I've not --

7          THE COURT:  Okay.  And so do you have a list of

8     creditors?

9          MR. FETTIG:  I can get a list of creditors.

10         THE COURT:  And have you contacted those creditors to

11    see -- not the repo company, but the creditors -- because the

12    repo company will take that truck, I'm guessing, and they -- if

13    I'm the repo guy, I'm going to grab your truck, and I'm going

14    to deliver it to that creditor.  I'm not going to hold it.

15         MR. FETTIG:  Yeah.

16         THE COURT:  And so once that's done, the file is

17    closed, and they're probably not going to be very cooperative

18    with you when you say to the repo company where did you take

19    it, absent a court order.  But if you have creditors out there,

20    I don't think that they can take your property, and then when

21    you ask them if they have it, that they can deny that they've

22    got it.

23         MR. FETTIG:  Okay.  I'm listening.

24         THE COURT:  Number one.

25         Number two, Ms. Stanley, I'm assuming that Midland

1  States Bank had perfected their lien on the title on this

2  truck?

3          MS. STANLEY:  Yes, Your Honor.

4          THE COURT:  So whoever has it can't do anything with

5  it because it is titled probably in Stark Energy, Inc., or your

6  name, and on the title, there will be a lien-holder notice.

7  And so if I'm your creditor and I'm holding that truck, legally

8  there's nothing I can do with it.

9          What I'm getting at, Mr. Fettig, I think that you may

10 have to work a little harder to find out where this truck is

11 at.

12         MR. FETTIG:  Okay.

13         THE COURT:  And that has to be done somewhat promptly

14 because, unfortunately, there also exists the risk that

15 whichever creditor, if they repossess that truck, has it, they

16 don't intend to run it.  They've got it to a chop shop.  That

17 truck is being dismantled and sold as parts because they want

18 money.  And if you find the right chop shop, they're going to

19 disregard the license -- or the title, and they'll get rid of

20 everything but the carcass that has the VIN number on it, and

21 that might even get changed.  That's what can happen.  And the

22 longer we wait, the more likely it is that that type of

23 activity could ensue.

24         Ultimately at the end of the day, it's your

25 responsibility.  And so if you say, well, I don't know where

1    it's at.  I can't find it.  How can Midland, who doesn't even

2    know what the -- has never been physically in the presence of

3    the truck, how can they find it?

4              Yes?

5              MR. FETTIG:  I'm sorry.  I don't know if you're

6    supposed to raise your hand.

7              So I hear what you're saying, and I wrote that down,

8    and I'm going to make an effort on that.  I have a question to

9    you.  I've been trying to make an effort on turning my business

10   around.  If I'm able to come up with any amount of money or

11   another creditor that can help me out with this situation that

12   I'm facing financially -- because I reached out to a debt

13   reconsolidation company, and they said they come in and they

14   assess all the debt, and then they issue new debt or whatever.

15             Because I'm not trying to run from my debts.  I'm

16   trying to -- and I'm not trying to file Chapter 11 because I

17   heard that they get -- they get tied up in, like, eight-year

18   litigation or two-year litigation, and they get eleven cents on

19   the dollar, and it's all this whatever.  I'm trying to be a

20   payer.  There's two people in the world: the people that pay

21   their bills and people that don't pay their bills, and I've

22   been fighting to try to pay my bills.

23             So I'm asking is there any way that we could ask

24   that, you know, even from the Court -- because you're asking me

25   to do everything I can, and I will do that, and I'm here today.

1    I missed that first court appearance.  I learned a valuable

2    lesson.  But is there any way that we can broker some type of

3    negotiation where it says, hey, you know what, I owe Midland

4    States, as they say, x amount of money.  You know, is there a

5    way I can start paying on this so I can start satisfying them?

6    Because they're owed money, and I'm not trying to keep them

7    from their owed money, but it sounds like I'm on the hook no

8    matter what.  You know, like --

9           THE COURT:  Well, the Court can't get involved with

10   that.

11          MR. FETTIG:  Okay.

12          THE COURT:  That would have to be between you and

13   Midland States.

14          MR. FETTIG:  Is there a way that I can negotiate with

15   you, ma'am?  Because I want to try to make sure that Midland

16   States Bank is made whole, but it seems like we're almost --

17   not to be disrespectful to you -- but this is the only time

18   that I've been able to make a conversation.

19          When I talked to a debt consolidation person, they

20   said they tried to contact you, and they said that there was no

21   -- I'm not -- I'm trying to --

22          MS. STANLEY:  Your Honor, if I may make a few

23   comments.

24          MR. FETTIG:  As long as it pertains to this case.

25          MS. STANLEY:  This has been incredibly frustrating

1   for me in that Mr. Fettig, at the last hearing when he was

2   ordered to testify under oath, which I know he is not under

3   oath at this point, first said -- well, earlier today, he

4   indicated that the repo company said it did not take this piece

5   of equipment.

6          MR. FETTIG:  That's what they said.

7          MS. STANLEY:  And then he also said, last time, that

8   he got somebody off of Craigslist, who he thought his name was

9   Craig, that was going to repair it, and then, therefore, he

10  hadn't seen it for two months or three months.  So he just

11  didn't know where it was.  And I was wondering if we could put

12  Mr. Fettig under oath and ask him some questions such as did

13  you report it as stolen.

14         Mr. Fettig has repeatedly indicated that he's working

15  very hard to try to pay off these debts; so I would be very

16  interested to know where exactly he's working.  Because in

17  another hour, I have a hearing with Judge Greenwood as to 20

18  pieces of equipment that Mr. Fettig is refusing to turn over in

19  that case as well.

20         MR. FETTIG:  I'm not refusing.

21         THE COURT:  Okay.  I will do that, Mr. Fettig.  I'm

22  going to place you under oath.  I'm going to allow Ms. Stanley

23  to question you --

24         MR. FETTIG:  Mm-hmm.

25         THE COURT:  -- because we need to establish facts.

1   So please raise your right hand.

2          MR. FETTIG:  Can I ask you a question?

3          THE COURT:  Sure.

4          MR. FETTIG:  Because I know you're not a lawyer, but

5   when I do answer these questions, I answer them truthfully.  I

6   understand that.  But do I have the option to plead the Fifth

7   or not?  I've seen it on TV.  I don't know.  I don't know how

8   that works.

9          THE COURT:  You can plead the Fifth, but I may

10  overrule that request if -- because if someone says what's your

11  name, and you say I refuse to answer on the grounds that it may

12  incriminate me, that's not an appropriate use of it.

13         MR. FETTIG:  Well, because the thing is I'm trying to

14  work with the creditor --

15         THE COURT:  Right.  So please raise your right hand.

16         MR. FETTIG:  Yep.

17                      **ROBERT FETTIG,**

18  having been duly sworn, testified as follows:

19         THE COURT:  Ms. Stanley, you may proceed.

20                  **DIRECT EXAMINATION**

21  **BY MS. STANLEY:**

22      Q.    Mr. Fettig, are you familiar with the 2015 Kenworth

23  that we've been discussing that was financed with Midland?

24      A.    I'm familiar with the truck that I financed with

25  KLC Financial out of Minnesota.  Yes.

1     Q.     Okay.  And that was assigned to Midland?

2     A.     I believe so, yes.

3     Q.     Okay.  When was the last time you saw the 2015?

4     A.     I honestly don't recall.  The last six months have

5  been pretty tough.  The last year has been pretty tough.  I

6  don't recall an exact date, but I do recall that I have --

7     Q.     Have you reported any equipment stolen?

8     A.     No.  It's to my knowledge that -- no.  No, I have

9  not personally requested that anything being said it's stolen.

10  I have not filed a claim, or anything like that, because -- no.

11  I have not done that because I think that would be, like,

12  saying something that you don't know is true or not.  I mean, I

13  don't know if it was stolen or not.

14     Q.     Where were you using the 2015 Kenmore the last you

15  recall seeing it?  What was it being used --

16     A.     That truck has been parked at my shop because it

17  was broken.  The DEF system was broken, and then there was

18  another -- one of the trucks that are in your group of trucks

19  where you said that it was dismantled -- there was a guy that I

20  hired off Craigslist, off a job posting, and he said he was

21  going to help me fix it.  He said the block was broken.  And

22  then I had a block at my shop that I had paid for in Utah to

23  have re-machined and fixed, and so I had that gentlemen in the

24  process of replacing that block.

25            And then he was having a heck of time of it, and I said,

1    you know, just pull the truck outside.  I can't deal with you

2    anymore, sir.  You took the thing apart.  You don't even know

3    what you're doing.  You're just wasting my time and effort.

4    I'm trying to keep my business going, but you come here saying

5    you're a mechanic, and you can't mechanic.  And I believe --

6        Q.    So this was the 2015 truck that got pulled outside?

7        A.    I believe so.  It was a 2015 or a 2014.  I mean,

8    I'm under a lot --

9        Q.    What was the gentleman's name?

10       A.    I believe his name was Lloyd.

11       Q.    Lloyd what?

12       A.    I don't have his last name.  I could look and see.

13   I could provide that information to you, ma'am.

14       Q.    How would you look and see?

15       A.    I would look through any of my records, any text

16   messages, any phone calls, any emails.  I would try to figure

17   it out.  I mean, I'm not trying to be misleading.

18       Q.    What type of phone do you use?

19       A.    "What type of phone"?

20       Q.    Who's your provider?  Is it AT&T or Verizon?

21       A.    I have a prepaid phone.  I have a --

22       Q.    So you don't --

23       A.    -- I have a prepaid phone with, like, a -- it's a

24   track phone.

25       Q.    So how many --

1        A.        I have bad credit.  I'm sorry.

2        Q.        -- did you question any of your other employees as

3   to what happened to this truck?

4        A.        No.  I haven't questioned anybody, ma'am.  I've

5   been questioning myself as to why I'm continuing down the path

6   of trying to run and function my business.  I've been trying to

7   figure out how to make enough money to satisfy your bank, where

8   I've reached out to you and tried to negotiate with you, and we

9   keep going down this path where I'm a dubious person.  I'm not.

10  I'm trying to be --

11       Q.        What are you running the business with?  What

12  collateral?  What truck are you --

13       A.        On the grounds of fifth degree, I refuse to answer

14  that.  That's a free and clear piece of equipment.  I mean,

15  it's a piece of equipment.  It's Unit S-211.  It's free and

16  clear.

17       Q.        You're only -- so are you only using one piece of

18  equipment in the business?

19       A.        Yes.  It's free and clear.  Yes, ma'am.  It's hard

20  to find employees.

21       Q.        What --

22       A.        What's up?

23       Q.        -- what piece of equipment is this that you're

24  talking about?

25       A.        It's a 367 Peterbilt, ma'am.  It's free and clear.

1      Q.      And your employees are not using any other

2   equipment to help you in the business?

3      A.      Right now I don't have any employees.  I've hired

4   people, and they've heard about my financial trouble, and

5   they've been walking away as soon as I interview them.  I take

6   them out on a job.  I say, hey, I'd like to go to work, and

7   they turn me down.  They say that they are not wanting to work

8   with somebody that's going down a spiral tube.  And I'm trying

9   to get myself out of that by working and facilitating the cash

10  flow that is needed to satisfy the loans.

11          I think I was able to negotiate with you the option

12  that in, like, say, 30 days, I could save up, say, $15,000, and

13  put that as a down payment.  And then I could, each month going

14  forward, pay to reduce the loan -- debilitating loan.  Right

15  now I'm, like, one step away from bankruptcy.  On the record,

16  I'd like to say that I'm one step away from bankruptcy, and

17  this is not helping.  I'm trying very desperately to save my

18  business with one piece of equipment that's free and clear, and

19  I'm trying to do that.

20      And I don't know where the truck's at.  If I did, I would

21  give it to you.  It's debilitating to think that you're -- I'm

22  going to be indebted for something that I didn't have anything

23  to be a part of or do.

24      Q.      Mr. Fettig, where's the other 20 pieces of

25  equipment that are missing?  Are they with the truck?

1      A.      Can I ask you a question, ma'am?  What does that

2  pertain to in this case?

3      Q.      No.  I would like you to answer my question.

4      A.      Well, on the grounds of fifth degree whatever --

5  because I've literally told you that all my equipment was at my

6  yard, and it left.  It left.  It's not at my yard anymore.  I

7  don't know where it's at.  I didn't call the sheriffs because

8  the sheriffs have arrested me and accused me of things that I

9  have not done.  They've asked me where the equipment's at.  I

10  told them I don't know.

11      Matthew Keesler entered my property illegally.  I have a

12  sign posted -- a sign posted.  And I didn't file the affidavit

13  because I don't know the law, but I actually told that --

14  Matthew Keesler -- that he's not legally allowed to be on my

15  property without a warrant, and his words exactly -- in the

16  interrogation room downstairs -- said, you are right.  That if

17  you had a lawyer worth his weight in gold, you could get that

18  thrown out, but I want to know where this shit's at.

19      I said I don't know.

20      He said -- I'm apologetic, he said, to me.  He said that

21  he understood that it seems that I am financially strapped and

22  trying and struggling to save my business, but he said I want

23  to know.

24      I said I don't know, sir.  There's a recorded tape room --

25  there's, like, a room downstairs.  It's an interrogation room.

1    And that lawyer -- not lawyer -- that Matthew Keesler, the

2    sheriff, told me that I had every right to say what I said to

3    him there.  That he was not allowed to be on my property the

4    day that he said he was on my property.  The whole way he made

5    this whole affidavit, saying something stripped down, when it

6    wasn't stripped down -- and so he wasn't allowed to be on my

7    property that day.  So that information can get stricken from

8    the record, or something, because that's not fair.  It's not

9    fair to be prejudicial to someone that's trying to save their

10    business and is not being dubious.

11        And I would ask on the record why is it that we keep

12    talking about another case that doesn't pertain to this case?

13    And why is it, on the record, that you're not willing to

14    negotiate with me?  I'm willing to negotiate with you.  I have

15    two --

16            THE COURT:  Mr. Fettig.  Mr. Fettig.

17            MR. FETTIG:  Sorry.  Sorry.

18            THE COURT:  Answer the questions.  We're not going to

19    argue.

20            Ms. Stanley, you may resume.

21    **By Ms. Stanley:**

22        Q.    Mr. Fettig, what happened to the other 20 pieces of

23    equipment?

24        A.    Like I had stated --

25        Q.    Are they with this 2015 Kenworth?

1       A.      I don't know, ma'am.

2       Q.      Well, how do you not know if this is your business

3   that you're trying to run and get out of debt?

4       A.      Because I do not know.  On the record of the law --

5       Q.      Who would know?

6       A.      I don't know, ma'am.  That's not for me to decide.

7   Like he said, I need to contact anybody that I have creditors

8   with, which is going to be Gate City Bank, Midland States Bank,

9   another bank -- you know what I'm saying? -- the bankers, the

10  predatory loan people down in Miami --

11      Q.      Are you trying to say that the banks, which I --

12  two of which I represent, have repossessed this equipment?

13      A.      I'm saying that a creditor could have repossessed

14  it, just like the judge said in that courtroom when we were on

15  the teleconference.  He said that this could be a creditor

16  thing or whatever.  That's what the judge said.

17      Q.      Mr. Fettig, can you tell me, please, what jobs you

18  are working on that use this type of equipment right now.

19      A.      No.  I respectfully do the Fifth Amendment thing

20  because that's unfair.  Because all you're going to do is muddy

21  the waters with my customers, and then I'm not going to be able

22  to work; so, no, I'm not willing to --

23          THE COURT:  Mr. Fettig, I'm going to order that you

24  answer that question.  That is not a criminal -- that has no

25  criminal aspect to it.  So you answer the question.

1          MR. FETTIG:  I've worked for Beaver Creek.  It's a

2    subcontractor.  And I've worked for -- and they work in the oil

3    field.

4    **By Ms. Stanley:**

5          Q.    Anyone else?

6          A.    No, ma'am.

7          Q.    Are you leasing equipment for Beaver Creek?  Or

8    what do you do for Beaver Creek?

9          A.    I haul water.

10         Q.    And you haul water with the one piece of equipment?

11   You said -- what did you say you had, the one piece of

12   equipment?

13         A.    Yes, ma'am.

14         Q.    I'm sorry.  I didn't hear that.

15         A.    I said, "Yes, ma'am."  Sorry.  Yes, ma'am.  I speak

16   into this microphone.

17         Q.    What was the one piece of equipment that you said

18   that you had?

19         A.    It's a Peterbilt 367.  It's free and clear,

20   encumbered by no loans.

21         Q.    What do you haul the water in?

22         A.    What did you say, ma'am?

23         Q.    What do you haul the water in when you haul for

24   Beaver Creek?

25         A.    I haul the water.  I signed up with them recently,

1  ma'am.  I've been trying to work desperately.  If I had been

2  working for them fully, full-time, you know, I'd actually be

3  able to get myself out of the hole.  I've been dealing with a

4  lot of stress with all this.  So I'd be hauling water for them.

5  I'm going to be hauling water for them.

6      Q.    And are you -- you're testifying, under oath, you

7  have no other employees?  It's just you?

8      A.    Yes.  I currently have myself and my mom.  My mom

9  helps me with my books.  But --

10     Q.    Does your mother know where this equipment is?

11     A.    No.  Why would my mom know where my equipment is?

12 I mean --

13     Q.    Well, you said she does the books.  So --

14     A.    I've been struggling, ma'am.  I couldn't come up

15 with but $2,000 for bail.  I mean, that was my family and

16 friends that came up with that.  I'm struggling financially,

17 very much so.  And I think after this court hearing, I'll just

18 file for Chapter 11 because it seems better, under oath.

19     Q.    That is certainly your right.

20     A.    Yeah.  I think I should have some rights here

21 because I've tried to reach out to you and said I have two

22 homes.  I'm trying to work something out.  I'm trying to work

23 with another credit consolidation company that would come in

24 and issue new debt, but it seems to me that there's no

25 conversation.  There's no conversation.

1        In America right now, everybody's hurting.  It's ten cents

2   on the dollar for all the equipment, even this missing

3   equipment, in the auction houses.  And I'm trying to say that,

4   yes, I'll agree to whatever I owe you guys.  We'll pick a fair

5   number.  I have a mitigator.  He lives in Boca Rotan, Florida.

6   He's done this for a living.  He owned a 300-million-dollar

7   coal mine before.  He's a licensed negotiator, and he works

8   with a law firm out of Florida, and I'd like to do that.  I'd

9   like to work a settlement where it's fair to you folks, and I

10  pay the debts, and I move on, and I don't have to be told that

11  I'm a bad person or a wrong person.  I'm just trying to work.

12  And I've been looking for work, desperately, and it's hard.

13        MS. STANLEY:  Your Honor, I guess I would request

14  that the Court continue to hold him in contempt until he can

15  provide the name of the Lloyd person, who he previously said

16  was Craig --

17        MR. FETTIG:  I didn't say it was Craig.  I never said

18  it was Craig.  You said Craigslist.

19        MS. STANLEY:  -- and also the information from the

20  repossession company that he said he had.

21        MR. FETTIG:  It's Midland States Bank, ma'am.  I've

22  called that guy.  You have his contact information.  He's the

23  one that said he talked to you.  I'm sorry.  That's the bank

24  repossession person that I've been in communication with.

25        And I believe his last name is Fisher, last name

1   Fisher.  I'm trying to recollect a lot of things in my mind

2   right now because I'm not trying to be held in contempt.  I'm

3   trying to, you know, tell you everything that I can tell you

4   because I'm not trying to be dubious.

5        And I'm telling you on the record I'd like to

6   negotiate with you.  I have two houses, and I'd like to figure

7   out something with a debt consolidation company so that you

8   guys are made whole.

9        THE COURT:  We understand that, Mr. Fettig.

10       MR. FETTIG:  Sorry.

11       THE COURT:  Please just answer the questions.

12       MR. FETTIG:  Sorry.  Lloyd Fisher.  I hired him off

13  of Craigslist.  That's where the Craig name came into play.

14       THE COURT:  So, Ms. Stanley, you had those two

15  requirements.  Are there any others?

16       MS. STANLEY:  I think I would like to request that he

17  file an affidavit because there obviously would be some sort of

18  insurance coverage.  If this piece of equipment had gone

19  missing, then that may -- allegedly missing, along with the

20  other 20 pieces -- that would be a way for us to attempt to

21  recover it.

22       MR. FETTIG:  Can I make a comment about your question

23  there -- or your question -- try to help you?  Gate City Bank,

24  your client, had me in force-placed insurance, just so you

25  know.  So you would have --

1            MS. STANLEY:  So did -- Midland States Bank had

2    insurance, I believe.

3            MR. FETTIG:  They did as well.  Midland -- yep.

4    Sorry.  But, yep, they had forced-placed insurance; so that

5    would be who you'd seek out to.

6            MS. STANLEY:  So I think I need him to file some sort

7    of a police report, under oath, that he believes this equipment

8    has gotten lost, missing.

9            MR. FETTIG:  Can I --

10           THE COURT:  So just to make sure then, Ms. Stanley,

11   any other requirements?

12           MR. FETTIG:  Can I --

13           THE COURT:  In a second, sir.

14           MR. FETTIG:  Thank you, sir.  I just want to make

15   sure I have a chance.

16           MS. STANLEY:  No, Your Honor.

17           THE COURT:  Okay.  You had a question?

18           MR. FETTIG:  Yeah, I have a question.  I'm being very

19   truthful and trying to be helpful here, and I'm under the oath

20   and all that.  Why is it that it's very slanted this direction

21   when I've literally open-court said I've tried to reach out to

22   her through --

23           THE COURT:  Here's the situation, Mr. Fettig --

24           MR. FETTIG:  Yeah.

25           THE COURT:  -- and I understand you're not an

1  attorney.  You don't have much experience with the legal field.

2  There's a judgment in favor of Midland States Bank.  Because of

3  that judgment, they're basically in the driver's seat on this.

4  They can say we want to get paid, and if we don't get paid, we

5  have these legal remedies.  We can attach property.  We can

6  demand return of secured property.  They could garnish wages.

7  They could do all of these things.  That's by law.  The

8  creditor basically, like I said, is in the driver seat.

9         The debtor tends to sit back, and they do have

10 rights, but they have fewer rights because there is a judgment

11 out there that says you owe this money.

12        Here's what I'm going to do, and don't panic because

13 I'll explain it.  I'm going to hold you in contempt of court,

14 but I'm going to allow you to purge that contempt of court by

15 doing the following things.  First of all, you need to provide

16 to Midland States Bank, through their attorney --

17        MR. FETTIG:  This lady right here?

18        THE COURT:  -- I believe that's the only attorney

19 that's representing them.

20        MR. FETTIG:  Yep.

21        THE COURT:  So you need to let Ms. Stanley know the

22 full name of this person you hired off Craigslist.

23        MR. FETTIG:  Lloyd Fisher.

24        THE COURT:  Well, you verify that.  You make sure.

25        MR. FETTIG:  Yeah.  I did --

1            THE COURT:  You provide whatever certain information

2    you can have.  So if you have a copy of an email, if you've got

3    a written contract with him or where he responded -- we want to

4    have something verified.  Because how do you spell Fisher?  We

5    want to know those things.

6            Secondly, you provide a written document that gives

7    -- to Ms. Stanley all of the information about this

8    repossession company, whatever information you have.  Who you

9    talked to.  What company did you call?

10           Yes?

11           MR. FETTIG:  Sorry.  I'm not trying to be rude.  The

12   repo person is the same person that's been in touch with this

13   lady.  I don't --

14           THE COURT:  But you find out, and you -- even if it

15   -- you give them whatever information you have.  If you have a

16   phone number -- how did you talk to the guy?

17           MR. FETTIG:  How am I going to do that if I'm in

18   contempt of court?  Contempt of court means I go to jail;

19   right?  I'm sorry.

20           THE COURT:  Potentially.

21           MR. FETTIG:  Oh, I'm sorry.  I'm going to get all

22   this information --

23           THE COURT:  Yeah, right.

24           MR. FETTIG:  -- sorry, but I got to be able to try to

25   defend this.

1              THE COURT:  Right.  And you provide an affidavit --

2              MR. FETTIG:  I'm going to write -- sorry.  I have ADD

3    -- I'm going to write that down.

4              THE COURT:  Okay.

5              MR. FETTIG:  The first employee --

6              THE COURT:  Yep.  The second one -- well, there will

7    be an order coming that will tell you what you have to do.

8              MR. FETTIG:  -- I'm writing "repo" down.

9              THE COURT:  Okay.  An affidavit that explains

10   everything that you know about the disappearance -- I'm going

11   to say of only the 2015 Kenworth because I don't have

12   jurisdiction over the other case; however, I would anticipate,

13   Mr. Fettig, that you've got another hearing this morning it

14   sounds like.

15             MR. FETTIG:  At 10:00 on the third floor.

16             THE COURT:  Yeah.  That you may want to combine all

17   of that other information in that affidavit as well.  You don't

18   have to file two separate affidavits.  If you can put it in

19   one, that's your choice.  If you want to do an affidavit on the

20   Kenworth -- I'm anticipating there might be that request in the

21   other matter as well.

22             MR. FETTIG:  Okay.

23             THE COURT:  If there is, if you want to do just one

24   affidavit and file it in both cases, I don't have a problem

25   with that, but you do have to file an affidavit, stating, to

1   the best of your knowledge, what happened to this Kenworth,

2   when it disappeared to the -- as close as you can determine --

3   and any circumstances around that Kenworth, just like you would

4   if you were filing a report with law enforcement with the

5   suspicion that it may have been stolen.

6          MR. FETTIG:  Okay.  That's what the affidavit is?

7          THE COURT:  Yes.

8          So, Ms. Stanley, anything else that I need to put in

9   that?

10         MS. STANLEY:  Your Honor, there's a $2,000 bond that

11  was posted.

12         THE COURT:  Yes.

13         MS. STANLEY:  I would request for release of that for

14  the benefit of paying off my client.

15         MR. FETTIG:  This isn't resolved yet, though.

16         THE COURT:  Pardon?

17         MR. FETTIG:  Sorry.  I don't know if I can object.

18  Is that something I can do?

19         THE COURT:  Well, I was just going to ask you.  What

20  do you think about that?

21         MR. FETTIG:  I think that's ludicrous.  I'm trying to

22  negotiate with these people.  If I can figure -- if I can give

23  you this information -- if this information provides results,

24  then I can get my money back.  When this case is done, you send

25  me a check.  I think that's how it works; the bond gets

1   released.

2          THE COURT:  Well, the bond was posted because you

3   didn't show up, and there may have been a legitimate reason,

4   but we didn't know that; so then we issued a bench warrant.

5   The bond is posted.

6          MR. FETTIG:  I was in Dunn County the same day of

7   that court date.

8          THE COURT:  And I understand that.  I am going to

9   order that the $2,000 be forfeited to Midland States Bank on

10  your account.

11         MR. FETTIG:  Oh, to pay it down?  Okay.

12         THE COURT:  Yes.  If there's -- I think, then, Ms.

13  Stanley, can you prepare an appropriate order?

14         MS. STANLEY:  Yes, Your Honor.

15         THE COURT:  Okay.  As soon as I get that order and

16  get it signed, it will be delivered to you.

17         Can you get this done within 30 days?

18         MR. FETTIG:  Yes.

19         THE COURT:  Okay.  Put that in there, please, Ms.

20  Stanley, because if he doesn't do it within 30 days, then you

21  will have to -- we will deal with what do we do because you

22  will be -- you will not have purged the contempt of court, and

23  we will be installing sanctions.

24         If, for some reason, you run into an issue -- and,

25  believe me, I know what that's like because last week I had all

1   sorts of plans and wound up spending the whole week dealing

2   with a tooth.

3          MR. FETTIG:  And I --

4          THE COURT:  So hopefully by then you have an

5   attorney, but if you don't, you need to contact Ms. Stanley;

6   you need to contact the Court, through the clerk of courts

7   office, and tell us what your issue is, what's preventing you

8   from getting that done in 30 days; but I think 30 days is more

9   than adequate time to provide what you can.

10         MR. FETTIG:  That's fair.

11         THE COURT:  Ms. Stanley, anything further?

12         MS. STANLEY:  Nothing.  Thank you for your time, Your

13   Honor.

14         THE COURT:  You're welcome.  We are adjourned.

15         MR. FETTIG:  Question -- I'm not trying to be -- that

16   stuff that you said, I wrote it all down, but you said I'll be

17   provided that?

18         THE COURT:  It will come in an order.

19         MR. FETTIG:  Okay.

20         THE COURT:  So we are adjourned.

21     (The Court was adjourned at 9:40 A.M.)

22

23

24

**CERTIFICATE OF COURT RECORDER**

I, Tyler Culver, a duly certified digital electronic court reporter and transcriber,

DO CERTIFY that I recorded the foregoing proceedings had and made of record at the time and place indicated.

DO FUTHER CERTIFY that the foregoing and attached typewritten pages numbered 1 through 33 contain a true, accurate, and complete transcript from the electronic sound recording then and there taken.

Dated at Dickinson, North Dakota, this 24th day of May, 2024.

_____

Tyler Culver, ND-CR/T

THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT DOES NOT APPLY TO THE REPRODUCTION OF THE SAME BY ANY MEANS, UNLESS UNDER THE DIRECT CONTROL AND/OR DIRECTION OF THE CERTIFYING COURT RECORDER.

STATE OF NORTH DAKOTA

COUNTY OF STARK

**EXHIBIT**

**5**

IN DISTRICT COURT

SOUTHWEST JUDICIAL DISTRICT

I, Andrea Mayer, Deputy Clerk of the District Court in and for the County of Stark and State of North Dakota, which is a court of record having a seal, do hereby certify that I have compared the attached copy of the Order for Prejudgment Seizure, Stark County Case #45-2023-CV-00689 with the original Order for Prejudgment Seizure document, which is now on file and of record in said District Court and that the said copy is a full, true and correct copy of said original on file.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of said District Court in and for said County of Stark this 22nd day of May, 2024.

_____
Deputy Clerk of District Court

STATE OF NORTH DAKOTA )
                                              ss
COUNTY OF STARK              )

I, William A. Herauf, Judge of the District Court within and for said County of Stark do hereby certify that said Court is a Court of Record, and that Andrea Mayer, is a Deputy Clerk of the District Court; that said certificate is attested in due form of law; that the signature of said Deputy Clerk is genuine, and that the seal thereto affixed is the seal of said District Court.

Witness my hand at Dickinson, North Dakota, this 22nd day of May, 2024.

_____
Judge of the District Court

STATE OF NORTH DAKOTA )
                                              ss
COUNTY OF STARK              )

I, Andrea Mayer, Deputy Clerk of the District Court within and for the County of Stark, do hereby certify that the Honorable William A. Herauf, is a Judge of the District Court within and for the County of Stark, duly elected, sworn and qualified, and that the signature of said Judge to said certificate is genuine.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of said Court this 22nd day of May, 2024.

_____
Deputy Clerk of District Court

STATE OF NORTH DAKOTA

COUNTY OF STARK

IN DISTRICT COURT

SOUTHWEST JUDICIAL DISTRICT

| | |
|---|---|
| Gate City Bank,<br><br>                    Plaintiff,<br><br>         v.<br><br>Stark Energy, Inc., Robert Fettig, and Matthew Barrett,<br><br>                    Defendants. | Case No. 45-2023-CV-689<br><br><br>**ORDER FOR PREJUDGMENT SEIZURE** |

[¶1]    Plaintiff Gate City Bank's Motion for Prejudgment Seizure of Collateral came before this Court for hearing on October 11, 2023 at 2:30 p.m. MT pursuant to an order to show cause that was heard via reliable electronic means. Appearing for Plaintiff Gate City Bank ("Plaintiff") was Caren Stanley of the Vogel Law Firm. Appearing for Defendant Matthew Barrett ("Barrett") was Jennifer M. Gooss of the Solem Law Office. Other appearances were made as identified on the record. Based on all the files and pleadings herein, and the arguments of the parties, the Court makes the following:

**FINDINGS**

[¶2]    The Defendant Stark Energy, Inc. (the "Company") is obligated to Plaintiff pursuant to the terms of the following instruments:

   a.    Loan 798942 - Promissory Note dated February 19, 2018 in the original principal sum of $40,000.00 ("Note 1"). Interest accrues on the unpaid balance of Note 1 at the rate of 5.0% per annum. Note 1 required monthly payments of $646.47 commencing on April 1, 2018 and continuing thereafter for 72 months on the 1st day of each month until March 1, 2024 when all outstanding principal plus all accrued unpaid interest was due and owing. *See* Feil Aff., **Exhibit A-1**.

b.   Loan 1275221 – Promissory Note dated November 16, 2018 in the original principal sum of $37,439.30 ("Note 2"). Interest accrues on the unpaid balance of Note 2 at the rate of 5.490% per annum. Note 2 required monthly payments of $869.77 commencing on December 1, 2018 and continuing thereafter for 48 months on the 1st day of each month until November 1, 2022 when all outstanding principal plus all accrued unpaid interest was due and owing. *See* Feil Aff., **Exhibit A-2**.

c.   Loan 1286855 – Promissory Note dated November 26, 2018 in the original principal sum of $135,000.00 ("Note 3"). Interest accrues on the unpaid balance of Note 3 at the initial rate of 6.500% per annum. Note 3 required monthly payments of $1,812.94 commencing on December 26, 2018 and continuing thereafter for 96 months on the 26th day of each month until November 26, 2026 when all outstanding principal plus all accrued unpaid interest was due and owing. *See* Feil Aff., **Exhibit A-3**.

d.   Loan 1333145 – Promissory Note dated December 31, 2018 in the original principal sum of $76,639.30 ("Note 4"). Interest accrues on the unpaid balance of Note 4 at the rate of 3.690% per annum. Note 4 required monthly payments of $1,063.75 commencing on February 1, 2019 and continuing thereafter for 48 months on the 1st day of each month until January 1, 2023 when all outstanding principal plus all accrued unpaid interest was due and owing. *See* Feil Aff., **Exhibit A-4**.

e.   Loan 1961820 – Promissory Note dated December 27, 2019 in the original principal sum of $150,144.65 ("Note 5"). Interest accrues on the unpaid balance of Note 5 at the rate of 5.170% per annum. Note 5 required monthly payments of $2,436.41 commencing on February 1, 2020 and continuing thereafter for 72 months on the 1st day of each month until January 1, 2026 when all outstanding principal plus all accrued unpaid interest was due and owing. *See* Feil Aff., **Exhibit A-5**.

f.   Loan 1993856 – Promissory Note dated January 16, 2020 in the original principal sum of $74,729.97 ("Note 6"). Interest accrues on the unpaid balance of Note 6 at the rate of 4.690% per annum. Note 6 required monthly payments of $1,404.54 commencing on March 1, 2020 and continuing thereafter for 60 months on the 1st day of each month until February 1, 2026 when all outstanding principal plus all accrued unpaid interest was due and owing. *See* Feil Aff., **Exhibit A-6**.

g.   Loan 2116648 – Promissory Note dated March 4, 2020 in the original principal sum of $100,000.00 ("Note 7"). Interest accrues on the unpaid balance of Note 7 at the rate of 5.000% per annum. Note 7 required monthly payments of $1,889.79 commencing on April 1, 2020 and continuing thereafter for 60 months on the 1st day of each month until

2

March 1, 2025 when all outstanding principal plus all accrued unpaid interest was due and owing. *See* Feil Aff., **Exhibit A-7**.

h.    Loan 2257715 – Promissory Note dated May 14, 2020 in the original principal sum of $152,000.00 ("Note 8"). Interest accrues on the unpaid balance of Note 8 at the rate of 5.000% per annum. Note 8 required monthly payments of $2,880.54 commencing on July 1, 2020 and continuing thereafter for 60 months on the 1st day of each month until June 1, 2025 when all outstanding principal plus all accrued unpaid interest was due and owing. *See* Feil Aff., **Exhibit A-8**.

i.    Loan 2865202 – Promissory Note dated March 26, 2021 in the original principal sum of $19,379.95 ("Note 9"). Interest accrues on the unpaid balance of Note 9 at the rate of 4.000% per annum. Note 9 required monthly payments of $438.52 commencing on May 4, 2021 and continuing thereafter for 49 months on the 4th day of each month until April 4, 2025 when all outstanding principal plus all accrued unpaid interest was due and owing. *See* Feil Aff., **Exhibit A-9**.

(Note 1, Note 2, Note 3, Note 4, Note 5, Note 6, Note 7, Note 8, and Note 9 are hereinafter collectively the "Notes").

[¶3]    Defendants Robert Fettig ("Fettig") executed all of the Notes as authorized signer for the Company. *See* Feil Aff., **Exhibits A-1 to A-9**. Barrett was an additional authorized signer on behalf of the Company for Notes 1, 2, 3, and 4. *See* Feil Aff., **Exhibits A-1 to A-4**.

[¶4]    To secure the debt due on the Notes, the Company granted to Plaintiff security interests in certain titled vehicles pursuant to Commercial Security Agreement(s) corresponding to the same date as the Notes (collectively, the "Security Agreements"). *See* Feil Aff., **Exhibits B-1 through B-9**.

[¶5]    The Company's titled vehicles subject to Plaintiff's security interests are identified in the table below (hereinafter the "Titled Vehicle Collateral"):

| Note # | Collateral | VIN# |
|--------|-----------|------|
| Note 1 | 2013 Dragon ESP LTD 200 BBL | 1UNST5343DS128172 |

3

| Note 2 | 2007 Kenworth | 1XKDP40X07R197151 |
|---|---|---|
| Note 3 | 2013 Dragon 200 BBL Alum. Tank Trlr<br>2013 Dragon 200 BBL Alum. Tank Trlr<br>2014 Dragon 200 BBL Alum. Tank Trlr | 1UNST5341DS128154<br>1UNST5340DS128162<br>1UNST5340ES128552 |
| Note 4 | 2012 Kenworth | 1XKWP4TX8CJ335970 |
| Note 5 | 2014 Kenworth W900<br>2013 Dragon 220 BBL Tank Trlr<br>2007 Reitnauer Trailer | 1XKWD49X1EJ413380<br>1UNST5348DS128118<br>1RNF48A247R019280 |
| Note 6 | 2014 Kenworth | 1NKDX4TX3EJ403810 |
| Note 7 | 2013 Dragon 200 BBL AL Semi-Trailer<br>2014 Dragon 200 BBL AL Semi-Trailer | 1UNST5340DS128291<br>1UNST5346ES140026 |
| Note 8 | 2016 Sidump'r Dump Trailer<br>2016 Sidump'r Dump Trailer<br>2013 Dakota MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>1999 Midland MFG Dump Trailer | 1D9FS4437GC688018<br>1D9FS4430GC688099<br>1D9SH4339DY554348<br>2MFB2S3D5YR000651<br>2MFB2S4D3YR001148<br>2MFB2S3D3YR000650<br>2MFB2S3D7YR000652<br>2MFB2S4D4XR000542 |
| Note 9 | 2012 Dragon 150 BBL AL Trailer | 1UNST4223CL109253 |

[¶6]    Plaintiff perfected its security interest in the Titled Vehicle Collateral by having its lien

noted on the certificate of title or by holding possession of the original certificate of title. *See*

Feil Aff., **Exhibit D**.

[¶7]    Fettig personally guaranteed to Plaintiff the payment and performance of the Company

on all of the Notes pursuant to Commercial Guaranty(s) contemporaneously executed at the

same day as the Notes (collectively the "Fettig Guarantees"). *See* Feil Aff., **Exhibits E-1**

**through E-9**.

4

[¶8]    Barrett personally guaranteed to Plaintiff the payment and performance of the Company on Notes 1, 2, 3, and 4 pursuant to Commercial Guaranty(s) contemporaneously executed on the same day as Notes 1, 2, 3, and 4 (collectively the "Barrett Guarantees"). *See* Feil Aff., **Exhibits F-1 through F-4**.

[¶9]    Defendants Stark Energy, Inc., Robert Fettig, and Matthew Barrett (collectively, the "Defendants') have defaulted on the Notes and the Fettig Guarantees and Barrett Guarantees by failing to pay all sums due and owing under Note 2 and Note 4 by the maturity dates and also by failing to make regular monthly payments on Notes 1, 3, and 5-9. All of the Notes have cross-default provisions. *See* Feil Aff., ¶ 8.

[¶10]   As a consequence of the defaults of the Defendants, Plaintiff accelerated the balance due and owing on the Notes and declared the same to be immediately payable. *See* Feil Aff., ¶ 9.

[¶11]   As of August 24, 2023, the indebtedness owing by the Company to the Plaintiff on the Notes is as follows:

| Note # | Origination Date | Guarantor(s) | Original Principal Amount | Total Balance Owed as of 8/17/23 | Per Diem from and after 8/17/23 |
|---|---|---|---|---|---|
| Note 1 | 2/19/2018 | Fettig Barrett | $40,000.00 | 12,744.24 | $1.52 |
| Note 2 | 11/16/2018 | Fettig Barrett | $37,439.30 | $1,099.89 | $0.12 |
| Note 3 | 11/26/2018 | Fettig Barrett | $135,000.00 | $91,490.11 | $14.62 |
| Note 4 | 12/31/2018 | Fettig Barrett | $76,639.30 | $6,644.45 | $0.53 |
| | | | **Total:** | **$111,978.69** | |
| | | | | | |

5

| Note 5 | 12/27/2019 | Fettig | $150,144.65 | $102,633.89 | $12.95 |
| Note 6 | 1/16/2020 | Fettig | $74,729.97 | $44,014.73 | $5.00 |
| Note 7 | 3/4/2020 | Fettig | $100,000.00 | $60,762.63 | $7.38 |
| Note 8 | 5/14/2020 | Fettig | $152,000.00 | $89,743.83 | $10.94 |
| Note 9 | 3/26/2021 | Fettig | $19,379.95 | $12,442.06 | $1.20 |
|  |  |  | **Total:** | **$309,597.14** |  |
|  |  |  |  |  |  |
|  |  |  | **Grand Total:** | **$421,575.83** |  |

*See* Feil Aff., ¶ 10.

[¶12]   Despite repeated demands, the Defendants have wholly refused and failed to discharge their obligations to the Plaintiff. *See* Feil Aff., ¶ 11.

[¶13]   The Defendants' detention of the Titled Vehicle Collateral as against the Plaintiff's demands is wrongful and the Plaintiff is entitled to immediate possession of the Titled Vehicle Collateral. The Plaintiff's interest in the Titled Vehicle Collateral and its right to possession is superior to Defendants or any person claiming through Defendants.

[¶14]   THEREFORE, for good cause shown, it is the Order of this Court as follows:

A.   The Defendants shall immediately deliver to Plaintiff the Titled Vehicle Collateral in which Plaintiff holds a security interest at a place located in Stark County as designated by Plaintiff.

B.   If the Defendants fail to deliver the Titled Vehicle Collateral to Plaintiff, Plaintiff, with such assistance from the Stark County Sheriff or other law enforcement personnel as have jurisdiction may seize the Titled Vehicle Collateral. In recovering the Titled Vehicle Collateral, Plaintiff, the Sheriff of Stark County, or other such law enforcement personnel as have jurisdiction, are permitted to enter upon the real property of Defendants, and any third parties, and force access to any structures situated thereupon in which the Titled Vehicle Collateral are located.

6

C.     After recovery of the Titled Vehicle Collateral, Plaintiff may dispose of the same by commercially reasonable means, with the proceeds to be applied first to the costs and expenses of recovery and sale, and then to the indebtedness due by the Company to Plaintiff on the Notes.

D.     The State of North Dakota is authorized to issue new titles, as necessary, for the Titled Vehicle Collateral in the name of Plaintiff or in the name of the individual or entity to which the Vehicles are sold by Plaintiff.

E.     In that the Defendants did not make a colorable argument to contest Plaintiff's Motion for Prejudgment Seizure of Collateral, this Court does not believe that any good faith basis for litigation exists with respect to Plaintiff's right to recover and dispose of the Titled Vehicle Collateral. As a consequence, Plaintiff shall not be required to post a bond as a condition precedent to recovery and/or disposition of the Titled Vehicle Collateral.

[¶15]  IT IS SO ORDERED:

10/11/2023 2:49:40 PM

BY THE COURT

_____
Judge of District Court

5223314.1

7



STATE OF NORTH DAKOTA, COUNTY OF STARK

IN DISTRICT COURT, SOUTHWEST JUDICIAL DISTRICT

| | | |
|---|---|---|
| Gate City Bank, | ) | |
| | ) | **ORDER TO SHOW CAUSE** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **Case No. 45-2023-CV-689** |
| Stark Energy, Inc., | ) | |
| Robert G. Fettig, and | ) | |
| Matthew Barrett, | ) | |
| | ) | |
| Defendants. | ) | |

### TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE DANN GREENWOOD, DISTRICT JUDGE
Stark County Courthouse
Dickinson, North Dakota
November 14, 2023

A P P E A R A N C E S

FOR PLAINTIFF:
    Caren Stanley
    Attorney at Law
    P.O. Box 1389
    Fargo, ND 58107-1389

FOR DEFENDANT ROBERT FETTIG:
    Robert Fettig
    P.O. Box 748
    Dickinson, ND 58602

RECORDED BY:
Kimberley L. Schwartz
TRANSCRIBED BY:
Kay Erickson, CER CET
Electronic Court Recorder
31 Third Street East
Dickinson, ND 58601

**WITNESS INDEX**

|  | Page |
|---|---|
| **FOR PLAINTIFF:** |  |
| Robert Fettig |  |
|   Direct Examination by Ms. Stanley | 4 |

1          (The before-entitled matter came on for hearing before the

2     Court, the Honorable Dann Greenwood, district judge, presiding,

3     commencing at 10:00 a.m. on November 14, 2023, in the Stark

4     County Courthouse in Dickinson, North Dakota. Present were

5     Caren Stanley of Fargo, North Dakota, representing the

6     plaintiff, Gate City Bank; and Robert Fettig of Dickinson,

7     North Dakota, appearing pro se.)

8          THE COURT:  All right.  We're going to take up a

9     matter entitled Gate City Bank versus Stark Energy, Inc., et

10    al; Stark County Case 2023-CV-689.  The Plaintiff is

11    represented by Caren Stanley, who appears by Zoom.  The

12    defendants are Stark Energy and individuals Matthew Barrett,

13    Robert Fettig.  Representing one of those parties, I assume,

14    Mr. Barrett is Jennifer Gooss, and I'll just mention to counsel

15    and/or the gentleman here that Ms. Gooss was here for an

16    earlier hearing, and she indicated that she didn't believe that

17    it was necessary for her to be present because her client

18    wasn't going to take a position, so she's not present.

19         Ms. Stanley, I'll let you go ahead and clarify what

20    is the reason we're here today?

21         MS. STANLEY:  Your Honor, we're here today because

22    there's an order requiring Stark Energy and Mr. Fettig to turn

23    over collateral that -- I believe it's 21 different pieces of

24    collateral, and they have not been turned over.

25         THE COURT:  All right.  Thank you.  Before I go any

1   further, are you Mr. Fettig?

2        MR. FETTIG:  Yes, sir.

3        THE COURT:  All right.  So Mr. Fettig is here in

4   person.

5        And how did you wish to proceed, Ms. Stanley?  And I

6   have to apologize, I looked at this file quite some time ago,

7   but not again this morning because, I guess, some of the

8   previous hearings took longer than I anticipated, but are you

9   anticipating offering evidence, or how do you wish to proceed?

10       MS. STANLEY:  I would like to question Mr. Fettig

11  under oath as to the location of the equipment and that he

12  indicates he does not know where it is.

13       THE COURT:  All right.  Mr. Fettig, I'm going to ask

14  you to raise your right hand.

15                      **ROBERT FETTIG,**

16  having been duly sworn, testified as follows:

17       THE COURT:  All right.  Then go ahead, Ms. Stanley.

18                   **DIRECT EXAMINATION**

19  **BY MS. STANLEY:**

20       Q.    Mr. Fettig, do you have the list of equipment that

21  is -- sorry, I hit the wrong button -- that is Gate City's

22  collateral?

23       A.    I don't have the list in front of me, but I

24  understand that there's some equipment that I financed through

25  Gate City, yes.

1   Q.  Okay.  And are you here today to testify that none

2 of the 20 -- I believe it's 21 pieces of equipment is in your

3 possession anymore?

4   A.  I don't know where the items are, no.

5   Q.  And when was the last time you believe you saw

6 them?

7   A.  A couple of months ago, I believe.

8   Q.  And what happened to the equipment?

9   A.  I don't know.  I know that there's been a repo

10 company called USA -- I think -- something repo out of Fargo.

11 They made contact, I believe, once or twice, said that he

12 was going to be out to get the equipment and said that he would

13 give me some time to work it out with the bank, said I wasn't

14 supposed to be able to work it out with the bank, but he said

15 I'll give you some time, seems like your struggling business

16 owner, and I said okay.

17   And then I tried to reach out to the bank and -- bank

18 remedies -- over the last six months I've paid sometimes one

19 and a half to two months plus insurance like $28,000 in

20 payments, and then I kind of just hit a wall and lost some work

21 and lost some drivers, so only running like one or two pieces

22 of equipment, ma'am, that were, like, free and clear.

23   But yeah, I don't recall the exact date and time, but I do

24 recall that that repo company said that they were to be out

25 there to get my stuff, and that you know, they're going to get

1    their equipment, and that's their job.

2        Q.    And do you know if they took the equipment because

3    if you're referring to Gate City repo's company, I can confirm

4    for you that they did not.

5        A.    Yeah.  I'm referring to the conversation I had with

6    the gentleman that came on my property.  I believe it was the

7    same date I had a court appearance in Dunn County for a traffic

8    violation.  I don't recall the date, but he called me that date

9    and time.  I can get that date for you.  I can look in my

10   records because I had to go to court that day.  I just don't

11   have it on me right now.

12       Q.    Did they take the equipment?

13       A.    What?

14       Q.    Did they take the equipment?

15       A.    I don't know, ma'am.  I don't know who -- if they

16   took the equipment or not.  I just know that more than once

17   that individual called me and said get your stuff together, you

18   know, figure it out with your bank or, you know, if it's not

19   me, it's going to be another repo company.  These items are up

20   for repo.

21       Q.    Did you report the equipment as stolen?

22       A.    No, I have not done that.  No, I have not reported

23   anything as stolen because how do I know if it was stolen or

24   not?  I mean, how do I know what happened to it?

25       Q.    Well, did you --

1      A.      I'm not going to make a false statement and go to

2    prison.  Sorry.

3              THE COURT:  I'm going to ask both of you, don't step

4    on each other's lines.

5              MR. FETTIG:  Sorry, sorry, sorry.

6              THE COURT:  Ms. Stanley, you ask the question, and

7    you wait until she's done before you answer and vice versa.

8              MR. FETTIG:  I was trying to answer but --

9    By Ms. Stanley:

10     Q.      Did any of your employees mention the equipment

11   going missing?

12     A.      Not to my knowledge, ma'am, no.  I got to my shop,

13   there's no equipment there, that's what I recall.

14     Q.      What day was that?

15     A.      It was some months ago.  I've been in a cloud of

16   anxiety, and anger, and frustration, so I don't recall the

17   exact date of that, but I do recall that there was a period of

18   time where I had equipment at my shop, and then I don't have

19   equipment at my shop due to the fact of -- to my knowledge, a

20   creditor would have repossessed it.

21     I think when we had interactions before, there was some

22   concern that other creditors may have encumbered my equipment.

23   I think that's a big concern of Gate City Bank.  Gate City Bank

24   actually at one point in time got very frustrated with me and

25   said that you had all these predatory lenders from New York,

1  there's judgments filed in like York County or something of

2  that nature, whatever New York county is, and it's in the area

3  of a couple hundred thousand dollars, so I don't know how that

4  works.  I don't know if they took the equipment, but no, I

5  don't recall where the equipment is.  I don't recall when it

6  was taken, and I'm just a little irritated, and scared, and

7  frustrated because I'm trying to save my business and work but

8  it's not working, you know.

9      Q.    Let's go through the equipment, and I would like

10 you advise under oath that you personally do not have

11 possession of it or know where it went to or is.

12      So there's a 2013 Dragon ESP LTD 200 BBL. I assume that's

13 like barrels.

14      A.    Correct.

15      Q.    Okay.  Do you know where this is?

16      A.    No, ma'am, and it probably has a VIN number on it.

17      Q.    It does have a VIN number that ends in 8172.  Do

18 you have any idea what happened to it?

19      A.    No, ma'am.

20      Q.    Are you using it in your business?

21      A.    No.

22      Q.    And when was the last time you believe you saw

23 this?

24      A.    I don't recall when I saw a specific VIN number.

25 You just stated that there's 21 pieces of equipment.  Anybody

1  in their right mind would not know exactly the date and time of

2  certain things, especially the amount of stress I've been put

3  underneath.  I'm sorry.

4      Q.    Did they all go missing at the same date and time?

5      A.    That's what I said, I said that I was at my shop,

6  there was equipment at my shop, even your repo guy from Gate

7  City stated that I'm out here.  I see some equipment out here,

8  you better get this figured out, or it's going to be

9  repossessed, and I said I'll try to get it figured it out, and

10  that's when I proceeded to talk with Gate City Bank.

11      Q.    There's a 2007 Kenworth, do you have any idea where

12  this piece of equipment is right now?

13      A.    Currently, no.

14      Q.    Do you know what happened to it?

15      A.    No, ma'am, I don't.  If I did, I'd tell you.

16      Q.    Are you testifying under oath that you are not

17  using that in your business currently?

18      A.    That's correct.  I'm not, like, using it -- I said

19  in a previous court hearing that I had used a 2012 367

20  Peterbilt because it's free and clear, but I haven't --

21      Q.    There's three Dragon 200-barrel aluminum tank

22  trailers, a 2013, 2013, and a 2014; do you know where these

23  are?

24      A.    No.  I can just recall that I think I bought them

25  from an SPT.  They went defunk [*sic*].  It was some years ago.

1       Q.      Okay.  So the question was do you know where they
2   are?

3       A.      No.  No. I said no.  I said no initially.  Yep.
4   No, I don't.

5       Q.      And do you know what happened to them?

6       A.      I can only surmise or come to the conclusion that a
7   creditor has them.  I don't know what creditor.

8       Q.      And you never reported them stolen or anything like
9   that?

10      A.      No, ma'am.  I've just -- again, like I said, been
11  trying to figure out what I need to do next.  If I need to file
12  Chapter 11 or --

13      Q.      This will go quicker if you just answer the
14  question.

15      A.      Okay.  Sorry.

16      Q.      Are you currently using any of those three Dragon
17  tank trailers in your business operations?

18      A.      No.  I would know where they were at if I was using
19  them in my business operation.

20      Q.      Okay.  Next is a 2012 Kenworth.  The last four
21  serial number is 5970.  Do you know where this is?

22      A.      A 2000 what?

23      Q.      A 2012 Kenworth.

24      A.      No, ma'am.

25      Q.      And do you know what happened to it?

1    A.    No.

2    Q.    And do you know when the last time you saw it?

3    A.    That truck's been not being used since 2021.  The

4  engine's blown.  It was blown -- the engine was blown.  It was

5  parked at my yard.

6    Q.    So is it no longer there?

7    A.    Yeah, it's no longer there.  Yes, that's correct.

8    Q.    And you don't know where it went?

9    A.    Again, as I stated before, I don't know where any

10  one of these 21 pieces of equipment are.  I just know that for

11  a fact, that there was a -- the US repo guy, and he stated that

12  there's other repo companies that are out there because they

13  put a repo order to many different people.  That's what they

14  said the creditors do.

15    MS. STANLEY:  Your Honor, do you need me to speed

16  this up to list all the equipment, and then ask him to say that

17  is the same answer?

18    THE COURT:  Could you repeat?  I didn't understand

19  what you're asking.

20    MS. STANLEY:  Do you want me to try and speed it up

21  by identifying the remaining equipment and ask if he has the

22  same answer for all of them?

23    THE COURT:  Well, you could ask it just that way, and

24  I think we could speed it up.

25    MS. STANLEY:  I think earlier he said, though, he

1    didn't have Exhibit A.  If I could --

2    By Ms. Stanley:

3        Q.      So, Mr. Fettig, the remaining equipment is a 2014

4    Kenworth W900, 2013 Dragon 200-barrel tank trailer, 2007

5    Reitnauer trailer, do you have any idea where those are?

6        A.      No, ma'am.

7        Q.      And do you know when was the last time you saw

8    them?

9        A.      Reitnauer would be 2023 -- the first part of 2023,

10   I believe, maybe the last part of 2022.  I was running an over-

11   the-road company, and I had to shut it down because I couldn't

12   afford to do both.

13       Q.      So what happened to the Reitnauer trailer?

14       A.      It was parked at my yard.  I don't know.  That

15   gentleman from -- that guy from US whatever -- I don't know if

16   you talked to him -- the repo guy.  He came out to my property.

17       Q.      Do you have, by chance, security footage at your

18   property?

19       A.      Not working, no.

20       Q.      When did it stop working?

21       A.      I never had it working.  The police officers came

22   out there because -- actually, Ken Wolf owns the property up

23   the road, and we never wired it in.  We didn't get it wired in

24   because it was going -- on the to-do list, but there was a guy

25   -- Mr. Ken Wolf, he lives up the street from me, and he's got a

```
 1    shop there, and there was something that was stolen off his
 2    tractor, and Stark County came over and talked to my -- talked
 3    to me about it, and I said it wasn't wired up, and I
 4    apologized.
 5        Q.      There is a 2014 Kenworth, a 2013 Dragon 200-barrel
 6    semi-trailer and a 2014 Dragon 200-barrel semi-trailer, do you
 7    know what happened -- do you currently have possession or know
 8    where these pieces of equipment are?
 9        A.      No, ma'am.
10        Q.      When was the last time you saw them?
11        A.      I don't recall.
12        Q.      No idea what happened to them?
13        A.      No, ma'am.  No.
14        Q.      And you're not currently using them in your
15    business operations?
16        A.      No, ma'am.
17        Q.      There are a 2016 -- two 2016 Sidump'r trailers, a
18    2013 Dakota MFG dump trailer, 2000 Midland MFG dump trailer --
19    one, two, three of those -- four of those, and a 1999 Midland
20    MFG dump trailer, do you know where these pieces are?
21        A.      What was the question, ma'am?
22        Q.      Are you familiar with those pieces that I just read
23    out?
24        A.      Familiar in what aspect, ma'am?
25        Q.      That you're aware of them, that they were at the
```

1  business at one point.

2        A.      I took a loan out for them, yes.

3        Q.      Okay.  So are you currently in possession of any of

4  those?

5        A.      No, ma'am.

6        Q.      And when was the last time you saw them?

7        A.      As I stated, around the time that that repo guy

8  came to my property, which would have been -- you would know

9  that date and time.  That would be the date and time that it

10 was ordered by your bank that you're representing -- Gate City

11 Bank, I believe it's USA Recovery out of Fargo.  That would be

12 the last date and time that I recall seeing them.

13       Q.      And you're not currently using them in your

14 business operations?

15       A.      No, ma'am.

16       Q.      One final piece: a 2012 Dragon 150-barrel trailer.

17 Are you familiar with that piece of equipment?

18       A.      I think that was the first trailer I ever bought.

19       Q.      And what happened to that one?

20       A.      I don't recall.  I don't know what happened to it.

21 As I stated, it could be a creditor that had repossessed the

22 equipment.  I have, like, on record -- I mean, Gate City Bank

23 actually, literally said to me that they were going to look to

24 try to close out my account because they said that I had a lot

25 of debt with these -- what is it called -- these merchant cash

1    advances.  They're predator loans that pry on small businesses,

2    and they charge you, like, 48 percent, put me in a bad spiral

3    turn and kind of took out by business.

4        Q.    Mr. Fettig, are you willing to sign an affidavit

5    attesting to these facts that you don't know where these are

6    and assist with submitting a claim through insurance?

7        A.    I can do what's necessary.  I think I should

8    probably -- under the advice of counsel -- understand what I am

9    signing before I do something like that.

10       Respectfully, I feel -- and I understand like I was told

11   before that you have all the rights in this type of court

12   setting, and I have zero rights, but I think me, as a human

13   being and a United States citizen, I think I should get myself,

14   at least, some time to seek legal counsel as to what is the

15   ramifications of signing something and going to an insurance

16   court if you guys can't find these items.

17       I don't want to answer that untruthfully, but I want to

18   not, you know, get in trouble financially -- more -- I'm

19   already in trouble financially with Gate City Bank.  I mean,

20   would that prevent me from getting insurance in the future or

21   does that mean you're claiming I got insurance?  I would like

22   to understand what I'm signing and what are the ramifications

23   of doing so is all I'm asking.

24       Q.    And you're certainly entitled to the right to

25   counsel, but, Mr. Fettig, if you're asserting that you don't

1    know what happened to this equipment, I think you should put

2    that under -- in an affidavit that can be submitted --

3            MR. FETTIG:  I'm going to write this down.

4            THE COURT:  With all due respect, Ms. Stanley, he's

5    testified under oath that he doesn't have any -- that's as good

6    as an affidavit as far as I'm concerned.

7            MS. STANLEY:  Well, then, Your Honor, we have no

8    further questions for this man.

9            THE COURT:  All right.  So at this stage, Mr. Fettig,

10   you don't have counsel, is there anything that you wanted to,

11   essentially, testify to in response to the questions that Ms.

12   Stanley has posed?

13           MR. FETTIG:  Can I just ask why is that when I've

14   reached out to Gate City Bank before -- no?

15           THE COURT:  That's not this.  If you have any

16   statements you want to make in the form of testimony at this

17   time, I have to give you that opportunity.

18           MR. FETTIG:  Okay.

19           THE COURT:  For instance, if she asked you a question

20   but didn't give you an opportunity to explain, and you want to

21   explain, now you can.

22           MR. FETTIG:  No, I don't think so.  No.

23           THE COURT:  All right.  But I indicate that I'm --

24   that you're done with this witness, I have an inquiry for Ms.

25   Stanley.

1          How are you going to request that the Court act on
2    the basis of what you've presented today?
3          MS. STANLEY:  Your Honor, we will file a motion for
4    -- you know, entry of judgment on this since there has been no
5    answer put in, and proceed forward to continue looking for the
6    collateral out in Western North Dakota, which is where we think
7    that it is.
8          THE COURT:  All right.  I have -- I'm inclined to ask
9    some questions of my own, if you were going to ask me to make a
10   ruling on the motion for contempt.  Are you effectively
11   withdrawing that at this stage?
12         MS. STANLEY:  Well, Your Honor, please feel free to
13   ask questions, if you wish.
14         THE COURT:  Well, I don't either have a need to do
15   that, nor think it's appropriate if you're going to withdraw
16   your motion for contempt.
17         MS. STANLEY:  Well, I think Your Honor can rule on
18   it, if that helps.
19         THE COURT:  Well, then, Mr. Fettig, I'll just tell
20   you in advance, as a practicing attorney -- before I became a
21   judge, I was a trial attorney for 35 years.  I didn't
22   specialize in but I did a fair amount of work in the debtor-
23   creditor relationships, so some of my questions are in that
24   context.
25         My first question is: did you use the collateral that

1  was provided to Gate City as collateral for other loans?  And

2  before you answer that, I'll tell you that under some

3  circumstances, if you're answer is yes, you may be

4  incriminating yourself, so you may decide that you don't wish

5  to answer, but that's my question.

6      MR. FETTIG:  Then I respectfully do the 5th, so not

7  incriminate myself because I don't want to get in trouble.

8      THE COURT:  All right.  Then, next question -- and I

9  don't know that this applies in that sense, but nevertheless,

10 have certain judgments been entered against you or your company

11 in the past where a notice of levy of execution has been filed

12 with regard to these specific items of collateral?

13     MR. FETTIG:  With regards to those specific items

14 noted, I think it just -- I have a judgment.  I don't know if

15 it's a levy situation or standing, but there are judgments in

16 regards to, like I said, merchant cash advances that were

17 predatory loans that were lent to me during the COVID time, but

18 I'm not trying to -- nothing states any equipment -- it just

19 stated that Stark Energy's liable.

20     THE COURT:  All right.  Then I think, Ms. Stanley,

21 that concludes the questions I have.  Do you have any follow-up

22 as a result of my questions that you'd like to pose?

23     MS. STANLEY:  No, thank you, Your Honor.

24     THE COURT:  Mr. Fettig, anything that you want to say

25 in the context of the questions that I asked?

1        MR. FETTIG:  No, Your Honor.

2        THE COURT:  All right.  Then, I guess you can

3   consider your testimony concluded then.

4        Then, Ms. Stanley, again, what would you like the

5   Court to do at this stage?

6        MS. STANLEY:  I think you can rule on the motion for

7   contempt, if Your Honor wishes to.

8        THE COURT:  All right.  I'll do that.

9        Mr. Fettig, any legal argument that --

10       Ms. Stanley, is there any argument that you wish to

11   make before I give Mr. Fettig an opportunity to respond?

12       MS. STANLEY:  (audio cuts out) what was in our brief.

13       THE COURT:  All right.  Mr. Fettig, anything you

14   wanted to say in the way of legal argument?

15       MR. FETTIG:  I've just been as truthful as I can be,

16   and I'm doing what I'm supposed to do, and I don't know what --

17   what are we ruling on, sir?  Sorry.

18       THE COURT:  She's made a motion finding you in

19   contempt for failure to assemble and make these assets

20   available as required by your security agreement.

21       MR. FETTIG:  Okay.  But if I've presented myself to

22   the Court and answered the questions truthfully and honestly --

23       THE COURT:  Well, that's the question --

24       MR. FETTIG:  Okay.

25       THE COURT:  -- she's going to be suggesting whether

1 directly or indirectly that you haven't been truthful, and I'll

2 tell you based upon the questions I asked --

3          MR. FETTIG:  Yeah.

4          THE COURT:  -- I have considerable doubt about the

5 credibility of your testimony, and I'll explain why.

6          MR. FETTIG:  Okay.

7          THE COURT:  So again, I'm not an expert in real

8 property -- excuse me -- in debtor-creditor, but I did a fair

9 amount of it, and some of your answers just flat don't make

10 sense.

11          You don't have people without a judgment or without a

12 security agreement that provides the right of access to come

13 out and repossess your property --

14          MR. FETTIG:  I wouldn't --

15          THE COURT:  -- so the idea that some nebulous company

16 out there to whom you owe money might send a repo guy out to

17 collect your property is not credible without a showing that

18 there was a security interest in that property or a judgment

19 that gave them the right to levy execution, so I'm doubtful

20 your testimony is truthful.

21          MR. FETTIG:  I was speaking to the guy -- a US repo

22 company that he said that in this situation that it would be

23 him or somebody else that comes and gets the equipment, and I

24 was just --

25          THE COURT:  Well, right now there's no information

1    that allows me to believe that as credible.

2              MR. FETTIG:  Okay.

3              THE COURT:  Ms. Stanley, correct me if I'm wrong, do

4    you believe that what I've said as stated is correct?  I mean,

5    are you aware of any other companies that have a collateral --

6    excuse me -- an interest in this collateral or other judgments

7    that allow for a levy of execution of this property?  Which

8    normally would be executed by a sheriff as opposed to an

9    independent repossession company.

10             MS. STANLEY:  And, Your Honor, I actually represent

11   -- we had a hearing earlier at 9:00 with another creditor that

12   has different collateral, which is also missing, and Mr. Fettig

13   did not know where that went, and I can tell you that that

14   creditor has not had a repo company come out and take

15   collateral, and -- I don't want to put him on the spot, but I

16   believe the deputy that has been assisting in trying to find

17   this property is there, and I don't believe there's -- I think

18   there may be other levies out there, but I don't believe

19   anything has been -- any other property has been levied on.

20             THE COURT:  All right.  Any other argument you wish

21   to make before I make a ruling?  And be specific, what kind of

22   contempt order are you looking for?  What are you asking the

23   Court specifically to order?

24             MS. STANLEY:  I would request that Mr. Fettig turn

25   over -- I believe that he is quite a texter and would be able

1  to -- we would have information on his phone as to the jobs

2  that he's working on and where this equipment was being used,

3  so we would request that we be permitted to have access to his

4  phone to find that if he's not willing to advise, and also I

5  think we will ask for -- and this is what was ordered earlier

6  with Judge Gion -- an affidavit -- it would be similar to what

7  Judge Gion ordered requiring him to testify as to what he

8  thinks happened to this so that we can attempt to try to get an

9  insurance claim filed.

10      THE COURT:  Well, isn't that redundant in the sense

11  that -- again, he's given testimony.  You're asking that he

12  file another affidavit under oath that says what he's already

13  said under oath?

14      MS. STANLEY:  Yeah.  It would just be -- certainly

15  easier to submit to an insurance company rather than a

16  transcript.

17      THE COURT:  All right.  Anything else that you're

18  looking for?

19      MS. STANLEY:  No, thank you.

20      THE COURT:  All right.  Mr. Fettig, any response you

21  wish to make in a way of legal argument or argument for why I

22  shouldn't do what Ms. Stanley is requesting?

23      MR. FETTIG:  I think that we should just do what is

24  necessary for the insurance.  I mean, I need to do what's right

25  for the creditor.  I was trying to negotiate with them.  I was

1    trying to put up other assets and work with a banker to get a
2    line of credit to get this handled, so that I could make them
3    whole with other assets that I own free and clear, and I was
4    trying to do that in good faith, but I've not been able to do
5    that.  I had a debt negotiator out of Boca Raton, Florida,
6    reach out to this gal -- the attorney for this bank and the
7    other bank, and I said, hey, listen, I would like to not file
8    Chapter 11.  I would like to try to make sure that you guys are
9    made whole, and I would like to try to make some type of good
10   faith payment.  I'd like to gather up whatever resources I can,
11   and make a plan, and then execute that plan.

12         And I've been told we're not doing any plans.  We're not
13   doing this.  We're not working with you.  We're not willing to
14   work with you, and I said, well, I'd like to try to make sure
15   that you're made whole, and not go back and forth or waste the
16   Court's time.  I'd like to get afforded the time -- maybe 30-
17   day window, possibly, to create an actual plan with a debt
18   negotiator that says, hey, listen, this is your debt, this is
19   your possibility of income, this is what you can liquidate to
20   satisfy these loans, so that they can be made whole.

21         I would like that to be allowed, so that they are
22   made whole.

23         THE COURT:  All right.  Anything else?

24         MR. FETTIG:  No.  I don't think so.

25         THE COURT:  Ms. Stanley, any follow-up?

1          MS. STANLEY:  Nothing, Your Honor.

2          THE COURT:  Well, I'm inclined to grant the relief

3    that Ms. Stanley has requested.  The statutes don't really give

4    me any alternative but use this language: I'm going to order

5    that the defendant, Mr. Fettig, is in contempt for failure to

6    turn over the collateral.  I do find his testimony to be not

7    credible.  What he's testifying to just doesn't make sense to

8    the Court based on its own personal experience as a practicing

9    attorney or as a judge in the context of who is taking this

10   property or where it's at.  It just seems all together too

11   convenient if collateral in this case goes missing,

12   effectively, in its entirety.

13         So I'm going to order -- although it's redundant --

14   that Mr. Fettig assemble and turn over that property to Gate

15   City Bank at a time and place that Ms. Stanley will indicate in

16   the proposed order.  I am going to direct that at a time and

17   place she directs in that proposed order that you submit your

18   phone for examination to determine if there is any evidence of

19   transactions that would help explain that missing collateral

20   and its location.  I'd caution you not to do anything to delete

21   or destroy that evidence as that would be further basis for

22   action against you.

23         I'm going to give you the option to provide a listing

24   of the property in the nature of the type of explanation Ms.

25   Stanley wants that could be provided to an insurance company,

1  so maybe you can work that out between the two of you in terms

2  of how that's done, but I will tell you that if you fail to do

3  so, then I'm going to direct that you pay in advance the cost

4  of preparing the transcript of this hearing so that Ms. Stanley

5  can submit that to the insurance company in its place.  So it's

6  in your best interest to accommodate her in that respect by

7  preparing the affidavit that she is requesting.

8          Ms. Stanley, is there anything that you think I have

9  failed to address or something else that I need to address?

10          MS. STANLEY:  Nothing.  Do you wish for me to draft a

11  proposed order?

12          THE COURT:  Yes.  Do you have in mind how much time

13  you will need just so we can tickle it if we don't get it?

14          MS. STANLEY:  I will try to get it to you today or

15  tomorrow.

16          THE COURT:  That's plenty.  I was looking more for a

17  couple of weeks or the like, but I'll leave that to you.

18          All right.  Mr. Fettig, you may not have a reason or

19  basis to understand what, but nevertheless, is there anything

20  else you think the Court needs to address that I haven't

21  already addressed?

22          MR. FETTIG:  No, Your Honor.

23          THE COURT:  All right.  With that we'll be adjourned

24  then.

25          MR. FETTIG:  Sorry, I don't have anything to address,

1    but that order thing she's going to draft, I'll get that in the

2    mail?

3              THE COURT:  Probably.

4              MR. FETTIG:  Okay.  Thank you.

5              THE COURT:  Most likely be served on you by a sheriff

6    or a process server.

7              MR. FETTIG:  Okay.  Thank you.

8              THE COURT:  Yep.  Anything else, Ms. Stanley,

9    otherwise we're going to adjourn?  Ms. Stanley, was there

10   something else that you needed or are waiting for?

11             THE COURT RECORDER:  It's frozen.

12             THE COURT:  All right.  She signed off.

13        (The Court was adjourned at 10:33 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF COURT RECORDER

I, Kay Erickson, a duly certified digital electronic court reporter and transcriber,

DO CERTIFY that the foregoing and attached typewritten pages numbered 3 through 26 contain a true, accurate, and complete transcript from the electronic sound recording then and there taken.

Dated at Dickinson, North Dakota, this 23rd day of May, 2024.

_Kay Erickson_
_____

Kay Erickson, CER, CET

THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT DOES NOT APPLY TO THE REPRODUCTION OF THE SAME BY ANY MEANS, UNLESS UNDER THE DIRECT CONTROL AND/OR DIRECTION OF THE CERTIFYING COURT RECORDER.

STATE OF NORTH DAKOTA

COUNTY OF STARK



IN DISTRICT COURT

SOUTHWEST JUDICIAL DISTRICT

 

I, Andrea Mayer, Deputy Clerk of the District Court in and for the County of Stark and State of North Dakota, which is a court of record having a seal, do hereby certify that I have compared the attached copy of the Contempt Order for Defendant's Failure to Comply with Order for Prejudgment Seizure of Collateral Dated October 11, 2023, Stark County Case #45-2023-CV-00689 with the original Contempt Order for Defendant's Failure to Comply with Order for Prejudgment Seizure of Collateral Dated October 11, 2023 document, which is now on file and of record in said District Court and that the said copy is a full, true and correct copy of said original on file.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of said District Court in and for said County of Stark this 22ⁿᵈ day of May, 2024.

_____
Deputy Clerk of District Court

STATE OF NORTH DAKOTA )
                        ss
COUNTY OF STARK      )

I, William A. Herauf, Judge of the District Court within and for said County of Stark do hereby certify that said Court is a Court of Record, and that Andrea Mayer, is a Deputy Clerk of the District Court; that said certificate is attested in due form of law; that the signature of said Deputy Clerk is genuine, and that the seal thereto affixed is the seal of said District Court.

Witness my hand at Dickinson, North Dakota, this 22ⁿᵈ day of May, 2024.

_____
Judge of the District Court

STATE OF NORTH DAKOTA )
                         ss
COUNTY OF STARK      )

I, Andrea Mayer, Deputy Clerk of the District Court within and for the County of Stark, do hereby certify that the Honorable William A. Herauf, is a Judge of the District Court within and for the County of Stark, duly elected, sworn and qualified, and that the signature of said Judge to said certificate is genuine.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of said Court this 22ⁿᵈ day of May, 2024.

_____
Deputy Clerk of District Court

STATE OF NORTH DAKOTA

COUNTY OF STARK

IN DISTRICT COURT

SOUTHWEST JUDICIAL DISTRICT

| Gate City Bank, | Case No. 45-2023-CV-00689 |
|---|---|
| Plaintiff, | |
| v. | **CONTEMPT ORDER FOR DEFENDANTS FAILURE TO COMPLY WITH ORDER FOR PREJUDGMENT SEIZURE OF COLLATERAL DATED OCTOBER 11, 2023** |
| Stark Energy, Inc., Robert Fettig, and Matthew Barrett, | |
| Defendants. | |

[¶1]    A show cause hearing was held in the above-entitled action on the **14th day of November, 2023, at 10:00 A.M. MT** in the Stark County Courthouse, Dickinson, North Dakota. Plaintiff appeared through counsel, Caren Stanley of Vogel Law Firm by reliable electronic means. The Defendant Robert Gene Fettig appeared pro se. The Defendant Robert Gene Fettig was questioned under oath as to as to why Defendants have failed to deliver to Plaintiff the following personal property:

| Note # | Collateral | VIN# |
|---|---|---|
| Note 1 | 2013 Dragon ESP LTD 200 BBL | 1UNST5343DS128172 |
| Note 2 | 2007 Kenworth | 1XKDP40X07R197151 |
| Note 3 | 2013 Dragon 200 BBL Alum. Tank Trlr<br>2013 Dragon 200 BBL Alum. Tank Trlr<br>2014 Dragon 200 BBL Alum. Tank Trlr | 1UNST5341DS128154<br>1UNST5340DS128162<br>1UNST5340ES128552 |
| Note 4 | 2012 Kenworth | 1XKWP4TX8CJ335970 |
| Note 5 | 2014 Kenworth W900<br>2013 Dragon 220 BBL Tank Trlr<br>2007 Reitnauer Trailer | 1XKWD49X1EJ413380<br>1UNST5348DS128118<br>1RNF48A247R019280 |

| Note 6 | 2014 Kenworth | 1NKDX4TX3EJ403810 |
|--------|---------------|-------------------|
| Note 7 | 2013 Dragon 200 BBL AL Semi-Trailer<br>2014 Dragon 200 BBL AL Semi-Trailer | 1UNST5340DS128291<br>1UNST5346ES140026 |
| Note 8 | 2016 Sidump'r Dump Trailer<br>2016 Sidump'r Dump Trailer<br>2013 Dakota MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>1999 Midland MFG Dump Trailer | 1D9FS4437GC688018<br>1D9FS4430GC688099<br>1D9SH4339DY554348<br>2MFB2S3D5YR000651<br>2MFB2S4D3YR001148<br>2MFB2S3D3YR000650<br>2MFB2S3D7YR000652<br>2MFB2S4D4XR000542 |
| Note 9 | 2012 Dragon 150 BBL AL Trailer | 1UNST4223CL109253 |

(collectively, the "Gate City Collateral").

[¶1]    Defendant Robert Gene Fettig testified under oath that he did not know what happened to the Gate City Collateral, that he did not have possession or control of the Gate City Collateral, that he did not know where it was, and that Defendants were not using the Gate City Collateral in Defendants' business operations. Defendant Robert Gene Fettig testified that a repossession company may have taken the Gate City Collateral but he was not sure.

[¶1]    The Court did not find Defendant Robert Gene Fettig's testimony to be credible.

[¶1]    Based on all of the files and pleadings herein and the testimony of Defendant Robert Gene Fettig, the Defendants Stark Energy, Inc. and Robert Gene Fettig (collectively, the "Defendants"), are found in contempt.

[¶1]    The Defendants may purge themselves of contempt within thirty (30) days of this Order by:

2

A.    Delivering the Gate City Collateral to the Plaintiff's custody and control. Defendants may contact Plaintiff's attorney, Caren Stanley of Vogel Law Firm at 701.356.6307 or cstanley@vogellaw.com to arrange for delivery of the Gate City Collateral.

B.    Delivering to the Plaintiff's counsel or the Stark County Sheriff's Department the cell phone of Defendant Robert Gene Fettig that he used in his business operations on or before November 14, 2023 (the date of the hearing). Any passcode to provide access to the cell phone shall also be provided. No data shall be removed, deleted, or otherwise altered.

C.    Fully disclose the name of the repossession company and its representative and all contact information including but not limited to phone number, email address, and mailing address.

D.    File with the Court and serve a copy to Plaintiff's counsel of a notarized affidavit of Defendant Robert Gene Fettig under penalty of perjury that: (i) discloses the information in paragraph 5(c) above; (ii) states that he does not have possession or control of the Gate City Collateral; and (iii) states he does not know where the Gate City Collateral is or what happened to it.

[¶1]    Should the Defendants fail to purge themselves of contempt, Plaintiff's attorney may submit an Affidavit of Default to be taken under advisement for the assessment of appropriate sanctions including, but not, limited to incarceration. A bench warrant issued upon the failure of Defendants to purge themselves of contempt may be issued for the incarceration of Defendant Robert Gene Fettig for a period of ten (10) days or until such time as he purges himself of contempt, whichever occurs sooner. The cash bond may be set in the amount of 25% of the anticipated judgment amount ($105,393.96) with respect to a bench warrant that is

issued upon Defendants failure to purge themselves of contempt.

11/17/2023 11:50:45 AM

Dann E. Greenwood
Judge of the District Court

5260680.1

4

STATE OF NORTH DAKOTA

COUNTY OF STARK



IN DISTRICT COURT

SOUTHWEST JUDICIAL DISTRICT

I, Andrea Mayer, Deputy Clerk of the District Court in and for the County of Stark and State of North Dakota, which is a court of record having a seal, do hereby certify that I have compared the attached copy of the Judgment as to Defendant's Stark Energy, Inc. and Robert Fettig, Stark County Case #45-2023-CV-00689 with the original Judgment as to Defendant's Stark Energy, Inc. and Robert Fettig document, which is now on file and of record in said District Court and that the said copy is a full, true and correct copy of said original on file.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of said District Court in and for said County of Stark this 22nd day of May, 2024.

_____
Deputy Clerk of District Court

STATE OF NORTH DAKOTA )
                                        ss
COUNTY OF STARK           )

I, William A. Herauf, Judge of the District Court within and for said County of Stark do hereby certify that said Court is a Court of Record, and that Andrea Mayer, is a Deputy Clerk of the District Court; that said certificate is attested in due form of law; that the signature of said Deputy Clerk is genuine, and that the seal thereto affixed is the seal of said District Court.

Witness my hand at Dickinson, North Dakota, this 22nd day of May, 2024.

_____
Judge of the District Court

STATE OF NORTH DAKOTA )
                                        ss
COUNTY OF STARK           )

I, Andrea Mayer, Deputy Clerk of the District Court within and for the County of Stark, do hereby certify that the Honorable William A. Herauf, is a Judge of the District Court within and for the County of Stark, duly elected, sworn and qualified, and that the signature of said Judge to said certificate is genuine.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of said Court this 22nd day of May, 2024.

_____
Deputy Clerk of District Court

STATE OF NORTH DAKOTA

IN DISTRICT COURT

COUNTY OF STARK

SOUTHWEST JUDICIAL DISTRICT

| Gate City Bank, | Case No. 45-2023-CV-689 |
|---|---|
| Plaintiff, | |
| v. | **JUDGMENT AS TO DEFENDANTS STARK ENERGY, INC. AND ROBERT FETTIG** |
| Stark Energy, Inc., Robert Fettig, and Matthew Barrett, | |
| Defendants. | |

[¶1]   The Summons and Complaint in this matter was served upon the Defendants Stark Energy, Inc. and Robert Fettig (collectively the "Defendants"), and the Court, upon due proof of such service and the default of the Defendants, has ordered judgment against the Defendants.

[¶2]   THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

    A.    That Defendants immediately deliver the Titled Vehicle Collateral as identified on the attached **Exhibit A** to Plaintiff's possession. If the Defendants fail to deliver the Titled Vehicle Collateral to the Plaintiff, the Plaintiff, with such assistance from the Stark County Sheriff or other law enforcement personnel as have jurisdiction, shall be permitted to seize the same. In recovering the Titled Vehicle Collateral, Plaintiff, the Sheriff of Stark County and such other law enforcement personnel as have jurisdiction, shall be permitted to enter upon the real property of the Defendants and any third parties and force access into any structures located on said real property in which the Titled Vehicle Collateral may be situated.

    B.    For a judgment against Defendants, jointly and severally, in the amounts due on the Notes and the Fettig Guarantees as of December 7, 2023, in the amount of $427,438.87 together with statutory costs to be taxed and allowed by the Court in the amount of $170.00, for a total judgment of $427,608.87. Net proceeds

from disposition of the Titled Vehicle Collateral shall be applied to the judgment debt(s).

C.  That Plaintiff's security interest in the Titled Vehicle Collateral shall not merge into the judgment to be entered herein.

D.  The State of North Dakota is authorized to issue a new title, as necessary, for the Titled Vehicle Collateral in the name of Plaintiff or in the name of the individual or entity to which the Titled Vehicle Collateral is sold by Plaintiff.

E.  Plaintiff shall not be required to post a bond as a condition precedent to recovery and/or disposition of the Titled Vehicle Collateral.

[¶3]  WITNESS, the Honorable ___Dann Greenwood___, Judge of the District Court, Stark County, North Dakota, and my hand and seal of said Court.

BY: _Heidi Sullum, Deputy_

District Court Clerk          12/29/2023 4:06:47 PM

5288571.1

2

**EXHIBIT A**

**TITLED VEHICLE COLLATERAL**

| Note # | Collateral | VIN# |
|---|---|---|
| Note 1 | 2013 Dragon ESP LTD 200 BBL | 1UNST5343DS128172 |
| Note 2 | 2007 Kenworth | 1XKDP40X07R197151 |
| Note 3 | 2013 Dragon 200 BBL Alum. Tank Trlr<br>2013 Dragon 200 BBL Alum. Tank Trlr<br>2014 Dragon 200 BBL Alum. Tank Trlr | 1UNST5341DS128154<br>1UNST5340DS128162<br>1UNST5340ES128552 |
| Note 4 | 2012 Kenworth | 1XKWP4TX8CJ335970 |
| Note 5 | 2014 Kenworth W900<br>2013 Dragon 220 BBL Tank Trlr<br>2007 Reitnauer Trailer | 1XKWD49X1EJ413380<br>1UNST5348DS128118<br>1RNF48A247R019280 |
| Note 6 | 2014 Kenworth | 1NKDX4TX3EJ403810 |
| Note 7 | 2013 Dragon 200 BBL AL Semi-Trailer<br>2014 Dragon 200 BBL AL Semi-Trailer | 1UNST5340DS128291<br>1UNST5346ES140026 |
| Note 8 | 2016 Sidump'r Dump Trailer<br>2016 Sidump'r Dump Trailer<br>2013 Dakota MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>2000 Midland MFG Dump Trailer<br>1999 Midland MFG Dump Trailer | 1D9FS4437GC688018<br>1D9FS4430GC688099<br>1D9SH4339DY554348<br>2MFB2S3D5YR000651<br>2MFB2S4D3YR001148<br>2MFB2S3D3YR000650<br>2MFB2S3D7YR000652<br>2MFB2S4D4XR000542 |
| Note 9 | 2012 Dragon 150 BBL AL Trailer | 1UNST4223CL109253 |

The Titled Vehicle Collateral also includes all of the accessions, attachments, accessories, replacements, products, accounts, proceeds, etc. with respect to or arising out of these vehicles.

3



STATE OF NORTH DAKOTA                    IN DISTRICT COURT

COUNTY OF STARK                    SOUTHWEST JUDICIAL DISTRICT

---

| | |
|---|---|
| Gate City Bank,<br><br>Plaintiff,<br><br>v.<br><br>Robert Fettig,<br><br>Defendant. | Case No. 45-2023-CV-00775<br><br><br>**ORDER FOR JUDGMENT** |

[¶1]    This matter came before the Court for consideration of the default judgment application submitted by Caren W. Stanley, Esquire, and it appears that the service of the Summons and Complaint on file herein was made upon the Defendant, and that no answer by the Defendant to the Complaint or other pleading or copy of such has been served upon or received by the Plaintiff. The Defendant, not having filed an answer to Plaintiff's Complaint or otherwise contested Plaintiff's claims, is in default.  Being fully advised of the above facts, having duly considered the same, and good cause appearing therefore,

[¶2]    IT IS HEREBY ORDERED, as follows:

A.    That Defendant be ordered to deliver immediately the 2013 Ford Truck F150 Pickup SuperCrew Lariat 4WD, (VIN 1FTFW1EF2DKF29634) and all accessions, attachments, accessories, replacements, products, accounts, and proceeds (collectively the "F150 Truck") to Plaintiff's possession. If the Defendant fails to deliver the F150 Truck to the Plaintiff, then the Plaintiff, with such assistance from the Stark County Sheriff or other law enforcement personnel as have jurisdiction, shall be permitted to seize the same. In recovering the F150 Truck, Plaintiff, the Sheriff of Stark County and such other law enforcement personnel as have jurisdiction, shall be permitted to enter upon the real property of the Defendant and any third parties and force access into any structures located on said real property in which the F150 Truck may be situated.

B.    That Defendant be ordered to take all steps necessary to obtain a valid Certificate of Title for the 2019 Harley-Davidson FLTRX Road Glide, (VIN 1HD1KHC14KB620728) and all accessions, attachments, accessories, replacements, products, accounts, and proceeds (collectively the "2019 Harley") and to complete and/or sign any and all title-related documents necessary to effectuate any ownership transfer required and perfect Plaintiff's security interest in the 2019 Harley. If Defendant fails to take such actions, that Plaintiff be permitted to apply for replacement titles with the State of North Dakota for the 2019 Harley with its lien to be recorded thereupon.

C.    After Plaintiff perfects a security interest in the 2019 Harley, that Defendant be ordered to deliver immediately to Plaintiff the 2019 Harley for purposes of sale and/or disposition by commercial means. If Defendant fails to deliver the 2019 Harley to the Plaintiff, the Plaintiff, with such assistance from the Stark County Sheriff and other law enforcement personnel as have jurisdiction, should be permitted to seize the same. In recovering the 2019 Harley, Plaintiff, the Sheriff of Stark County and such other law enforcement personnel as have jurisdiction, should be permitted to enter upon the real property of the Defendant and any third parties and force access into any structures located on said real property in which the 2019 Harley is situated.

D.    The F150 Truck and the 2019 Harley are hereinafter collectively referred to as the "Collateral".

E.    That the State of North Dakota is authorized to issue a new title, as necessary, for the Collateral in the name of Plaintiff or in the name of the individual or entity to which the Collateral is sold by Plaintiff.

F.    For a judgment against Defendant in the amount due on the Notes as of November 10, 2023 in the amount of $26,388.31, together with statutory costs to be taxed and allowed by the Clerk. Net proceeds from disposition of the Collateral will be applied to the judgment debt.

G.    Plaintiff shall not be required to post a bond as a condition precedent to recovery and/or disposition of the Collateral.

H.    After recovery and disposition of the Collateral, Plaintiff may file an affidavit of proof establishing any deficiency and request entry of a money judgment.

Dated:

12/8/2023 10:27:09 AM

_Rhonda R. Ehlis_
_____
Rhonda R. Ehlis
Judge of District Court

The hearing set for December 28, 2023 is hereby cancelled.

STATE OF NORTH DAKOTA            IN DISTRICT COURT

COUNTY OF STARK            SOUTHWEST JUDICIAL DISTRICT

| | |
|---|---|
| Gate City Bank,<br><br>           Plaintiff,<br><br>    v.<br><br>Robert Fettig,<br><br>           Defendant. | Case No. 45-2023-CV-00775<br><br><br>**JUDGMENT** |

[¶1]    The Summons and Complaint in this matter was served upon the Defendant, and the Court, upon due proof of such service and the default of the Defendant, has ordered judgment against the Defendant.

[¶2]    THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

A.    That Defendant deliver immediately the 2013 Ford Truck F150 Pickup SuperCrew Lariat 4WD, (VIN 1FTFW1EF2DKF29634) and all accessions, attachments, accessories, replacements, products, accounts, and proceeds (collectively the "F150 Truck") to Plaintiff's possession. If the Defendant fails to deliver the F150 Truck to the Plaintiff, then the Plaintiff, with such assistance from the Stark County Sheriff or other law enforcement personnel as have jurisdiction, shall be permitted to seize the same. In recovering the F150 Truck, Plaintiff, the Sheriff of Stark County and such other law enforcement personnel as have jurisdiction, shall be permitted to enter upon the real property of the Defendant and any third parties and force access into any structures located on said real property in which the F150 Truck may be situated.

B.    That Defendant take all steps necessary to obtain a valid Certificate of Title for the 2019 Harley-Davidson FLTRX Road Glide (VIN 1HD1KHC14KB620728) and all accessions, attachments, accessories, replacements, products, accounts, and proceeds (collectively the "2019 Harley"), and to complete and/or sign any and all title-related documents necessary to effectuate any ownership transfer required and perfect Plaintiff's security interest in the 2019 Harley. If Defendant

fails to take such actions, that Plaintiff be permitted to apply for replacement titles with the State of North Dakota for the 2019 Harley with its lien to be recorded thereupon.

C.    After Plaintiff perfects a security interest in the 2019 Harley, that Defendant deliver immediately to Plaintiff the 2019 Harley for purposes of sale and/or disposition by commercial means. If Defendant fails to deliver the 2019 Harley to the Plaintiff, the Plaintiff, with such assistance from the Stark County Sheriff and other law enforcement personnel as have jurisdiction, should be permitted to seize the same. In recovering the 2019 Harley, Plaintiff, the Sheriff of Stark County and such other law enforcement personnel as have jurisdiction, should be permitted to enter upon the real property of the Defendant and any third parties and force access into any structures located on said real property in which the 2019 Harley is situated.

D.    The F150 Truck and the 2019 Harley are hereinafter referred to as the "Collateral".

E.    That the State of North Dakota is authorized to issue a new title, as necessary, for the Collateral in the name of Plaintiff or in the name of the individual or entity to which the Collateral is sold by Plaintiff.

F.    For a judgment against Defendant in the amount due on the Notes as of November 10, 2023 in the amount of $26,388.31, together with statutory costs taxed and allowed by the Clerk in the amount of $140.00, for a total judgment in favor of the Plaintiff and against the Defendant in the sum of $26,528.31. Net proceeds from disposition of the Collateral to be applied to the judgment debt.

G.    Plaintiff shall not be required to post a bond as a condition precedent to recovery and/or disposition of the Collateral.

F.    After recovery and disposition of the Collateral, Plaintiff may file an affidavit of proof establishing any deficiency and request entry of a money judgment

[¶3]    WITNESS, the Honorable Rhonda R. Ehlis, Judge of the District Court, Stark County, North Dakota, and my hand and seal of said Court.

12/8/2023 11:15:10 AM

BY: _____, Deputy
District Court Clerk

5274110.1

2

# REGISTER OF ACTIONS
## CASE NO. 45-2024-CR-00157

| EXHIBIT |
|---|
| **10** |

| State of North Dakota vs. Robert Gene Fettig | § | | Case Type: | **Felony** |
|---|---|---|---|---|
| | § | | Date Filed: | **02/16/2024** |
| | § | | Location: | **-- Stark County** |
| | § | | | |
| | § | | | |

### PARTY INFORMATION

| | | | | **Attorneys** |
|---|---|---|---|---|
| **Defendant** | **Fettig, Robert Gene** | Male White | | **Philip Becher** |
| | Dickinson, ND 58602 | DOB: 1984 | | *Retained* |
| | DL: NDFET848663 | 5' 10", 220 lbs | | 701-609-1510 x0000(W) |
| | | | | |
| **Plaintiff** | **State of North Dakota** | | | **Peter David Morowski** |
| | | | | 701-456-7647 x0000(W) |

### CHARGE INFORMATION

| Charges: Fettig, Robert Gene | Statute | Level | Date |
|---|---|---|---|
| 1. Defrauding Secured Creditors | 12.1-23-08 | Felony C | 08/30/2023 |

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 02/16/2024 | Complaint      **Index # 1** |
| 02/16/2024 | Criminal Summons Issued      **Index # 2** |
| | *w/Complaint cc:Sheriff's Office* |
| 02/26/2024 | Criminal Summons Served      **Index # 3** |
| 02/26/2024 | Sheriff's Return Served      **Index # 4** |
| | *criminal summons and complaint served* |
| 03/06/2024 | Initial Appearance  (9:00 AM) (Judicial Officer Ehlis, Rhonda R) |
| | Result: Hearing Ended |
| 03/06/2024 | Notice of Hearing      **Index # 5** |
| | *prelim* |
| 03/06/2024 | Notification of Rights and Acknowledgement      **Index # 6** |
| 03/06/2024 | Order      **Index # 7** |
| | *Spec Cond of Relea* |
| 03/19/2024 | Request      **Index # 8** |
| | *Request to Continue Preliminary Hearing* |
| 03/19/2024 | Notice of Hearing      **Index # 9** |
| | *Rescheduled Notice of Preliminary Hearing* |
| 03/19/2024 | Service Document      **Index # 10** |
| | *Certificate of Service - Fettig* |
| 03/22/2024 | Service Document      **Index # 11** |
| | *Certificate of Service on Stark County State's Attorneys Office* |
| 03/22/2024 | Certificate      **Index # 12** |
| | *Certificate of Representation* |
| 03/22/2024 | Rule 16 Discovery Request      **Index # 13** |
| | *Rule 16 Discovery Request* |
| 04/09/2024 | Stipulation / Agreement      **Index # 14** |
| | *Stipulation for Continuance of Preliminary Hearing* |
| 04/09/2024 | Proposed Order      **Index # 15** |
| | *Order for Continuance (P. Morowski)* |
| 04/09/2024 | Order      **Index # 16** |
| | *for Continuance* |
| 04/29/2024 | Notice      **Index # 17** |
| | *Notice of Appearance of Attorney and Invocation of Marsy's Rights* |
| 04/29/2024 | Service Document      **Index # 18** |
| | *Affidavit of Service Upon Peter Morowski and Phillip Becher* |
| 05/23/2024 | Notice      **Index # 19** |
| | *Motion to Appear by Reliable Electronic Means* |
| 05/23/2024 | Proposed Order      **Index # 20** |
| | *Proposed Order Allowing Appearance by Reliable Electronic Means by Jesse Walstad* |
| 05/23/2024 | Service of Motion      **Index # 21** |
| | *Affidavit of Service Upon Peter Morowski and Phillip Becher* |
| 06/03/2024 | Preliminary Hearing and/or Arraignment  (2:30 PM) (Judicial Officer Greenwood, Dann) |
| | Continued |
| | *04/01/2024 Continued to 04/15/2024 - Continuance - Other - State of North Dakota* |
| | *04/15/2024 Continued to 06/03/2024 - Continuance - Stipulation and Order Filed - Fettig, Robert Gene; State of North Dakota* |

STATE OF NORTH DAKOTA

COUNTY OF STARK

State of North Dakota,

                 Plaintiff,

    vs.

Robert Gene Fettig,
YOB: 1984
Race: 1    OLN: ND FET848663

             Defendant.

IN DISTRICT COURT

SOUTHWEST JUDICIAL DISTRICT


**CRIMINAL COMPLAINT**

Case No. 45-2024-CR- 157


¶1    __Dalton King_____, being duly sworn, says that between August 30, 2023 and February 16, 2024, in the County of Stark, in the State of North Dakota, the above-named Defendant, Robert Gene Fettig, did commit the crime of DEFRAUDING SECURED CREDITORS – THEFT OF PROPERTY: committed in the manner following, to-wit:

¶2    That at said time and at said place the Defendant, Robert Gene Fettig, destroyed, removed, damaged, concealed, encumbered, transferred, or otherwise dealt with property that is subject to a security interest with the intent to prevent collection of the debt represented by the security interest. Further, the Defendant, Robert Gene Fettig, knowingly took or exercised unauthorized control over, or made an unauthorized transfer of an interest in, the property of another with intent to deprive the owner thereof, to wit: the Defendant, Robert Gene Fettig destroyed, removed, damaged, concealed, encumbered, transferred, or otherwise dealt with a 2015 Kenworth W900 (VIN: 1XKWP4EX1FJ435264) and/or a 2014 Kenworth W900 (VIN: 1XKWP4EX5EJ420085) that is/are subject to a security interest with the intent to prevent collection of the debt represented by the security interest. The property has a value of more than one thousand dollars ($1,000.00), as determined under N.D.C.C. §12.1-23-05(7). This, in violation of N.D.C.C. §12.1-23-08, N.D.C.C. §12.1-23-02, and N.D.C.C. §12.1-23-05, constitutes a Class C Felony against the peace and dignity of the State of North Dakota.



STARK COUNTY STATE'S ATTORNEY
AMANDA ENGELSTAD

ASSISTANT STATE'S ATTORNEYS
JAMES HOPE
AMY PIKOVSKY
PETER MOROWSKI

¶3      WHEREFORE, Complainant prays that Defendant, Robert Gene Fettig, may be arrested and dealt with according to law.

Dalton King                    3767

Subscribed and sworn to before me this _____ day of February, 2024.

Complaint Approved.
Let a Warrant Issue Thereon.

Notary Public, Stark County, ND
My Commission Expires: _____

Assistant State's Attorney
Stark County, North Dakota

MYA KUNTZ
NOTARY PUBLIC, STATE OF NORTH DAKOTA
MY COMMISSION EXPIRES MAR 6, 2024

# REGISTER OF ACTIONS
## CASE NO. 45-2024-CR-00277

| | | | |
|---|---|---|---|
| State of North Dakota vs. Robert Gene Fettig | § | Case Type: | **Felony** |
| | § | Date Filed: | **03/18/2024** |
| | § | Location: | **-- Stark County** |
| | § | | |
| | § | | |

---

### PARTY INFORMATION

| | | | |
|---|---|---|---|
| | | | **Attorneys** |
| **Defendant** | **Fettig, Robert Gene** | Male White | **Philip Becher** |
| | Dickinson, ND 58602 | DOB: 1984 | *Retained* |
| | DL: NDFET848663 | 5' 10", 220 lbs | 701-609-1510 x0000(W) |
| | | | |
| **Plaintiff** | **State of North Dakota** | | **Peter David Morowski** |
| | | | 701-456-7647 x0000(W) |

---

### CHARGE INFORMATION

| Charges: Fettig, Robert Gene | Statute | Level | Date |
|---|---|---|---|
| 1. Defrauding Secured Creditors | 12.1-23-08 | Felony C | 10/11/2023 |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 03/18/2024 | <u>Complaint</u>      **Index # 1** |
| 03/18/2024 | <u>Proposed Order</u>      **Index # 2** |
| | *Warrant of Arrest* |
| 03/18/2024 | <u>Warrant of Arrest Issued</u>      **Index # 3** |
| | *cc: SO w/ complaint* |
| 03/20/2024 | <u>Notice</u>      **Index # 4** |
| | *Notice of Appearance of Attorney and Invocation of Marsy's Rights* |
| 03/20/2024 | <u>Service Document</u>      **Index # 5** |
| | *Affidavit of Service Upon Peter Morowski and Robert G. Fettig* |
| 03/22/2024 | <u>Service Document</u>      **Index # 6** |
| | *Certificate of Service on Stark County State's Attorneys Office* |
| 03/22/2024 | <u>Certificate</u>      **Index # 7** |
| | *Certificate of Representation* |
| 03/22/2024 | <u>Rule 16 Discovery Request</u>      **Index # 8** |
| | *Rule 16 Discovery Request* |
| 04/17/2024 | <u>Service Document</u>      **Index # 9** |
| | *Certificate of Service via Electronic Filing - Stark County State's Attorney's Office* |
| 04/17/2024 | <u>Request</u>      **Index # 10** |
| | *Request to Appear Remotely* |
| 04/17/2024 | <u>Proposed Order</u>      **Index # 11** |
| | *Order Granting Request to Appear Remotely* |
| 04/17/2024 | <u>Initial Appearance</u>  (10:30 AM) (Judicial Officer Herauf, William A.) |
| | *Warrant served, atty by zoom* |
| | Result: Hearing Ended |
| 04/17/2024 | <u>Notice to Defendant and Consent to ITV</u>      **Index # 12** |
| 04/17/2024 | <u>Notification of Rights and Acknowledgement</u>      **Index # 13** |
| 04/17/2024 | <u>Order</u>      **Index # 14** |
| | *granting zoom* |
| 04/17/2024 | <u>Sheriff's Return Served</u>      **Index # 15** |
| | *warrant of arrest served* |
| 04/17/2024 | <u>Warrant of Arrest Served</u>      **Index # 16** |
| 04/17/2024 | <u>Notice of Hearing</u>      **Index # 17** |
| | *Prelim* |
| 04/17/2024 | <u>Order</u>      **Index # 18** |
| | *Spec Cond of Release cc:S/O & Jail* |
| 05/20/2024 | <u>Preliminary Hearing and/or Arraignment</u>  (2:30 PM) (Judicial Officer Herauf, William A.) |
| | Result: Hearing Ended |
| 05/20/2024 | <u>Motion</u>      **Index # 19** |
| | *Motion to Appear by Reliable Electronic Means* |
| 05/20/2024 | <u>Proposed Order</u>      **Index # 20** |
| | *UNSIGNED-Proposed Order Allowing Appearance by Reliable Electronic Means by Jesse Walstad* |
| 05/20/2024 | <u>Service Document</u>      **Index # 21** |
| | *Affidavit of Service Upon Peter Morowski and Philip Becher* |
| 05/20/2024 | <u>Exhibit</u>      **Index # 22** |
| | *PL Exhibit #1 Gate City Bank Promissory Note. (Received)* |
| 05/20/2024 | <u>Exhibit</u>      **Index # 23** |
| | *Pl Exhibit #2 Gate City Bank Promissory Note. (Received)* |
| 05/20/2024 | <u>Exhibit</u>      **Index # 24** |
| | *Pl Exhibit #3 Gate City Bank Promissory Note. (Received)* |
| 05/20/2024 | <u>Exhibit</u>      **Index # 25** |

| | | | |
|---|---|---|---|
| | *PI Exhibit #4 Gate City Bank Promissory Note. (Received)* | | |
| 05/20/2024 | **Exhibit**    **Index # 26** | | |
| | *PI Exhibit #5 Gate City Bank Promissory Note. (Received)* | | |
| 05/20/2024 | **Exhibit**    **Index # 27** | | |
| | *PI Exhibit #6 Gate City Bank Promissory Note. (Received)* | | |
| 05/20/2024 | **Exhibit**    **Index # 28** | | |
| | *PI Exhibit #7 Gate City Bank Promissory Note. (Received)* | | |
| 05/20/2024 | **Exhibit**    **Index # 29** | | |
| | *PI Exhibit #8 Gate City Bank Promissory Note. (Received)* | | |
| 05/20/2024 | **Exhibit**    **Index # 30** | | |
| | *PI Exhibit #9 Gate City Bank Promissory Note. (Received)* | | |

---

### FINANCIAL INFORMATION

| | | | |
|---|---|---|---|
| **Defendant** Fettig, Robert Gene | | | |
| Total Financial Assessment | | | 1.00 |
| Total Payments and Credits | | | 1.00 |
| **Balance Due as of 05/28/2024** | | | **0.00** |
| | | | |
| 05/20/2024 | Transaction Assessment | | 1.00 |
| 05/20/2024 | Counter Payment | Receipt # 45-2024-3329 | Fettig, Robert | (1.00) |

STATE OF NORTH DAKOTA

COUNTY OF STARK

State of North Dakota,

                    Plaintiff,

        vs.

Robert Gene Fettig,
YOB: 1984
Race: 1        OLN:    ND FET848663

                    Defendant.

IN DISTRICT COURT

SOUTHWEST JUDICIAL DISTRICT

**CRIMINAL COMPLAINT**

Case No. 45-2024-CR- 2 7 7

¶1        LaTasha Klatt                    , being duly sworn, says that about or between October 11, 2023 and March 15, 2024, in the County of Stark, in the State of North Dakota, the above-named Defendant, Robert Gene Fettig, did commit the crime of DEFRAUDING SECURED CREDITORS – THEFT OF PROPERTY: committed in the manner following, to-wit:

¶2        That at said time and at said place the Defendant, Robert Gene Fettig, destroyed, removed, damaged, concealed, encumbered, transferred, or otherwise dealt with property that is subject to a security interest with the intent to prevent collection of the debt represented by the security interest.   Further, the Defendant, Robert Gene Fettig, knowingly took or exercised unauthorized control over, or made an unauthorized transfer of an interest in, the property of another with intent to deprive the owner thereof, to wit: the Defendant, Robert Gene Fettig destroyed, removed, damaged, concealed, encumbered, transferred, or otherwise dealt with the property attached hereto as Exhibit 1 that is/are subject to a security interest held by Gate City Bank with the intent to prevent collection of the debt represented by the security interest.  The property has a value of more than one thousand dollars ($1,000.00), as determined under N.D.C.C. §12.1-23-05(7). This, in violation of N.D.C.C. §12.1-23-08, N.D.C.C. §12.1-23-02, and N.D.C.C. §12.1-23-05, constitutes a Class C Felony against the peace and dignity of the State of North Dakota.



STARK COUNTY STATE'S ATTORNEY
AMANDA ENGELSTAD

ASSISTANT STATE'S ATTORNEYS
JAMES HOPE
AMY PIKOVSKY
PETER MOROWSKI

¶3    WHEREFORE, Complainant prays that Defendant, Robert Gene Fettig, may be arrested and dealt with according to law.

LaTasha Klatt

Subscribed and sworn to before me this ___ day of March, 2024.

Complaint Approved.
Let a Warrant Issue Thereon.

Notary Public, Stark County, ND
My Commission Expires: _____

_____
Assistant State's Attorney
Stark County, North Dakota

MYA KUNTZ
Notary Public
State of North Dakota
My Commission Expires March 6, 2028

## Exhibit 1

| Collateral Description | VIN |
|---|---|
| 2013 Dragon ESP LTD 200 BBL | 1UNST5343DS128172 |
| 2007 Kenworth | 1XKDP40X07R197151 |
| 2013 Dragon 200 BBL Alum. Tank Trlr | 1UNST5341DS128154 |
| 2013 Dragon 200 BBL Alum. Tank Trlr | 1UNST5340DS128162 |
| 2014 Dragon 200 BBL Alum. Tank Trlr | 1UNST5340ES128552 |
| 2012 Kenworth | 1XKWP4TX8CJ335970 |
| 2014 Kenworth W900 | 1XKWD49X1EJ413380 |
| 2013 Dragon 220 BBL Tank Trlr | 1UNST5348DS128118 |
| 2007 Reitnauer Trailer | 1RNF48A247R019280 |
| 2013 Dragon 200 BBL AL Semi-Trailer | 1UNST5340DS128291 |
| 2014 Dragon 200 BBL AL Semi-Trailer | 1UNST5346ES140026 |
| 2016 Sidump'r Dump Trailer | 1D9FS4437GC688018 |
| 2016 Sidump'r Dump Trailer | 1D9FS4430GC688099 |
| 2013 Dakota MFG Dump Trailer | 1D9SH4339DY554348 |
| 2000 Midland MFG Dump Trailer | 2MFB2S3D5YR000651 |
| 2000 Midland MFG Dump Trailer | 2MFB2S4D3YR001148 |
| 2000 Midland MFG Dump Trailer | 2MFB2S3D3YR000650 |
| 2000 Midland MFG Dump Trailer | 2MFB2S3D7YR000652 |
| 1999 Midland MFG Dump Trailer | 2MFB2S4D4XR000542 |
| 2012 Dragon 150 BBL AL Trailer | 1UNST4223CL109253 |