UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 24-30168 |
| Stark Energy, Inc., | ) | Chapter 11, Subchapter V |
| | ) | |
| Debtor. | ) | |

**ORDER GRANTING MOTION OF DEBTOR-IN-POSSESSION FOR APPROVAL OF POST-PETITION FINANCING BY RIVIERA FINANCE, GRANTING OF SECURITY INTERESTS PURSUANT TO SECTIONS 364(c) AND (d) OF THE BANKRUPTCY CODE**

This matter came before the court on the Debtor's Motion for Approval of Post-Petition Financing by Riviera Finance of Texas, Inc., d/b/a Riviera Finance ("Riviera") and the Granting of Security Interests under Section 364 of the Bankruptcy Code (the "Motion"); and it appearing that the immediate entry of this Order is essential to the continued orderly operation of the Debtor's business and is in the best interest of the Debtor and the Debtor's Estate, the following findings of fact are made by the Court:

A.  The Debtor has provided written notice of the filing of the Motion to Riviera, the United States Trustee for the District, the Twenty Largest Unsecured Creditors of the Debtor, all of the Debtor's secured creditors, the Internal Revenue Service and all parties who filed requests for notice, as evidenced by the Affidavit of Service filed by the Debtor's counsel with this Court, which notice this Court finds to be appropriate and adequate under Federal Rules of Bankruptcy Procedure 2002 and 4001, and to satisfy the "Notice and Hearing Standards" set forth in Section 102(1) of the Bankruptcy Code and as required by Section 364 of the Bankruptcy Code;

B. All persons and entities with a security interest in or lien on the Debtor's property are and will be adequately protected if the Motion is granted pursuant to all of the terms and provisions of this Order;

C. The Debtor, notwithstanding its efforts to do so, is unable to obtain unsecured credit allowable under 11 U.S.C. Section 503(b)(1) as an administrative expense, or other than pursuant to 11 U.S.C. Section 364(c) and 364(d)(1), and the Debtor is unable to obtain credit on terms equal to or more favorable than those proposed by Riviera;

D. Riviera has agreed to purchase the Debtor's account receivable and/or to extend the credit and financing as referenced and defined in the Security Agreement and related documents, which are attached to the Motion as Exhibit "A," ("Security Agreement") in good faith, within the meaning of 11 U.S.C. Suction 364(e), and creditors and all other parties in interest were either notified of the Motion, as evidenced by the Affidavit of Service.

E. Good cause exists for approval of the financing arrangement with Riviera and obtaining of financing in this matter, and the entry of this Order will minimize disruption of the Debtor as a "going concern," will increase the possibilities for a successful reorganization, and is in the best interest of the Debtor, its creditors and its Estate. The terms upon which the Debtor is authorized to utilize cash advances are determined as fair under the circumstances.

Based upon the foregoing and sufficient cause being shown, **IT IS ORDERED AND ADJUDGED AS FOLLOWS:**

1. The Motion is **GRANTED** and the Debtor is authorized to sell and assign its accounts receivable to Riviera, subject to the terms of the Security Agreement, and is authorized and directed to enter into the Security Agreement, as may be amended and reaffirmed, and to execute all documents and take all actions to be executed and taken in connection with and in furtherance of all undertakings and obligations thereunder. The terms of the Security Agreement are incorporated herein by reference.

2. The Debtor is authorized and empowered to sell or "factor" accounts receivable with Riviera in such amounts as needed in the ordinary course of its business and not for any purpose prohibited by law.

3. All capitalized terms used in this Order, not otherwise defined herein and unless otherwise indicated, shall have the meaning given them in the Motion.

4. Pursuant to Section 364(c)(2) and 364(d)(1) of the Bankruptcy Code, as security for the payment of all obligations and liabilities of the Debtor to Riviera, including but not limited to Riviera's attorneys' fees and expenses in connection with the negotiation, documentation, closing and enforcement of the continued factoring arrangement (the "Indebtedness"), Riviera hereby is granted a first priority security interest in and lien on all of the Debtor's Post-petition accounts, accounts receivable, contract rights, chattel paper, documents, instruments, reserve accounts, rebates, and general intangibles, and all books and records pertaining to accounts, together with all proceeds and products of the foregoing property, as more fully defined and described in the Security Agreement (the "Collateral"). For the avoidance of doubt, Riviera is not being granted a security in pre-petition Collateral pursuant to this order; provided,

however, Riviera will retain any pre-petition security interests to the same extent it would have but for the terms of this order. The guarantee of Matthew Barnett is not in effect with respect to any post-petition financing.

5. The Indebtedness owed to Riviera shall constitute a super priority administrative expense claim under Section 364(c)(1) of the Bankruptcy Code, which shall be deemed allowed, without any filing by Riviera, and which shall have priority over any and all administrative and other expenses in the Bankruptcy case, including but not limited to those set forth in Sections 503(b) and 507(b) of the Bankruptcy Code, and all costs, fees and expenses incurred in this Chapter 11 proceeding or any subsequent proceeding, including one under Chapter 7; provided, however, Riviera will not have priority over the claims of the Subchapter V Trustee with respect to unpurchased accounts receivable in the amount of $1,500 per month, which amount shall be paid into a retainer for the Subchapter V Trustee from unpurchased accounts receivable or from funds paid by Riviera to the Debtor for the purchase of accounts receivable with the first payment on July 1, 2024 and each subsequent retainer payment made on the first of each month thereafter. Nothing in this section will create a lien, interest or priority claim in causes of action under 11 U.S.C. Section 544, 545, 547, 548 and 549.

6. Absent the express written consent of Riviera, neither Riviera, nor any of the Collateral or proceeds thereof, shall be charged or assessed with any costs, expenses or fees incurred by or on behalf of the Debtor, the Debtor's professional persons, or any other party including any trustee or committee of creditors, for any reason, including

4

the preservation or disposition of the Collateral, whether by means of assessment of costs and expenses of the nature set forth in sections 105, or any other Section of the Bankruptcy Code, by means of the limitation of Riviera's security interest under Section 552 of the Code or otherwise.

7. The security interests and liens granted to Riviera in the Security Agreement are deemed validly granted, duly attached and properly perfected without the need of any additional actions being taken by or on behalf of Riviera, including but not limited to, the filing or recording of Uniform Commercial Code financing statements; *provided*, *however*, that in the event Riviera does make such a filing or recordation, the Debtor shall execute all documents required by Riviera to do so.

8. Riviera shall hereby be determined to be the owner of accounts receivable purchased by it pursuant to the terms of the Security Agreement and the purchased accounts and all proceeds therefrom shall be the sole property of Riviera, and will not, when purchased by Riviera, constitute property of the Estate, and shall be free and clear of any liens interests and encumbrances other than the liens, security interests and rights granted to Riviera.

9. Absent the express written consent of Riviera, there shall not be granted to any party a lien on any of the Collateral or priority in payment prior to or equal with the lien or priority in payment hereby being accorded to Riviera.

10. Absent the express written consent of Riviera, the Debtor shall not be authorized to seek the modification of the Security Agreement or any other document or agreement between the Debtor and Riviera, or in favor of Riviera, either by the

5

proposal, promulgation or carrying out of a Plan of Reorganization, or by subsequent order of this Court.

11. All fees and costs incurred by Riviera, including attorneys' fees incurred in negotiating, documenting and closing the Post-petition Financing, including but not limited to, obtaining Bankruptcy Court approval of the Security Agreement, shall be paid by the Debtor without further order of this Court. At Riviera's sole discretion, these fees may be paid by deductions, at such times and in such amounts, as determined by Riviera, from sums paid to the Debtor by Riviera on account of Riviera's purchase of the Debtor's accounts.

12. Nothing in the Security Agreement and any of the documents executed and taken in connection with the Post-petition Financing, or this Order, shall give this Court the authority to require Riviera to purchase accounts receivable of the Debtor or to advance funds to or for the benefit of the Debtor, such being in the sole discretion of Riviera.

13. Riviera hereby is afforded the protection of Section 364(e) of the Bankruptcy Code with regard to the reversal or modification on appeal of this Order, or to the modification, vacating, or other amendment of this Order by this Court.

14. All of the terms, provisions and conditions of the Security Agreement and the related financing documents which are not specifically referenced or are not expressly contradictory to this Order hereby are approved in full by this Court and shall be deemed to be entered as an Order of this Court.

15. This Order and all the terms and conditions of the Security Agreement executed in connection with the Post-petition Financing shall be binding upon any trustee appointed in this or any subsequent case under the Bankruptcy Code, be it under Chapter 7 or Chapter 11, and the Trustee's respective successors and assigns.

16. The entry of this Order and the execution, delivery and performance under the Security Agreement, or any other documents executed in connection therewith, do not constitute a compromise, waiver or other relinquishment of any right of Riviera at law, in equity, or otherwise, including, but not limited to, any right of Riviera to request and to obtain relief under the Bankruptcy Code.

17. The automatic stay provisions of 11 U.S.C. Section 362 hereby are lifted and terminated to enable Riviera to implement the provisions of this Order and otherwise, thereby: (a) permitting Riviera to purchase accounts receivable of the Debtor, to receive collections of Riviera's collateral, and to apply those collections to the Indebtedness owing to Riviera; (b) permitting Riviera to apply any funds on deposit in the Debtor's reserve account to the Indebtedness; and (c) permitting Riviera to set off any amounts in reserve against Indebtedness now existing or hereafter incurred without further order of this Court.

18. The Debtor shall give supplemental notice of this Order and the Court's approval of the Post-petition Financing to the creditors and all interested parties who received notice of the instant Motion.

19. Any and all parties liable to Riviera as guarantors and/or sureties for any of the Debtor's obligations to Riviera shall deliver such documentation as Riviera may request within five (5) days from the date of Riviera's request.

20. This order shall be effective immediately notwithstanding Bankruptcy Rule 6004(h).

 

_____

Shon Hastings, Judge
United States Bankruptcy Court