# EXHIBIT A



# ACCOUNT STATEMENT

| | |
|---|---|
| **Customer Name** | Stark Energy, Inc. |
| **Contract Number** | 21-12855 |
| **Commencement** | 4/5/2021 |
| **Maturity Date** | 4/5/2024 |
| **1st Payment Due** | 6/15/2021 |
| **Last Payment Made** | 1/31/2023 |
| **Contract Paid to** | 11/15/2022 |
| **Date of Default** | 11/15/2022 |

| | |
|---|---:|
| Term | 36 |
| Payment Amount | $ 1,573.16 |
| Payments Made | 18 |

| | |
|---|---:|
| Pays Remaining | 18 |
| Sub-Total | $ 28,316.88 |
| 5% Discount | $ (1,415.84) |
| Late Fees | $ 1,415.82 |
| NSF Fees | $ - |
| Insurance Fees | $ - |
| Security Deposit | $ - |
| -Recovery Payments | $ (3,146.32) |
| Term Fee | $ 349.00 |
| Asset Sale | $ - |
| Repo Expenses | $ - |
| Sale Expenses | $ - |
| **Balance Owed** | **$ 25,519.54** |

DocuSign Envelope ID: 1CE6E175-A001-4B04-BDD0-6B1AB33C6D30

Case 24-30168    Doc 97-1    Filed 06/27/24    Entered 06/27/24 12:12:31    Desc Exhibit
A - Equipment Financing Agreement    Page 3 of 12

**afg Alliance Funding Group**

# EQUIPMENT FINANCING AGREEMENT

Agreement # 21-12855

| "BORROWER" | "SUPPLIER" | "SECURED PARTY" |
|---|---|---|
| FULL LEGAL NAME: STARK ENERGY, INC. <br> BILLING ADDRESS: 1860 4TH AVE E <br> CITY: DICKINSON STATE: ND ZIP: 58601 <br><br> TELEPHONE 952-210-6610 | See Invoice(s) Attached Hereto and Made A Part Hereof as Exhibit 'A' | ALLIANCE FUNDING GROUP |

| QUANTITY | FULL DESCRIPTION OF PROPERTY INCLUDING MODEL, SERIAL NUMBERS | EQUIPMENT COST |
|---|---|---|
| | See Invoice(s) Attached Hereto and Made A Part Hereof as Exhibit 'A' | $40,000.00 |

PROPERTY LOCATION (IF DIFFERS FROM BILLING ADDRESS)
Street Address: _____
City: _____
State: _____ Zip: _____ County: _____

TERM OF LOAN AND PAYMENTS    INITIAL PAYMENT DATE 05/01/2021
("Base Term Commencement Date")

COMMENCEMENT DATE 04/05/2021

**36** PAYMENTS OF **$1,573.16**    (circle desired due day) 1st or **(15th)**

INITIAL PAYMENT (CHECK FOR THIS AMOUNT MUST ACCOMPANY AGREEMENT)
FIRST PAYMENT $1,573.16
LAST PAYMENT $0.00
SECURITY DEPOSIT: $0.00
LOAN FEE $620.00

TOTAL AMOUNT DUE: **$2,193.16**

## TERMS OF EQUIPMENT FINANCING AGREEMENT ("Agreement")

Borrower and Secured Party agree as follows:

1. SECURITY INTEREST: Borrower hereby grants Secured Party a security under the Uniform Commercial Code in the above personal property (collectively the "Collateral" and individually an "Item" or "Item of Collateral"). Such security interest is granted to secure performance by Borrower of its obligations hereunder and under any other present or future agreement with Secured Party. Borrower shall insure that such security interest is and shall remain a sole first lien security interest. Notwithstanding the foregoing, this Agreement shall not be cross-collateralized or cross-defaulted if this Agreement is held by different creditors who are not affiliates. BORROWER HEREBY AUTHORIZES SECURED PARTY TO FILE A COPY OF THIS AGREEMENT AS A FINANCING STATEMENT AND APPOINTS SECURED PARTY OR ITS DESIGNEE AS BORROWER'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON BORROWER'S BEHALF, FINANCING STATEMENTS COVERING THE COLLATERAL.

2. PAYMENTS: Borrower shall repay Secured Party the above Total of Payments in the number of monthly installments of the amount indicated above. The initial installment payment shall be deemed due as of the date indicated above and subsequent installment payments shall be due on the same day of each month thereafter until paid. A pro-rata portion of the installment payment based on a daily charge of one-thirtieth (1/30) of the installment payment calculated from the Commencement Date to Base Term Commencement Date shall be due and payable at the payment commencement date. All other amounts due hereunder shall be due upon Borrower's receipt of Secured Party's invoice therefor. Advance payments shall be applied to the last installment payments in reverse order until exhausted; provided that if there is a default, any payments under this agreement may be applied to Borrower's obligations to Secured Party in such order as Secured Party chooses. Borrower authorizes Secured Party to complete the Commencement Date set forth above based on the date of actual funding.

3. NO AGENCY. BORROWER ACKNOWLEDGES THAT NO SUPPLIER OF AN ITEM OR INTERMEDIARY, MANUFACTURER, DISTRIBUTOR, WHOLESALER, BROKER OR ANY OTHER PERSON OR ENTITY NOR ANY AGENT OF ANY OF THE FOREGOING PERSONS OR ENTITIES (collectively "Supplier") IS AN AGENT OF SECURED PARTY AND FURTHER THAT NONE OF SUCH PARTIES IS AUTHORIZED TO WAIVE OR ALTER ANY ITEM OR CONDITION OF THIS AGREEMENT. NO REPRESENTATION AS TO ANY MATTER BY ANY SUCH PARTY SHALL BIND SECURED PARTY OR AFFECT BORROWERS DUTY TO PAY THE INSTALLMENT PAYMENTS AND PERFORM ITS OTHER OBLIGATIONS THEREUNDER.

4. NON CANCELABLE AGREEMENT: THERE SHALL BE NO PREPAYMENT OR OFFSET TO THE TERMS OF THIS AGREEMENT AND THE PAYMENTS DUE HEREUNDER AND THIS AGREEMENT IS NON CANCELABLE BY BORROWER FOR ANY REASON WHATSOEVER. BORROWER MAY REPAY THE INSTALLMENT PAYMENTS ONLY IN ACCORDANCE HEREWITH.

5. FINANCING. THIS AGREEMENT IS SOLELY AN EQUIPMENT FINANCING AGREEMENT. SEE ALL PAGES FOR ADDITIONAL TERMS AND CONDITIONS WHICH ARE PART OF THIS AGREEMENT.

SECURED PARTY MAKES NO WARRANTY, EXPRESS OR IMPLIED, OR THAT THE EQUIPMENT IS FIT FOR A PARTICULAR PURPOSE OR THAT THE EQUIPMENT IS MERCHANTABLE. BORROWER AGREES THAT BORROWER HAS SELECTED THE SUPPLIER AND EACH ITEM OF EQUIPMENT BASED UPON BORROWER'S OWN JUDGMENT AND DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY SECURED PARTY. SECURED PARTY DOES NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMANCE OF THE EQUIPMENT. THE SUPPLIER IS NOT AN AGENT OF SECURED PARTY AND NOTHING THE SUPPLIER STATES CAN AFFECT BORROWER'S OBLIGATION UNDER THE AGREEMENT. BORROWER WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST SUPPLIER. This Agreement is effective only upon execution by an authorized officer of Secured Party following Borrower's execution hereof, and upon execution Secured Party shall fund the Equipment Cost/Advanced. Borrower hereby authorizes Secured Party to Disburse the Equipment Cost/Advance as indicated on the attached Disbursement Authorization. Secured Party reserves the right to pay the applicable portion of the Equipment Cost/Advance jointly to any party not specified in the preceding sentence with a security interest in an Item of Collateral.

6. LOCATION; INSPECTION; USE. Borrower shall keep, or, as to an Item which is movable, permanently garage and not remove from the United States, as appropriate, each Item of Collateral in Borrower's possession and control at the Property Location (as designated above) or at such other location to which such Item may have been moved with the prior written consent of Secured Party. Upon request, Borrower shall advise Secured Party as to the exact location of an Item of Collateral. Secured Party may inspect the Collateral during normal business hours and enter the premises where the Collateral may be located for such purposes. Each Item shall be used solely for commercial or business purposes and operated in a careful and proper manner and in compliance with all applicable governmental requirements, all requirements of insurance policies carried hereunder and all manufacturers' instructions and warranty requirements.

7. ALTERATIONS; SECURITY INTEREST COVERAGE. Without Secured Party's prior written consent, Borrower shall not make any alterations, additions or improvements to an Item of Collateral which detracts from its economic value or functional utility. All additions and improvements made to an Item shall be deemed accessions thereto, and shall not be removed if removal would impair the Item's economic value or functional utility. Secured Party's security interest shall cover all modifications, accessions, additions to and replacements and substitutions for the Collateral. Borrower will not make any replacements or substitutions without Secured Party's prior written consent.

8. MAINTENANCE. Borrower shall maintain the Collateral in good repair, condition and working order. Borrower shall cause all repairs required to maintain the Collateral in such condition to be made promptly by qualified parties. Borrower will cause each Item of Collateral for which a service contract is generally available to be covered by such a contract which provides coverage typical as to property of the type involved and is issued by a competent servicing entity.

9. LOSS AND DAMAGE; CASUALTY VALUE. In the event of loss, theft, destruction or requisition of or damage to an Item of Collateral from any cause Borrower shall give Secured Party prompt notice thereof and shall thereafter place the Item in good repair, condition and working order; provided, however, that if such Item is determined by Secured Party to be lost, stolen, destroyed or damaged beyond repair or is requisitioned or suffers a constructive total loss under an insurance policy carried hereunder Borrower shall cause the Equipment to be replaced and shall immediately provide Secured Party with information necessary to perfect Secured Party's security interest in the replacement Equipment, or shall pay Secured Party the "Casualty Value" of such Item which shall equal to the sum of (a) the entire outstanding unamortized Equipment Cost, (b) all accrued and unpaid interest and any late charges, fees and other unpaid amounts owing under this Agreement, as conclusively determined pursuant to the books and records of Secured Party, plus (c) a fee equal to 5% of the unamortized Equipment Cost.

10. TITLING. If requested by Secured Party, Borrower shall cause an Item of Collateral subject to title registration laws to be titled as directed by Secured Party. Borrower shall advise Secured Party promptly as to any necessary retitling. Borrower shall cause all documents of title to be furnished Secured Party within sixty (60) days of the date of any titling effected by Borrower.

| (SECURED PARTY) Alliance Funding Group | (BORROWER) STARK ENERGY, INC. |
|---|---|
| By: _Ashley Bradbury_ | By: _[signature]_ <br> Robert Fettig, President |
| DATE: 04/05/2021 | DATE: 03/31/21 |

Page 1 of 2

11. TAXES AND FEES. Borrower agrees to pay when due all taxes (including personal property tax, fines and penalties) and fees relating to this Agreement or the Collateral. If Secured Party pays any of the above for Borrower, Borrower agrees to reimburse Secured Party and is equivalently protected for each payment. Secured Party makes on Borrower behalf. In addition Borrower also agrees to pay Secured Party any filing fees prescribed by the Uniform Commercial Code or other law and reimburse Secured Party for all costs and expenses involved in documenting and servicing this transaction. Borrower further agrees to pay Secured Party any loan fee as set forth above on the date the first payment due. Borrower also acknowledges that in addition to the payments required to be made hereunder, Secured Party may assess and Borrower may be required to pay additional taxes and/or fees, including a termination fee. Such fees may not only cover Secured Party's costs they may also include a profit.

12. INSURANCE During the term of this Agreement, Borrower will keep the Equipment insured against all risks of loss or damage in an amount not less than the replacement cost of the Equipment, without deductible and without co-insurance. At our request, Borrower will also obtain and maintain for the term of the Agreement, comprehensive public liability insurance in amounts acceptable to us. We will be the sole lender loss payee named on the property insurance and named as additional insured on the public liability policy. Borrower will pay all premiums for such insurance. If Borrower do not provide such insurance, Borrower agrees that we have the right, but not the obligation, to secure insurance on the Equipment in such form and amount as we deem reasonable to protect our interests. Borrower understand that, if we secure insurance on the Equipment the insurance may not name Borrower as an insured and may not fully protect Borrower interests. Borrower agrees that, if we secure insurance on the Equipment, Borrower will pay an insurance charge that may be substantially higher than the premium that Borrower would pay if Borrower placed said insurance independently. Borrower agrees that, in addition to the premium, the insurance charge Borrower are required to pay us will include an interest charge, administrative and processing fees, which will result in profit to us. Borrower will give us certificates or other evidence of insurance when we request same, and such certificates shall provide that we shall be given 30 days advance notice of any cancellation, nonrenewable or other material change in the insurance. Borrower agrees that we are not a seller of insurance nor in the insurance business. Borrower grants us and our agents power-of-attorney in Borrower name to apply for insurance benefits and endorse checks received in payment of insurance claims. We shall retain any physical damage insurance proceeds arising out of a theft, loss or damage up to the full amount owed under the EFA. Borrower will remain responsible for any deficiency.

13. SECURED PARTY'S PAYMENT. If Borrower fails to perform any of its obligations hereunder, Secured Party may perform such obligation, and Borrower shall (a) reimburse Secured Party the cost of such performance and (b) pay Secured Party the service charge contemplated in paragraph 20.

14. INDEMNITY. Borrower shall indemnify, defend and hold Secured Party harmless against any claim, action, liability or expense, including attorneys' fees and court costs, incurred by Secured Party related to this Agreement and Secured Party's protection of its Collateral. While it is not anticipated that Secured Party shall have any liability for torts related to the Collateral, this indemnity covers tort proceedings including any strict liability claim, any claim under another theory related to latent or other defects and any patent, trademark or service mark infringement claim.

15. DEFAULT. Any of the following constitutes an event of default hereunder: (a) Borrower's failure to pay any amount due hereunder, within five (5) days of when due; (b) Borrower's default in performing any other obligation hereunder or under any agreement between Borrower and Secured Party; (c) death or judicial declaration of competency of Borrower, if an individual; (d) the filing by or against Borrower of a petition under the Bankruptcy Code or under any other insolvency law or law providing for the relief of borrowers, including, without limitation, a petition for reorganization, agreement or extension; (e) the making of an assignment of a substantial portion of its assets by Borrower, appointment of a receiver or trustee for Borrower or for any Borrower's assets, institution by or against Borrower of any other type of insolvency proceeding or other proceeding contemplating settlement claims against or winding up of the affairs of Borrower, Borrower's cessation of active business affairs or the making by Borrower of a transfer of a material portion of Borrower's assets or inventory not in the ordinary course of business; (f) the occurrence of an event described in (c), (d), or (e) to a guarantor or other surety of Borrower's obligations hereunder, (g) any misrepresentation of a material fact in connection herewith by or on behalf of Borrower; (h) Borrower's default under any loan, lease, or agreement providing financial accommodation with a third party or (i) Secured Party shall in good faith deem itself insecure as a result of a material adverse change in Borrower's financial condition or otherwise.

16. REMEDIES. Upon the occurrence of an event of default, Secured Party shall have the right, options, duties and remedies of a secured party, and Borrower shall have the rights and duties of a debtor, under the Uniform Commercial Code (regardless of whether such Code or a law similar thereto has been enacted in a jurisdiction wherein the rights or remedies are asserted) and in connection therewith Secured Party may: (a) declare the Casualty Value or such lesser amount as may be set by law immediately due and payable with respect to any or all Items of Collateral without notice or demand to Borrower; (b) take possession of and, if deemed appropriate, render unusable any or all Items of Collateral, without demand or notice, wherever located, without any process of law and without liability for any damages occasioned by such taking of possession including damages to contents; (c) require Borrower to assemble any or all Items of Collateral at a location in reasonable proximity to their designated location hereunder, (d) upon notice to Borrower required by law, sell or otherwise dispose of any Items of Collateral, whether or not in Secured Party's possession, in a commercially reasonable manner at public or private sale and apply the net proceeds of such sale after deducting all costs of such sale, including, but not limited to, costs of transportation, repossession, storage, refurbishing, advertising and brokers fees, to the obligations of Borrower hereunder with Borrower remaining liable for any deficiency and with any excess being returned to Borrower or (e) utilize any other remedy available under the Uniform Commercial code or otherwise to Secured Party. All remedies are cumulative. Any sale may be adjourned by announcement at the time and place appointed for such sale without further published notice, and Secured Party may if permitted by law bid and become the purchaser at any such sale. Secured Party may conduct any public or private sale from Borrower's premises or location without any charge by Borrower.

17. LITIGATION AND OTHER EXPENSES. Borrower shall pay Secured Party its costs and expenses not offset as provided in paragraph 16, including repossession and attorneys' fees and court costs, incurred by Secured Party in enforcing this Agreement and in protecting its Collateral whether in State, Federal or Bankruptcy Court or other judicial or non-judicial tribunal including mediation, arbitration or judicial reference proceeding. This obligation includes the payment of such amounts whether an action is filed.

18. ASSIGNMENT. Without the prior written consent of Secured Party, Borrower shall not sell, finance or create or allow any lien other than Secured Party's security interest against an Item of Collateral or assign any of Borrower's obligations hereunder. Borrower's obligations are not assignable by operation of law. Secured Party may assign, pledge or otherwise transfer any of its rights but none of its obligations hereunder without notice to Borrower. If Borrower is given notice of any such assignment, Borrower shall acknowledge receipt thereof in writing and shall thereafter pay any amounts due hereunder as directed in the notice regardless of whether Borrower acknowledges the assignment or not. The rights of an assignee to amounts due hereunder shall be free of any claims, offsets, actions or causes of action, or defense Borrower may have against Secured Party, and Borrower agrees not to assert against an assignee any claim or defense which Borrower may have against Secured Party.
Subject to the foregoing, this Agreement inures to the benefit of, and is binding upon, the heirs, legatees, personal representatives, successors and assigns of the parties.

19. MARKINGS; PERSONAL PROPERTY. Borrower shall mark the Collateral or its location as requested by Secured Party to indicate Secured Party's security interest. As between the parties the Collateral shall at all times be deemed personal. Borrower will provide Secured Party any real property waivers requested by Secured Party as to the real property where an Item of Collateral is or is to be located including, but not limited to, landlord's waivers and mortgagee waivers.

20. LATE PAYMENT. If any part of any payment obligation is not made by Borrower within (3) days of the due date, Borrower agree to pay us up to fifteen percent (15%) of each such late payment (to the extent permitted by law), (b) amounts Secured Party pays others in connection with the collection of the payment and (c) interest on such unpaid amount from the date due until paid at the lesser of eighteen percent (18%) per annum or the highest rate permitted by applicable law. No more than a single charge under subparagraph (a) will be due in any given month.

21. ADDITIONAL DOCUMENTS. Borrower shall provide to Secured Party such financing statements and similar documents as Secured Party shall request. Borrower authorizes Secured Party where permitted by law to make filings of such documents without Borrower's signature. Borrower further shall furnish Secured Party (a) a fiscal year-end financial statement including balance sheet and profit and loss statement within one hundred twenty (120) days of the close of each fiscal year and (b) such other information and documents not specifically mentioned herein relative to this agreement as Secured Party may request. Borrower shall reimburse Secured Party for all search and filing fees incurred by Secured Party related hereto.

23. NOTICES. Notices shall be in writing, and sufficient if mailed to the party involved, United States mail first class postage prepaid, at its respective address set forth above or at such other address as such party may provide on notice in accordance herewith. Notice so given shall be effective when mailed. Borrower shall promptly notify Secured Party of any change in Borrower's address.

24. GENERAL. This Agreement constitutes the entire agreement of the parties as to the subject matter and shall not be amended, altered or changed except by a written agreement signed by the parties. Any waiver by Secured Party must be in writing, and forbearance shall not constitute a waiver. Whenever the context of this Agreement requires, the neuter includes the masculine or feminine and the singular includes the plural. If there is more than one Borrower named in this agreement, the liability of each shall be joint and several. The titles to the paragraphs of this Agreement are solely for the convenience of the parties and are not an aid in the interpretation. This Agreement shall be governed by the law of the State of California. Venue for any action related to this agreement shall be in an appropriate court in Orange County, California where this Agreement was entered into and made to be performed. Any provision declared invalid shall be deemed severable from the remaining provisions which shall remain in full force and effect. Time is of the essence of this Agreement. The obligations of Borrower shall survive the release of the security interest in the Collateral. In Secured Party's sole discretion, this Agreement and other documents may be electronically copied and/or delivered by telecopier or other electronic means of transmission ("e-copy") and the e-copy of any document shall be deemed an original and admissible as such in any court or other proceeding; provided that there shall be only one original counterpart of this Agreement, and it shall bear the original signature of us and be marked "Original." To the extent this Agreement is "chattel paper", a security or ownership interest may only be created herein by transferring the "Original" bearing Secured Party's original signature. Without limiting any of the foregoing, Borrower will send Secured Party, on request, any document bearing an original signature.

25. BORROWER'S WARRANTIES. BORROWER CERTIFIES AND WARRANTS:(a) THE FINANCIAL AND OTHER INFORMATION WHICH BORROWER HAS SUBMITTED, OR WILL SUBMIT, TO SECURED PARTY IN CONNECTION WITH THIS AGREEMENT IS, OR SHALL BE AT TIME OF SUBMISSION, TRUE AND COMPLETE; (b) THIS AGREEMENT HAS BEEN DULY AUTHORIZED BY BORROWER AND UPON EXECUTION BY BORROWER SHALL CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATION, CONTRACT AND AGREEMENT OF BORROWER ENFORCEABLE AGAINST BORROWER IN ACCORDANCE WITH ITS TERMS; AND (c) EACH SHOWING PROVIDED BY BORROWER IN CONNECTION HEREWITH MAY BE FULLY RELIED UPON BY SECURED PARTY NOTWITHSTANDING ANY TECHNICAL DEFICIENCY IN ATTESTATION OR OTHERWISE. THE PERSON EXECUTING THIS AGREEMENT ON BEHALF OF BORROWER WARRANTS THAT PERSON'S DUE AUTHORITY TO DO SO. BORROWER FURTHER WARRANTS THAT EACH ITEM OF COLLATERAL SHALL AT THE TIME SECURED PARTY FUNDS THE TOTAL ADVANCE BE OWNED BY BORROWER FREE AND CLEAR OF LIENS OR ENCUMBRANCES AND BE IN GOOD CONDITION AND WORKING ORDER.

26. USED EQUIPMENT: If any equipment is used, Borrower unconditionally agrees: (a) Borrower finances the Equipment "as is" and expressly acknowledges that the equipment is used and not new. Secured Party, NOT BEING THE VENDOR OF THE EQUIPMENT, NOR THE VENDOR'S AGENT, MAKES TO BORROWER NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED OF MERCHANTABILITY OR OTHERWISE, INCLUDING BUT NOT LIMITED TO: THE CONDITION, SAFENESS, USABILITY, REPAIR OR DESIGN OF THE EQUIPMENT OR ITS FITNESS FOR ANY PARTICULAR PURPOSE; THE QUAILITY OR CAPACITY OF THE EQUIPMENT; THE WORKMANSHIP IN THE EQUIPMENT; THAT THE EQUIPMENT WILL SATISFY THE REQUIREMENTS OF ANY LAW, RULE, SPECIFICATION OR CONTRACT PERTAINING THERETO; AND ANY GUARANTY OR WARRANTY AGAINST PATENT INFRINGEMENT OR LATENT DEFECTS. (b) Secured Party is not responsible or liable for any direct, indirect, incidental or consequential damages or losses resulting from any cause whatsoever, including but not limited to; breach of warranty; the installation, operation or use of the Equipment or any products manufactured thereby, or delay or failure to deliver any item of Equipment. Borrower agrees to settle all such claims directly with Vendor and will not set up against Borrower's obligations to Secured Party any such claims as a defense, counterclaim, setoff, or otherwise.

27. If this document or any other document or agreement delivered with this document was sent electronically, Borrower hereby warrants that any such document or agreement has not been altered in any way from the versions provided to Borrower. Any alteration or revision to any part of any such document will not be effective and will be void. A facsimile or other electronically delivered version any such document with signature may be considered to be original, binding and enforceable for all purposes.

28. EACH PARTY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES TRIAL BY JURY IN ANY ACTION BETWEEN THE PARTIES FOR ANY MATTER OR ACTION RELATED TO THIS AGREEMENT AND THE FINANCING CONTEMPLATED THEREBY. IF FOR ANY REASON THIS JURY TRIAL WAIVER IS NOT ENFORCEABLE, THEN THE PARTIES AGREE TO PROCEED BY JUDICIAL REFERENCE IN ACCORDANCE WITH CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 638 ET. SEQ.

EFA# 21-12855                                         Page 2 of 2                                         INITIAL _RF_

c:26084 a:31161 docid 13 v2

GUARANTY OF EQUIPMENT FINANCE AGREEMENT # 21-12855
BY AND BETWEEN Alliance Funding Group, AS SECURED PARTY, AND
STARK ENERGY, INC., AS
BORROWER, DATED 03/31/21

For purposes of this Guaranty, Robert Fettig, of STARK ENERGY, INC. (hereinafter "I", "me or my") means the person or entity giving this guaranty and if married, his or her marital community and Secured Party, Alliance Funding Group is defined herein as: you", your" or "us". I agree that I have an interest in Borrower, economic or otherwise, and that you would not enter into the above reference Equipment Finance Agreement (the "Agreement") without this Guaranty. I unconditionally guaranty that Borrower will fully and promptly pay all its obligations under the Agreement and any future agreements with you when they are due and will perform all its other obligations under the Agreement. This Guaranty is absolute and unconditional, and my liability hereunder shall not be affected or impaired in any way by any action taken or not taken by you or your successor or assign; the illegality, unenforceability, or invalidity of the Agreement; or any other circumstance or condition including, without limitation, any of the following, each of which you may agree to without my consent: (a) any extension or renewal of the Agreement whether or not for longer than the original period; (b) any change in the terms of payment or other terms of the Agreement or any collateral therefor or any exchange, release of, or failure to obtain any collateral therefor, (c) any waiver or forbearance granted to Borrower or any other person liable with respect to the Agreement or any release of, compromise with, or failure to assert rights against Borrower or any such other person; (d) any assignment by Borrower of its obligations under the Agreement to another party, and/or (e) the application or failure to apply in any particular manner any payments or credits on the Agreement or any other obligation Borrower may owe you. You do not have to notify me if the Borrower is in default under the Agreement. You may obtain any information from credit reporting agencies and others which you deem necessary for credit and collection purposes. If the Borrower defaults, I will immediately pay in accordance with the default provisions of the Agreement all obligations due under the Agreement. I agree that I will not be released or discharged if you: (f) fail to perfect a security interest in the Collateral or any other property which secures the obligations of Borrower or me to you; (g) fail to protect the Collateral; or (h) abandon or release the Collateral. I agree that you do not have to proceed first against the Borrower or any Collateral. I shall remain liable for any deficiency following (j) foreclosure of any mortgage or security interest securing the Agreement and/or (k) the initiation of bankruptcy or other insolvency actions affecting the Agreement or Borrower whether or not the liability of Borrower is discharged in whole or in part by such action. I agree that, as between me and you, the obligations of Borrower may be declared to be forthwith due and payable as provided in the Agreement (and shall be deemed to have become automatically due and payable in the circumstances provided for in the Agreement) for purposes of this Guaranty, notwithstanding any stay, injunction or other prohibition preventing such declaration (or such obligations from becoming automatically due and payable), and in such event, such obligations (whether or not due and payable by Borrower) shall forthwith become due and payable by me for purposes of this Guaranty. Until all indebtedness of Borrower to you has been paid in full, I agree that I shall have no right to subrogation, and I waive any right to enforce any remedy which you have against Borrower and any benefit of, and any right to participate in any security now or hereafter held by you. I hereby waive (m) notice of acceptance of this guaranty and of all other notices or demands of any kind which I may be entitled to except for demand for payment, and (n) any and all other rights and defenses available to a guarantor or surety including, without limitation, any rights and defenses that are or may become available to a guarantor (i) by reason of Sections 2787 through 2855 inclusive of the California Civil Code, (ii) as a result of an election of remedies by you even though that election of remedies, such as a non-judicial foreclosure, has destroyed my rights of subrogation and reimbursement by operation of Section 580d of the California Code of Civil Procedure, or (iii) because Borrower's obligations are secured by real property including, but not limited to, rights or defenses based upon Sections 580a, 580b, 580d, or 726 of the California Code of Civil Procedure. I will reimburse you for all expenses you incur in enforcing your rights against the Borrower or me, including without limitation, attorneys' fees and costs. All guarantors whose signatures appear below are jointly and severally responsible for the obligations hereunder. I acknowledge that I have read and understood the Agreement and this Guaranty. This is an irrevocable, continuing guaranty and binds my heirs, administrators and representatives, successors and assigns. You may sell, assign, or transfer your interest in all or any part of this Guaranty without my prior written consent. **I CONSENT TO THE JURISDICTION OF THE COURTS OF THE STATE OF CALIFORNIA** or in any jurisdiction where any collateral for the loan or this guaranty or you are located in your sole and absolute discretion. **I ALSO AGREE THAT THIS GUARANTY SHALL BE CONSTRUED UNDER THE LAWS OF THE STATE OF CALIFORNIA** I agree that this forum selection and choice of law clause was negotiated and is material consideration for you entering into the Agreement with me. I also agree that the Agreement was entered into and made to be performed in the County of Orange, State of California and any lawsuit filed by me against you must be filed in the County of Orange, State of California. However, I agree that you will have the right to commence any action in any Court having the proper jurisdiction for that action. I agree and consent that you may serve legal papers on me by registered or certified mail, which shall be sufficient to obtain Jurisdiction. **WE EACH KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE TRIAL BY JURY IN ANY ACTION BETWEEN US. IF FOR ANY REASON THIS JURY TRIAL WAIVER IS NOT ENFORCEABLE, THEN WE AGREE TO PROCEED BY JUDICIAL REFERENCE IN ACCORDANCE WITH CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 638 ET. SEQ.**

X _____[signature]_____
Robert Fettig


c:26084 a:31161 docid 31 v1



## Corporate Certificate of Authority - Guaranty

The undersigned is the duly elected and acting Secretary or Assistant Secretary of <u>FETTIG ENTERPRISE, INC.</u> ("Guarantor"), charged with maintaining Guarantor's corporate records and minutes, and hereby certifies to <u>Alliance Funding Group</u> ("Creditor") as follows:

1. The following is a true and correct copy of resolutions duly adopted by the Board of Directors of Guarantor as of <u>April 02, 2021</u>, {check and complete one} ☐ in a writing signed by all of the directors of said Board of Directors ☑ at a meeting of said Board of Directors validly convened and held in accordance with the by-laws of Guarantor:

### Resolutions of the Board of Directors

Corporate Resolutions Regarding Guarantee of Obligations of the following "Debtor": <u>STARK ENERGY, INC.</u> owed to the following "Creditor": <u>Alliance Funding Group</u>

WHEREAS this corporation is a related entity with Debtor, does business with Debtor, or will otherwise derive a direct and substantial benefit from any lease or loan financing or other financial accommodations to or for the benefit of Debtor by Creditor; and it is in the best interests of this corporation that Debtor receive lease or loan financing or other financial accommodations from Creditor.

RESOLVED that the Chief Executive Officer, President, any Vice President, Chief Financial Officer, Treasurer, Secretary or any other officer of this corporation be and each hereby is authorized and directed to negotiate, execute and deliver with, for and to Creditor, from time to time, on behalf of this corporation, guaranties of leases, installment contracts, promissory notes and security agreements executed by, and other obligations of, Debtor, in connection with lease financing, loans or other financial accommodations from time to time made by Creditor for Debtor, together with any and all related documents required by Creditor, any such guaranty and related documents to be in such form and to contain such terms and conditions as the officer signing the same shall approve as being advisable and in the best interests of this corporation, such approval to be conclusively evidenced by such officer's signature thereto.

BE IT FURTHER RESOLVED that each of the above-mentioned officers of this corporation be and hereby is further authorized, empowered and directed to deliver and pledge as collateral security for the payment of any guaranty, or for any obligations of Debtor to Creditor, such assets of this corporation as may be required and agreed upon between any such officer and Creditor.

BE IT FURTHER RESOLVED that the Secretary and each Assistant Secretary of this corporation be and hereby is authorized to furnish to Creditor a certified copy of these resolutions, and Creditor may rely on said certification and on these resolutions until Creditor shall have received notice of rescission of the same. Any such rescission shall have no effect on the validity of any agreements executed and/or the acts of any officer or this corporation undertaken prior to Creditor's receipt of such notice.

BE IT FURTHER RESOLVED that this corporation hereby ratifies and/or confirms all prior actions of its officers as to any of the foregoing.

2. The above resolutions are in full force and effect as of the date of this Certificate and have not been amended or rescinded. The provisions of said resolutions do not violate any provision of the Certificate or Articles of Incorporation or the by-laws of Guarantor, as amended (the "Bylaws") or of applicable law.

3. Pursuant to the terms of the Bylaws each of the following persons has been duly designated and appointed to, and continues to hold, the office(s) indicated opposite such person's name, and the signature set forth below opposite each such person's name is the genuine signature of such person:

| Name | Signature | Title |
|---|---|---|
| ROBERT FETTIG | /s/ | PRESIDENT |

IN WITNESS WHEREOF, the undersigned has caused this Certificate to be executed as of the date set forth below.

Signature of Secretary or Assistant Secretary: /s/

Please Print Name of Secretary/Assistant Secretary: ROBERT FETTIG

Date: 04/02/21

c:26084 a:31161 docid120 v1

SALES ORDER

# Bulkley Leasing, LLC
PO Box 336
Brashear, TX 75420
(903) 582-2318
bbulkley@bulkleyleasing.com

Sales Order # 12

| | |
|---|---|
| Sold To | Stark Energy inc. |
| Street | 1860 4th Ave. E. |
| City | Dickinson |

Stock No 159   Salesman Bryant Bulkley
3/2/2021
State ND   Zip Code 58601

Year 2018   Make Volvo   Series VNL   Body Sleeper Truck   Color White
Serial No. 4 v 4 n c 9 e h 3 H n 9 7 4 3 0 2   Phone 952-210-6610

| | |
|---|---|
| Cash Price | 59,250.00 |
| Trade Allowance | 0.00 |
| Cash Difference | 59,250.00 |
| Sales Tax | 0.00 |
| Federal Excise Tax | 0.00 |
| License and Title Fee | |
| Administrative Fee | 125.00 |
| State Inspection | |
| Total Balance | 59,375.00 |
| Deposit with Order | 9,375.00 |
| Unpaid Balance | ~~50,000.00~~ |
| Paid on Delivery | 50K |
| Amount Financed | |
| Check # (Cash) | 50K |
| Lienholders Name | |

**TRADE INFORMATION**

Make ___ Model ___
Year ___ Body Type ___
VIN ___

Buyer's Signature
Buyer certifies that all pollution equipment on trade-in is intact and in operating condition.
X ___

***Only Reimbursing $40K***

Lienholders Address

**DEALER'S DISCLAIMER OF WARRANTY**

Any warranties on the VEHICLE sold are those of the manufacturer. As between YOU (the DEALER) and ME (the BUYER) the VEHICLE is being sold "AS IS". I am taking the entire risk as to the quality and performance of the VEHICLE. I understand that YOU expressly disclaim all warranties either express or implied, including any implied warranty of Vehicle. Your disclaimer in no way affects the terms of the manufacturer's warranty, if any. I received this information before the sale.

Buyer's Signature
X ___   Date 3/18/21

The front and back of this CONTRACT comprise the entire CONTRACT affecting this purchase. The DEALER will not recognize any verbal agreement, or any other agreement or understanding of any nature. I certify that no credit has been extended to me for the purchase of this motor Vehicle except as appears in writing on the face of this CONTRACT.

The terms of this CONTRACT were agreed upon and the CONTRACT signed in this dealership on the date noted at top of this form. If YOU are arranging credit for ME, this CONTRACT is not valid until a credit disclosure is made as described in Regulation Z and I have accepted the credit extended.

IMPORTANT: I UNDERSTAND THAT THIS MAY BE A BINDING CONTRACT AND I MAY LOSE ANY DEPOSITS IF I DO NOT PERFORM ACCORDING TO ITS TERMS.

**NOTICE OF SALESMANS LIMITED AUTHORITY**
Accepted X ___
This order is not valid unless signed and accepted by Sales Manager or Officer of Company

X ___
Buyer's Signature

3/17/2021 16:37:29

DocuSign Envelope ID: 1CE6F475-A001-4B04-BDD0-6B1AB33C6D30

Case 24-30168    Doc 97-1    Filed 06/27/24    Entered 06/27/24 12:12:31    Desc Exhibit
A - Equipment Financing Agreement    Page 8 of 12

**afg** Alliance Funding Group

Alliance Funding Group
17542 17th Street #200
Tustin, CA 92780
www.afg.com

## AUTHORIZATION AGREEMENT FOR PRE-AUTHORIZED PAYMENTS

To facilitate transactions associated with Finance Agreement # __21-12855__ Dated as of: __03/31/21__ between Alliance Funding Group and **STARK ENERGY, INC.** (hereinafter referred to as "Customer") Customer hereby authorizes Alliance Funding Group and/or its assignees to initiate, from time-to-time, debit entries to the checking account indicated below and Customer hereby authorizes the depositing financial institution named below (hereinafter referred to as "the Depository"), to enter such debits or credit to such account.

Bank Name: ███

Account No.: ███

ABA/Routing No.: ███

SSN/Tax ID#: ███

Please attach a copy of a voided check for the above account

It is understood that Alliance Funding Group will process debit entries to the above-referenced account on or after the 1st day of each month in an amount not to exceed any amounts outstanding at any time, except as otherwise provided herein.

Customer represents to Alliance Funding Group that all persons whose signatures are required to withdraw funds from the above-referenced account have executed this Authorization Agreement.

Customer hereby acknowledges that Alliance Funding Group may process debit entries for scheduled rentals or any other sum due and payable to Alliance Funding Group pursuant to the referenced Agreement between Alliance Funding Group and Customer. Customer also acknowledges that Alliance Funding Group may assign Agreement to a third-party financing source and that assignee may then initiate debit entries per this authorization.

This authorization shall remain in effect until such further written notification is received from the undersigned 14 business days before the due date.

Customer hereby acknowledges that it has received a copy of this Authorization Agreement for its records.

**Customer:**

By: _____/s/ Robert Fettig_____
Robert Fettig, President

Date: 03/31/21

**A ELECTRONIC VERSION OF THIS AGREEMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL.**

c:26084 a:31181

**afg** Experience Matters



Alliance Funding Group
17542 17th Street #200
Tustin, CA 92780
www.afg.com

Robert Fettig
President
STARK ENERGY, INC.
1860 4TH AVE E
DICKINSON, ND 58601

Please sign or complete the information where highlighted and return the enclosed documents along with the following:

- Deposit check in the amount of **$2,193.16** made out to **ALLIANCE FUNDING GROUP**. The deposit represents your first month's payment, UCC filing fee and documentation fee.

- Please initial here to authorize Alliance Funding Group to electronically draft the deposit amount above from the account we have on file upon receipt of signed documents (if we do not already have a void check on file please include with the documents).

_RbF_
**INITIALS**

- A **LEGIBLE AND CURRENT** copy of each signor's driver's license. It must be **current** and the signature on the license **MUST match** the signature on the documents.

Additionally, please provide the following:
**Fed Tax ID:** ███████
**County:** _STARK_
**Billing/Mailing Address** if different from above:
_P.O. BOX 748, Dickinson ND 58602_

**Home/Cell Number** and **email address** for each person listed below:
Robert Fettig
#: ███████    Email: ███████

#: _____    Email: _____

#: _____    Email: _____

#: _____    Email: _____

**Insurance Information (required):**
Agent: _Kristin Mock_    Phone: ███████    Email: ███████ @steffesagency.com

Additionally, please note the following:
    Do Not Cross-Out or Re-Write Any Dates.
    Do Not Use White-Out.
    Email a Copy of Your Signed Documents to your Sales Rep for expedited processing.

Your business is very important to Alliance Funding Group. Please let us know if you have any comments or suggestions on how we may better serve you.

c:26084 a:31161 docid 21 v1

## DELIVERY AND ACCEPTANCE CERTIFICATE

Agreement #: __21-12855__

See Exhibit "A" Attached Hereto and Made A Part Hereof

**By signing below, you, the Borrower, agree:**

A) That all Equipment described in the Agreement identified above has been delivered, inspected, installed and is unconditionally and irrevocably accepted by you as satisfactory for all purposes of the Agreement; and
B) That we, Alliance Funding Group, are authorized to purchase the Equipment and start billing you under the Agreement as set forth in Section 2.
C) That Borrower's obligations under the Agreement are valid and enforceable and that Borrower's unconditional payment obligation shall commence immediately.
D) That upon execution, the Commencement Date set forth in the Agreement shall be in force and effect.

Date of Acceptance: __3·31·21__

Agreement #: __21-12855__

Borrower: STARK ENERGY, INC.

By: _____
Robert Fettig, President

I hereby authorize __Delene Fettig__ to orally verify my/our acceptance of the equipment subject to Equipment Finance Agreement # __21-12855__ in my absence.

A COPY OF THIS DOCUMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL.

c:26084 a:31161 docid 23 v1

Equipment Financing Agreement No. __21-12855__

**Secured Party:**
Alliance Funding Group
17542 17th Street, Ste 200
Tustin, CA 92780

**Borrower:**
STARK ENERGY, INC.
1860 4TH AVE E
DICKINSON, ND 58601

**Collateral:**   See Exhibit "A" Attached Hereto and Made a Part Hereof

# DISBURSEMENT AUTHORIZATION

The term **"Collateral"** when used herein refers to the Collateral under the Equipment Financing Agreement referenced above (the **"Agreement"**), the term **"Secured Party"** refers to Alliance Funding Group and its successors and assigns, and the term **"Borrower"** refers to the Borrower referenced above. Borrower agrees that a signed faxed version of this Disbursement Authorization shall be deemed to be of the same force and effect as an original of a manually signed Disbursement Authorization.

Please accept these instructions as your authorization to disburse the Equipment Cost under the Agreement by sending a check or wire to the Payees designated below:

| Payee Name | Amount |
| --- | --- |
| STARK ENERGY, INC. | $40,000.00 |
|  |  |

Borrower hereby acknowledges that it has read and understood the terms and conditions of the Agreement and affirms that it has executed the Agreement. Borrower acknowledges that the Agreement is NON-CANCELABLE for any reason until all of Borrower's obligations under the Agreement have been fulfilled. Borrower understands that upon disbursement of the Total Advance by Secured Party in accordance with these instructions, Secured Party shall have satisfactorily and fully performed all of its obligations under the Agreement, and Borrower shall be fully bound by all terms and conditions of the Agreement including but not limited to, the timely payment of all Monthly Payments when due. Borrower acknowledges Secured Party has NO RESPONSIBILITY AS TO THE SATISFACTORY DELIVERY, INSTALLATION, PERFORMANCE, OR MAINTENANCE of the Collateral. In reliance upon Borrower's execution of this Disbursement Authorization, Secured Party will disburse the Equipment Cost to the supplier(s). Borrower's Monthly Payments under the Agreement will commence per Paragraph 2 of the Agreement.

**Borrower:** STARK ENERGY, INC.

The undersigned affirms that he/she is duly authorized to execute this authorization on behalf of Borrower.

Signature: _/s/ Robert Fettig_
Robert Fettig

Title: President
Date: 03/31/21

A COPY OF THIS DOCUMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL.

c:26084 a:31161 docid 24 v1

# ADDENDUM TO EQUIPMENT FINANCE AGREEMENT

Agreement No.: **21-12855**

By execution hereof, the Debtor, STARK ENERGY, INC. consents to this Addendum to the above-described agreement and to making it a part thereof. Further, by execution hereof, the Debtor consents to the modification and changing of all documents as presently contained in the Agreement.

**AN ELECTRONIC VERSION OF THIS DOCUMENT SHALL BE CONSIDERED AN ORIGINAL.**

**Changes are described as follows:**

Debtor will have the option to payoff this agreement after 6 months of timely payments.

The payoff will be the current principal balance plus a surcharge per the below table:

| Year | % |
|---|---|
| 1 | 5% |
| 2 | 4% |
| 3 | 3% |

All other terms and conditions of the Finance Agreement and Guarantee(s) remain in full force and effect.

Secured Party: Alliance Funding Group

By: _Ashley Bradburn_

Its: Funding Manager

Date: 04/05/2021

Debtor: STARK ENERGY, INC.

By: _Robert Fettig_

Its: President

Date: 03/31/21

c:26084 a:31161 docid 193 v1