## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 24-30168 |
| Stark Energy, Inc., | ) | Chapter 11, Subchapter V |
| | ) | |
| Debtor. | ) | |

## DEBTOR'S OBJECTION TO REGIONS BANK'S MOTION TO LIFT AUTOMATIC STAY

Stark Energy, Inc. (the "Debtor") objects to the Motion for Relief from Automatic Stay (the "Motion") filed by Regions Bank (the "Bank"). The Bank requests relief from the automatic stay to obtain possession of and sell a 2012 CZM EKI25 Foundation Drilling Rig (serial no. SAV0003) (the "Drilling Rig"). For purposes of addressing the Bank's motion, the Debtor states as follows:

1. The Debtor filed its bankruptcy petition in good faith, with the intent to continue its business and to repay its debts to the best of its ability as required by the Bankruptcy Code.

2. The Debtor agrees that there is no equity in the Drilling Rig. The Bank values the Drilling Rig at $100,000. The Debtor's bankruptcy schedules value the Drilling Rig at $85,000. Both the Debtor and the Bank agree that the present debt is in excess of the value of the Drilling Rig.

3. The Drilling Rig is necessary for an effective reorganization. The Drilling Rig is an important part of the Debtor's operation and will produce

revenues to fund an effective plan of reorganization or pay back his creditors.

4. The Debtor has the ability to, and hereby offers to, pay the Bank $1,200 per month as "adequate protection" payments. Based on the Declaration of Nicole Wald filed in conjunction with the objection, a 7-year (84 month) straight line depreciation schedule is appropriate for the Drilling Rig. Accordingly, the offer of $1,200 per month should compensate the ordinary, expected depreciation of the Drilling Rig based on the Bank's valuation ($100,000 divided by 84 = $1,190.48). In addition to these monthly payments, the Debtor will insure and maintain the Drilling Rig.

As will be discussed in greater detail below, there is no "cause" to terminate or otherwise modify the automatic stay, and the Drilling Rig is necessary for an effective reorganization. Accordingly, the Court should deny the Bank's motion.

## **BACKGROUND**

In 2017, the Debtor began operating as a hauling company. To purchase some of the equipment needed to operate, the Debtor took out loans from various sources including the Bank. The vast majority of the Debtor's business centered on the North Dakota oil fields. The Debtor initially operated smoothly, having good cashflow and meeting the payments on its loans.

Then in 2019, the Debtor's principal, Robert Fettig, bought out his partner for $150,000. In ordinary circumstances, the Company would have been able to handle the

debt service caused by the buy-out. Unfortunately, Mr. Fettig was not able to foresee the instability that would be caused by the COVID pandemic in 2020.

As a result of the pandemic, there was a worldwide slump in the demand for oil. The Court may recall news reports of smog clearing so that the Taj Mahal could be viewed without this impediment and even, for a short time, the negative price of oil. As a result of the downturn in the oil business, North Dakota oil fields were being pulled out of production and the Debtor was forced to look for other industries to ply its trade. The Debtor was also required to take on additional debt and receive funds from government programs enacted to retain employees and assist small businesses through the ongoing COVID pandemic.

Following the pandemic, the Debtor's business began to recover. However, due to the Debtor's inexperience in these new industries and the large amount of debt it had accrued, any recovery the Debtor experienced was insufficient in the face of rising expenditures and a falling workforce.

On December 4, 2023, the Bank filed its collection complaint with the District Court of the Southwest Judicial District in Stark County, North Dakota as Case No. 45-2023-CFV-00916, and a default judgment was entered on January 26, 2024.

## I.     THERE IS NOT SUFFICIENT CAUSE FOR STAY RELIEF.

Under the Bankruptcy Code, the filing of a petition automatically stays most judicial actions against the debtor. 11 U.S.C. § 362(a)(1). This provision exists to give the debtor a respite to marshal their resources so that they may satisfy outstanding obligations. *In re Vierkant*, 240 B.R. 317, 320 (B.A.P. 8th Cir. 1999).

In rare circumstances, a creditor is entitled to relief from this automatic stay "for cause." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define the term "cause." Instead, the courts must determine whether the stay is to be lifted on a case-by-case basis. *In re Laguna Assocs. Ltd. P'ship*, 30 F.3d 734, 737 (6th Cir. 1994). Here, the Bank claims "cause" because the Drilling Rig is in the possession of NoDak Towing & Recovery. The Debtor believes that the company in possession of the Drilling Rig is iSpy Asset Recovery, LLC. Based on a search of the North Dakota Secretary of State's website, both iSpy Asset Recovery, LLC and NoDak Towing & Recovery LLC are North Dakota limited liability companies with a principal address listed as 625 42nd Street SE, Minot, ND 58701-6851 and a registered agent listed as Marcus A. Hute.

By way of background, Alliance Funding Group ("AFG") retained iSpy to repossess two trailers they had a security interest in. When iSpy took possession of the 2015 Trail King, the Drilling Rig was on top of the trailer. When the Debtor called iSpy, on the day of the repossession, iSpy claimed a "right of impoundment" and offered to return the Drilling Rig only if the Debtor paid him $4,000. On May 16, 2024, following the filing of his chapter 11 bankruptcy case, the Debtor again called iSpy to request return of the Drilling Rig and iSpy again refused to turnover the Drilling Rig unless the Debtor paid him $115,000. On May 20, 2024, the Debtor's counsel wrote a letter to both iSpy and AFG demanding return of the Drilling Rig. On May 24, 2024, Debtor's counsel presented iSpy with a draft adversary proceeding complaint demanding turnover of the Drilling Rig and alleging damages. Eventually, on June 10, 2024, iSpy agreed to

turnover the Drilling Rig. The Debtor has not yet picked up the Drilling Rig, but is working to do so.

Here, the Bank's claim of "cause" was based on the fact that the Drilling Rig was in the possession of iSpy. Because the Debtor has obtained an agreement allowing it to recover the Drilling Rig, the Bank's claim of "cause" is effectively mooted.

## II.    THE DRILLING RIG IS NECESSARY FOR AN EFFECTIVE REORGANIZATION

Relief from the automatic stay granted debtors under 11 U.S.C. § 362(a)(1) may also be lifted if the debtor has no equity in the property and the property is not necessary for an effective reorganization. 11 U.S.C. § 362(d)(2). The Debtor does not dispute that it lacks equity in the Drilling Rig. The Bank values the Drilling Rig at $100,000. The Debtor's bankruptcy schedules values the Drilling Rig at $85,000. Both the Debtor and the Bank agree that the present debt is in excess of the value of the Drilling Rig. Section 362(d)(2), however, does not allow relief from the automatic stay because the Drilling Rig is necessary for an effective reorganization.

Once a creditor has established that a debtor lacks equity in some property, the burden shifts to the debtor to prove that the property at issue is necessary for an effective reorganization. *Bowman v. Bond (In re Bowman)*, 253 B.R. 233, 238 (B.A.P. 2000). As explained in the declaration of Rob Fettig, the Drilling Rig is an important part of the Debtor's operation and will produce revenues to fund an effective plan of reorganization to pay back his creditors.

Moreover, the Debtor strongly believes it has the ability to develop a successful plan of reorganization. The Debtor's ability to develop an effective plan of reorganization is underscored by reviewing the pre-COVID Debtor. Robert Fettig, the principal of Debtor, started the company in April of 2017 with one truck and a trailer. Prior to this, he worked in the oil and gas industry for 5.5 years. In 2017, its first year of operation, the company grossed $176,000. In late 2017 and through 2018, the Debtor acquired additional trucks for hauling aggregate, a flatbed truck for heavy hauling, a hydrovac, and other equipment for drilling services. The Debtor ended 2018 with gross revenues of $1.65 million. Staying on this trajectory, Stark grossed $4.85 million in 2019. The past doesn't predict the future; however, this history demonstrates that the Debtor has the experience, ability, and commitment to produce a successful outcome.

### III   THE DEBTOR IS WILLING AND ABLE TO PROVIDE ADEQUATE PROTECTION PAYMENTS TO THE BANK TO OBTAIN A RETURN OF THE DRILLING RIG.

Because the Drilling Rig is currently sitting unused, the Bank is not presently entitled to adequate protection payments with respect to the Drilling Rig. Nonetheless, once the Debtor obtains possession of the Drilling Rig and is able to put it to work, the Debtor understands that it will need to provide adequate protection of the Bank's interest in the Drilling Rig. To this end, the Debtor hereby offers $1,200 per month to obtain a return of the Drilling Rig. In addition to these monthly payments, the Debtor will insure and maintain the Drilling Rig.

The offered payment of $1,200 per month will fully compensate the Bank for the depreciation of equipment that occurs as it is used. Adequate protection payments are

intended to reflect the depreciation or decline in value that occurs as an asset is used. The general rule is that, in order to obtain adequate protection payments, ". . . the moving party must provide evidence that the value of the collateralized property is declining, or at least threatened, as a result of the automatic stay." *In re Panther Mountain Land Dev., LLC,* 438 B.R. 169, 189 (Bankr. E.D. Ark. 2010). When arguing that the value of collateral is depreciating, the creditor must provide evidence of actual or expected depreciation or some other decline in value from the petition date to the date of the filing of the motion. *Id.* ("The most direct and convincing proof that the value is 'declining, or at least threatened' comes from a comparison of the property value at the time of the hearing to the property value on the date of filing.").

Here, the Bank provides no evidence of depreciation or decline in value because the equipment is currently sitting unused. When put in use, based on the Declaration of Nicole Wald filed in conjunction with this objection, a 7-year (84 month) straight line depreciation schedule is appropriate for the Drilling Rig. Accordingly, the offer of $1,200 per month should compensate the ordinary, expected depreciation of the Drilling Rig based on the Bank's valuation ($100,000 divided by 84 = $1,190.48). In addition to these monthly payments, the Debtor will insure and maintain the Drilling Rig.

WHEREFORE, for the foregoing reasons, the Debtor respectfully requests entry of an order denying the Bank's motion and allowing the court to hear his plan of reorganization.

Ahlgren Law Office, PLLC

Dated: June 28, 2024                    /s/Erik A. Ahlgren

Attorney #09561
220 West Washington Ave, Ste 105
Fergus Falls, MN 56537
Office: 218-998-2775
Fax: 218-998-6404
erik@ahlgrenlawoffice.net

ATTORNEY FOR DEBTOR

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 24-30168 |
| Stark Energy, Inc., | ) | Chapter 11, Subchapter V |
| | ) | |
| Debtor. | ) | |

## DECLARATION OF ROBERT FETTIG IN SUPPORT OF DEBTOR'S OBJECTION TO REGION BANK'S MOTION TO LIFT AUTOMATIC STAY

I, Robert Fettig, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am the president and sole shareholder of the Debtor in the above captioned case and am personally familiar with the facts as stated herein.

2.      In 2017, I along with my partner, Mathew J. Barrett, organized the Debtor and operated it as a business whose primary purpose was hauling water and supplies to and from the oil fields located in North Dakota.

3.      The Debtor took out numerous loans from various different institutions, including Gate City Bank, to acquire the initial funding required to purchase the equipment necessary to operate in the hauling industry. To secure these loans, security interests in the equipment were granted to the lenders.

4.      From 2017 to 2019, the Debtor had good cashflow and made timely payments on its loans.

1

5.      In 2019, I bought out Mathew J. Barrett's interest in the Debtor for $150,000, which at the time seemed a reasonable expense given the revenue being generated by the Debtor.

6.      In 2020, the COVID pandemic began and as a result of the pandemic there was a worldwide slump in the demand for oil and an increase in the expenses of oil drilling companies. This caused an economic downturn for the oil industry including the oil fields in North Dakota.

7.      This economic downturn for the oil companies in North Dakota resulted in a sharp decline of business for the Debtor.

8.      Due to this sharp decline in revenue, the Debtor was forced to begin hauling for the aggregate industry, which I lacked experience in, and to take out further loans and receive funds from government programs enacted to retain employees and assist small businesses through the ongoing COVID pandemic.

9.      Following the pandemic, the Debtor's business began to recover. However, due to my inexperience in the aggregate industry and the large amount of debt accrued throughout the pandemic, the recovery was insufficient in the face of rising expenditures and a falling workforce.

10.     On December 4, 2023, Regions Bank (the "Bank") filed its collection complaint with the District Court of the Southwest Judicial District in Stark County, North Dakota as Case No. 45-2023-CFV-00916, and a default judgment was entered on January 26, 2024.

11.     In an unrelated collection action, Alliance Funding Group ("AFG")

retained iSpy Asset Recovery, LLC ("iSpy") a North Dakota limited liability company

with a principal address listed with the Secretary of State as 625 42nd Street SE, Minot,

ND 58701-6851, to recover a 2014 and 2015 Trail King trailer which were financed by

AFG and secured by AFG.

12.     On or about January 2, 2024, iSpy entered Debtor's property located at

4090 130th Ave SW, Belfield, ND 58622 for the purpose of repossessing the Trail King

trailers.

13.     When iSpy took possession of the 2015 Trail King, the Drilling Rig was on

top of the trailer.

14.     After returning to my shop and discovering that the trailers were missing,

along with the Drilling Rig, I contacted the Stark County Sheriff's Office and was

informed that iSpy had given them notice that they were repossessing the trailers,

though no representative of the Sheriff's office was present when iSpy conducted the

repossession.

15.     When I called iSpy on the day of the repossession, I spoke to Marcus Hute

on behalf of iSpy. In response to my request that he return the Drilling Rig, he claimed a

"right of impoundment" and offered to return the Drilling Rig only if paid $4,000.

16.     On May 16, 2024, following the filing of the Debtor's chapter 11

bankruptcy case, I again called Marcus Hute to request return of the Drilling Rig and he

again refused to turnover the Drilling Rig. This time he demanded a payment of

$115,000. On May 20, 2024, Erik Ahlgren, representing the Debtor, wrote a letter to both

3

iSpy and AFG demanding return of the Drilling Rig. A copy of this letter is attached as Exhibit A.

17.     On May 24, 2024, Mr. Ahlgren, as Debtor's counsel, emailed iSpy a draft adversary proceeding complaint demanding turnover of the Drilling Rig and alleging damages. See Exhibit B.

18.     Eventually, on June 10, 2024, iSpy agreed to turnover the Drilling Rig. A copy of the agreement to turnover the Drilling Rig is attached as Exhibit C.

19.     The Drilling Rig has not yet been picked up, but we are working to do so.

20.     When I am able to pick up the Drilling Rig, I expect to be able to put it to work producing revenues.

21.     The Bank values the Drilling Rig at $100,000. The Debtor's bankruptcy schedules value the Drilling Rig at $85,000.

22.     I understand and agree that the Debtor owes the Bank in excess of the value of the Drilling Rig, so there is no equity in the equipment.

23.     The Drilling Rig is an important part of the Debtor's operation and will produce revenues to fund an effective plan of reorganization to pay back his creditors.

24.     I am confident that I can develop an effective plan of reorganization for the Debtor. I started the company in April of 2017 with one truck and a trailer. Prior to this, I worked in the oil and gas industry for 5.5 years. In 2017, the Debtor's first year of operation, the company grossed $176,000. The Debtor acquired a flatbed trailer for hauling pipe/materials in 2018, additional trailers in 2019 for hauling aggregate, and a hydrovac in 2022 for spill cleanups and tank cleanings, and other equipment for drilling

4

services. The Debtor ended 2018 with gross revenues of $1.65 million. In 2019, the Debtor grossed $4.85 million with the full utilization of the vehicles now in the possession of the Bank. I believe that, over time, I can return the company to these levels of revenues and that I can operate the company profitably.

25.    I understand the need to provide adequate protection of the Bank's security interest. To this end, the Debtor is offering to pay the Bank $1,200 per month to obtain a return of the Vehicles. This sum will protect the Bank against a devaluation of the equipment based on depreciation or normal "wear and tear". In addition to these monthly payments, the Debtor will insure and maintain the Vehicles.

26.    I am confident that the Debtor, if allowed to continue its business under a plan of reorganization, will have the means to propose and confirm an effective plan to repay its creditors.

27.    I have reviewed the response to the Bank's motion to lift the automatic stay and believe that the facts as stated therein are true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  June 28, 2024

Robert Fettig

# EXHIBIT A



**Erik A. Ahlgren**
erik@ahlgrenlawoffice.net

May 20, 2024

iSpy Asset Recovery LLC                    U.S. Mail
c/o Marcus Hute
625 42ND Street SE
Minot, ND 58701-5119

Alliance Funding Group                     U.S. Mail and Email to bknox@afg.com
17542 17th Street #200
Tustin CA 92780

   Re: Demand for Immediate Return of Wrongfully Repossessed Equipment

Dear Mr. Hute and Alliance Funding:

   I am writing to you on behalf of Stark Energy Services, Inc. ("Stark Energy"), whom I represent in the Chapter 11 bankruptcy case currently pending in the District of North Dakota, Case Number 24-30168. It has come to our attention that on January 2, 2024, during the course of repossessing a 2015 Trail King TK110HDG-533 RGN with VIN # 1TKJ05330FM057588 ("the 2015 Trail King"), you also wrongfully took a 2012 CZM EK 125 Foundation Drilling Rig ("the Drilling Rig").

   The repossession operation, which took place without judicial authorization or sheriff accompaniment, not only breached the legal process but was compounded by the fact that it involved trespassing onto property clearly marked with "no trespassing" signs. Such actions not only contravene the spirit of lawful conduct but also raise serious legal concerns that cannot be overlooked.

   More egregiously, the Drilling Rig in question was not even subject to Alliance Funding's security interest. As per established legal norms, any personal property taken inadvertently during a repossession should be returned immediately upon request. The failure to return the Drilling Rig, despite Stark Energy's requests, constitutes a wrongful seizure and is tantamount to conversion, as supported by the precedent set in *John Deere Co. v. Nygard Equip., Inc.*, 225 N.W.2d 80, 89 (N.D. 1974).

   Therefore, we hereby demand the immediate return of the Drilling Rig to Stark Energy. It is imperative that Alliance Funding rectifies this wrongful seizure without delay. Failure to do so will compel us to take appropriate legal action to recover the equipment and seek damages for the considerable inconvenience and distress caused to Stark Energy.

We also request that you provide written confirmation of the corrective action taken in response to this demand. It is our hope that this matter can be resolved swiftly and amicably, avoiding further legal conflict and unnecessary expenditure.

Please understand that Stark Energy is determined to protect its rights and assets and will not hesitate to pursue all available legal remedies to address this matter.

We look forward to your prompt response and resolution of this matter.

Sincerely,

Erik Ahlgren

**EXHIBIT B**

**Erik Ahlgren**

---

| | |
|---|---|
| **From:** | Erik Ahlgren |
| **Sent:** | Friday, May 24, 2024 4:22 PM |
| **To:** | nodakrepo@gmail.com |
| **Cc:** | 'Lisa Ahlgren' |
| **Subject:** | RE: Stark Energy Services, Inc- Alliance Funding Group/iSpy Asset Recovery LLC |
| **Attachments:** | Adversary Proceeding.doc |

We are filing the attached on Tuesday.

If you will commit to turning over the drilling rig, in writing, prior to Tuesday, we could both avoid time and cost.


## Erik A. Ahlgren | Attorney

Wells Fargo Center
Suite 105 (East Entrance)
220 West Washington Ave
Fergus Falls, MN 56537

Office: 218-998-2775
Fax: 218-998-6404
Cell:  218-205-7356
erik@ahlgrenlawoffice.net

This message and any attachments are intended only for the named recipient(s), and may contain information that is confidential, privileged, attorney work product, or exempt or protected from disclosure under applicable laws and rules. If you are not the intended recipient(s), you are notified that the dissemination, distribution, or copying of this message and any attachments is strictly prohibited. Please notify the sender if this email reaches you and you are not the intended recipient(s). If this communication concerns negotiation of a contract or agreement, the Uniform Electronic Transactions Act ("UETA") does not apply to this communication.  To comply with IRS requirements, you are informed that any tax advice contained in this communication (including any attachments) cannot be used for the purpose of avoiding tax-related penalties under the Internal Revenue Code.

---

**From:** Erik Ahlgren
**Sent:** Monday, May 20, 2024 12:48 PM
**To:** nodakrepo@gmail.com
**Cc:** 'Lisa Ahlgren' <lisa@ahlgrenlaw.net>
**Subject:** Stark Energy Services, Inc- Alliance Funding Group/iSpy Asset Recovery LLC

Marcus,

Attached is our correspondence regarding the Stark Energy Inc. drilling rig you picked up.

## Erik A. Ahlgren | Attorney

Wells Fargo Center
Suite 105 (East Entrance)
220 West Washington Ave

Fergus Falls, MN 56537

Office: 218-998-2775
Fax: 218-998-6404
Cell:  218-205-7356
erik@ahlgrenlawoffice.net

This message and any attachments are intended only for the named recipient(s), and may contain information that is confidential, privileged, attorney work product, or exempt or protected from disclosure under applicable laws and rules. If you are not the intended recipient(s), you are notified that the dissemination, distribution, or copying of this message and any attachments is strictly prohibited. Please notify the sender if this email reaches you and you are not the intended recipient(s). If this communication concerns negotiation of a contract or agreement, the Uniform Electronic Transactions Act ("UETA") does not apply to this communication.  To comply with IRS requirements, you are informed that any tax advice contained in this communication (including any attachments) cannot be used for the purpose of avoiding tax-related penalties under the Internal Revenue Code.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

In re:

      Stark Energy, Inc.,                                      Chapter 11, Subchapter V
Case No. 24-30168

              Debtor.

Stark Energy, Inc.,

          Plaintiff,

v.

                                Adv. Pro. _____

 iSpy Asset Recovery LLC,
Marcus Hute, and
Alliance Funding Group,

          Defendants.

## COMPLAINT TO RECOVER ASSETS

Stark Energy, Inc. (the "Plaintiff" or "Debtor") brings this complaint seeking a determination that the assets that are the subject of this complaint are property of the estate and an order requiring their turnover.

## PARTIES

1.      Debtor filed its voluntary Petition under Chapter 11 of the Bankruptcy Code on April 23, 2024 and, pursuant to Sections 1107 and 1108 is authorized to continue in the operation and management of its business as the Debtor-in Possession.

2.      Defendant iSpy Asset Recovery, LLC ("iSpy") is a North Dakota limited liability company with a principal address listed with the Secretary of State as 625 42nd Street SE, Minot, ND 58701-6851.

3.      Defendant Marcus A. Herting-Hute ("Hute") is an individual who, on information and belief, is the controlling owner of iSpy, with a business address of 625 42nd Street SE, Minot, ND 58701-6851.

4.      Defendant Alliance Funding Group ("AFG") is, on information and belief, a business entity that is not registered to do business in the State of North Dakota, which entity has filed a proof of claim in the above captioned case showing a business address of 17542 17th Street, Ste 200, Tustin, CA 92780.

5.      Defendants iSpy, Hute and AFG will be jointly referred to as "Defendants".

## JURISDICTION AND VENUE

6.      The Debtor's Subchapter V, Chapter 11 bankruptcy was commenced in this district, and the case is remains pending in this court.

7.      This adversary proceeding is brought pursuant to 11 U.S.C. §§105 and 542 and Federal Rules of Bankruptcy Procedure 7000(1).

8.      Jurisdiction over this adversary proceeding is based on 28 U.S.C. §§1334(b) and 157(b)(2)(E).  This is a core proceeding.

9.      This district is the proper venue for this adversary proceeding pursuant to 28 U.S.C. §1409(a).

2

## BACKGROUND FACTS

10.  AFG provided financing to the Debtor to purchase a 2015 Trail King TK110HDG-533 RGN with VIN # 1TKJ05330FM057588 ("the 2015 Trail King") and retained a security interest in the 2015 Trail King.

11.  Following an alleged default, AFG, directly or indirectly, retained iSpy to repossess the 2015 Trail King.

12.  On information and belief, iSpy was acting on behalf of AFG and/or at its express direction in repossessing the 2015 Trail King.

13.  On or about January 2, 2024, iSpy entered Debtor's property located at 4090 130th Ave SW, Belfield, ND 58622 for the purpose of repossessing the 2015 Trail King.

14.  When iSpy entered Debtor's property, the property was clearly marked with "no trespassing" signs.

15.  Neither AFG nor iSpy obtained judicial authorization to enter Debtor's property.

16.  iSpy was not accompanied by a representative of the County Sheriff's office when it entered the Debtor's property for the purpose of repossessing the 2015 Trail King.

17.  The Debtor did not give iSpy permission to enter Debtor's property.

18.  On or about January 2, 2024, iSpy took possession of the 2015 Trail King.

19.  When iSpy took possession of the 2015 Trail King, a 2012 CZM EK 125 Foundation Drilling Rig (the "Drilling Rig") was on top of the 2015 Trail King.

3

20.     When iSpy took possession of the 2015 Trail King, it also took the Drilling Rig.

21.     On information and belief, Hute personally entered Debtor's property for the purpose of taking possession of the 2015 Trail King.

22.     On information and belief, Hute directed all the activities of iSpy when iSpy entered Debtor's property and took possession of the 2015 Trail King and Drilling Rig.

23.     On information and belief, Hute was aware of the "no trespassing" signs on the Debtor's property.

24.     On information and belief, Hute knew that AFG had a security interest in the 2015 Trail King but did not have a security interest in the Drilling Rig.

25.     On January 2, 2024, the Debtor called Hute on behalf of iSpy to request return of the Drilling Rig.

26.     When the Debtor called Hute on behalf of iSpy, on the day of the repossession, Hute claimed a "right of impoundment" and offered to return the Drilling Rig only if the Debtor paid him $4,000 and the Debtor also turned over a Volvo truck which he claimed was subject to an AFG security interest, or $6,000 if he did not return the Volvo truck.

27.     Defendants directly or through their agents improperly entered Debtor's property to take possession of the 2015 Trail King and the Drilling Rig.

28.     Defendants did not have a security interest or any other right to retain the Drilling Rig.

4

29.     Defendants directly or through their agents improperly claimed a "right of impoundment" with respect to the Drilling Rig.

30.     Defendants directly or through their agents improperly requested payments and other actions as a prerequisite to returning the Drilling Rig.

31.     On May 16, 2024, following the filing of his chapter 11 bankruptcy case, the Debtor again called iSpy to request return of the Drilling Rig. Hute, on behalf of iSpy again refused to turnover the Drilling Rig and, during this call, demanded that the Debtor pay him $115,000 to turnover the Drilling Rig.

32.     On May 20, 2024, the Debtor's attorney wrote a letter to both iSpy and AFG demanding return of the Drilling Rig.

33.     Defendants have failed or refused to turnover the Drilling Rig.

34.     If the Debtor had possession of the Drilling Rig, it could be utilized to produce revenues for the bankruptcy estate.

**COUNT I: TURNOVER**

35.     The Debtor restates and incorporates herein by reference the allegations contained in the paragraphs above.

36.     The Drilling Rig is property of the Debtor's bankruptcy estate pursuant to 11 U.S.C. §541.

37.     The Drilling Rig is of substantial value or benefit to the bankruptcy estate.

38.     The Defendants directly or through their agents have possession or control of the Drilling Rig.

39.     The Debtor has requested turnover of the Drilling Rig, but the Defendants have failed or refused to turnover the Drilling Rig.

5

40.    The Debtor is entitled to an order of this court requiring the turnover of the Drilling Rig to the Debtor pursuant to 11 U.S.C. §542.

## COUNT II: CONVERSION

41.    The Debtor restates and incorporates herein by reference the allegations contained in the paragraphs above.

42.    Defendants directly or through their agents wrongfully seized the Drilling Rig.

43.    Even after they were requested to return the Drilling Rig, Defendants directly or through their agents failed or refused to return the Drilling Rig.

44.    Defendants directly or through their agents have wrongfully deprived the Debtor of the use of the Drilling Rig.

45.    The Debtor is entitled to recover damages in the amount of the expected revenues Debtor would have received from the use or rent of the Drilling Rig.

46.    Pursuant to N.D.C.C. § 32–03–23(3), the Debtor is entitled to recover damages in an amount of the costs it will incur to recover the Drilling Rig.

47.    The Debtor is entitled to recover exemplary damages for conversion because the Defendants' conduct, and that of their agents, in wrongfully taking the Drilling Rig and refusing to return it without improper requests for monetary payments and other actions has been oppressive, malicious, and fraudulent.

WHEREFORE, Plaintiff seeks an order of the court (a) requiring the Defendants to turnover the Assets to Plaintiff for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §542, (b) granting judgment against Defendants for both actual and exemplary

6

damages, and (c) for court costs and such other relief as the court may deem just and appropriate.

**AHLGREN LAW OFFICE, PLLC**

/e/  Erik A. Ahlgren

Dated:  June 28, 2024

Erik A. Ahlgren, Atty #09561
220 West Washington Ave, Suite 105
Fergus Falls, MN 565367
(218) 998-2775
erik@ahlgrenlawoffice.net

ATTORNEY FOR DEBTOR

7

**EXHIBIT C**

## MUTUAL RELEASE OF CLAIMS

This Mutual Release is made as of June 10 , 2024 between STARK ENERGY SERVICES, INC., a North Dakota corporation ("Stark"), and ISPY ASSET RECOVERY LLC, a North Dakota limited liability company ("iSpy").

WHEREAS, iSpy was retained to repossess a 2015 Trail King TK110HDG-533 RGN identified by VIN # 1TKJ05330FM057588 ("the 2015 Trail King").

WHEREAS, when iSpy took possession of the 2015 Trail King, a 2012 CZM EK 125 Foundation Drilling Rig (the "Drilling Rig") was on top of the 2015 Trail King.

WHEREAS, a dispute has arisen regarding the return of the Drilling Rig to Stark and the terms on which the Drilling Rig would be returned.

NOW, THEREFORE, the parties agree as follows:

1.      Stark will be entitled to pick up the Drilling Rig from iSpy at 625 42nd Street SE, Minot, ND 58701-6851. Stark will pay all costs to load and transport the Drilling Rig. Provided the Drilling Rig is picked up within 30 days of the date of this agreement, iSpy will charge no costs to Stark. If the drilling rig is not retrieved within 30 days have passed, iSpy may charge a storage fee of $900 per day beginning on the 31st day after this Mutual Release is executed.

2.      Stark hereby waives and releases all rights and claims against iSpy related to the repossession of the Drilling Rig, and iSpy waives and releases all rights and claims against Stark related to the Drilling Rig and all right, title, and interest in the Drilling Rig.

3.      This Agreement constitutes the entire and only agreement between the Parties with respect to the subject matter hereof, and the Parties hereby agree that any and all previous understandings or agreements between the Parties with respect to the subject matter herein, whether written or oral, are superseded by, and merged into, this Agreement, which fully and completely expresses the Parties' agreement.

IN WITNESS WHEREOF, the parties have executed this agreement.

**STARK ENERGY SERVICES, INC.**

By: Robert G. Fettig
Its: President

**ISPY ASSET RECOVERY LLC**

By: Marcus Hute
Its: Owner

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 24-30168 |
| Stark Energy, Inc., | ) | Chapter 11, Subchapter V |
| | ) | |
| Debtor. | ) | |

---

## DECLARATION OF NICOLE WALD IN SUPPORT OF DEBTOR'S OBJECTION TO REGION BANK'S MOTION TO LIFT AUTOMATIC STAY

---

I, Nicole Wald, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am a Certified Public Accountant. I have worked for two regional public accounting firms and have my own public practice. I am a member of the North Dakota Society of CPAs where I serve on the Next Gen Committee, the North Dakota CPA Society Foundation, where I serve as a Trustee, the American Accounting Association, the Magic City CPAs where I serve as co-chair as well as serving on the Supervisory Committee of Aspire Credit Union and the Society of St. Vincent De Paul.

2.      I understand that the equipment at issue is a 2012 CZM EKI25 Foundation Drilling Rig (serial no. SAV0003) (the "Drilling Rig"), and that the Drilling Rig is used in the process of constructing foundations for buildings or as the base for heavy equipment used in the oil fields.

3.      Depreciation is intended to reflect a reasonable estimate of the useful life of the equipment. It is ordinary to apply a seven-year depreciation schedule to most types of equipment. A five-year depreciation schedule is often justified for vehicles and

certain other assets used in the construction industry. Based on my experience, I believe a 7-year (84 month) straight line depreciation schedule would be appropriate for the Drilling Rig.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  June 28, 2024

*Nicole Wald*
_____
Nicole Wald

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

In re:

Stark Energy, Inc.                                    Bky. Case No. 24-30168
                                                      Chapter 11 Subchapter V

        Debtor.

## CERTIFICATE OF SERVICE

I, Lisa Ahlgren certify, that on June 28, 2024, the following document:

**Debtor's Objection to Regions Bank's Motion to Lift Automatic Stay**

was filed electronically with the Clerk of Court through CM/ECF and that those parties

requesting electronic service were served by CM/ECF.

Executed: June 28, 2024                    /s/Lisa Ahlgren
                                           Lisa Ahlgren